# FEDERAL DISTRICT COURT
# EASTERN DISTRICT
# OF PENNSYLVANIA

William Burrell JR.
Plaintiff

V.

Patrick Lounge (Individually)

Richard Gladdys (Individually)

ED ADAMS (Individually)

Richard Saxton (Individually)

Trish Corbett (Individually)

Lackawanna County
Prison Board (All Individually)

Robert McMillan (Individually)

Tom STAff (Individually)

Brian Jeffers (Individually)

JAck McPhillips (Individually)

Todd Frick (Individually)

John Craig (Individually)

Louis DenAples (Individually)

Kathleen kane (officially)

FILED
SCRANTON

SEP 2 9 2014

PER _____
DEPUTY CLERK

CIVIL ACTION
NO: 14-1891

## Complaint And Demand for Jury TriAl

Now comes William Burrell JR. And respectfully moves This Honorable Court for relief And demands A trial by Jury for the following reAsons:

Violation of 42 U.S.C. sec. 1983, Specifically The 1st Amendment, 4th Amendment, 6th Amendment, 8th Amendment, 13th Amendment, 14th Amendment (SubstAntive And ProceduAl Due process clAuse), EquAl Protection clAuse, 42 U.S.C. sec. 1985(3)

Negligent And Intentional Infliction of Emotional Distress

②

Title VII of the Civil Rights Act of 1964 (42 U.S.C. S. 2000) negligence, And false Imprisionment.

## Introduction

(1)  Plaintiff William Burrell JR is currently The victim of An ongoing And Sophisticated Judicially Sanctioned Slave labor And racketeering ring. Certain of defendants Capitolize on And Abuse the civil statute 23 PA. C.S. sec 4345 to Improperly And Illegally Incarcerate child support obligars Alleged to have violated A current child support court order. Defendants ADAMS And Gladdus Are compelling defendants Saxton, Corbett, And Judge Harhut to find child Support defendants guilty whether they Are in contempt or Not. Then Said defendants Fashion Purge conditions That child Support defendants Are unable to meet in violation of 23 P.A. C.S. Sec. 4345 And Pennsylvania Supreme Court CASELAW.

(2)  Then once The civil child Support defendants Are unlawfuly Incarcerated in the lackawanna county Prison, Upon the recommendation of ADAMS And Gladdus to Said Judges, Tom Staff, The lackawanna county Prison recycling center Director Picks up The conspiracy by telling child Support defendants Their only option to get out of Jail early is to work half their Jail sentence in the privately owned lacka- wanna county Recycling center (owned by Luis DeNaples) At Just $5.⁰⁰ per day, before They can be eligible for work release. Staff legally Coerces The child Support obligars to work in The recycling center by leaving

③

Them No choice but staying in prison for The full length of their sentence. Staff Then fabricates a criminal order against The strictly civil defendants, has Judge Saxton, Corbett, or Harhut sign it, And the child support defendants Are Then ordered to work in The dirty, unsanitary, dangerous And harsh conditions of The recycling center for 40 hours per week, sometimes in 105 degree temperatures ˄in some Areas, with No fan or Air conditioning.

③    The new statutorily sanctioned recycling program[15] desguised As community service And is supposed to be for criminal defendants only but defendants, excluding Kathlene Kane, force civil defendants by way of Legal coercion to Work At The recycling center, extorting wage Labor that rightly belongs to The child/children At issue in A defendants Case, but instead certain defendants give The labor To Louis Demples making him Illegally obtained profits And Then making The county Work release program And The prison profit via rent And State Allocated funds for each inmate.

④    The present case before This Honorable Court Stems from 9 seperate Child Support cases Plaintiff had been making weekly payments on via A wage Attachment from Domestic Relations. Plaintiff initially won Primary residency of his daughter At 5 years old And rAised her 10½ years. When She went to Live With her mother At mid 2011 Plaintiff was contacted by Adams regarding A PasT Arrearages Apparently owed to

④

The state

⑤ from before plaintiff got his daughter over
a decade ago when her mother was
apparently on welfare. The 2nd case stems
from when plaintiffs son who plaintiff also
won primary residency of, went to live with
his mother at age 6½ in 2012. Plaintiff
had a serious **eye** condition requiring surgery,
reported it to domestics, complied with their
requests, then went back to work only to
be injured 2 months later.

⑥     Plaintiffs injuries while working at
Penn furniture in Scranton PA. left him bed
ridden for 3 weeks. Despite knowing workers
compensation doctors ordered plaintiff off
work and into physical therapy and that
plaintiff consulted the law offices of Omalley
and Langley, Domestic Relations issued a
notice of a hearing for contempt to an
address plaintiff had never lived at or
recieved mail at. a hearing and a warrant
for plaintiffs arrest was held and carried
out and plaintiff was arrested and taken to
the Lackawanna County Prison. Plaintiffs last
support payment was March 10, 2014 and by April
10, 2014 the warrant was issued.

⑦     Plaintiff was taken from M. son to a
hearing on May 16, 2014. No one was sworn in
plaintiffs case worker Ed Adams wasn't even
present. Despite plaintiff providing proper medical
evidence that I was unable to comply with
the order and despite Richard Gladdus providing
No evidence that plaintiff had the ability
to comply with the order, plaintiff was

⑤

Sentenced To 2 Consecutive 6 month Sentences for Violation of 93 PA. CS sec 4345. Plaintiff was adered to Immediate work release, 1 year probation, with a purge Amount of $7033.00 or a lesser Amount if Domestic Relations Agrees, And/or a wage Attachment.

⑧   After Plaintiff was Taken in Shack To the Lackawanna County Prison, Plaintiff learned After speaking with The prison counselor, multiple similarly situated inmates, That Plaintiff had been sucked into A sentencing frenzy as part of A conspiracy to Sentence As many Citizens As possible in order to Supply Slave labor To A Non statutorily Sanctioned recycling center And work release program in order to make money for The County prison And Louis Demaples who owns the recycling center. At Present All similarly situate inmates As Plaintiff Are Too Afraid to expose The slave labor ring for fear of the Power And influence of Louis Demaples And the Alleged Corruption of Lackawanna County.

### Jurisdiction

⑨   Jurisdiction is properly befer This Honorable court V.A 28 U.S.C. sec. 1332, 1343

### Subject matter Jurisdiction

⑩   Subject matter Jurisdiction is properly before This Honorable Court V.A 28 U.S.C. sec. 1337.

### Venue

⑪   Venue is properly before This Honorable Court pursuant to 28 U.S.C sec 1391 And Supplemental Jurisdiction pursuant To 28 U.S.C sec 1367.

⑥

## Parties To The Action

(12) Patric Loungo is At All times relevant To This Action And is The director of the Lackawanna County Domestic Relations Agency.

(13) Ed Adams is At All Times relevant to this Action And is A child support collections and enforcement officer for Lackawanna County Domestic Relations.

(14) Richard Gladdus is At All times relevant To This Action And is An Acting official for Lackawanna County's Domestic Relations.

(15) Richard Saxton is At All times relevant To This Action And is An Acting sitting Judge for The Lackawanna County family Court.

(16) Trish Corbett is At All times relevant To This Action And is An Acting Judge for The Lackawanna County family Court.

(17) Robert McMillan ^And Lackawanna county prison Board Are At All times relevant To This Action And Are Acting Warden ^Board for The Lackawanna County Prison.

(18) Tom Staff is At All times relevant To this Action And is The Acting director of The recycling program for The Lackawanna County Prison.

(19) Brian Jeffers ^And Jack McPhillips Are Acting director ^And C.O. Not The Lackawanna County Work release program.

(20) John Craig ^And Todd Frick Are At All times relevant To this Action And is The Supervising on site Corrections

⑦

officers At The LACKAWANNA County Recycling
Center on behalf of LACKAWANNA County
Work Release.

21) L●is DeNAPles is At All Times relevant To
This Action AnD is The owner of The
LACKAWANNA County Recycling Center business.

22) KATHLENE KANE is relevant to This Action
in her official cApacity only AS Acting
Attorney General for The STATE of Pennsylvania.

## STATEment of FAcTs

23) Plaintiff repeAts AnD re Alleges the facts Above
AnD further stAtes That from the time PlAintiff
WAS incArcerated on MAy 14, 2014 Plaintiff has
suffered Severe emotional distress cAusing his
blood Pressure To rise AS high AS 170/110 AnD
needing to be plAced permenAntly on blood pressure
medicine.

24) On or About 5 dAys After being incArcerated
PlAintiff wAS Approached by Tom STAff the
director of The LAckAwAnnA County Prison
recycling program, STAff tolD PlAintiff if he wAnted
work releAse wich coulD lead To getting out of
Prison eArly PlAintiff must first work in A
recycling center for 6 months, which is half of
PlAintiff's Sentence, At A PAy rAte of $5.⁰⁰ per dAy.

25) STAff tolD PlAintiff That the Judges order sAid
Plaintiff must first QUALify for work releAse.
PlAintiff responded sAying that Judge SAxton ordered
PlAintiff To Immediate work Release not recycling.

⑧

26.

(26) AT That point sTAff showed Plaintiff pArT of the judges order which sTATed, "Defendant Also ordered to Immediate work release if he QUAlifies". Staff Then Informed Plaintiff that The STAtement "If he QUALifies" meant PlAintiff must first work for 6 months in The recycling center At $5.00 per day And that would QUAlify Plaintiff for Immediate work releASe which can lead to A fASter releASe dAte if plAintiff gets A Job And pAys off his purge Amount owed.

(27) Plaintiff, STunned by what STAff wAs sAying, explained to STAff That he believed the STAtement "If he QUAlifies" to mean "If PlAintiff's prior work relAted inJuries don't prevent him from working Anywhere," As That wAs A mAin sUbject of PlAintiff's Child support heAring.

(28) STAff Told PlAintiff he did Not Agree with PlAintiff And That PlAintiff wAs welcome to write The Judge but "Child sUpport prisoners Always go through recycling for half their sentence At A pAy of $5.00 per day before They can be eligible for work releAse"

(29) PlAintiff responded "Surely you mean $50.00 per dAy Like those who work off Court costs And fines Right? How Am I supposed to work off my Purge At $5.00 per dAy?"

(30) STAff responded "it is the Prison Policy

(9)

that child support prisoners get paid $5.00 per day in recycling And work half their sentence in recycling And the other half in work release unless they purge out sooner. Only those prisoners who pay court costs And fines can get paid $50.00 per day working in recycling.

31. Plaintiff was devastated to the core upon hearing staff's explanation of Lackawanna County Prison Policy regarding recycling And Work release. Realising there was no other option at that moment to get out of Prison early And having no way to pay the $7003.00, under great duress, Plaintiff submitted to the recycling program but told staff he would also contact the Judge for clarification.

32. Plaintiff indeed wrote Judge Saxton asking in a "motion for clarification", for the court to clarify that the court intended Plaintiff for immediate work release, As the word "immediate" did not coincide with 6 months of prior working in A garbage recycling center at $5.00 per day.

33. Simultaneous to Plaintiffs motion for clarification staff Also petitioned the court for Plaintiff to go on the recycling program for 6 months at $5 per day prior to going into the work release program.

(10)

(34) four days After Plaintiff And Tom Staff filed opposing motions with the court, Plaintiff filed A grievance over the matter And submitted A notice of intent to sue to Kate Gavin, the Prison Counselor, who Plaintiff then explained the matter to.

(35) Plaintiff explained to Kate Gavin That he believes As A civil And not Criminal defendant, making Plaintiff go through recycling Amounted to "Slave labor" As written in the notice of intent to sue And That Plaintiff believed The Program was meant only for criminal defendants.

(36) Upon recieving Plaintiff's notice of intent to sue Gavin then called Domestic Relations And Ed Adams from Domestic Relations Returned Gavins call.

(37) Ed Adams Informed Kate Gavin that he "wanted Plaintiff to first go through The reexcling program" before work release".

(38) Kate Gavin explained to Adams That Plaintiff had filed A motion opposing his participation in recycling to which Adams replied "I know I saw that but the Judge Always leaves it up to us."

(39) After Kate Gavin And Ed Adams Phone conversation Plaintiff Asked Gavin

(11)

"how is This happening, how can They do this?
Gavin responded, "If Louis DeNaples calls
up and says I need more workers for the
recycling center, Tom Staff is under pressure
to fill those spots."

40. Kate Gavin then stated to Plaintiff, "I
never knew how much corruption was in
This system until I started working here."

41. The Lackawanna County recycling center is a
dirty, nasty, and demoralizing Job for prisoners
to work on the soda line and the
position of upper magnet.

42. It is common for prisoners working on the
soda line and upper magnet at the
recycling center to get fecal matter, vomit,
rotten rancid Juices and other toxic matter
all over them while sorting through the
bags of garbage and separating the
recycling materials.

43. The Lackawanna County Recycling center
loses on average 5 prison workers
every week, sometimes 7 and not only is
there an extremely high turnover rate
but Tom Staff struggles to keep 25
prisoners working there at all times which
is the optimum number preferred.

44. It is well known among Lackawanna
County Prisoners That Tom Staff rules

(12)

with An Iron fist when it comes To transferring prisoners to recycling. If staff wants A prisoner on recycling prisoners know, the Judges at family court alway grant his request even over objections, And no one in work release Administration will challange him even if A prisoner was ordered to Immediate work release.

(45) Sure enough on May 22, 2014, the court sided with Tom staff's petition over Plaintiff's Objection and Judge Corbett Signed an order for Judge Saxton, ordering Plaintiff to the Luckawanna county Community Service program, which staff explained to Plaintiff is working at the Lackawanna county Recycling ProgrAm.

(46) Prior to Plaintiff's May 23, 2014 discussion with Kate Gavin, Plaintiff filed 1 written request for a copy of his court orders And AAter filed A grievance for not receiving the court orders in A timely manner for Appellate And reconsideration purposes.

(47) Plaintiff finally Got A copy of one of his two orders from the court 7 days After his sentencing even though the day Plaintiff was sentenced, The prison had it.

(48) To this DAY Plaintiff has not Gotten A response to his Grievance over

(13)

Tom staff forcing Plaintiff to go
through the recycling program.

(49) The Lackawanna County Prison routinely as policy
or custom and practice, withholds all court
sentencing orders from prisoners and
only provides them when vigorously
requested via grievance.

(50) The Lackawanna County Prison charges
prisoners for copies of their court
sentencing orders whether they are
indigent or not, his account will go
negative if no funds are in there

(51) Defendant Saxton unlawfully found Plaintiff
in willfull civil Contempt of a Child Support
order in violation of 23 Pa. CS Sec. 4345

(52) Upon Information and belief, it was
Richard Gladdus who actually drafted
up the Court's sentencing orders for
Judge Saxton to sign.

(53) In The Case of Kristian Smith V. William
Burrell JR No: 13-DR-543 Plaintiff's
Sentencing order States: "Order of Court" "Now
this 16TH Day of May, 2014 After a contempt
hearing before the Honorable Judge Richard
Saxton, And based upon the evidence presented,
the Court finds That The defendant has the
Ability to Pay. It is hereby ordered And
directed That The defendant in The Above entitled

(14)

Support Action is hereby remanded to the Lackawanna County Prison for A period Not To exceed six months or until further order of Court. It is further ordered And directed that The defendant shall be RELEASED from the Lackawanna County Prison upon payment of $2129.43 or A lesser Amount if agreeable by The Domestic Officer And/or a wage Attachment. IT is also Ordered And Directed That The defendant is placed on probation for A period of one year to be Supervised by The Lackawanna County Domestic Relations Section. It is Also Ordered And directed That 2 Sentences run Consecutively, 1 year, total purge $7033.00. Def Also ordered to Immediate Work release If he Qualifies. (see pl ex "A")

54) In The CASE of Colleen Morse Vs. William Burrell JR. CASE NO 11-DR-957 Plaintiff's Sentencing order says the exact same thing except in The Spot where it says $2189.43 for Kristian Smith, it says $4904.79 for Morse.

55) On May 28, 2014 Plaintiff began his first day of work At The Lackawanna County Recycling Center, After Which Tom Staff had A Copy of 2 Court orders for Plaintiff And some papers To Sign.

56) Tom Staff gave Plaintiff A Copy of his Sentencing order for Colleen Morse V. William

(15)

Burrell, This being 12 days After plaintiff
was incarcerated. And requested it.

(57) On May 28, 2014 Tom Staff Also gave Plaintiff
A copy of a <u>CRIMINAL</u> court order transferring
plaintiff into the Lackawanna County Prison
Community service program. The court order
stated As follows. " Commonwealth of Pennsylvania
V. William Burrell, In The court of common
Pleas Criminal Division County of Lackawanna
Number: 11-CR-957, 13 CR543. ORDER.

(58) The May 22, 2014 order stated in part.
AND NOW, this 22nd day of May, 2014
IT IS HEREBY ORDERED that the Above
named individual, presently incarcerated in
The Lackawanna County Prison is transferred
to the Lackawanna County Prison Community
Service program. (59) The May 22, 2014 order stated in part. This inmate will be residing
in Lackawanna County Prison while
participating in the program. Violation of
Program rules will result in Termination from
The program and return to the prison
population. (60) The May 22, 2014 order stated in part. IT IS FURTHER ORDERED that
the Above named inmate is to be granted
Work release/house Arrest status on 11/11/14
contingent upon positive work ethics and
successful completion of the community
Service Program. Violation of Any rules or
regulations will result in removal from the
Above programs and return to Lackawanna
County Prison.

(61) The May 22, 2014 order also stated in part:
"Pursuant to #61 P.S. Section 2141, If the

(16)

Above named fails to Abide by All ~~the~~
Conditions set forth by the community
service/work release/house Arrest programs or
fails to return to official Detention, a Bench
Warrant will be issued for his Arrest
And Escape Felony Charges will be filed.
This Order will serve As A temporary
Bench Warrant until Formal Charges for
Escape are filed by the County District
Attorney's office. By the COURT, Corbett
for Saxton".

(62) When Tom Staff gave Plaintiff A copy
of the may 28, 2014 order transfering
Plaintiff to the Community service program
Plaintiff, A civil defendant And not A
Criminal defendant Could see Immediately
That Staff had Completely fabricated A fictitious
Criminal order Against plaintiff As Plaintiff
has No Case Against him entitled
Commonwealth of Pennsylvania V. William
Burrell from the criminal division of
the Court of common Pleas.

(63) Since may 28, 2014 Plaintiff has been Legally
coerced via the use of Legal process, The
Threat of use of Legal process, And the
Threat of Legal Physical restraint in order
to compel Plaintiff to work in the
Privately owned recycling center owned by
Luis DeNaples.

(64) Since may 28, 2014 Plaintiff has been

(17)

Legally coerced into labor at the Lackawanna County recycling center owned by Luis Denapples for 40 hours, 5 days per week.

(65) Some of the conditions at the Lackawanna County recycling center are completely deplorable and harsh to work in. None of the stand up urinals work (use) and only 2 of the 3 toilets in the stalls work properly and they are all so disgusting and ~~phy~~ filthy it is not sanitary to sit on them.

(66) Despite being given a short sleeve shirt, pants, gloves, boots, and safety goggles, the uniform, boots, and gloves are not sufficient protection against the hazards encountered by plaintiff and other prisoners while working at the recycling center.

(67) As a result of picking through garbage, fecal matter, vomit, rancid juices, and at times other toxic materials get on plaintiffs arms creating something prisoners call "Trash Rash" which is an extremely itchy burning rash on the exposed arms that lasts all during the work week and fades away on the weekends while plaintiff does not work.

(68) On a daily basis while being forced to work at the recycling center plaintiff and other prisoners have glass that

(18)

smashes coming off the conveyor belt
And splinters in the face And All over
Plaintiffs Arms. these tiny peices of
glass get lodged in the skin And
when one wipes Away sweat the
glass leaves Tiny cuts in the skin.

(69) The boots given to work At the recycling
center Are used And badly worn. MANy
have holes in Them And mAny inmates
have cut Their feet through their boots.

(70) The Gloves provided At the recycling center
Are not water resistant nor glass
resistant And mAny inmates including
this plAintiff have been cut by glass
through the gloves while working At
the recycling center.

(71) Within A week and half of starting^ Plaintiff had
out performed everyone on the soda line
And got promoted to Brown Glass And
Then to the milk line At the Recycling
Center.

(72) Within 3 weeks of working At The recycling
Center Plaintiff had proven himself to be
A trusted worker, A non smoker disinterested
in nay type of contrabAnd And out
performing every worker in The sodA Room, so
PlAintiff wAs promoted to the 2nd highest
position of responsibility in The center, the
upper mAgnet.

(19)

(73). While working The upper magnet At the recycling center the heat was so unbearable Plaintiff Asked C.O. John Craig if he could have A fan. Craig told Plaintiff he is Aware that At times it gets To be As hot As 105 degrees up There but said A fan may trip A breaker And he wasn't sure how to reset it if that happened And Thus left Plaintiff And another worker to Labor on in extreme temperatures.

(74) Before Plaintiff was promoted To upper magnet At the recycling center, since he was eager to be promoted To what he thought was An easier position that had to be earned Plaintiff Asked Tom Staff one day if C.O. John Craig keeps him informed of inmates progress.

(75) Staff Stated to Plaintiff "As A matter of fact John Does keep me informed of inmates Progress. I want you to know I've been doing this Job for 8 years. I Think if there was Anything unconstitutional About the recycling program that someone would have mentioned it by now. So it's very upsetting when I get A call from John And he tells me you Are saying the program violates your rights And is unconstitutional." Plaintiff, Feeling highly intimidated, Apologized And left the C.O. office (Bubble).

(20)

76) The conversation between STAFF And Plaintiff in Averment 75 WAS A result of A previous Conversation during A bus ride from the recycling center to the Prison between C.O. John Craig And Plaintiff. Craig seemed interested in Plaintiffs Story After Learning Plaintiff had no criminal record and in the Course of conversation Plaintiff Amicably expressed his opinion that he felt the program violated Plaintiff's 13th Amendment And EQUAL protection rights.

77) Upon hearing Plaintiffs Story And belief that he felt the 13th Amendment And EQUAL protection clause were being violated John Craig mocked Plaintiff SAYing "hey maybe you have a land mark CASE on your hands".

78) When inmates on the recycling Program awake during the week they eat breakfAST At 5:30 A.M. They Go to work, got A 15 minute break at 10 A.M. And Another break for Lunch where they eat A hoagie and A handful of potatoe chips And A soda And don't eat AgAin until roughly 5 pm.

79) The Amount of Calories Plaintiff gets for food is Not enough to Sustain Plaintiff And other inmates during the day due to the extremely physically demanding duties At the recycling Center.

(21)

(80) On occaision, if one of the recyclers leave a glove or another Item in the breakroom or if the soda line does not do a good enough job, [All] inmates have their potatoe chips taken away from them during lunch, by John Craig.

(81) If an inmate Accidentally forgets to put his window up on the bus while traveling to the recycling Center, John Craig forces all inmates on the bus to ride with All the windows up in Sweltering heat After the bus has been sitting in the sun all day And inmates have Already worked 8 hrs in Sweltering hot conditions while Craig And the bus driver Are up front with the Air conditioner And the bus drivers window open.

(82) It is the routine, custom, And practice When the line is down, the compactor is full, or there is no trash to seperate, for John Craig to leave As many As 200 more recyclers in A small 12×24 foot room on hard benches for the entire day.

(83) After every day working At recycling Plaintiff is forced to be humiliated And degraded by going through A full strip search where Plaintiff must strip naked in front of officers. Lift his testicals, open mouth, turn around And bend over And spread his buttocks open And cough, then show the bottoms of his feet. This has Already occured over 25 times.

(22)

(84) It is a fact that if plaintiff did not owe A debt of child support to a private citizen Plaintiff would not be working in the Lackawanna County recycling center And subject to strip searches.

(85) At some point on or About May 28, 2014 when plaintiff WAS Legally coerced into recycling, plaintiff wrote Louis Denaples And told him what happened to plaintiff.

(86) Louis Denaples Is a well known business man said to be A billionare with ties to the mafia. In The book "Quiet Don" it is Alleged that Mafia Boss Russell Buffalino's Rosery WAS given to Denaples. Upon information and belief, Denaples has put Judges in office, built the Dunmore Police department, the New part of Lackawanna County prison, owns the prison pay phone company, the Recycling Center, bought motor cycles And cruisers for Scranton police department, And has more political power And influence over government officials than Anyone in PA. And the eastern part of the United States.

(87) Upon sending Louis Denaples A letter telling him All that happened to Plaintiff Denaples promptly sent plaintiff A letter offering him a Job At Denaples Keystone Landfill upon his release from prison.

(88) Plaintiff then wrote Denaples A 2nd letter thanking him for the Job, Alerting him to wrong activity taking place between the prison And Recycling, and sending him caselaw proving plaintiff WAS Illegally incarcerated by defendants and That plaintiff WAS A civil not A criminal defendant.

(23)

89. the privately owned mandatory recycling center is not statuorily sanctioned under 23 P.a. C.S. Sec. 4345 for civil offenders accused of contempt of a child support order.

90. The recycling program at Lackawanna County Prison extorts wage labor for the Denaples recycling center essentially stealing the labor that rightfully belongs to the custodial parent of children in child support cases, making parent of the child wait the length of a 6 month sentence, or in Plaintiff's case longer, before the ~~child~~ parent can recieve support again.

91. In the 8 years that Tom Staff has been the Director of the Lackawanna County Recycling Program, at a bare minimum Staff has saved the recycling business over #2,784,000 in minimum wage labor that Denaples hasn't had to pay. This doesn't even factor in employment taxes or the fact that few if any people would even perform the job for minimum wage, nor does it factor in the profit that the recyclers have earned the recycling center.

92. Plaintiff is unsure if any kind of taxes are even being paid on the wages paid to recyclers at the recycling center.

93. During the first 3 weeks Plaintiff worked

(24)

At the recycling center plaintiff was forced
to work in An extremely hostile work
environment with Graphic pornographic
pictures posted on The walls on both
sides of The Soda Line.

(94) During a Disagreement with inmate Medina
C.O. John Craig made him take his
pornographic pictures down but stood
2 feet in front of Inmate wannamakers
And other pornographic pictures on
numerous occaisions Allowing them to
stay up for days. even weeks walking
by them daily.

(95) Plaintiff wanted to complain About the
reprehensible pornographic pictures plastered
on The walls of the Soda room At the
recycling center but felt he would be in
trouble AS Tom STAFF had Already Scolded
Plaintiff for complaining That The program
Violated his rights. AS A result plaintiffs
1ST. Amendment rights were Chilled And
Plaintiff was forced to endure seeing the
pictures plastered on The walls Right in
front of where plaintiff had to face
for 3 weeks until plaintiff was
promoted out of the room.

(96) In fact The hostile work environment was
tolerated And Promoted At The recycling Center
because John Craig kept his own stack of
Pornographic magazines that he looked At

(25)

in the office with him while inmates
were working And THAT'S one of the
reasons inmates were told to knock
before coming in to ASK to use the
bathroom. PlAintiff SAW the SAme STACKS
of pornographic mAGAZINES STAY in The
office for several dAYS.

(97) (96) During A bus ride John CrAig told PlAintiff
that recycling is A pArt of the work release
program originally designed for inmates who
have not worked in AtleAst 6 months to A
year or more. To AcclAmAte them back
into the working Life AS they Are Supposed
to do 2 months on recycling, 2 months on
work releAse, And 2 months on house
Arrest.

(98) (97) Unfortunately the LackawannA county recycling
And work release/house Arrest program has
shifted from rehabilitAtive purposes to
TRAsh for CASH And Incarceration for
CASH much Like the kids for CASH
ScAndAl in Lucern County AS Civil
Child support defendAnts Are being unlawfully
herded into these programs After being out
of work Just 2 weeks, sometimes only
missing 1, 2, 3, or 4 pAYments before
being incArcerAted for CASH.

(99) (98) Conspicuously only men Are forced to
do the recycling program And not women
inmates. Even though the work releASe

(26)

Program Allows inmates to work coed
jobs. The prison Discriminates against men
and only forces men to work in the
dirty grimey environment, "mountain crew" not
Recycling, is the real community service program.

(100) (97) The scheme that Loungo, Gladdus, Adams, Saxton
Corbett, staff have working against child
support defendants is so smooth and well
oiled, by the time they get to prison
many are actually thankfull they are put
into recycling as it relieves some of the
shock and trauma and they see it as
their ticket out of jail early making
them eligible for work release early
or half way through their sentence.

(101) (98) What the majority of child support
obligors are dooped into overlooking is
that the court and Domestics Relations
put them in prison Illegally with no
Criminal Safegards even when they
Clearly didn't have the Ability to
Pay their purge amount, thus they shouldn't
even be in Jail in the first place.

(102) (99) Plaintiff is part of a class of Citizens
found in Civil Contempt for failure to
Pay child support pursuant to 23Pa.c.s.
sec. 4345

(103) (100) Plaintiff is also part of a class of citizens who are
Innocent and have earnestly been Paying child
support, but when Circumstances beyond their

(97)

Control prohibit them from complying with their court order they Are Immediately sucked up into A sentencing frenzy by A rogue family court bent on finding guilt whether it exists or not.

(104) Plaintiff filed an objection with the court to the May 09, 2014 order transferring Plaintiff to the recycling program, telling Judge Saxton it Violated the 13th Amendment rights and equal protection rights of Plaintiff, extorts wage labor meant for the child, And wasn't even in conformity with the rules for caption civil procedure. The court to date has never responded to plaintiffs objection, his motion for reconsideration, request for Clarification Immediate release. Nothing.

(105) Plaintiff filed A notice of intent to sue with Patrick Loungo the Director of Lackawanna County Domestic Relations.

(106) In Plaintiff's Notice to Loungo Plaintiff Asked him to read the case of Crystal Orfield V. Charles Weindel 2012 P.a. super 135; 52 A.3d.275; 2012 Pa. Super. Lexis 1062.

(107) In Plaintiff's Notice of Intent to sue to Patrick Loungo, Plaintiff stated "You Are responsible for A custom, policy and practice that you are Allowing to be

(28)

carried out..." This policy is most vigorously carried out by Ed Adams and Richard Gladdus. What Gladdus and Adams are doing is compelling Judges to fashion purge conditions that child support defendants are unable to meet in violation of PA Supreme Court caselaw, with no evidence or criminal safeguards.

(108) The notice to Loungo further states: "Then once defendants who are only in civil contempt are placed into prison, Adams and Gladdus work with Tom Staff (as Gladdus writes the orders for Staff to follow) and the family court Judges to ensure that all or as many child support defendants as possible work half their sentence in recycling, before work release in order to make money for the recycling center and work release program.

(109) Plaintiff explained to Loungo that the recycling program was for criminal and not civil defendants and that Domestics by way of legal coercion in concert with prison officials was forcing civil defendants through recycling in violation of the 13th Amendment to the United States Constitution.

(109) Said slave labor policy targets those unrepresented by attorneys, the legally illiterate, or any represented party the Defendants can bully into being a victim of the conspiracy.

(29)

(110) Defendant Loungo, Adams, Gladdus, Saxton, Corbett do not care if Child Support obligas have legitamate reasons that make them NOT in willfull contempt despite missing a payment.

(111) Despite having numerous doctors orders not to work after open heart surgery, Judge Saxton Allegedly Incarcerated Christopher Capone Ignoring the Orders of Capone's Cardiologist. Saxton found Capone Able to work and comply with his support order even though the doctors said he was not fit to work. Capone was found in contempt anyway.

(112) While in Lackawanna County Prison Capone had a stroke and collapsed in the recycling center. Despite the stroke Capone was ordered back to work in the recycling center.

(113) Christopher Capone Allegedly had a second stroke in Lackawanna County prison and was finally taken off the recycling program but remains incarcerated despite his inability to comply with his order to pay Child Support.

(114) Jason Cotter, while incarcerated for another charge was still held in contempt for non payment of Child Support during the time he was in prison.

(115) The Amount of Citizens being forced into Peonage and Slave labor is too numerous for Plaintiff to List but some are as follows:

(30)

PAUL VALENTA, owes $5,910.00 sentenced to 6 months, forced to do 3 months in recycling. Stephen B Moore, 6 months or $500 or recycling for 3 months.

(116) WAYNE Thiede had LAW enforcement And Domestics "kick down his door, come in with children And youth services who took his 3 children into custody because he owes $1800.00 to his 4th childs mother. Thiede was sentenced to 6 months And is forced to do 3 months in recycling. Despite the fact that Thiede's children have A hearing to go into foster care the prison refuses to transport Thiede to the hearing.

(117) Mike Barber did 8 years in IRAQ and AfGANistAN while serving in the U.S. military. He came home on medication with ptsd. He owes $1700, 6 months incarceration by Judge SAXTON, forced to do 3 months on recycling.

(118) Art Harris spent 7 years incarcerated for A criminal charge. 30 days After his release he was Arrested for failure to pay child support. Despite 3 children on one case he was given 18 months incarceration And ordered to pay the entire $1,000.00 Or do 9 months recycling before work release.

(119) John SteinRuck owes $6,500.00 in child

(31)

(128) Support Arrears. His worker Susan roach told him $1,500.00 would Avoid prison. His son And cousin showed up with the $1500.00 but At the hearing Gladdus raised the Amount to $3000.00. When his son And cousin returned later with $3000.00 they were kicked out of the court room.

(120) Domestic Relations worker Susan Roche Allegedly furious that Gladdus went over her head, went down to the court on behalf of SteinRuck to speak to the Judge to no Avail. Susan Roche is Allegedly now fighting Against Tom Staff And Richard Gladdus to get SteinRuck out of Recycling And into Work release.

(121) Despite being bedridden for 3 weeks, Providing workers compensation doctors orders to stay out of work And into physical therapy, this plaintiff was still found in contempt, despite being indigent with no Assets And unable to comply with the court order or purge Amount.

(122) This Plaintiff And All of the other child support defendants mentioned Above had kangaroo court hearings with no criminal safeguards, unable to call witnesses, enter evidence. All were given Punitive instead of coercive sentences at hearings lasting no longer than 5 minutes,

(32)

(123) Defendants Loungo, Gladdus, Adams, Saxton, And Corbett Show A clear pattern of Abuse of 23 Pa. Cs. Sec. 4345 And other Legal processes in order to Obtain Slave Labor And force child support Obligers into peonage.

(124) upon information And belief Defendant Ed Adams or Richard Gladdus Falsified A warrant request form falsely Swearing that this Plaintiff was given proper notice of A contempt hearing.

(125) the 2 officers that Arrested Plaintiff flashed Some Paperwork they said was A warrant for Plaintiff's Arrest signed by Judge Corbett And Arrested Plaintiff

(126) Roughly 1½ years Ago plaintiff Sued Judge Corbett on A matter unrelated to Child Support And Plaintiff was interviewed by 2 different news stations inter Alia regarding the lawsuit And Alleged corruption on the part of Corbett. Both interviews were Aired on the local evening news

(127) Defendant Corbett was well Aware of the lawsuit filed by Plaintiff Against her. And Plaintiff And Corbett Argued About it And She was not happy.

(128) Instead of recusing herself, upon information And belief Corbett Presided over Plaintiff's Child Support hearing in retaliation for

(33)

for plaintiff exercising his 1st Amendment
rights and suing Corbett. Corbett further
retaliated against plaintiff by signing
a warrant for plaintiffs arrest and
signing a fabricated criminal court
order against plaintiff transferring
plaintiff to the recycling center, for staff.

(129) The Lackawanna County family court has
had allegations of corruption against it for
a long time but so far nothing seems to
have been done about it.

(130) A new study in the May/June issue of
Public Administration Review entitled "The
Impact of Public Officials Corruption on
Size and Allocation of U.S. State
Spending" Ranks Pennsylvania the 5th most
corrupt state in the nation.

(131) A recent audit of Lackawanna County
Government by former FBI Agent James
Seidel allegedly revealed numerous areas
of corruption. Two of those areas
were the Lackawanna County Prison and
the Lackawanna County recycling center.

(132) Many child support inmates believe, Corbett,
Defendant Loungo, Gladdus, Adams, (Judge
Harhut not a defendant) Saxton, and Tom
Staff are recieving Kick backs to
to funnel child support defendants into
Lackawanna County Prison in order to generate

(34)

money for the work release and privately owned recycling center, as well as the house arrest program and state Allocated funding for each inmate.

132(A.)   In fact in the current law suit between Lackawanna county controller Gary Dibileo vs. County commissioners, Judge Saxton Appears to be <u>Stonewalling</u> And <u>Obstructing</u> dibileo's <u>Clear right to Access</u> the Employee time keeping system through the kronos system so Dibileo Can do A <u>full and complete Audit</u>. Saxton, Knowing former FBI Agent Seibel found Areas of Corruption in county government (Allegedly), one being the prison And recycling Center, is calling the suit "silly" And that "we Are spending Alot of time And money", urged the commissioners to resolve it out of court instead of following the law And ordering Dibileo have Access.

(133) As a result of Defendant McMillan And Longo Ignoring letters And grievances of intent to sue, said defendants have Authorized A policy or given tacit approval to the forcing of plaintiff via physical And legal coercion into <u>peonage</u> And involuntary Servitude by defendants Adams, Gladys, Saxton, Corbett, Staff, Craig, And DenAples consented to it Also.

(134)   As A result of the Judicially sanctioned racketeering, extortion, And slave labor ring, Plaintiff was denied the care, custody, And control of his beloved 8 year old Son who he is very close with.

(135) Defendants Gladys, Longo, Adams, Saxton, Corbett, Staff, McMillan, Craig, And DenAples, have all Violated the Criminal statute 18 U.S.C.S. sec. 1581 As explained in U.S. v. Mussry et. Al., 726 F.2d 1448; 1984 U.S. App Lexis 24959, And 18 U.S.C.S. sec. 1589(A). DenAples has Also Violated Sec. (B) of 18 U.S.C.S sec. 1589.

(136) It is proper that Plaintiff pay child support but Plaintiff can't pay it or purge out while forced to work At $5 per day,

(35)

in a garbage recycling center making money for the private billianare owner instead of the person The child support is owet to.

(137) There Are numerous safety violations in the Lackawanna county recycling center. Inmates Haines, Valenta, And lopez (Brian Hains) have all fallen through holes in the bottle cages. Brian Haines hurt his ankle and was out for several days. Lopez was also hurt.

(138) Gabriel Martinez lopez has trash rash so bad from The LCP Recycling center It spread all over his body. He also sliced up his shin when he fell through the cage and needed medical Attention.

(139) Inmate Kenny Nichols was cut in the face by a piece of glass, needing stitches and as a result was sent home. Inmate Valenta also sliced his hand open right Through the completely inAdequate gloves.

(140) During a bus ride home from LCP Recycling center Plaintiff Asked John craig how much money per hour a person should Actually be paid to do what Plaintiff and other Prison recyclers do saying $25.00 per hour? Craig paused, looked out the window, shook his head and solemnly said, "there is no Amount of money worth doing what you guys do".

(36)

(141) Upon information and belief the Lackawanna County Family Court has misused 23 P.A. C.S. 4345 hundreds of times improperly converting coercive sentences into punitive sentences with no criminal safeguards. Defendants Saxton and Corbett have been purposely handing defendants Lounge, Adams, and Gladdus, Staff, McMillan and DeNaples favorable rulings, violating hundreds possibly even thousands of litigants rights.

(142) Certain Judges in Lackawanna County and it's sister county Lucern County are particularly crafty and cunning and have found ways to abuse the legal process to incarcerate for cash profiting the counties and private citizens as seen in the nationally recognized kids for cash scheme of Lucerne County P.A.

(143) All Defendants except for Kane, are taking advantage of the fact that the law defendants prosecute civil contempt under 23 P.A. C.S. 4345, has a desperate impact on the poor and discriminates against the poor in violation of the equal protection clause. And the 12th amendment.

(144) The wealthy can purge themselves out from underneath the peonage of/imposed on defendants under 23 P.A. C.S. 4345 but

(37)

but the poor cannot and thus languish
year after year in prison as Necessitous
Victims coerced into Involuntary Servitude
at the Lackawanna County Prison Recycling
Center in violation of the 13th.
Amendment and Anti-Peonage laws.

(145) 23 P.a.C.S. 4345 is not only
unconstitutional on its face but it and
it's predecessors like section 9 of the
Civil procedure Support law Act of July 13,
1953, PL 431 have been improperly Applied
so as to deny constitutional rights to
Due Process, 13th Amendment rights and
more, since Atleast Barret V. Barret as
Quoted in Murace V. Pituski, 470 Pa.
269; 368 A.2d 624; 1977 Pa Lexis 524, 36½ yrs.

(146) Plaintiff specifically sent Defendant
Loungo, Saxton, Corbett, Gladdus, And Adams
The case of Orfield V. Wendel, 2012 PA.
Super 135; 52 A.3d 275; 2012 P.a. Super. Lexis
1062, Not only so they could see the
P.A Supreme Courts Case law on
improperly Setting purge conditions that
Litigants can't meet, but Also so they
could read the Concurring opinion that
clearly delineates between Civil and
Criminal defendants so they would
know Plaintiff was a Civil defendant.

(147) At Plaintiff's hearing he was not told he was
entitled to A lawyer or that one could be

(38)

Provided if he wished And Plaintiff didn't
Know he had the right to A Lawyer in
A Civil Child Support hearing.

(148) At Plaintiff's hearing he doesn't
remember being Sworn in, he was not given
the right to prepare, call witnesses, cross
examine witnesses, review evidence Against
him And the Judge refused to even look
At Plaintiff's Doctors orders ordering Plaintiff
off work And into physical therapy
during the time Plaintiff was Alleged
to have been in contempt.

(149) Defendant STAff Acknowledged Plaintiff's
STATus As A civil defendant And Not
A Criminal defendant when discussing
Whether the recycling program Violated the
13TH Amendment, responding "Recycling is A
Volunteer program", but STAff ignored the
physical restraint And Legal Coercion
of the may 22, 2014 order mentioned Above
Which was Plaintiff's Only Alternative
to recycling.

(150) There is No rehabilitative or therapeutic
purpose for Plaintiff to work in extreme
temperatures, with glass Cutting him daily,
fecal matter And rancid Juices splattered
on him daily At the Lackawanna County
Prison recycling center, Not to Leave out the
Lack of food And Toilets uncleaned for months.

(151) IN order to get the maximum Amount of

(39)

Slave labor out of Plaintiff, Defendant
Saxton sentenced plaintiff to 2 consecutive
6 month prison terms since plaintiff
has 2 seperate cases despite knowing
he was supposed to run the Sentences
concurrently pursuant to 23 P.A. e.s. 4345
And Barrett v. Barrett 237 PA 590, 352
A.2d 74, 1975 Pa. Super. Lexis 2494 reversed
by 470 P.A. 253, 368 A.2d 616, 1977 P.A. Lexis
520 (1977).

(152) All Defendants except Kane knew or
should have known their actions were
in violation of Circuit Court case law
such as McGarry v. Pallito (2012 CA2)
687 F.3d 505. (2nd cir)

(153) Defendant Kane in her official capacity
is responsible for enforcing 23 P.A. e.s.
4345 and all laws of the common
wealth of Pennsylvania and is responsible
for how the statute is being
applied to citizens and the effect it
is having on constitutional rights.

(154) On 7/22/14 Plaintiff asked Tom Staff
if he could help him get access to
the law library as the prison was going
on a 2nd week with restricted
movement prohibiting Plaintiff from going.

(155) Staff told Plaintiff the computer problems
causing security concerns trump Plaintiff's

(uc)

Constitutional rights to the law library.
Plaintiff responded, "I respect security
concerns but feel the prison should
have had a back up system in place
to which he responded he agrees.

(156) The Computers at LACKAWANNA county
prison have been down since 7/15/14,
coming up and down since causing
visits to be cancelled and law library
among other restrictions, this is
allegedly due to the computer contractor
Quitting.

(157) Burrell responded to STAFF respectfully
That he felt LCP not having a back up
computer system Amounted to negligence
causing Avoidable security concerns and
violating inmates rights to legal/law library.
STAFF got upset saying "you like to think
Alot About people on the outside when
your on the inside well I don't like
you talking like that!" Plaintiff left the
office.

(158) Plaintiff returned a few minutes later
and Apologized to staff asking to
explain. The 9 entered staff's office.
Plaintiff stated, "I mean no disrespect
Or hostility I just thought I had a 1st
Amendment right to express my concerns
over my constitutional rights and when
you yell at me when I do so I

(41)

I feel That chills my constitutional Rights.
Staff responded, "Fuck you And your constitutional
rights, get out of here with your
constitutional rights", As he escorted
Plaintiff out of his office. Staff's voice
was raised And other inmates heard him.

(159) Plaintiff filed A grievance over staff's
7/22/14 comments concerning his
constitutional rights And C.O. Kopa
called Sergeant Capone who told
Plaintiff he has No Authority over Staff
As staff is work Release And Plaintiff
needed to write The Warden. Plaintiff grieved
to The Warden And was simply told "A meeting
was held with mr. Staff regarding your
Accusations".

160. On 9/14/14 work release C.O. Jack mcphillips
denied Plaintiff the right to exercise his
religeous freedoms And Attend church.
mcphillips said he was not Allowing Plaintiff
to Attend church because his name was
in the yellow because he was behind on
his rent to the work release program.

(161) Plaintiff explained to mcphillips That he Just got
on work release After 3 months And 2 days in
recycling, had Already paid $40 towards his
rent from recycling money, And was waiting
for his first pay check The following friday
to make Another rent payment.

(42)

(162) Mcphillips explained to Plaintiff That it is Brian Jeffers Policy That "Any work release prisoners who Are in The yellow for being behind on Their rent Are Not Allowed to Attend Church." Thus **Plaintiff is forced To Pay for his religious freedoms.**

(163) Plaintiff Showed defendant Mcphillips the "Lackawanna County Work Release Center Rules + Regulations", Section 11. Religious Services Section And Told him There was Nothing in That Section saying A work release participant was Not Allowed to Attend church unless they were Paid up on their rent. Mcphillips responded "That is out dated And it's Jeffers Policy".

(164) Knowing Plaintiff was desperate to see his 8yr old son who he hadn't seen in nearly 4 months C.O. Mcphillips Also denied Plaintiff A furlough to Visit his Son.

(165) C.O. Jack Mcphillips stated to Plaintiff That he was denying Plaintiff A furlough with his Son because The residence he would be Visiting doesn't have A Land Line telephone, Plaintiff was behind on his rent, And Plaintiff's Cell phone didn't qualify As A proper contact phone under The rules of work release.

(166) Though The Lackawanna County work release rules say A work release residents rent must be Paid in full before being eligible for A Furlough There is Nothing in The rules or The furlough Application rules and Sign out Sheet That says A Land Line is needed At the furlough Site.



(167) It is A fact That The LACKAWANNA County Work Release Rules + Regulations under secTion 13. Furloughs SAY A resident MUST NOT Leave the furlough Site and This ContradicTs The LCP Furlough APPLICATION + Rules sheets residents need to fill out us hrs prior to A furlough, which STATES A resident CAN Leave the site if given permission by The manAger on duty.

(168) A furlough is No different from A Job Search that work release residents go on in That both require the resident to Leave the Prison for extended periodS of time.

(168) Work Release residentS Are permitted to go on Job Searches with No phone At All AS This Plaintiff did many times before aquiring A Cell phone, Plaintiff And work release residents Are not required to List the Landline phone numbers of the Job sites they Apply for work At And work release hAS No wAy of knowing which Job Site And At what time The residents Are Visiting The site.

(170) The LACKAWANNA County Work Releas Center Rules on Church Services And Furloughs Are inconsistAnt, Contradictory, Arbitrary, And CAPricious making them void And unconstitutionAl.

(171) The LCP rules of work release violate Plaintiffs ConstitutionAl rights to religious freedom And

(44)

Plaintiffs rights to visit his son under the
14th Amendment And Constitute Cruel And
unusual punishment under the 8th Amendment.

172) Plaintiff And All work release participants
Are only given 1½ hours to Attend their
church services And Are forced to leave
in The middle of the service As Plaintiff
must walk to And from service And
services usually last more Than an hour
At every church And thus Plaintiff is
denied the full exercise of his
religious freedoms by Jack Mcphillips
And Brian Jeffers.

173) In fact Plaintiff wrote Jeffas Asking
for relief from the church And furlough
requirements And his requests were
ignored And denied by both Mcphillips
And Jeffers.

174) All members of the Lackawanna County
Prison Board were Put on Notice of
Plaintiff "Notice of Intent to sue" Alleging The
Recycling program Amounted to slave labor
for Plaintiff And other civil child support
defendants but they refused to provide
Plaintiff relief.

175) During A prison board meeting The week of
9/22/14 Every member of the prison board
was Asked "who owns the recycling Center"
And Not one of them could Answer because
They were either claiming they didn't know

(45)

Or they knew And didn't want to say, so they All Agreed they would have to "Look into it".

(176) All members of the Lackawanna County Prison board either know Louis DeNaples personally or know of his ownership of the Lackawanna County recycling center And At A minimum have A duty to know who owns the recycling center And exactly what the Prisons relationship with the recycling center is.

(177) All members of the Lackawanna County Prison board know or should know whether Louis DeNaples owns the Inmate phones in the Prison, yet Like the recycling center they claimed they did Not know when Asked during the meeting of the week of 9/08/14.

(178) All members of the Lackawanna County Prison board know or should know that Louis DeNaples was Arrested And charged with purgery for lying About ties to organized crime mafia Boss Russell Buffeling, yet the Board which includes Head District Attorney Andrew JArbola and the Lackawanna County Sherriff, still themselves Allow the Prison to have ties And do business with DeNaples.

(179) It is Alleged by many in Lackawanna County that District Attorney Andrew JArbola, the Lackawanna county Sherriff, Judge Gerculo



And the County County Commissioners All
tolerAte A certAin level of unconstitutional
And unethical behavior in LACKAWANNA County.

179(A) One example of Alleged unconstitutional And
unethical prActices, customs, And policies
Allegedly tolerAted, Supported, And enforced by All
members of the L C P boArd is A drug And
Intermediate Punishment (I.P.) progrAm ThAt
re sentences offenders in blAtent Double
JeopArdy fAshion. These Programs TArget offenders
Likely to violAte the terms And conditions They
rArely understAnd (due to in-effective public defenders),
CAusing These who violAte To Lose As much As
93 months "PunitivE time served" And be
re-sentenced And STArt their MAximum or
minimum sentence All over AgAin insuring future
revenue for the LAckAwAnnA County Prison,
Work ReleAse, house Arrest Ankle brAceleT compAny
And progrAm, And the LAckAwAnnA County
Recycling Center, owned And OperAted by Louis DenAples.

180 Other Alleged unethical behAvior TolerAted by
The LAckAwAnnA County Prison boArd is ThAt LocAl
Judge Michael BArAsse, Allegedly seeing the LucrAtive
writing on The wAll, invented The SCRAM Ankle
BrAcelet ThAt detects Alchohol use by those prohibited
by drug court, I.P., probAtion + pArole. BArAsse is Alleged
to still own ~~shAres~~ in this compAny.

181 MAny believe Therefore ThAt The kind of kickbAcks ThAt Should
be investigAted Are "HumAn kickbAcks" from A "my sentences
benefit your compAny your recommendAtions benefit my compAny,"

Agreement.

(47)

182) In fact Plaintiff was Approached by An Individual And told That he was An Inmate at Lackawanna county Prison just before Corderro And Munchec were Arrested (former commissioners) for Inter Alia Bribery. He told Plaintiff That Some one or persons on The Prison Board At That time ordered himself And other inmates to be woken up "in The middle of the Night."

183) After this Inmate was woken up, he and other Inmates were taken to a wearhouse in Lucerne county Where they were ordered to Shred Documents for 6 hours belonging to Corderro And Munchec, Load Them on An old U-haul truck Where they were hauled Away before law enforcement could get to the documents.

184) The Inmate mentioned in Averments 182-183 got the distinct impression That Both of his legs would Allegedly be broken or worse if he told Anyone what They did with the Corderro And Muncheck documents.

185) Upon Information and belief, defendant Jarbola, Geroulo, And former Board of Prison members Corderro And Munchec were on the Prison Board At the time this inmate, A Corrections officer, And others, were ordered to destroy potentially incriminating evidence belonging to Corderro And Munchec.

(48)

186) Plaintiff was Approached by A 2nd witness who can corroborate the story of Alleged destruction of Potentially Incriminating documents of Corderro And Munchec And that he even sat in on A recent conversation with The Correctings officer And Another inmate who Admitted destroying the documents. Both individuals Are in fear for Their lives And have Asked That their names not be in this Complaint.

187) Plaintiff has done his duty And reported the potential felony of Alleged destruction of The Corderro And Munchec documents to A U.S. Attorney Plaintiff will disclose At A later date, including the names of Those involved which Plaintiff Also provided to said U.S. Attorney.

188) During The Prison Board meeting the week of 9/08/14 one Prison board member can be heard saying those who work in recycling Are Criminals, thus either Lying in Light of Plaintiff's Notice that civil Child Support defendants Are enslaved there or completely Negligent that by way of his Ignorance of the fact that civil (and not just criminal) defendants Are Coerced to work there.

189) There Are so many Constitutional Violations At Lackawanna County Prison that

(49)

Plaintiff can not keep track of them all.
Plaintiff has put sick call slips in and
had to wait 3-7 days before seeing the
nurse or the doctor and there will
be numerous inmates testifying that this
is the customerary wait time to
recieve medical treatment for even
serious conditions.

(190) One inmate, Daniel McShane got his
hand mangled in the belt rollers on
upper magnet with Plaintiff in the recycling
center. His hand and fingers swelled
up black and blue and despite
putting in a sick call slip he wasn't
given an exray for a week. When
he did get one he was told nothing was
broken yet he struggles to move his still
discolored hand nearly 9 months later
and fears nerve damage due to lack
of proper medical treatment by
L.C.P. McShane is yet another of
countless witnessess who will testify
to the horrors by defendants at trial.

(191) When Plaintiff asked work release and recycling
C.O. John Craig why the work release program
was moved from spruce st. to the Lackawanna
County Prison, Craig responded "because the
warden wanted the money work release residents
could generate via rent payments.

(192) The Lackawanna County work release Furough

(50)

Application + Rules sheets say in paragraph 1. That prisoners must agree a furlough is a conditional release from L.C.P. Approved by the court and that residents are technically still in custody of the Warden of the prison; yet in paragraph 7. it forces prisoners to hold Lackawanna County and it's employees harmless for any injuries or damages an inmate might suffer while on a furlough.

## Violation of 42 U.S.C. Sec. 1983

### Count One: Due Process under 14th Amendment

(193)   Plaintiff repeats and re-alleges the allegations above and further avers as follows

(194)   Upon information and belief defendant Adams or Gladdys Acting under color of state law with malice toward Plaintiff and a reckless disregard falsified a warrant request form in violation of Plaintiff's substantive and procedural due process rights under the 14th Amendment.

### Count Two: Due Process under 14th Amendment.

(195)   Defendant Corbett, though Immune from damages under this count violated Plaintiff's substantive due process rights to an impartial decisionmaker while acting under color of state law with malice toward Plaintiff, when she presided over and/or upon information and belief signed an arrest warrant for Plaintiff, knowing Plaintiff sued her in the Past, accused her of corruption and was interviewed on

(51)

The news about it.

(196) As a result of Corbett signing said warrant Plaintiff's arrest was unlawfull and so was his incarceration therefore Plaintiff seeks Declaratory Judgment declaring arrest and incarceration of Plaintiff unlawful and ordering it expunged from his record.

Count Three: Due Process under 14th Amendment

(197) Defendats Jeffers and Mcphillips violated Plaintiffs Procedural due process rights by not providing Plaintiff with a hearing and an opportunity to be heard when they acted with malice under color of state law and a reckless disregard for Plaintiffs rights under the 1st and 8th Amendments by refusing to allow Plaintiff to exercise his religious freedom to attend church.

3(A)

(198) Defendants Jeffers and Mcphillips actions also violate Plaintiffs Substantive due process rights to a fair decisionmaker as defendants decision to deny access to church services was biased and based on a "Pay to Pray" money making and slave labor scheme both defendants were aware of and a part of, as Plaintiff could not go to church until he paid them money, violating 1st and 8th Amendments.

(199) Plaintiff asks for compensatory and punitive Damages in the maximum amount permitted and treble damages if also permitted.

(52)

Count Four: Due Process under 14th Amendment

(200) Defendants Jeffers and McPhillips violated Plaintiff's Substantive and Procedural due process by denying Plaintiff a furlough visits with his beloved 8yr old son without a hearing in violation of Plaintiff's Property interests under the 14th Amendment to the care, enjoyment, custody, and control of his son. Defendants acted with Malice under color of state law with a reckless disregard for plaintiff's rights.

(201) Plaintiff asks for compensatory and punitive damages and treble damages in the maximum allowed under the statute.

Count Five: Due Process under 14th Amendment

(202) Defendant Gladdys compelled defendant Saxton to ignor exculpatory evidence of plaintiff's doctors orders ordering him off work showing Plaintiff was unable to comply with the court order.

(203) Gladdys and Saxton acting under color of state law with Malice toward Plaintiff found him in contempt without any procedural due process protections such as the right to counsel, witnesses, examining evidence against him and Saxton and Gladdys were biased violating Substantive due process rights of Plaintiff as their intent was to enslave Plaintiff for Denirples in the recycling center based on hearsay in violation of 23 PA. C.S. 4345, using 3 code words for Recycling "If

3)    He QUALifies".

(204)    Plaintiff seeks compensatory, punitive, and treble damages in the maximum amount allowed under the statute.

Count Six: Due Process under 14th Amendment

(205)    Defendants Staff and McMillan, under color of state law persuant to custom, practice, and policy refused to provide plaintiff with copies of his court orders in a timely enough manner so plaintiff could file a motion for reconsideration
                Count 6 (A)

(206)    Defendant ADAMS simply flat out refused to even process Plaintiffs notice of appeal to the Superior Court along with his affidavit to proceed without fees.

207.    Defendants Staff, McMillan, and ADAMS acted with malice under color of law with intent to enslave Plaintiff violating both his substantive and procedural due process rights.

208.    Plaintiff asks for compensatory, punitive, and treble damages in the maximum amount under the statute.

Count Seven: Violation of 13th Amendment/18 U.S.C sec 1589

209.    Defendant Loungo by his omission ignored Plaintiff's notice of 13th Amendment violations allowing the custom, practice, and policy of enslaving child support defendants to be carried out by Gladdys and ADAMS in order that they compel a favorable

(54)

ruling Against Plaintiff forcing him to work in
the recycling center.

210. Defendants Corbett, Saxton, Staff, Adams, And
Gladdys All communicated And verbally Agreed to
keep Plaintiff in recycling, And Adams told kate Gavin
he wanted Plaintiff There And Judges Leave it up to Domestics.

211. Corbett Signed the order Legally coercing
Plaintiff into working At The recycling center.
Saxton ignored Plaintiff's objections to said order,
That Staff drafted up/fabricate Against Plaintiff.

212. Defendants Corbett, Saxton, Staff, Adams, And Lavogy,
Gladdys had a meeting of the minds That was
agreed to by Warden McMillan And The Prison
board to ignore plaintiff's grievances And notice
of Intent to Sue complaining of Said Slave
Labor And 13TH Amendment Violations.

213. Defendants C.O. Todd frick And C.O. John
Craig oversaw the Slave labor At the recycling
center And were in charge of enforcing the labor.

214. All Defendants except kane worked together
via Acts And omissions to Abuse the Legal process
And Legally coerce plaintiue into peonage And
involuntary servitude via the use and threat of use
of Legal process And the threat of physical
restraint, Legally coercing Plaintiff to work in
the recycling center in Violation of the
13TH Amendment And Anti-Peonage laws.

(55)

215. All defendants except Kane, violated 18 U.S.C.S. sec 1589 And defendant Denaples As A private owner of the L C P recycling center business benefitted financially from said forced Labor in violation of section B. of Sec. 1589 As Denaples Acted with A reckless disregard of the fact that defendants obtained forced Illegal Labor.

216. Defendant Denaples because of his symbiotic relationship with the county is also A state Actor for purposes of 42 U.S.C. sec. 1983 so No matter who owns the recycling center defendants excluding Kane, knew or should have known that not only Are civil defendants prohibited from being enslaved under the 13th Amendment but that Circuit court case law prohibits even Criminal inmates from making money via their work for A Prison or government institution.

217. When Plaintiff was first incarcerated Plaintiff contacted Denaples And told him what had happened to Plaintiff. Plaintiff Also sent the Oifield v. Weindel case to Denaples so he could see exactly how the rest of the defendants were violating his rights(excluding Kane) And he Aware via the concurring opinion that Plaintiff was A civil And not A criminal defendant but Denaples did nothing to stop Plaintiff's Illegal enslavement At his own recycling center.

(56)

## Count Eight: Violation of 1ST Amendment

218.  Defendant Corbett retaliated against Plaintiff for his lawsuit against her by signing a warrant for his arrest and she is absolutely Immune for that 1ST Amendment violation. Corbett is Not Immune however for her 2nd act of retaliation against Plaintiff and that was the criminal act of signing the May 22, 2014 order forcing plaintiff into Peonage in violation of 18 U.S.E.S. 1589. Plaintiff seeks compensatory, punitive, and treble damages.

## Count Nine: Violation of 1ST Amendment

219.  Defendant Staff chilled Plaintiff's 1st Amendment rights by scolding him for complaining to C.O. John Craig about his belief that the recycling center program violated his 13th Amendment rights.

220.  As a result, Plaintiff still fairly new to the program was afraid to speak up and complain about all the derogatory and pornographic pictures he had to endure for 3 weeks that were plastered on the walls of the soda room and the pornographic magazines that were in the bubble at the recycling center. Plaintiff seeks Compensatory, punitive, and treble damages.

## Count Ten: Violation of 1ST Amendment

221.  Defendant Staff chilled and violated Plaintiff's Rights under the 1ST Amendment when he scolded Plaintiff for "Talking like that" about the Prison's negligence and when he humiliated and yelled at Plaintiff telling him in front of

(57)

the whole D.A. Block "Fuck you And your
constitutional rights, get out of here with
your constitutional rights," As he threw Plaintiff
out of his office in front of everyone on
the Block.

## Count Eleven: Violation of 1ST Amendment

222.    Defendants McPhillips And Jeffas violated
Plaintiff's constitutional rights to freedom of
religion under the 1ST Amendment persuant to
the "pay to pray" custom, practice, And policy
That madates All work release inmates be
out of the yellow meaning they have paid
their rent. Even if they have done all they
can to comply And Are simply waiting for
their next or first check, if the inmate is
behind in rent they can't go to church.

223.    Defendants McPhillips And Jeffas refused
to allow Plaintiff to attend Church in
violation of his 1ST Amendment rights.

224.    Plaintif seeks punitive, compensatory, And
Treble damages for the reckless Actions of
defendants who clearly Acted with Brazen
intent to discriminate And violate plaintiff's
1ST Amendment rights.

## Count Twelve: Violation of 4TH Amendment

225.    Though defendant Corbett And the 2 Arresting
Officers Probably have Immunity As (Judicial for Corbett

(58)

And Qualified for the officers) they had no way of
knowing they were acting on a falsefied warrant
request form.

226. Defendant Gladdys or Adams however which
ever one filled out the warrant request
form did so falsly swearing plaintiff had
recieved proper Notice at an address he
regularly gets mail at.

227. Thus Gladdys or Adams caused the
unlawfull seizure and arrest of plaintiff
in violation of his 4th amendment rights.

228. Plaintiff seeks compensatory, punitive
and treble damages as said defendants
acted with malice under color of state
law intentionally or recklessly disregarding
Plaintiffs 4th amendment rights, with intent
to enslave plaintiff pursuant to a trash for cash policy.
Count thirteen: Violation of 6th amendment.

229. Defendants Adams and Gladdys
purposely sent a hearing notice for plaintiff
to the wrong address as is their custom and
practice so plaintiff would not have time
to consult a lawyer. Thus plaintiff never
recieved instructions on the notice that he
could have counsel appointed for him and
Defendants never informed him at the
hearing that he could have a lawyer
present or a public defender.

(59)

Count Fourteen: Violation of 8th Amendment

230. With Criminal Intent To enslave Plaintiff
in the County recycling center Gladdys and
Saxton Violated Plaintiff's 8th Amendment
rights to be free from Cruel And unusual
punishment by conspiring to put plaintiff through
A kangeroo style Court hearing Which is
Their Custom And practice.

231. Saxton Illegally Sentenced Plaintiff to
2 consecutive 6 month Sentences with purge
conditions he knew Plaintiff Couldn't meet
using code words "If he Qualifies" that Gladdys
Staff, Jeffas, Corbett And McMillan All knew
meant Plaintiff must do 6 months hard Labor
in the recycling Center.

232 C.O. Craig and frick oversaw the
Labor At recycling And Also enforced the
Cruel And unusual punishment.

Count Fifteen: Violation of 8th Amendment

233. Defendants Loungo, Gladdys, Adams, Saxton
Corbett, Staff, McMillan, Craig, frick, And the prison
board Violated Plaintiffs 8th Amendment rights
by forcing And or legally Coercing plaintiff to
Work in harsh, unsafe conditions At the
recycling Center. Said defendants were put on

Notice And knew or should have known Plaintiff
was exposed to pornography, vomit, chemicals,
glass cuts, filthy unsanitary toilets not working
or cleaned in months (C.O.'s got Seperate clean
Bathroom.), toxic fumes with no masks, trash

(60)

rash, holes in cages, improper boots, gloves, and protective gear, high temperatures, taking food away as punishment and more.

### Count 16: Violation of EQUAL Protection.

234. All defendants except Kane intentionally discriminate against Plaintiff as a man and men in general in the recycling center which is a part of the work release center/program.

235. In work release men and women are permitted to work coed jobs however defendants force only men to work in the recycling center and not similarly situated women in the work release program in violation of the 14th amendments Equal protection clause with malice towards Plaintiff's protected class as a male work release prisoner. Plaintiff seeks all 3 types of damages.

### Count 17: Violation of EQUAL Protection

236. All defendants ~~discriminate against~~ child support defendants (except Kane) intentionally by only paying them $5.00 per day while other similarly situated inmates who owe court costs and fines are paid $50.00 per day. this is done with malice towards the protected class of child support defendants in violation of the 14th amendments Equal protection clause. Plaintiff seeks compensatory and punitive damages and treble damages.

### Count 18: Violation of 42 U.S.C. Sec 1985 (3)

237. Defendants, excluding Kane, had a meeting of the minds that has been established for years, to intentionally discriminate against plaintiff based on his class as a child support defendant/obligor.

(61)

238. Defendants conspired to deprive plaintiff of rights and priviledges secured by the Constitution, with malice by their acts and omissions in order to deprive plaintiff of all his rights listed above.

239. Plaintiff repeats and re-alleges the acts and omissions of all defendants listed in all averments above in support of this claim.

240. Plaintiff seeks compensatary, punitive, and treble damages as defendants acted under color of state law to intentionally discriminate against plaintiff.

Count 19: Negligent and Intentional Infliction of Emotional Distress

241. Plaintiff repeats and re alleges all the allegations above.

242. The acts of all Defendants, including Zame, who knew or should have known that 23 P.A. c.s. 4345 was being rampantly abused and misapplied for decades, has cause plaintiff severe emotional distress.

243. The deprivation of all plaintiffs rights avered above, the false imprisonment, repeated strip searches has cause plaintiff's blood pressure to skyrockett to over 170 over 110 at times and plaintiff was put on high blood pressure medicine permenantly by the prison doctor.

244. Defendants caused negligent and intentional infliction of emotional distress depriving plaintiff of the legitamate government benefits, rights, and priviledges listed above.

(62)

Count 20: Violation of 42 U.S.C. 2000

245. Defendants Craig and frick exposed Plaintiff to a hostile work environment for the first 3 weeks plaintiff was working in the Lackawanna County Recycling Center by purposely leaving Graphic pornography pictures up on the walls of the sodt room as well as leaving and reading stacks of pornography magazines in the bubble/office while they worked. Compensatory and Punitive damages.

Count 21: Violation of 42 U.S.C. 2000

246. Defendants staff, McMillan, and the Prison Board all discriminated against plaintiff as or in his protected class as a male work release inmate by only forcing men to work in the recycling Center and not similarly situated women work release prisoners. Compensatory and Punitive damages sought.

Count 22: Negligence

247. Defendant DenApples and the Lackawanna County Prison Board failed to oversee the type of Laborers that were working in the Lackawanna County Recycling Center as well as failed to prevent Plaintiff as a civil and not criminal defendant from having to work there.

248. Said defendants also failed to protect Plaintiff from the reprehensible and harsh conditions avered above inside the recycling Center.

249. Whether DenApples or the Board/county owns it, Both had a duty to protect plaintiff from the Acts and omissions listed above.

250. Plaintiff seeks compensatory, punitive, and treble damages

## Count 23: False Imprisonment

251. All defendants, excluding Kane, by their acts and omissions, knew or should have known that it was unlawful to give plaintiff purge conditions that he could not meet purposely leaving plaintiff in prison pursuant to a falsified arrest warrant.

252. Plaintiff seeks the maximum amount of damaged allowed per day under this statute for each day plaintiff has remained incarcerated.

253. Wherefore, in light of the violations listed above, plaintiff asks for compensatory, punitive, and treble damages in the amount of 5 million dollars to be divided up evenly or assessed under each of the statutes plaintiff is suing under for the maximum allowed under each statute in order to reach the 5 million demanded above.

Plaintiff Demands Trial By Jury.


9/29/14

_William Burrell jr_
William Burrell JR
1371 N Washington Ave
Scranton, P.A. 18509
570-766-2287
Wburrell2013@gmail.com