# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| William L. Burrell Jr. | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| V. | ) |
| | ) |
| April Phillips & Unknown Agents- Individually and officially | ) |
| Thomas Marino-individually and officially | ) |
| Andrew Jarbola-Individually as head DA & Individually as  prison board member. | ) |
| Joseph Marut- Individually | ) |
| Patrick Loungo-Individually | ) |
| Richard Gladys-Individually | ) |
| Ed Adams-Individually | ) |
| Richard Saxton-Individually | ) |
| Trish Corbett-Individually | ) |
| Corey O'Brien-Individually as  prison board member | ) |
| Patrick O'Malley-Individually as  prison board member | ) |
| Gary Dibileo-Individually as  prison board member | ) |
| Jim Wansacz-Individually as  prison board member | ) |
| Sheriff Mark McAndrew -Individually as  prison board member | ) |
| Vito P. Geroulo- Individually as  prison board member | ) |
| Robert McMillan-Individually | ) |
| Tom Staff-Individually | ) |
| Brian Jeffers-Individually | ) |
| Jack Mcphillips-Individually | ) |
| Todd Frick-Individually | ) |
| John Craig & Thomas Cummings-Individually | ) |
| Louis and Dominick Denaples-Individually | ) |
| Lackawanna Recycling Center Inc. | ) |
| Officers John Doe 1&2-Individually | ) |

FILED
SCRANTON

DEC 1 8 2014

PER_____
DEPUTY CLERK

**CIVIL ACTION NO: 14-1891**

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1.      Now comes the Plaintiff,  William Burrell Jr., and respectfully files this first amended complaint, and  moves this Honorable court for relief, respectfully demanding a trial by Jury for the following reasons:

1

2.      Violation of the Racketeer Influenced and Corrupt Organizations Act, codified as Title IX of the Organized Crime Control Act of 1970, (RICCO) as defined under 18 U.S.C. §§ 1961-68 , specifically, 1962 (b),(c) and (d), Violation of 42 U.S.C. § 1983, specifically the 1st Amendment, 4th Amendment, 8th Amendment, 13th Amendment, 14th Amendment (Substantive and Procedural Due Process Clause, Equal protection Clause, Violation of 42 U.S.C. § 1985, Negligent and Intentional Infliction of Emotional Distress, Negligence, False Arrest, False Imprisonment, Federal Tort Claims Act, 28 U. S. C. §2680(h), Pennsylvania Tort Claims Act; 42 P.S. § 8522(b) and 42 Pa. C.S. § 8542 (b), *TVPRA (18 U.S.C. §1595) as* defined at 18 U.S.C. §1589 and as described at 18 U.S.C. §1590, and Abuse of Process (NOT Dragonetti Act Claim).

JURISDICTION

3.      Jurisdiction is properly before this Honorable court pursuant to 28 U.S.C. *§ 1331, 28* U.S.C. *§ 1332, and 28* U.S.C. *§ 1343.*

SUBJECT MATTER JURISDICTION

4.      Subject matter Jurisdiction is properly before this Honorable court pursuant to 28 U.S.C. *§ 1337.*

SUPPLEMENTAL JURISDICTION

5.      Supplemental Jurisdiction is properly before this Honorable Court pursuant to 28 U.S.C. *§ 1367.*

VENUE

6.      Venue is properly before this Honorable Court pursuant to 28 U.S.C. *§ 1391.*

2

## PARTIES TO THE ACTION

7.      April Phillips & Unknown Agents are at all times relevant to this action and are acting agents of the Scranton Pennsylvania Office of the Federal Bureau Of Investigation.

8.      Thomas Marino is at all times relevant to this action and was a former Acting U.S, Attorney for the Middle District Of Pennsylvania.

9.      Andrew Jarbola  is at all times relevant to this action and is the acting head District Attorney for Lackawanna County Pennsylvania and is a member of the Lackawanna County Prison Board.

10.     Joseph Marut  is relevant to this action as the former major of the Dunmore barracks of the Pennsylvania State Police.

11.     Patrick Loungo is at all times relevant to this action and is the acting Director of the Lackawanna County Pennsylvania Domestic Relations office.

12.     Richard Gladys is at all times relevant to this action and was the acting Assistant Director of the Lackawanna County Pennsylvania Domestic Relations office.

13.     Ed Adams is at all times relevant to this action and was a former enforcement officer and now the new acting assistant Director of the Lackawanna County Pennsylvania Domestic Relations office.

14.     Richard Saxton is at all times relevant to this action and is an acting sitting judge for Lackawanna County Pennsylvania.

15.     Trish Corbett is at all times relevant to this action and is an acting judge for Lackawanna County Pennsylvania.

16.     Corey O'Brien is at all times relevant to this action and is an acting Member of the Lackawanna County Prison Board and acting commissioner for Lackawanna County.

17.     Patrick O'Malley is at all times relevant to this action and is an acting Member of the Lackawanna County Prison Board and acting commissioner for Lackawanna County.

18.     Gary Dibileo is at all times relevant to this action and is an acting Member of the Lackawanna County Prison Board and acting commissioner for Lackawanna County.

19.     Jim Wansacz is at all times relevant to this action and is an acting Member of the Lackawanna County Prison Board and acting commissioner for Lackawanna County.

20.     Sheriff Mark McAndrew is at all times relevant to this action and is an acting Member of the Lackawanna County Prison Board.

21.     Vito P. Geroulo is at all times relevant to this action and is an acting Member of the Lackawanna County Prison Board and acting judge for Lackawanna County.

22.     Robert McMillan is at all times relevant to this action and is an acting Warden for the Lackawanna County Prison.

23.     Tom Staff is at all times relevant to this action and is an acting director for the the Lackawanna County Prison Recycling Center.

24.     Brian Jeffers is at all times relevant to this action and is an acting director for the Lackawanna County Prison Work Release Program.

4

25.     Jack McPhillips is at all times relevant to this action and is an acting officer for the Lackawanna County Prison Work Release Program.

26.     Todd Frick is at all times relevant to this action and is an acting officer for the Lackawanna County Prison Work Release Program.

27.     John Craig is at all times relevant to this action and is an acting officer for the Lackawanna County Prison Work Release Program.

28.     Louis and Dominick Denaples are at all times relevant to this action as co-owners of  Lackawanna Recycling Center Inc., Keystone Sanitary LandFill, D&L Reality Inc, and several other businesses as is Thomas Cummings as chair of LCSWMA.

29.     Lackawanna Recycling Center Inc. is at all times relevant to this action as a business incorporated on 02/04/2005 and is owned by Louis and Dominic Denaples.

30.     Officers John Doe 1&2 are at all times relevant to this action as law enforcement officersworking for an unknown entity who arrested plaintiff.


## STATEMENT OF THE CASE


31.     This case arises out of injuries plaintiff sustained from two separate racketeering enterprises, 1. An association in fact enterprise consisting of the leading Pennsylvania Mafia Don and organized criminal, Louis Denaples and his co-conspirator, his brother Dominick Denaples (The Denaples brothers) who own multiple  businesses together , and 2. A second criminal enterprise the Denaples brothers initiated back in 1988 that was designed to, and has, dominated the entire recycling and solid waste industry in

North Eastern Pennsylvania via a pattern and series of racketeering affirmative acts and supporting co-conspirators.

32.    Certain members of the Pennsylvania State Police allegedly first started hearing about Louis Denaples in the early 80's when his name started appearing in several Pennsylvania crime commission reports. According to the reports Denaples had close associations with the Russell Buffalino Crime family which controlled all organized crime in North East Pennsylvania and Southern parts of New York.

33.    The Buffalino crime family was alleged to participate in loan sharking, extortion, money laundering, labor racketeering, prostitution, and murder. According to the crime commission reports, Denaples relationship with the Buffalino crime family was publically exposed when Denaples, after contracting with the government, pleaded no contest in 1978 for defrauding the U.S. government by taking part in a scheme that fraudulently billed the government for more than $500,000 for cleanup during hurricane Agnes.

34.    Louis Denaples was originally charged with several other officials from Scranton Pennsylvania for the alleged $500,000 fraudulent billing scheme but his trial ended in a hung jury when Denaples had Buffalino crime family underboss, James Osticco, bribe a jury member which forced an acquittal.

35.     Denaples would later plead no contest before a 2nd trial for fraud, paid a $10,000 fine, was placed on probation, and in 1983 James Osticco and certain others were tried and convicted for bribing a juror in the 1st Denaples Fraud trial.

36.     Since the connection with Buffalino crime family underboss James Osticco was clearly made via the bribery of the Denaples jury member, Denaples would be allegedly named in other Pennsylvania Crime Commission reports alleging ties to other organized criminals, one of which included William "Big Billy" D' Elia who confirmed and testified about his relationship with Denaples and who was alleged to have eventually taken over the Buffalino crime family.

37.     Denaples' story from poverty to riches was legendary, allegedly turning profits from a single junk auto into a billion dollar empire but countless members of the public and certainly law enforcement all suspected he had help from participating in organized crime and paid Buffalino and William D'elia for protection and to carry out jobs for Denaples.

38.     Denaples would eventually go on to become owner of 2 of Pennsylvania's largest garbage land fills, own several auto salvage yards, and sit on two of Pennsylvania's most prestigious boards, the university of Scranton and Blue cross Blue shield, where he became friends with some of the most respected people in the region. Eventually Louis Denaples owned his own bank, First national Community bank (FNCB) where he was chairman and the largest stock holder.

39.   Knowing he was believed to be an organized criminal, In order to insulate himself from being so easily prosecuted for organized crime that he had been carrying out, Denaples began giving millions of dollars away to charities, the catholic church, and state and local government agencies.  Denaples gave a $35 million dollar donation to the University of Scranton, allegedly paid for the construction of the Dunmore PA. Police barracks, and his large donations helped him gain support from the local public and the entire political infrastructure of North Eastern Pennsylvania.

40.   Due to his millions of dollars in bribes Denaples concealed as donations, Denaples was eventually able to cultivate deep ties within state and federal government and counted powerful members of government like senator Arlen Spector among friends and he also developed well entrenched associations deep within law enforcement so few people dared to oppose him and this scheme and criminal enterprise that eventually led to plaintiff's injuries.

41.   23 Pa. C.S. § 4345 allows for courts to _hold_ a child support obligor who _has the money_ to pay child support ("ability to pay") but simply refuses to do so in contempt and _DETAIN_ that defendant _until_ he agrees to pay the amount he has the ability to pay. When this occurs the child support obligor has not been given a sentence convicting him of a crime, he is simply being **DETAINED**  until he complies with a court order to pay child support, but If the Obligor is indigent, he is _not_ to be detained.

42.    Plaintiff was a **CIVIL DETAINEE** in the Lackawanna County Jail between

5/14/2014 to 9/29/2014, being held illegally under the falsely asserted pretenses that

he had the ability to pay over $7033, between two cases, in back child support owed

but was simply refusing to do so.

43.    Certain defendants, knowing plaintiff was indigent with no assets or ability to

come up with over $7033,  severely and intentionally abused 23 Pa. C.S. § 4345 and

the process of law with intent to enslave plaintiff to work in the Lackawanna County

Recycling Center to fulfill their obligation under a  May 3, 2006 operating agreement

between LCSWMA and LRCI.

44.    Defendants coerced this labor at the Lackawanna County Recycling Center,

which is outside the prison away from any inmate living quarters, through threats of

physical restraint against plaintiff and others and threats of use of legal process, stating

that those who refuse to perform such meagerly compensated work at $5 per day would

be subjected to a longer prison term and subjected to felony escape charges by the

Lackawanna County District Attorneys office, run by Defendant Andrew Jarbola, if

plaintiff or others tried to flee from the forced labor.


45.    Defendants Louis and Dominick Denaples conspired with certain Lackawanna

County Commissioners to create their own municipal subdivision that would serve their

long term racketeering scheme and they called it the Lackawanna County Solid waste

Management Authority. Over time the Denaples brothers, DBA Lackawanna Recycling

Center Inc and (LCSWMA) profited and saved costs associated with paying for labor at

the recycling center by *inter alia* using the forced and meagerly compensated labor of

plaintiff and other civil inmates, at $5 per day, forcing plaintiff to perform work at the

center that was not related to the normal housekeeping duties of duly convicted criminal

inmates, in order to generate millions of dollars a year in profits for the Denaples

brothers and $60,000 a year for LCSWMA.

STATEMENT OF FACTS

46.     Plaintiff repeats and re-alleges the facts stated above and further states as

follows:


47.     Some time prior to December of 1988 but within 10 years of Louis Denaples No

contest plea to defrauding the government  in 1978, Louis and Dominick Denaples ( The

Denaples brothers) hatched an Idea to create their own recycling center that would

allow them to defraud the government *again* and control, completely monopolize, and

profit from the Recycling and solid waste industry in North Eastern Pennsylvania.


48.     The Denaples brothers  decided that the scheme to create their own recycling

center that would allow them to control, completely monopolize, and profit from the

Recycling and solid waste industry in North Eastern Pennsylvania needed to wait until

10 years from Denaples Fraud conviction to circumvent the Racketeering law on pattern

and predicate sequential act time requirements, thus they waited until 1989 to set the

scheme in motion and this way they were outside the 10 year pattern requirement....or

so they thought.

49.     The Denaples brothers discussed the matter and concluded that in order to create their own recycling center that would allow them to control, completely monopolize, and profit from the Recycling and solid waste industry in North Eastern Pennsylvania, they needed to create their own county government authority that held all legal control over what happened in the Recycling and solid waste industry for Lackawanna County and they needed to be secretly in control of that subdivision at all times by *inter alia* <u>hand picking the chairman on numerous occasions which they indeed</u> **<u>did as needed</u>**.

50.     The Denaples brothers further discussed the matter and concluded that the creation of their own county government authority was necessary to fraudulently obtain government grants, free advertising, and cheap  prison labor, as well as to be able to circumvent the bidding laws and prevent any competition from infringing on lucrative contracts they sought in the recycling and solid waste industry they wished to control.

51.     In order to insure they could actually maintain complete control over the county government authority, The Denaples brothers discussed it further and decided the best way to do that was to devise a scheme to make it look like they were donating land for a recycling center to the county while secretly maintaining legal ownership of said land and control of the recycling center, and as stated, hand picking a chairman for the LCSWMA <u>as needed</u>.

52.    Once The Denaples brothers had the scheme well thought out, upon information and belief, the first predicate act of racketeering that set the scheme and pattern of racketeering in motion that led to plaintiff's injuries was the actual formation of the county government authority itself LCSWMA and it's recycling facility as seen hidden amongst other projects within ordinance # 60 on 01/14/1989 of the Lackawanna County Ordinance archive.

53.    To form the county government authority to carry out their scheme The Denaples brothers conspired with at least the two Lackawanna county majority commissioners sometime prior to December 23, 1988. The Lackawanna County Commissioners serving just prior to December 23, 1988 were Joseph A Corcoran, Ray A. Alberigi, and John Senio and discovery will reveal which ones conspired with the Denaples brothers to form the county government authority they needed to carry out their scheme but they formed the Authority and they called it "Lackawanna County Solid Waste Management Authority" (LCSWMA).

54.    On December 23, 1988 the first reading of ordinance 60 called **Authorizing and Directing the Incurring of Non-Electoral Debt** was read and on January 14, 1989 it was passed by commissioners Joseph A Corcoran and Ray A. Alberigi and it authorized the incurring of non-electoral debt Of Lackawanna County Pennsylvania in the amount of $8,175,000.00 through the issuance of general obligation bonds for *inter alia* renovation of the County prison facility and the construction of a county solid waste management plant. Commissioner John Senio WISELY abstained from the vote.

55.     Plaintiff has been injured by the use or investment of illicit proceeds stemming from the fraudulent use of said general obligation bonds used to create a part of the Denaples Brothers racketeering enterprise, the LCSWMA.

56.     Once they formed the LCSWMA, The Denaples Brothers then secured 3 large parcels of land on Boulevard avenue in Scranton that they determined would be leased or transferred to the LCSWMA for just $1. One parcel from a family owned company called O.S.C. Co. and 2 parcels allegedly owned by the Denaples brothers.

57.     Once The Denaples Brothers had the land secured, having convinced them prior to 10/16/89, on 10/16/89 the Denaples brothers directed the members of O.S.C Co. to lease their parcel of land on Boulevard ave to the Lackawanna County Solid Waste Management Authority (LCSWMA) for just 1 Dollar with the condition that LCSWMA agreed to have a recycling center built and completed by January 1, 1991. Likewise on 10/16/89 The Denaples Brothers leased their 2 parcels of land on Boulevard ave to the LCSWMA for just 1 Dollar with the condition that LCSWMA agreed to have a recycling center built and completed by January 1, 1991, and  Attorney Joseph A. O'Brien signed all 3 deeds on behalf of LCSWMA.

58.     Upon information and belief there was never a chance for the public to speak about the details of the leases between The Denaples Brothers and LCSWMA dated 10/16/1989 nor was it stated in any ordinance that LCSWMA was leasing the recycling center property from The Denaples Brothers and what the terms of the leases were.

13

59.     Knowing that they could not directly profit from the recycling center right away without raising red racketeering flags, the Denaples planned to indirectly profit from it and that is why they *incorporated Keystone Sanitary Landfill Inc. on February 1, 1991 one month after the January 1, 1991 deadline for the completion of the recycling center, With Louis Denaples listed as president and Dominick Denaples listed as Vice-preside and treasurer.*

60.     Thus Denaples saw the lucrative potential in recycling and solid waste materials long before most in Pennsylvania but he was hampered by current laws preventing him from being able to fully capitalize on and profit from the recycling materials made available by residents of multiple counties in North eastern Pennsylvania so he set his mind to create a 'scheme' around the laws.

61.     Louis Denaples believed  that after being caught for fraud once already, he needed another scheme that was far more elaborate to defraud the government than what he had attempted to do in 1977.

62.     In order to circumvent laws preventing him from being able to fully capitalize on and profit from the recycling materials made available by residents of multiple counties in North eastern Pennsylvania, Defendant Louis Denaples, did what most organized criminals do, he created the plan stated above for his long term racketeering scheme to control recycling profits in North Eastern Pennsylvania.

63.    The First step of Defendant Louis Denaples plan to circumvent laws preventing him from being able to fully capitalize on and profit from the recycling materials made available by residents of multiple counties in North eastern Pennsylvania was, again, to do what most organized criminals do, create a FRONT for his long term racketeering scheme.

64.    The FRONT Defendant Louis Denaples created however, in order to circumvent laws preventing him from being able to fully capitalize on and profit from the recycling materials made available by residents of multiple counties in North eastern Pennsylvania, was not just the usual legitimate privately owned business (that would come later when he created the keystone landfill front in 1991). Instead, in December of 1988, Denaples used his mafia reputation, political power, wealth, and influence to 'create his own' County Municipal Government subdivision, which is his Co-defendant in this very case (not a ricco co-defendant), none other than "Lackawanna County Solid Waste Management Authority (LCSWMA)"

65.    Thus in 1988 The first step of Defendant Louis Denaples plan to circumvent laws preventing him from being able to fully capitalize on and profit from the recycling materials made available by residents of multiple counties in North eastern Pennsylvania was to launder his property and to conspire with others and convince them to launder their property to the fraudulent County Municipal Government

subdivision which he created, "Lackawanna County Solid Waste Management Authority" (LCSWMA).

66.    The fraudulent lease agreements of 10/20/89 between LCSWA , QSC Co, And Louis and Dominick Denaples were designed to circumvent the bidding laws of fair play and fair competition in contracts and leases under the Lackawanna County charter law and state and federal law.

67.    The fraudulent lease agreements of 10/20/89 between LCSWA , QSC Co, And Louis and Dominick Denaples were part of a racketeering scheme created to defraud the county government and the citizens of Lackawanna county out of millions of dollars a year Giving the Denaples brothers an unfair advantage because they stipulated the lease was conditional on the County Solid Waste Management  Authority agreeing to the building of a recycling center and not only would the lease be void if that wasn't done by a certain time but the lease stipulated Louis and Dominick Denaples could have first rights at buying the property and all fixtures back should the County Municipal Government subdivision which he created (LCSWA ) mysteriously abandon the property or <u>fail in it's purpose</u>.

68.    Once defendants Louis and Dominick Denaples had the fraudulent deed agreements solidified in 1989 with their co-defendant, "Lackawanna County Solid Waste Management,"  the fraudulent County Municipal Government subdivision which they created, they simply sat back and waited for more than 10 years to pass before trying to

make any money directly from the recycling center, and focused on making money indirectly from the recycling center via the keystone landfill, celebrating a brilliant criminally masterminded accomplishment in itself.  With time on their side, they were in no hurry to rush their long term racketeering scheme lest they create red flags for the federal authorities with 2 acts of racketeering activity within a 10 year period which is proscribed by the racketeering statute.

69.    As time passed, defendants Louis and Dominick Denaples let their fraudulently created Municipal Government subdivision, "Lackawanna County Solid Waste Management Authority," go through the motions of running a municipal owned recycling center as they better learned the ins and outs of that industry.  It wasn't until February of 1993, nearly 5 years after the creation of the LCSWMA  that the Lackawanna County Commissioners got around to creating Ordinance 81, "An Ordinance Regulating the Disposal of Municiplal Solid Waste Collected in Lackawanna County and providing for Authorization and Licensing of Municipal Solid Waste Haulers."

70.    Ordinance 81, "An Ordinance Regulating the Disposal of Municiplal Solid Waste Collected in Lackawanna County and providing for Authorization and Licensing of Municipal Solid Waste Haulers," has it's own section under section 6 (a) protecting the Denaples brothers prior lease with LCSWMA, stating "nothing in the ordinance shall be construed to interfere with, impair, or in any way modify provisions of any pre-existing contracts".

17

71.     Upon information and belief Defendants Louis and Dominick Denaples may have illegally profited indirectly from the LCSWMA and the Recycling Center by The Authority and center simply going to Denaples and his Landfill to sell the recyclable materials collected, circumventing bidding laws there as well'

72.     Between December of 1988 and May 3, 2006, the chairman position of the LCSWMA has changed more times than plaintiff can count and the position of LCSWMA chair as well as some former commissioners associated with the LCSWMA and the recycling center scheme involve convicted businessmen Patrick J. McLaine, convicted of stealing $832,000 from Bethlehem Township with alleged offenses against other municipalities in 4 counties, and former commissioners Robert Cordaro and AJ Munchak, convicted on multiple counts of fraud and racketeering.

73.     Defendants Louis and Dominick Denaples were fully aware of the decision in Ezy Parks v. Larson, 499 Pa. 615,  454 A.2d 928 (1982) which stated:

        "Bidding requirements "are for the purpose of inviting competition, to guard against favoritism, improvidence, extravagance, fraud and corruption in the awarding of municipal contracts and to secure the best work or supplies at the lowest price practicable, and are enacted for the benefit of property holders and taxpayers, and not for the benefit or enrichment of bidders, and should be so construed and administered as to accomplish such purpose fairly and reasonably with sole reference to the public interest." (Footnotes omitted.) 10 McQuillan, *Municipal Corporations* § 29.29, at 266-67 (3rd ed. 1950)."

74.    Eventually, after years of planning and waiting, sometime after 2004, in order to wag the dog and divert attention away from the lucrative potential of the fraudulent lease agreement they had created and a new one they intended to enter into with their own fraudulently created Municipal Government subdivision, "Lackawanna County Solid Waste Management,", Defendant Louis and Dominick Denaples DBA Lackawanna County Recycling Center Inc and Defendant Lackawanna County Solid Waste Management, worked in concert with corrupt and criminally convicted Robert Cordaro, AJ Munchak, and others to purposely mismanage the Lackawanna County Recycling Center creating the appearance that it was costing the tax payers of Lackawanna County money instead of making the county money.

75.    From the very beginning of Defendants Louis and Dominick Denaples racketeering scheme to create a Municipal Government subdivision to launder their property and money through, said defendants always planned to capitalize on all the advantages a government entity has which were not just government grants and free advertizing, but also the control and use of cheap prison labor.

76.    Once they successfully created the facade that the Lackawanna County Recycling Center was costing the tax payers of Lackawanna County money instead of making the county money, in or about March 31, 2005, Defendant Louis and Dominick Denaples quickly formed a corporation, DBA Lackawanna Recycling Center Inc (LRCI) and conspired with Robert Cordaro and AJ Munchak to enter into a 3rd fraudulent illegal

lease agreement with their fraudulently created Municipal Government subdivision, Lackawanna County Solid Waste Management Authority.


77.     The difference with the 3rd lease agreement between Defendant Louis and Dominick Denaples and Lackawanna County Solid Waste Management Authority on or about March 31, 2005 from the ones in 1989 and 1999, was this time <u>they shrewdly and deceptively didn't record it in the registry of deeds</u> but only on "paper" and had begun coining their agreement as a <u>"Professional Services Operating Agreement"</u>, which finally allowed Defendant Louis and Dominick Denaples to fraudulently capitalize on the long awaited use of prison labor, free advertizing, and government grants only municipalities can get, making them millions of dollars a year from their LONG coveted Recycling Center.


78.     At some point after 1999 research shows Lackawanna County Solid Waste Management Authority and Defendants Louis and Dominick Denaples wised up and stopped recording their names on county deed transactions made on behalf of the Recycling Center by LCSWMA so their true relationship could stay hidden.  What they did instead was used paper agreements described above called a <u>"Professional Services Operating Agreement</u>  and simply amended it as they needed to keep track of changes. Plaintiff is not sure when the actual FIRST <u>"Professional Services Operating Agreement"</u> was created as the one plaintiff has now, believed to be the latest is dated May 3, 2006

79.     To this very day, after all it's years in existence, there are no two citizens who

have profited more financially from the fraudulently created Municipal Government

subdivision, Defendant "Lackawanna County Solid Waste Management" and the

fraudulently created recycling center than, Defendant Louis and Dominick Denaples

DBA  Lackawanna  Recycling Center Inc..

80.     As Time passed after the acts of creating ordinance 60 on December 23, 1988,

the fraudulent leases with LCSWMA on 10/16/1989, the construction of the recycling

center before January 1, 1991, the formation of Keystone Landfill in February, 1991,

Defendants Louis and Dominick Denaples had duped the whole of Lackawanna County

businesses and all of it's citizens into believing that Lackawanna County Solid Waste

Management Authority was the sole owner of the Recycling Center and that it was fully

owned by "The county".

81.     Only when another company came into contact with the recycling center property

to lease a portion of it could one paying very close attention see that in order to lease

the property LCSWA needed Louis and Dominick Denaples signatures which were

listed as "Owner" with LCSWA as seen in a 1999 lease agreement.

82.     The racketeering activity was made possible pursuant to an unconstitutional

"Pennsylvania Mafia Support Policy(PMSP), initially enforced by certain Lackawanna

County commissioners back in October 1989.

Due to Louis Denaples paying millions of dollars in bribes which he disguised as charity

to community and government enterprises, the Pennsylvania Mafia Support

Policy(PMSP), was re-enforced stronger than ever over time and pursuant to said

policy, certain State, and Federal government officials supported Louis and Dominick

Denaples in their racketeering activities, and looked the other way, resulting in their own

breach of fiduciary duties and intentional negligence by said officials for failing to protect

plaintiff and the public from the well planned long term criminal schemes of Louis and

Dominick Denaples.

83.    Plaintiff became aware of Louis Denaples and his racketeering activity and injury

to plaintiff and thousands of other Lackawanna County Residents between May 2014 to

the present, after Defendants Ed Adams and Richard Gladys, of Domestic Relations,

operating pursuant to The Pennsylvania Mafia Support Policy (PMSP), working to round

up cheap prison slave labor for Denaples Recycling Center, falsified a warrant request

form compelling Defendant Judge Corbett to issue an invalid  warrant for plaintiff's

arrest.

84.    Subsequently Defendants Ed Adams and Richard Gladys, of Domestic Relations

unlawfully compelled defendant Richard Saxton to illegally incarcerate plaintiff violating

plaintiff's rights under the Racketeer Influenced and Corrupt Organizations Act, codified

as Title IX of the Organized Crime Control Act of 1970, (RICCO) as defined under 18

U.S.C. §§ 1961-68 , specifically, 1962 (b),(c) and (d), Violation of 42 U.S.C. § 1983,

specifically the 1st Amendment, 4th Amendment, 8th Amendment, 13th Amendment, 14th

Amendment (Substantive and Procedural Due Process Clause, Equal protection

Clause, Violation of 42 U.S.C. § 1985, Negligent and Intentional Infliction of Emotional

Distress, Negligence, False Arrest, False Imprisonment, Federal Tort Claims Act, 28 U.

S. C. §2680(h), Pennsylvania Tort Claims Act; 42 P.S. § 8522(b) and 42 Pa. C.S. §

8542 (b), *TVPRA (18 U.S.C. §1595) as* defined at 18 U.S.C. §1589 and as described at

18 U.S.C. §1590 and Abuse Of process (**not** Dragonetti Act Claim)

85.    The initial violations listed above led to plaintiff's subsequent discovery of

additional unconstitutional policies, customs, and practices on the part of Lackawanna

County Prison and Lackawanna County Department of Corrections officials, as well as

other state and federal officials. Those violations include violations of plaintiff's 1st

amendment religious rights, violation of plaintiff's rights under the Federal Tort Claims

Act, Bivens v. Six Unknown Agents, and Breach of fiduciary duty.


86.    Louis Denaples is well known by thousands of Pennsylvania residents as the

wealthiest and most powerful man in North East Pennsylvania who is seen by

thousands as the Face and Head of the Pennsylvania Mafia and the "Owner" of Not just

Lackawanna County, but all of North East Pennsylvania.


87.    Countless published reports allege Louis Denaples was an associate of the

Buffalino crime family and Denaples is widely known throughout Pennsylvania for barely

escaping prosecution for lying to Pennsylvania state gaming officials about his

associations with organized criminals. In fact Denaples took a plea deal regarding said

perjury charges and agreed inter alia to give up ownership of his casino.

23

88.    Louis Denaples is a convicted felon who was in fact prosecuted in 1977 for

attempting to defraud the government out of $500,000 and Buffalino crime family

underboss James Osticco was also prosecuted and found guilty for fixing the said

1977Denaples fraud trial by bribing one of the jurors to vote not guilty for Denaples.


89.    It is well known by many Pennsylvanians that it is alleged that the jury

forewoman in the Louis Denaples 1977 fraud trial was also approached with a bribe by

Osticco but refused and that she was later found dead in a mysterious fire a year later

allegedly for refusing to cooperate with Buffalino Crime family underboss James

Osticcos bribery attempts on behalf of Louis Denaples.


90.    In 2008 as Denaples was charged with four counts of perjury, some relating to

whether he knew certain organized criminals. Later, the Office of the Comptroller of the

Currency, barred DeNaples from First National Community Bank, of which he was the

chairman and largest stockholder. The OCC barred DeNaples in April 2009 after he

agreed to give up ownership of Mount Airy Casino Resort in return for the Dauphin

County district attorney dropping perjury charges against him.


91.    As stated above, due to his millions of dollars in bribes paid, Denaples quickly

moved up and continued to grow in power and influence over  certain Pennsylvania

local, state, and federal officials, including law enforcement officials and the Supreme
Court of Pennsylvania.

92.     Sal Cognetti was the former U.S. attorney who prosecuted Denaples in his 1977
fraud trial but was later seen representing the Rev. Joseph Sica, Denaples close friend
and confidant who was also prosecuted along side Denaples for lying about his role and
association with Organized criminal and Mafia boss Russell Buffalino.

93.     It is well known by many in Pennsylvania that the former U.S. attorney for the
Middle District Of Pennsylvania, Thomas Marino, whose office was involved in a federal
probe investigating Louis Denaples, was not only forced to resign after his staff reported
to the Department of Justice that Marino had given a personal recommendation for
Denaples for his gaming slots application, but that Marino also allegedly took a salary of
$250,000 a year going to work for Denaples.

94.     Marino's assistants in the Middle District in Harrisburg were investigating
DeNaples when they learned in 2006 of Marino's 2005 referral letter. The assistants
reported it to Justice Department officials in Washington, who recused the entire Middle
District from investigating DeNaples sales of 30 trucks he purchased in New Orleans
(Interstate) for $180,000 that he not only knew were submerged in water during
Hurricane Katrina and only supposed to be sold as salvage, but that Denaples, washed
the titles and sold the trucks without disclosing that they were completely submerged;
thus the case was referred to the U.S. attorney's office in Binghamton, N.Y.

95.     Despite The FBI, via unknown agents knowing the Denaples brothers purchased 30 flooded trucks for $180,000 from New Orleans, that they first tried to purchase with a check from Keystone Sanitary Landfill, but instead had to purchase with a check from Denaples Auto Sales, which wasn't even incorporated until 12/11/2006, and that they fraudulently washed at least one title signed by Dominick Denaples  and  re-sold a truck they clearly knew was submerged under water outside of PA and lied about it to the buyer, The FBI, via unknown agents, refused to prosecute Denaples and allegedly determined it was a matter to be handled by the Pennsylvania State police. Said unknown FBI agents knew that the Katrina truck investigation would eventually be handled by State Police major, Joe Marut, a Denaples confidant who would bury the case.

96.     It is also well known by thousands of Pennsylvanians that the Book "The quiet Don" alleges former Pennsylvania State Police Major Joe Marut was captured on police surveillance visiting Denaples at his Auto parts store and that Marut, knowing Denaples Auto Parts wasn't even incorporated until 12/11/2006 and was probably only created to purchase the flooded trucks as part of another racketeering scheme, not only declined to find any wrong doing in the  2009 Katrina truck investigation, when other state troopers and prosecutors believed there was, but that Marut also later resigned and went to work for Denaples as chief of security at Mount Airy Casino.

97.     Defendant Andrew Jarbola, the head District Attorney of Lackawanna County, in his investigative capacity, pursuant to a Pennsylvania Mafia Support Policy (PMSP) conspired with Marut and Denaples to support and further acts of racketeering by Denaples, and he too looked the other way, refusing to prosecute Denaples for the 2009 Hurricane Katrina truck fraud, letting him get away with clear fraud, to the shock of even some other prosecutors and state police in other counties.

98.     Both Pennsylvania State Police Major Joe Marut and then, and current head District attorney Andrew Jarbola conspired to support Louis Denaples in his blatant racketeering activity pursuant to their Pennsylvania Mafia Support Policy (PMSP) by their intentional and blatant omissions of refusing to charge and prosecute Denaples in the  2009 Katrina truck fraud investigation In violation of 18 U.S.C. §§ 1962(d).

99.     In refusing to charge and prosecute Denaples In violation of 18 U.S.C. §§ 1962(d), Marut and Jarbola contributed to plaintiffs injuries by allowing Denaples to continue with other acts of racketeering including the scheme that enslaved and extorted wage labor from plaintiff in violation of 18 U.S.C. §§ 1962(b)and (c).

100.    It is alleged and believed by thousands of Pennsylvanians that Louis Denaples controls some federal, state and local Government officials and is so powerful that he can tell someone "get used to the Unemployment line" and they will lose their job.

101.   In fact when award winning Investigative journalist and author of "The Quiet

Don", Matt Birbeck was scheduled to speak about the book at the Albright Memorial

Public Library, an entity controlled by Lackawanna County  in Scranton PA, Birbeck's

speaking engagement was mysteriously cancelled by the county controlled library

despite hundreds having signed up to hear him speak about the book, which is

extremely critical of defendant Louis Denaples.


102.   The May 3, 2006 operating agreement between LCSWMA and Defendant Louis

Denaples DBA  Lackawanna Recycling Center Inc. is a 'sham' that states the county

owns the Recycling Center and only leases to Denaples and LCRI , but in fact

Defendant Denaples is the De facto owner, with the county only profiting $60,000 per

year and upon information and belief Denaples and LRCI  profit over 6 million per year

from illegally obtained and forced labor of indigent civil child support defendants who

are helpless to purge themselves out from under the enslavement.


103.   Under the fraudulently obtained May 3, 2006 operating agreement between

LCSWMA and Defendant Louis Denaples DBA LRCI, Denaples, a convicted felon

enjoys the benefit of the county's obligation to "Prepare any and all applications for

federal, state, or any other sources for financial aid grants or reimbursement that is

available to subsidize the purchase of any and all vehicles , equipment, and or plant

improvements that, in the opinion of the operator (Denaples DBA LRCI) are necessary".

104.   One of the most important provisions in the fraudulently obtained May 3, 2006 operating agreement between LCSWMA and Defendant Louis Denaples DBA LRCI, is section 3 (b) (3), which states LCSWMA will use it's best efforts to "Provide operator with the same number of prisoners from the Lackawanna County Prison that have historically worked at the center as part of their work release program as security requirements dictate".

105.   The prison work release program was supposed to allow inmates to go out into the surrounding areas and get a minimum wage or above minimum wage paying job. Louis Denaples however, conspired with county commissioners to have them create a sham pretextual excuse to integrate prisoners into working at the recycling center under the false pretense that they were somehow part of the work release program when they clearly are not!

106.   Louis Denaples convinced county commissioners and the department of corrections to pay prisoners who owed court costs and fines $50 per day towards their fines and costs and to pay child support prisoners just $5 per day for working in the recycling center.

107.   Under the illegal and fraudulently obtained May 3, 2006 operating agreement between LCSWMA and Defendant Louis Denaples DBA LCRI, Denaples, a convicted felon enjoys the benefit of the county's obligation to pay for and implement advertising for the recycling center. Beyond this, Denaples is then making use of interstate

commerce by shipping the recycled materials across state lines to whatever companies pay the highest prices in <u>violation of the National Stolen Property Act</u>.

108.   Under TITLE 335 LACKAWANNA COUNTY HOME RULE CHARTER, § 1.3-309. Actions Requiring an Ordinance states in part: "In addition to any other actions which must be taken by ordinance as required by law or by this Charter, the following actions shall require an ordinance:, ... (f) conveying, leasing or authorizing rates charged for any utility or other service supplied by the County.

109.   Upon information and belief, the operation agreement between Defendant Lackawanna County and Defendant Louis Denaples DBA LCRI violates Title 335 LACKAWANNA COUNTY HOME RULE CHARTER, § 1.3-309 (f).

110.   Upon information and belief, the operation agreement between Lackawanna County Solid Waste Management Authority and Defendant Louis Denaples DBA LCRI, violates Title 335 LACKAWANNA COUNTY HOME RULE CHARTER § 1.3-302 (e) requiring the adoption of" procedures, by ordinance, which shall provide for the purchasing of products, goods and services, the making of contracts, and the sale or lease of personal or real property of the County. Such procedures shall provide for negotiated contracts not exceeding $1,500. In all other contracts there shall be competitive bidding, bidding procedures, assurances of controls on aggregate spending and safeguards against special interests.

111.    Billionaire, Mafia king, and extremely politically connected Defendant Louis

Denaples DBA  Lackawanna Recycling Center Inc. is the quintessential example of

"special interests" and Lackawanna County Solid Waste Management Authority and

Defendant Louis Denaples DBA LCRI knew full well the May 3, 2006 operating

agreement they entered into was not only worth more than $1500 but that it would profit

Denaples millions.


112.    Former Lackawanna County Majority Commissioners Robert Cordaro and AJ

Munchak  selected bidding proposals for county contracts as part of their duties as

majority commissioners. Cordaro and Munchek were convicted and sent to prison for

inter alia  receiving tens of thousands of dollars in kickbacks in exchange for awarding

lucrative county contracts.


113.    Former Lackawanna County Commissioners Robert Cordaro's and AJ

Munchak's administration authorized Defendant  Louis DeNaples to operate the

Lackawanna recycling center and illegally awarded Defendant Louis Denaples the

contract in violation of inter alia, Title 335 LACKAWANNA COUNTY HOME RULE

CHARTER, § 1.3-309 (f) and § 1.3-302 I.


114.    Title 335 LACKAWANNA COUNTY HOME RULE CHARTER  states in part, " §

1.16-1601. General Responsibilities of Elected Officials. Each elected independent

county officer shall:

        (a) Supervise and direct the internal organization of that agency

(b) Execute and enforce all resolutions and ordinances of the County

I Assure that the laws of the State relating to the affairs and government

of the County are duly executed and enforced

(d) have the authority to recommend such measures for legislative action

as may be in the best interests of the County

(e) have all necessary incidental powers to perform and exercise those

duties and functions set forth in this Charter or lawfully delegated

(f) be subject to quo warranto proceedings for any effort, or attempt to

circumvent the provisions of this Charter


115.   Title 335 LACKAWANNA COUNTY HOME RULE CHARTER  states in part, " §

1.16-1611. Continuation. All ordinances, resolutions, rules and regulations in force when

this Charter takes effect, to the extent not in conflict herewith, are hereby continued in

force and effect until amended, repealed, superseded or expired by their own terms.


116.   Title 335 LACKAWANNA COUNTY HOME RULE CHARTER  states in part, "§

1.16-1612. Private Use of Public Employes or Property. No officer or employe of the

county, elected or appointed, shall direct or compel any other officer or employe of the

county to do or perform any private ser vice work outside of his public office or

employment. No officer or employee shall perform any such work during the hours he is

performing as a county employe; nor shall any officer or employe use or devote any

county owned property for any private purpose.

117.   The attorney who signed the May 3, 2006 operating agreement between
Lackawanna County Solid Waste Management Authority and Defendant Louis
Denaples DBA LCRI is attorney Thomas Cummings Jr.. Upon information and belief he
is the only board member and officer of Lackawanna County Solid Waste Management
Authority and he is the same Thomas Cummings jr. who was right in the middle of the
Cordaro and Munchak corruption trial involving inter alia taking bribes over the cell
tower deal that Cummings orchestrated..


118.   In January 2013 Mid-Atlantic Solid waste consultants delivered a report that was
sponsored by the Pennsylvania Department of Environmental Protection through the
Pennsylvania State Association of Township Supervisors, entitled "Recycling Technical
Assistance Project # 508 City of Scranton, Lackawanna County Evaluation of Recycling
Programs for a Financially Distressed Municpality. (RTAP).


119.   In section 2.4 of the RTAP report under, REVIEW OF CONTRACTS it states:
"The City was unable to provide the project team with copies of two contracts; one for
disposal of wastes at the landfill and a second for processing the City's recyclables.
However, detailed discussions were held with the City Department of Public Works
regarding these contracts. The refuse contract is in effect until December 31, 2012. The
current processing contract with the Lackawanna Recycling Center has technically
expired, but the City reported that they have negotiated an extension at the same rate
that also includes a reduction in the tip fee at the landfill.

120.   A cornerstone of public bidding is the concept of a "level playing field" which binds all of the bidders to a common standard which governs all bids that are received.  A common standard implies previously prepared specifications, freely accessible to all competitors, and not written in favor of one particular bidder.  The level playing field is violated whenever the public entity applies a different standard to the bids received, or awards a contract based upon unpublished or unadvertised standards, or otherwise deviates from the published bid instructions and requirements.

121.   The May 3, 2006 operating agreement between Lackawanna County Solid Waste Management Authority and Defendant Louis Denaples DBA  Lackawanna Recycling Center Inc. is an illegal 'sham' contract that violates the principles of a level playing field as defined in  Ezy Parks v. Larson, 499 Pa. 615,  454 A.2d 928 (1982) as said operating agreement was created in violation Pennsylvania bidding laws as competitors should have been allowed to bid for the extremely lucrative right to operate and or lease the Lackawanna County Recycling Center.

122.   In fact The May 3, 2006 operating agreement between Lackawanna County Solid Waste Management Authority and Defendant Louis Denaples DBA  Lackawanna Recycling Center Inc is so contradictory, arbitrary, and ambiguous as to who controls the employees, whether the agreement considers the prisoners employees of the recycling center or the prison, and whether the prison, LCSWMA, or LRCI controls the prisoners while on site, that a reasonable competitor would not even be able to a

ascertain these things to be able to make a proper bid on such a contract therefore

making the contract illegal under the bidding laws.

123.  Plaintiff is aware of at least two other illegal schemes that got their ideas from

Defendants Lackawanna County Solid Waste Management" and Defendant Louis and

Dominick Denaples DBA  Lackawanna Recycling Center Inc..  and have tried to

duplicate them. The first is the well known kids for cash scandal and the 2nd is the cell

tower deal that Cordaro and Munchek went to jail for.

124.  Upon information and belief, it was Denaples bank that financed a depository for

the 2 convicted judges of kids for cash to be able to place their illegal profits in.

However neither the kids for cash scam or the cell tower scam worked for very long

because those individuals *just couldn't do* what Louis Denaples could do under the

protection of the Pennsylvania Mafia Support Policy (PMSP) because they weren't

covered, but the fatal mistake the old Don has made…was letting them try in the first

place which has drawn attention to himself.

125.  An example of one who IS covered by the PMSP would be the blatant Daniel and

the lions den scenario involving Defendant Thomas Cummings Jr. in the midst of the

fiery furnace of the Cordaro and Muchek trial regarding the cell tower corruption deal.

Cummings was involved in orchestrating the whole thing, with **blatant mens rea**

**present**, conspiring to present volunteer extortion victims and or blatantly presenting

people/partners (or clients as he once called them) willing to bribe public officials for

lucrative county contracts, yet Cummings emerged without so much as a singe on his garments.

126.   Defendant Cummings however, was never convicted of anything from his involvement with and creation of the whole cell tower deal because he is one of Defendant Louis Denaples right hand men, the current solicitor of the borough of Dunmore, Denaples home town, a true partner in crime as co signer of the fraudulent illegal operating/lease agreement with the fraudulently created Municipal Government subdivision, Lackawanna County Solid Waste Management Authority and this is just another example of the political power Louis Denaples wields.

127.   The fraudulent  illegal operating/lease agreement between the fraudulently created Municipal Government subdivision, Lackawanna County Solid Waste Management Authority and Louis and Dominick Denaples DBA Lackawanna Recycling Center Inc has allowed Defendant Louis and Dominick Denaples to fraudulently capitalize on the use of cheap prison labor, paid government advertising, tax payer paid equipment, and government grants only municipalities can get to making them millions of dollars a year by shipping the recycled materials to the highest paying out of state buyer which CLEARLY affects interstate commerce.

128.   Defendants Louis and Dominick Denaples are an association in fact enterprise that run several businesses together that are separate from their association in fact enterprise and some of these other businesses have been used to further acts of

racketeering such as D&L Reality seen on a 1999 fraudulent lease agreement as Co-owner with LCSWMA.

129.   Defendants Louis and Dominick Denaples devised a an illegal Racketeering scheme/enterprise (organized money making venture) in 1988 in order to control and monopolize the entire recycling and solid waste industry in North eastern Pennsylvania.

130.   The first predicate act of of Defendants Louis and Dominick Denaples racketeering enterprise was 1). To conspire with Lackawanna County Commissioners Joseph J. Corcoran and Ray A. Alberigi to fraudulently create a Municipal Government subdivision called the Lackawanna County Solid Waste Authority (LCSWMA) that the Denaples brothers could have control over at all times.

131.   In Order to create the fraudulent LCSWMA, The first predicate act of of Defendants Louis and Dominick Denaples racketeering enterprise that injured laintiff, Defendants Louis and Dominick Denaples conspired with County Commissioners Joseph J. Corcoran and Ray A. Alberigi and On December 23, 1988 the first reading of ordinance 60 called **Authorizing and Directing the Incurring of Non-Electoral Debt** was read and on January 14, 1989 it was passed by commissioners Joseph A Corcoran and Ray A. Alberigi and it authorized the incurring of non-electoral debt Of Lackawanna County Pennsylvania in the amount of $8,175,000.00 for inter alia renovation of the County prison facility and the construction of a county solid waste management plant. Commissioner John Senio WISELY abstained from the vote.

132.   The second predicate act of of Defendants Louis and Dominick Denaples

racketeering enterprise was to, **2)**. Simultaneously secure land/property and laundering

said property/money to/through the authority via a fraudulent deed dated 10/16/1989

that transferred the property over to the county (LSWMA) for the sum of $1, provided

the county would complete the building of a recycling center on the property **by**

**January of 1991**, with certain express provisions allowing the Denaples brothers to be

able to buy the property back (even after the authority has spent tax payer money to

build the recycling center on the property)

133.   The third predicate act of of Defendants Louis and Dominick Denaples

racketeering enterprise was to **3)**, convince what appears to be a family owned

company called  OSC Co who owned property next to the Denaples brothers, to lease

their property and/or laundering said property to the authority via a fraudulent deed

dated 10/16/1989 that also transferred the property over to the county (LSWMA) for the

sum of $1, provided the county would complete the building of a recycling center on the

property **by January of 1991**, with certain express provisions allowing the Denaples

brothers to be able to buy the property back (even after the authority has spent tax

payer money to build the recycling center on the property)

134.   The fourth predicate act of Defendants Louis and Dominick Denaples

racketeering enterprise was to **4)**. Incorporate Keystone Landfill **by February of 1991** to

capitalize on their fraudulently created county subdivision, LCSWMA and the Recycling

Center, <u>indirectly,</u> without raising red flags by profiting directly from the recycling center so soon after they created it.

135.   The fifth predicate act of Defendants Louis and Dominick Denaples racketeering enterprise was to **5)** Convincing the county commissioners to use prison labor to run recycling center some time around 1990-1992 so it would be in place when The Denaples brothers took over.

136.   The sixth predicate act of Defendants Louis and Dominick Denaples racketeering enterprise was to **6)**. Donate millions of dollars to bribe and control religious, law enforcement, government, and community establishments, and these dates will be established via discovery.

137.   The seventh predicate act of Defendants Louis and Dominick Denaples racketeering enterprise was to **7)**. Wag the dog in 2004 by directing county officials during Cordaro and Munchak's administration to purposely mismanage the Recycling center/property the LCSWMA  acquired and or controlling the profitability of the recycling center making it look un-profitable to the public, which the paper reported faithfully

138.   The eighth predicate act of Defendants Louis and Dominick Denaples racketeering enterprise was to **8)**.Conspiring with county commissioners Cordaro and others to sell the idea to the public that the recycling center was costing the county

money and Denaples could better manage it, which newspaper articles of 2005 confirm they did

139.   The ninth predicate act of Defendants Louis and Dominick Denaples racketeering enterprise was to **9)**. Conspire with Thomas Cummings to create a fraudulent  illegal operating/lease agreement between Defendant LCSWMA and LRCI, in 2005, and amending it again on May 3, 2006, violating the bidding laws to fair competition and positioning Defendant Louis and Dominick Denaples to fraudulently capitalize on the use of prison labor, paid government advertising via grants, tax payer paid equipment , and government grants only municipalities can get, making them millions of dollars a year, essentially stealing those millions from the citizens of Lackawanna County.

140.   The tenth predicate act of Defendants Louis and Dominick Denaples racketeering enterprise was to **10)** actually obtain and profit from the force and extorted labor of civil child support detainees from 2005 on, in violation of the TVPRA civil remedy encoded at 18 U.S.C. §1595: (1) Forced Labor, defined at 18 U.S.C. §1589, and (2) Involuntary Servitude, Peonage, & Slavery, described at 18 U.S.C. §1590, and the 13th amendment. This act has many more co-conspirators that discovery will reveal but it was primarily carried out, managed and operated by Tom Staff, John Craig, and Todd Frick and defendants **extorted** 63 days of forced labor from Plaintiff  between May 28, 2014 and August 26, 2014 at which time Brian Jeffers began extorting an unlawful debt of money from plaintiff for weekly rent until September 29, 2014.

141.   The eleventh  predicate act of Defendants Louis and Dominick Denaples racketeering enterprise was to **11)** fraudulently <u>receive</u> tax payer bought equipment and government paid advertising via grants only municipalities could get from Governor Ed Rendell's administration, from 2005 on. There were **tv ads** and flyers sent out **via the mail** to thousands who in turn brought their recycling material to the said recycling center where it was processed by plaintiff and others and then shipped across state lines to the highest paying buyer making the Denaples Brothers millions of dollars a year that rightfully belonged to the tax payers and the county, thus plaintiff has been injured by the illegal use of said funds.

142.   The above 11 predicate acts are all acts of intentional fraud with intent to deceive and or defraud the government and the taxpayers, conspiracy, and criminal enslavement in order to extort wage labor from civil detainees such as plaintiff. Said acts clearly describe a scheme/enterprise (organized money making venture) that clearly <u>poses a threat of continuity</u> to defraud the taxpayers of Lackawanna County of money rightfully belonging to them and extorting and enslaving innocent civil child support detainees unable to purge out from under unlawful slavery, peonage, and involuntary servitude under the TVPRA and the 13th amendment. Acts 9, 10, and 11 are still ongoing today.

143.   In violation of 18 U.S.C. §§ 1962 (d), by their intentional acts and omissions Defendants Patrick Loungo, Ed Adams, Richard Gladys, Richard Saxton, trish Corbett, Robert McMillan, Tom Staff, Todd frick, John Craig, Brian Jeffers, Thomas Cummings,

Corey O'Brien, Patrick O'Malley, Gary Dibileo, Jim Wansacz, Sheriff Mark

McAndrew, Andrew Jarbola, Vito P. Geroulo, (LCPB), intentionally conspired to

overlook and ignore plaintiff's complaints and instead, supported Louis and Dominick

Denaples who they knew were in violation of 18 U.S.C. §§ 1962 (b) and (c), and 18

U.S.C. §1595: (1) Forced Labor, defined at 18 U.S.C. §1589, and (2) Involuntary

Servitude, Peonage, & Slavery, described at 18 U.S.C. §1590, and the 13th amendment.


## PLAINTIFF'S INJURIES RESULTING FROM RACKETEERING ENTERPRISE

## AND PENNSYLVANIA MAFIA SUPPORT POLICY


144.   Plaintiff William Burrell Jr. was the victim of a well organized racketeering and

slave labor scheme that was first set in motion by defendants Louis and Dominick

Denaples back in December of 1988.


145.   23 Pa. C.S. § 4345 allows for courts to hold a child support obligor who has the

money to pay child support ("ability to pay") but simply refuses to do so in contempt and

DETAIN that defendant until he agrees to pay the amount he has the ability to pay.

When this occurs the child support obligor has not been given a sentence convicting

him of a crime, he is simply being **DETAINED**  until he complies with a court order to

pay child support.

146.   Plaintiff was a **CIVIL DETAINEE** in the Lackawanna County Jail between

5/14/2014 to 9/29/2014, being held illegally under the falsely asserted pretenses that

he had the ability to pay over $7033 in back child support owed but was simply refusing to do so.

147. Defendants, knowing plaintiff was indigent with no assets or ability to come up with over $7033, severely abused and intentionally abused 23 Pa. C.S. § 4345 and the process of law with intent to enslave plaintiff to work in the Lackawanna Recycling Center to fulfill their obligation under the May 3, 2006 operating agreement between LCSWMA and LRCI.

148. Plaintiff was injured at work, bedridden for 3 weeks, and subsequently fell behind in child support payments. Plaintiff was unable to make payments beyond March 10, 2014 and by April 10, 2014 a warrant for plaintiff's arrest was issued.

149. Upon plaintiff's arrest, the arresting officers, Officers John Doe 1 and Officer John Doe 2, told plaintiff that a hearing notice had been sent to plaintiff at a Dunmore address and plaintiff responded "I have never lived in Dunmore". The officers also told plaintiff that judge Trish Corbett issued the warrant for plaintiff's arrest.

150. Upon information and belief defendant Ed Adams purposely issued the hearing notice to the wrong address in Dunmore PA. and then falsified a warrant request form falsely swearing plaintiff had been given proper notice. Causing an invalid warrant to be issued.

151.   On May 14, 2014, plaintiff was arrested on the warrant for failure to pay child support and taken to the Lackawanna County prison. Plaintiff was then taken to a hearing on may 16, 2014

152.   Plaintiff does not recall being sworn in at his May 16, 2014 hearing and plaintiff's caseworker Ed Adams was not present at the hearing but another man who plaintiff had never dealt with, Defendant Richard Gladys, was present  for Domestic Relations.

153.   Despite Plaintiff providing proper medical evidence that he was unable to comply with the order to pay support and despite Richard Gladys providing no evidence that plaintiff had the ability to comply with the order to pay support, plaintiff was sentenced to two consecutive 6 month sentences by defendant Richard Saxton for alleged violation of 23 Pa. CS § 4345 and ordered to immediate work release.

154.   After plaintiff was taken in shock to the Lackawanna County Prison he learned after speaking with other child support inmates and the prison counselor that he had been sucked into a sentencing frenzy as part of a conspiracy to sentence as many child support defendants as possible in order to supply cheap labor to the Lackawanna County recycling Center in order to make money for the county department of corrections, the prison, and Louis Denaples.

155.   From the time plaintiff was incarcerated on May 14, 2014 plaintiff has suffered severe emotional distress causing his blood pressure to rise as high as 170/110 causing

prison medical staff to recommend permanent medication. Plaintiff has also suffered ptsd after being released from prison.

156.   On or about 5 days after being incarcerated plaintiff was approached by Tom Staff the introduced himself as the "director of the Lackawanna County Prison Recycling Program". Staff told plaintiff is he wanted work release which could lead to getting out of prison early, plaintiff must first work in a recycling being paid $5 per day, for 6 months, which was half of plaintiff's sentence.

157.   Staff told plaintiff that the judge's order stated that plaintiff must first qualify for work release. Plaintiff responded by saying Judge Saxton's ordered plaintiff to immediate work release not recycling.

158.   At that point Staff showed plaintiff part of the judges order which stated "Plaintiff also ordered to immediate work release if he qualifies", and he refused to let plaintiff see the rest of the order. Staff then informed plaintiff that the statement "If he qualifies" meant that plaintiff must first work for 6 months in the recycling center at $5 per day and that would "qualify" plaintiff for immediate work release which can lead to a faster release date if plaintiff gets a job and pays off his purge amount owed.

159.   Plaintiff, stunned by what staff was saying, explained to staff that he believed the statement "If he qualifies" to mean if "If plaintiff's prior work related injuries don't prevent him from working anymore" as that was a main part of plaintiff's hearing.

160.   Staff told plaintiff he did not agree and that plaintiff was "welcome to write the judge but child support prisoners always work at recycling for half their sentence at a pay rate of $5 per day before they can be eligible for work release." Plaintiff responded, "Surely you mean $50 per day like those who work off court costs and fines right? How am I supposed to work off my purge at $5 per day?"

161.   Staff responded saying "It is the prison policy that child support prisoners get paid $5 per day in recycling and work half their sentence in recycling and the other half in work release unless they purge out sooner. Only those prisoners who owe court costs and fines can get paid $50 per day working in recycling".

162.   Plaintiff was devastated to the core upon hearing Staff's explanation of Lackawanna County Prison policy regarding recycling and work release. Realizing there was no other option to get out of prison early and having no way to pay the purge amount owed, under **great** duress, plaintiff submitted to the recycling program but told Staff he would also contact the judge for clarification.

163.   Plaintiff indeed wrote judge Saxton, asking in a "motion for clarification" for the court to clarify that the court intended plaintiff for immediate work release as the word "Immediate" did not coincide with 6 months of prior working in a garbage recycling center at $5 per day. Simultaneous to plaintiff's motion for clarification Staff also

petitioned the court for plaintiff to be transferred to the recycling program for 6 months at $5 per day prior to going in the work release program.

164.   Four days after plaintiff and Staff filed opposing motions plaintiff filed a grievance over the matter and submitted a "Notice of Intent to Sue" to Kate Gavin the prison counselor, who plaintiff then explained the matter to. Plaintiff has never received a response over Defendant Tom Staff forcing plaintiff to go through the recycling center.

165.   Plaintiff explained to Gavin that  he believed that as he was a "Civil child support detainee, and not a criminal defendant and that making plaintiff go through recycling amounted to "slave lobor" as explained in the Notice of intent to sue and that plaintiff believed the program was meant only for criminal defendants.

166.   Upon receiving plaintiff's notice of intent to sue, Gavin then called and left a message for Ed Adams of Domestic relations and Adams then returned Gavins call. Adams informed Gavin that he "wanted plaintiff to first go through the recycling program before work release."

167.   Kate Gavin explained to Adams that plaintiff had filed a motion opposing his participation in recycling to which Adams responded "I know I saw that but the judge always leaves it up to us".

168.   After Kate Gavin and Ed Adams phone conversation, plaintiff, distraught, asked

Gavin, "how is this happening, how can they do this" Gavin responded, "If Louis

Denaples calls up and says I need more workers for the recycling center Tom Staff is

under pressure to fill those spots. I never knew how much corruption was in this system

until I started working here."

169.   The Lackawanna County Recycling Center is a dirty, nasty, demoralizing job for

prisoners to work both on the soda line and position of upper magnet. It is common for

prisoners working on the soda line and upper magnet to get fecal matter, vomit, rotten

rancid juices, and other toxic material all over them while sorting through the bags of

garbage and separating the recycling materials.

170.   The Lackawanna county recycling center loses on average 5 prisoners every

week and not only is there a high turnover rate but because the majority of criminal

inmates now refuse to work at the filthy recycling center, Tom Staff struggles to keep 25

prisoners working there at all times which is the optimum number preferred, and has

thus resorted to coercing child support detainees to work there.

171.   It is well known among Lackawanna County prisoners that Tom Staff rules with

an Iron fist when it comes to transferring a prisoner to recycling. If staff wants a prisoner

in recycling the prisoners know the judges usually always grant his request even over

objections and no one in work release administration will challenge him even if a

prisoner was ordered to immediate work release. Prisoners commonly refer to being

coerced into the nasty recycling center by Staff as having caught "The Staff Infection".

172.   Sure enough on May 22, 2014 the court sided with Staff's petition over plaintiff's

objection and Judge Trish Corbett signed an order for judge Saxton, ordering plaintiff to

the Lackawanna County Community Services Program which Staff explained to plaintiff

is work at the recycling center.

173.   Prior to plaintiff's may 23, 2014 discussion with Kate Gavin, plaintiff filed 1 written

request for his court order and later filed a grievance for not receiving his court orders in

a timely manner for appellate and reconsideration purposes.

174.   Plaintiff finally got a copy of just one of his court orders 7 days after he was

sentenced even though the prison had it on the very first day of his arrival.

175.   The Lackawanna county prison routinely as policy, custom, and practice,

withholds all inmates court sentencing orders and only provides them when an inmate

vigorously requests them via grievance or threat of grievance.

176.   Upon information and belief it was Defendant Richard Gladys who actually

drafted up the courts sentencing order against plaintiff for Defendant Saxton to sign.

Defendant Saxton Unlawfully found plaintiff in willful civil contempt pursuant to 23 Pa.

C.S, § 4345 and unlawfully incarcerated plaintiff under said statute in order to provide cheap labor for Louis and Dominick Denaples DBA LCRI at the recycling center.

177. Plaintiff's first sentencing order case No. 13-DR-543 stated in part: "Now this 16th day of May, 2014, after a contempt hearing before the honorable judge Richard Saxton, and based upon the evidence presented, the court finds that defendant has the ability to pay".

178. Plaintiff's first sentencing order case No. 13-DR-543 also stated in part: "It is hereby ordered and directed that the defendant in the above entitled support action is hereby remanded to the Lackawanna county prison for a period not to exceed 6 months or until further order of court"

179. Plaintiff's first sentencing order case No. 13-DR-543 also stated in part: " It is further ordered and directed that defendant shall be released from the Lackawanna county Prison upon payment of $2129.43 or a lesser amount if agreeable by the domestics officer and/or a wage attachment."

180. Plaintiff's first sentencing order case No. 13-DR-543 also stated in part: " It is also ordered and directed that the defendant is placed on probation for a period of one year to be supervised by the Lackawanna County Domestic relations section. It is also ordered and directed that 2 sentences run consecutively, 1 year, total purge $7033.00. Def. also ordered to immediate work release if he qualifies"

181.   Plaintiff's second sentencing order case No. 11-DR-957 states the exact same thing as sentencing order No. 13-DR-543 except that in the spot where it says $2129.43 for case No. 13-DR-543 it says $4904.79 for sentencing order case No. 11-DR-957.

182.   On may 28, 2014 plaintiff began his first day of forced labor at the Lackawanna County Recycling center owned by LCSWMA and LRCI, after which defendant staff had a copy of both of plaintiff's sentencing orders and some papers for him to sign.

183.   On May 28, 2014 Tom Staff also gave plaintiff a copy of a criminal court order transferring plaintiff into the Lackawanna County Community Services Program. The court order stated in part as follows:  "Commonwealth of Pennsylvania V. William Burrell, In The court of Common Pleas, Criminal Division, County of Lackwanna, case No. 11-DR-957, 13-DR-543, ORDER".

184.   The May 22, 2014 order also stated in part: " An now this 22nd day of May, 2014, It is hereby ordered that the above named individual, presently incarcerated in the Lackawanna county prison, in transferred to the Lackawanna County Prison Community Services Program. This inmate will be residing in Lackawanna County Prison while participating in this program. Violation of program rules will result in termination from the program and return to the prison population."

185.   The May 22, 2014 order also stated in part: " IT IS FURTHER ORDERED That the above named inmate is to be granted work release/house arrest status on 11/11/14 contingent upon positive work ethics and successful completion of the community services program. Violation of any rules and regulations will result in removal from the program and return to the prison population."

186.   The May 22, 2014 order also stated in part: " Pursuant to #62 PS section 2141, if the above named fails to abide by all conditions set by the community service/house arrest/work release program or fails to return to official detention, a bench warrant will be issued for his arrest and escape felony charges will be filed. This order will serve as a temporary bench warrant until formal charges of escape are filed with the county District Attorneys office. By The Court. Corbett for Saxton".

187.   When Tom Staff gave plaintiff a copy of the May 22, 2014 order transferring plaintiff to the community Service program, plaintiff, a civil detainee and not a Duly convicted criminal defendant could see immediately that Staff had fabricated a fictitious criminal order against him as plaintiff has no case against him entitled "Commonwealth Of Pennsylvania V. William Burrell from the criminal division of the court of Common Please."

188.   Beginning on May 28, 2014 plaintiff was legally coerced, the threat of use of legal process, and the threat of legal physical restraint, in order to force plaintiff to work in the

Lackawanna county Recycling Center owned by LCSWMA and Louis and Dominick Denaples DBA as LRCI.

189.   Some of the conditions at the Lackawanna County Recycling center are completely deplorable and harsh to work in. None of the 4 standup urinals worked while plaintiff was forced to work there and only 2 of the 3 toilets worked and they were so disgusting and filthy it was completely unsanitary to sit on them as they had not been cleaned in months, maybe even years.

190.   The Uniform, boots, and gloves given to plaintiff at the recycling center were not sufficient protection from the hazards of the job. As a result of picking through garbage, fecal matter, vomit, rancid juices, and at times toxic materials got on plaintiff's arms creating something prisoners call "trash rash" which is an extremely itchy, burning rash, that lasts all during the work week and fades during the weekends when plaintiff was not working.

191.   On A daily bases while being forced to work at the recycling center plaintiff and other prisoners had glass coming off the conveyer belt smash and splinter all over plaintiff's face and arms. These tiny pieces of glass got lodged in plaintiff's skin and when he wiped away sweat the glass got lodged deeper into plaintiff's skin. On numerous occasions Co's John Craig and Todd Frick ordered a young man in his 20's who was employed by LRCI to supervise plaintiff while plaintiff was forced to pick up garbage and mow lawns outside of and around the recycling center grounds.

192.   The boots given to plaintiff and other inmates to work at the recycling center were badly worn with holes in them and many inmates cut their feet through them on jagged pieces of glass on the floor. The gloves provided at the recycling center were not water or glass resistant and many inmates including plaintiff were cut by glass through their gloves numerous times while working at the recycling center. To this day plaintiff believes he has a piece of glass still lodged in his pinky finger froma deep cut he was unable to get medical attention for while incarcerated.

193.   While working the upper magnet at the recycling center the heat was so unbearable that plaintiff asked corrections officer (CO) John Craig if he could have a fan.  Craig told plaintiff that he is aware that at times it gets as hot as 105 degrees up there but that a fan may trip a breaker and he wasn't sure how to reset it if that happened and thus he left plaintiff and another inmate to labor on in extreme temperatures.

194.   Plaintiff turned out to be one of the best and most trusted workers in the recycling center and was promoted from Soda line to Upper magnet in 3 weeks time. Before he was promoted however plaintiff asked Tom Staff if CO John Craig keeps him informed of inmate progress.

195.   Staff responded to plaintiff saying " as a matter of fact  John does keep me informed of inmates progress. I want you to know that I've been doing this job for 8

years. I think if there was anything unconstitutional about the recycling program that someone would have mentioned it by now. So it's very upsetting when I get a call from John and he tells me that your saying the program violates your rights and is unconstitutional". Plaintiff, feeling highly intimidated, apologized and left the CO office (Bubble).

196.    Upon hearing plaintiff's story and belief that he felt the recycling program violated the 13th amendment and equal protection clause Craig mocked plaintiff saying "Hey, maybe you have a landmark case on your hands".

197.    When inmates on the recycling program awake during the week they eat breakfast at 5:30 a.m.. They go to work and get a 15 minute break at 10am and another 30 minute break for lunch at 12pm where they are given a hoagie, sometimes a handful of chips, and a soda and don't eat again until 5pm. The amount of calories plaintiff got from the food he was given was not enough to sustain plaintiff during the day due to the extremely physically grueling mandatory duties at the recycling center.

198.    On occasion if one of the recyclers leaves a glove or other item in the break room or the soda line does not do a good enough job, all inmates have their handful of potato chips taken away by John Craig as punishment for something done by one. If an inmate forgets to put a window up on the bus inmates travel on to the recycling center, all inmates are forced to ride on the bus in sweltering heat up to roughly 110-115 degrees with all the windows up after the bus sat in the heat all day and inmates had already

labored 8 hours in hot conditions while Craig and the driver sit up front with the air conditioner and the bus drivers window open.

199.   It is the routine, custom, and practice when the line is down at the recycling center, the compactor is full, or there is no trash to separate to leave as many as 20 inmates in a small 12x24 foot room with the doors closed and no air conditioning on hard benches for the entire day.

200.   After every day working at recycling plaintiff was forced to be humiliated and degraded by going through a full strip search where plaintiff was required to strip naked in front of officers, lift his testicles, open his mouth, turn around, bend over, spread buttocks open, cough, and then show the bottoms of his feet. Plaintiff was forced through this cruel and unusual punishment over 80 times. All of this occurred because of the racketeering enterprise started by Louis and Dominick Denaples back in 1988 and the predicate acts committed over time to maintain said enterprise and it was all allowed to continue pursuant to an unconstitutional Pennsylvania Mafia Support Policy (PMSP).

201.   At some point after being legally coerced into working in the recycling center plaintiff wrote Louis Denaples and told him what had happened to him and sent him caselaw showing him how his incarceration was illegal but Denaples did nothing to stop the peonage.

202.   The mandatory recycling policy that plaintiff was legally coerced into is not

statutorily sanctioned by 23 Pa. C.S. § 4345  and the LCSWMA and Louis and Dominick

Denaples DBA as LRCI extort wage labor for their own financial gain, stealing labor that

belongs to plaintiff and to the person who plaintiff owes child support to, making the

person owed have to wait until plaintiff has completed his forced labor sentence before

plaintiff can resume working to continue paying child support again.


203.   In Just the 8 years Tom Staff has been the Lackawanna County prison recycling

director he has saved Louis and Dominick Denaples millions of dollars in minimum

wage labor that the Denaples brothers haven't had to pay and plaintiff is unsure if any

taxes are being paid on any of the wages paid to inmates. Conspicuously, the length of

time since the May 3, 2006 operating agreement between LCSWMA and LRCI was

amended on May 3, 2006, is roughly the same length of time Tom Staff has held his

position.


204.   During the first 3 weeks plaintiff was forced to labor at the recycling center

plaintiff was forced to labor in an extremely hostile work environment with graphic

pornographic pictures plastered on the walls on both sides of the soda line.


205.   During a disagreement with inmate Medina, CO John Craig made him take his

pornographic pictures down as punishment but stood 2 feet in front of inmate

Wannamakers and other explicit hardcore pornographic pictures allowing theirs to stay

up, walking by them and standing next to them on a daily basis, even for the whole 3 weeks plaintiff was in the soda room.

206.   Plaintiff wanted to complain about the pornographic pictures on the walls of the soda room at the recycling center but felt he would be in trouble as Tom Staff had already scolded plaintiff for complaining the recycling program violated his rights. As a result, plaintiff's 1st amendment rights were chilled and plaintiff was forced to endure an extremely hostile labor environment with pornographic pictures plastered right in front of where plaintiff worked for the first 3 weeks before he was promoted out of the soda room.

207.   In fact the hostile work environment was tolerated and promoted at the recycling center because John Craig and Todd frick kept their own stack of pornographic magazines that they looked at in the bubble while inmates worked and that's one of the reasons inmates were told to knock before coming in to ask to use the bathroom. Plaintiff had accidentally walked in once without knocking when Craig was looking at one which he quickly covered up, and plaintiff saw the same stacks remain in the office/bubble for several days.

208.   There is a wide spread problem with certain State of Pennsylvania officials who seem to have an addiction to viewing pornographic materials while working for state run facilities as also noted by the recent PA Supreme Court pornographic email scandal and other state departments involved. Upon information and belief, Defendant Patrick

Loungo was also suspended over emails as well but continues to hold his job with Domestic Relations.

209.   The Lackawanna County Recycling and work release/house arrest program is being used for a trash for cash program exactly like the nationally recognized Kids for Cash racketeering scheme by for two former Lucerne County Judges except in this case it is child support defendants that are being unlawfully herded into these programs after being out of work for some just 2 weeks and some are being incarcerated for 6 months for owing as little as $500.

210.   Conspicuously, only men are being forced to labor in the recycling program and not female inmates. Even though the work release program is a co-ed program and allows inmates to work co-ed jobs, the prison discriminates against men and only forces men to work in the dirty grimy environment simply because they are men.

211.   Defendant Cummings who has conspired to fraudulently benefit from a cell tower deal he orchestrated which was in the center of the Cordaro and Munchak trial, prior to THAT, orchestrated and oversaw the signing of THIS fraudulent operation agreement between LRCI and LCSWMA which he stepped in to represent and he made sure there was a requirement that the prison and the county supply Denaples with prisoners.

212.   As a result, The scheme/enterprise that Defendant Cummings is helping The Denaples Brothers DBA LRCI, and defendants Loungo, Gladys, Adams, Saxton,

Corbett, and Staff with against child support defendants, is so smooth and well oiled, by

the time they are illegally incarcerated because of illegal purge conditions they cannot

meet, many are so traumatized , some are actually thankful they are put into recycling

as it relieves some of the shock and trauma and they see it as their only ticket out of jail

because it makes them eligible for work release half way through their illegal sentence.

213.    But that's just it, what the majority of child support defendants are dooped into

overlooking is that the court is putting them in jail illegally just like the judges in the Kids

for Cash scheme did. They get no due process whatsoever, with no ability to pay their

purge amount they herd them like sheep into jail and through the programs anyway,

with the Denaples brothers, Todd Frick, John Craig, and tom Staff  laughing all the way

to the bank as their jobs depend on the recycling center. Plaintiff believes discovery will

reveal how the others benefit from the scheme.

214.    Plaintiff is part of a class of citizens found in contempt for failure to pay child

support in violation of 23 Pa. C.S. § 4345 and as a result of plaintiff's membership in this

class the defendants harbored animus and malice toward him finding him a good

candidate for illegally detaining plaintiff in Lackawanna County Prison using  unlawful

purge conditions that Defendants Corbett, Saxton, Adams, Loungo,, Gladys, Staff, and

the Denaples brothers knew or should have known plaintiff couldn't meet, in order to

coerce plaintiff into peonage and forced labor at the recycling center.

215.    Plaintiff is also part of a class of INNOCENT citizens who have earnestly been paying child support but when circumstances beyond their control prohibit them from complying with their court order, their mitigating circumstances are ignored and they are immediately sucked up into a sentencing frenzy by a rogue court bent on finding guilt whether it exists or not.

216.    While incarcerated Plaintiff filed inter alia, an objection with the court to the may 22, 2014 order transferring plaintiff to the recycling program telling judge Saxton inter alia that it violated the 13th amendment rights and equal protection rights of plaintiff, that it **EXTORTS  wage from plaintiff and the child's parent,** and that the order wasn't even in conformity with the caption rules of Civil procedure as plaintiff is a civil detainee and not a criminal defendant.  The court to date has never responded to plaintiff's objection, his motion for reconsideration, motion for clarification, request for immediate release, nothing.

217.    Plaintiff filed a "Notice of Intent to Sue" with Patrick lounge the Director of Domestic Relations.  In Plaintiff's Notice of Intent to Sue, plaintiff asked lounge to Read the case of Crystal Orfield V. Charles Weindel, 212 Pa. Super 135; 52 A.3d. 275; 2012, Pa. Super. Lexis 1062.

218.    In plaintiff's Notice of Intent to sue to Patrick Lounge plaintiff stated "you are responsible for a custom, policy, and practice that you are allowing to be carried out…this policy is most vigorously carried out by Ed Adams and Richard Gladys. What

Adams and Gladys are doing is compelling judges to fashion purge conditions that child support defendants cannot meet in violation of PA supreme court case law with no evidence of criminal safeguards."

219.    The Notice to lounge further stated: " Then, once defendants who are only in civil contempt are placed into prison, Adams and Gladys work with Tom Staff (as Gladys writes the orders for Staff to follow) and the family court judges to make sure that all or as many as possible work half their sentencing in recycling before work release, in order to make money for the recycling center and work release program.

220.    Plaintiff explained to Loungo that Domestics by way of legal coercion, in concert with prison officials was forcing civil defendants through recycling in violation of the 13th amendment to the United States Constitution..

221.    The Enterprise to force civil child support defendants into peonage and slave labor at the recycling center targets those unrepresented by attorneys, the legally illiterate, or any represented party the defendants can bully into being a victim of the conspiracy. While incarcerated plaintiff hand wrote a 63 page complaint that is listed on this docket that documents the scheme and predicate acts that further the scheme and gave rise to plaintiff's injuries and plaintiff now refers to that as exhibit "A".

222.    Despite being bedridden for 3 weeks, providing workers compensation doctors orders to stay out of work and into physical therapy to both Domestic Relations, Adams,

Gladys, and Saxton, this plaintiff was not only still found in contempt, but was incarcerated despite being indigent and having no assets and unable to comply with the court order or purge amount.

223.   Pursuant to custom policy and practice, under color of state law, this plaintiff had a kangaroo style hearing lasting no more than 5 minutes, with no time to prepare, no criminal safeguards whatsoever, unable to call witnesses, enter evidence, have a lawyer present, absolutely no due process whatsoever and plaintiff was given a punitive sentence instead of a coercive wage attachment which was the only sentence the court was permitted under the circumstances to give plaintiff.

224.   Defendants lounge, Gladys, Adams, Saxton, and Corbett, show a clear pattern of abuse of 23 Pa. C.S. § 4345 and other legal processes in order to obtain forced labor for the recycling center and force child support obligors into peonage. In fact the Lackawanna county family court has been accused of corruption in the past with federal agents raiding parts of the Court offices leading to the eventual arrest and incarceration of the guardian ad litem Daniel Ross.

225.   A new study in the May/June issue of "Public Administration Review" entitled "The Impact of Public officials corruption on size and Allocation of U.S. State Spending" ranks Pennsylvania the 5th most corrupt state in the nation.  Add to that study the allogations in this complaint that must be taken as true and Pennsylvania just may be the most corrupt state in the United States Of America.

226.    A recent 2014 audit of Lackawanna County Government by former FBI Agent James Seidel, paid for by Lackawanna county, revealed areas of alleged corruption. Two of those areas were the Lackawanna county prison and the recycling center, inter alia the May 3, 2006 operating agreement between LCSWMA and LRCI.

227.    Seidel was the former FBI agent involved in prosecuting Denaples in the 1977 fraud case and also worked with Eric Holder (Current U.S. Attorney General), who back in the early 80's, prosecuted James Osticco for bribing a juror in Denaples 1977 fraud trial. Seidel delivered 2500 pages in 2014 to the Scranton office of the FBI with what he believes is evidence of criminal activity and is distraught as to why nothing has been done about it.

228.    Both Defendant McMillan and Defendant Loungo were aware of plaintiffs letters complaining of said violations in this complaint, his grievances and his Notice of Intent to Sue and defendants chose to ignore said letters and Notice of intent to sue and not even so much as acknowledge plaintiff's concerns about the peonage thus showing their tacit approval to the forcing of plaintiff via physical restraint, the threat of physical restraint, misuse of the legal process, and legal coercion into peonage, involuntary servitude, and forced labor by defendants Adams, Gladys, Saxton, Corbett, Staff, Craig, Frick, and the Denaples brothers.

229.   As a result of the pattern of racketeering and Judicially sanctioned racketeering and slave labor ring plaintiff was denied the care custody and control of his beloved 8 year old son who plaintiff has court ordered shared custody of and is extremely close with. It is proper that plaintiff should pay child support but plaintiff can't pay child support while forced to work at $5 per day in a garbage factory for the convicted felon and billionaire organized criminal, Louis Denaples instead of making money for the person the child support is actually owed to.

230.   There are numerous safety violations in the Lackawanna County Recycling Center. Inmates Brian Haines, Valenta, and Gabriel Lopez have all fallen through the cage and been hurt. Inmate Valenta and this plaintiff have seriously cut their hands through the gloves and there are just too many injuries to mention that occurred as a result of Osha safety violations.

231.   During a bus ride from the recycling center to the prison plaintiff asked John Craig how much money per hour a person should actually be paid to do what plaintiff and the other prison recyclers do, saying $25 per hour?  Craig paused, looked out the window and thought about it for several seconds, then shook his head and solemnly said, "there is no amount of money worth doing what you guys do".

232.   Upon information and belief the Lackawanna County family Court has misused 23 Pa. C.S. § 4345 hundreds of times, Intentionally improperly converting what should be coercive sentences for indigent child support defendants into punitive sentences with

no criminal safeguards. Defendants Saxton and Corbett have been intentionally handing

defendants Loungo, Gladys, Adams, Staff, Mcmillan, and ultimately the Denaples

Brothers favorable rulings violating hundreds, possibly even thousands of litigants

rights.

233.   The County of Lackawanna Pennsylvania is well known for a culture of

corruption that is so bad it is said on the street that "if Mellow didn't take a plea deal,

half  the county and city officials would have gone to jail if he had to testify. Due to the

racketeering schemes and enterprises that the Denaples brothers have cultivated in

Northeastern Pennsylvania Certain Judges in Lackawanna county and it's sister county

Lucerne County have tried to follow suit and have developed either questionable or

completely crafty and illegal ways to abuse the legal process to incarcerate for cash

profiting the counties and private citizens as seen in the Kids for cash Scandal.

234.   All defendants in this complaint have shown a reckless disregard for plaintiffs

rights under color of state or federal law  or in the Denaples brothers case, while acting

in concert with state officials in a symbiotic relationship with state officials, but none

were so verbally blatant about their disregard for plaintiffs constitutional rights than

defendant Tom Staff.

235.   On 3 different occasions Staff attempted to intimidate and chill the exercise of

plaintiff's first amendment rights after plaintiff had complained about what he 'clearly' felt

were matters of great public concern. The first plaintiff mentioned above regarding the

13th amendment and Equal protection, and the 2nd was when plaintiff complained he didn't have access to the law library and he felt inmates due process and access to the court rights were being infringed and Staff scolded Plaintiff for speaking out about it as mentioned in averments 154-157 of plaintiffs 63 page hand written complaint previously filed with the court saying "You like to talk a lot about people on the outside while your on the inside well I don't like you talking like that".

236.   The 3rd and most blatant verbal statement showing a reckless disregard for plaintiff's constitutional rights came minutes after the 2nd as seen in averment 158 of plaintiffs hand written complaint when plaintiff tried very nicely discussing a clear matter of great public concern with Staff which was the very fact that his scolding plaintiff for expressing and speaking out about matters of great public concern chilled his 1st amendment rights to which Staff responded "Fuck you and your constitutional rights! Get out of here with your constitutional rights" and escorted plaintiff out of his office.

237   Not only did other inmates hear Staff say "Fuck you and your constitutional rights! Get out of here with your constitutional rights" but recyclers and work release inmates repeated staff's words to plaintiff and each other for days afterwards.

238.   On 9/14/14 work release CO jack Mcphillips denied plaintiff the right to exercise his religious freedoms and attend church. Mcphillips said he was not allowing plaintiff to attend church because his name was in the yellow due to being behind on his rent of $130 per week to the work release program.

239.   Plaintiff explained to Mcphillips that he just got on work release on 8/26/2014 and that he had already paid $40 of his recycling money toward his rent but he was waiting to get paid from his first check the following Friday from his new job to pay his rent. McPhillips explained to plaintiff that it is the policy of Brian Jeffers, the director of the Work release program, that any work release defendants that are in the yellow for being behind on their rent  are not allowed to attend church.

240.   Plaintiff showed McPhillips the Work release rules and regulations and that there was nothing in there saying he needed to be paid in full on his rent in order to attend church to which McPhillips responded "That is outdated and it is Jeffers policy". Thus the work release program displays much like the trash for cash policy, that it is more concerned with money then rehabilitation with a "Pay To Pray" Policy instituted by Jeffers that violates plaintiffs 1st amendment and due process rights.

241.   Also, plaintiff and all work release residents are only given 1 and ½ hours to attend church service somewhere outside the prison. As a result plaintiff was forced to leave in the middle of service because he had to walk to service which was a distance from the prison and services usually last at least an hour at every church, thus plaintiff was repeatedly denied the full exercise of his religious freedoms by Jack Mcphillips and Brian Jeffers.

242. In fact plaintiff wrote Jeffers asking for relief from the church and furlough requirements and his request were ignored and denied by both Mcphillips and Jeffers,

243. Knowing Plaintiff was desperate to see his 8 year old son who he hadn't seen in nearly 4 months CO McPhillips also denied Plaintiff a furlough to see his son. Mcphillips stated to plaintiff that he was denying plaintiff a furlough with his son because the residence he would be visiting doesn't have a land line telephone, plaintiff was behind on his rent, and plaintiff's cell phone didn't qualify as a proper contact phone under the rules of work release.

244. Though the work release rules do say a residents rent must be paid in full before going on a furlough there is nothing in the rules, furlough application, or sign out sheet that say a a landline is needed at the furlough site.

245. It is a fact that the Lackawanna county Work release Rules and regulations under section 13, Furloughs say a resident must not leave the furlough site and this contradicts the furlough application and rules sheets residents need to fill out 48 hours prior to a furlough which states a resident can leave the site if given permission by a manager on duty.

246. A furlough is no different from a job search that residents go on in that both require the resident to leave the prison for extended periods of time. Work release

residents are permitted to go on job searches with no phone at all as this plaintiff did many times before acquiring a cell phone.

247.   Plaintiff and work release residents are not required to list the landline residents of the jobs they apply for work at and work release has no way of knowing which job sites  a resident is at or at what time residents are at the sites they apply for work at. Thus the Lackawanna county Work release rules and regulations on church attendance and furloughs are not reasonably related to security concerns and more concerned about making money making them arbitrary, contradictory, and capricious, thus they are unconstitutional and void.

248.   Work release residents whose rent is paid in full get to enjoy as much as an 8 hour furlough to visit family but a resident whose rent is unpaid due to no fault of his own cannot attend a 1 and ½  hour church service that he has to leave in the middle of anyway and this discriminates against plaintiff under the equal protection clause as well.

249.   The LCP work release rules violate plaintiffs first amendment rights to attend church and exercise his religious freedoms as well as violate his rights to visit his son under the 14th amendment which also constitutes cruel and unusual punishment towards plaintiff under the 8th amendment for not having his rent paid due to no fault of his own.

250.   All members of the Lackawanna County Prison Board, Corey O'Brien, Patrick
O'Malley, Gary Dibileo, Jim Wansacz, Sheriff Mark McAndrew, Andrew Jarbola, and
Vito P. Geroulo, (LCPB),  were put on notice and knew or should have known of
plaintiff's Notice of Intent To Sue, alleging the recycling program amounted to slave
labor for plaintiff and other civil child support defendants but they refused to provide
plaintiff relief.

251.   During a prison board meeting the week of 9/22/14, every member of the prison
board was asked, "who owns the recycling center" and not one of them could answer,
nor could they answer the same question in the meeting after that, not even District
attorney Andrew Jarbola, because they either claimed they didn't know or they knew
and didn't want to say, so they all agreed they would have to look into it...twice they
said this at both meetings.

252.   All members of the Lackawanna County Prison Board know Louis Denaples and
have a fiduciary duty to plaintiff and the public to know who owns the recycling center
and what the prisons relationship to the recycling center is.

253.   All members of the Lackawanna County Prison Board either know or should
know that Louis Denaples is a convicted felon for defrauding the government and that
he was arrested and charged with perjury for lying about ties to organized crime to
which he took a plea deal for that as well, yet the board, which includes the 3 county
commissioners, the sheriff, the head district attorney, and a judge, allow the prison to

have ties and do business with such an individual and failed to protect plaintiff from Denaples.

254.   Plaintiff filed numerous motions with the court seeking relief from said unlawful slave labor and incarceration including an appeal. However defendant Ed Adams even refused to  process plaintiff's appeal.

255.   Finally after 3 months on recycling plaintiff was mysteriously granted work release. At about the same time plaintiff had retained counsel by writing numerous letters and attorney Joe price Jr. met with plaintiff and determined as well that plaintiff had been given an illegal sentence.

256.   Plaintiff and attorney Joe Price jr met with Ed Adams and Adams still refused to release plaintiff despite having case law that clearly showed him he was holding plaintiff illegally and that he had illegally incarcerated plaintiff. Since Adams knew plaintiff was working, he made Plaintiff stay in jail for almost a month longer until plaintiff could raise $500 at which point Adams took the $500 and allowed plaintiff to purge out of prison on September 29, 2014.

257.   At some point after September 29, 2014 when plaintiff was released from Jail Plaintiff called U.S. attorney Bruce Brandler and he had Special Agent April Phillips of the FBI call plaintiff and plaintiff and Phillips eventually had a meeting.

258.    One of the first things Phillips made clear to plaintiff when they first met was that

she did not want to talk about plaintiff's lawsuit against Louis Denaples and only wanted

to know about information plaintiff had regarding the prison mountain crew being woken

up in the middle of the night and driven to a warehouse in Lucerne County where they

were ordered to secretly shred documents belonging to Robert Cordaro and AJ

Munchak.

259.    Phillips didn't even bring a pen or note pad to the meeting with Plaintiff and

seemed so apathetic that plaintiff commented on it by asking her if she was just so burnt

out from the job that she lost her ambition.

260.    Plaintiff found Phillips so apathetic in her refusal to talk about his lawsuit against

Louis Denaples that plaintiff eventually felt he had to ask her, "So are you saying if I had

evidence that Louis Denaples committed a crime that you wouldn't want to know about

it?"

261.    Eventually Plaintiff was told by special agent April Phillips of the Scranton office

of the FBI that she had reviewed the May 3, 2006 operating agreement between

Lackawanna County Solid Waste Management Authority and Defendants Louis and

Dominick Denaples DBA  Lackawanna Recycling Inc

262.    Upon information and belief, special Agent April Phillips knew when she reviewed

the May 3, 2006 operating agreement between Lackawanna County Solid Waste

management authority and Defendants Louis and Dominick Denaples DBA
Lackawanna Recycling Center Inc., that the agreement not only violated public bidding
law, the Lackawanna County Charter, and other state and federal laws, but Phillips
failed to expose said illegal contract and in fact allowed defendants to continue to
operate in violation of state and federal laws.

263.   Not only did FBI Special Agent April Phillips fail to expose the illegal May 3, 2006
operating agreement between Lackawanna County Solid Waste management authority
and Defendants Louis and Dominick Denaples DBA Lackawanna Recycling Center Inc,
but during a meeting with plaintiff, Phillips, a lawyer as well as an FBI agent, tried to
claim she was unfamiliar with the 13th amendment and the anti-peonage laws under the
Trafficking Victims Protection Reauthorization Act. Plaintiff, flabbergasted, told her he
would email her case law and not to be afraid to look into other laws other than quid pro
quo bribery that said defendants could be guilty of.

264.   FBI Special Agent April Phillips knew or should have known about anti-peonage
laws under the Trafficking Victims Protection Reauthorization Act and her confessed
lack of knowledge of the law is either a deliberate lie or a blatant failure of the FBI to
train Phillips in this area of law.

265.   Had FBI Special Agent April Phillips known or been trained on the 13th
amendment and anti-peonage laws under the Trafficking Victims Protection
Reauthorization Act, she would have known she was obligated after reviewing the May
3, 2006 operating agreement between Lackawanna County Solid Waste management

authority and Defendants Louis and Dominick Denaples DBA  Lackawanna Recycling

Center Inc. to Investigate whether civil or pretrial detainees were being forced to work at

the Lackawanna County Recycling center in violation of those laws.

266.    Had FBI Special Agent April Phillips not been operating pursuant to a

Pennsylvania Mafia Support Policy (PMSP) on behalf of Louis Denaples, and had

Phillips known or been trained on the 13th amendment and anti-peonage laws under the

Trafficking Victims Protection Reauthorization Act and investigated whether civil or

pretrial detainees were being forced to work at the Lackawanna County Recycling

center in violation of those laws, she would have prosecuted Defendants Louis and

Dominick Denaples DBA  Lackawanna Recycling Center Inc. and thus plaintiff and

countless others would not have suffered the injuries described in this complaint.

267.    It is a fact that this type of case, of this magnitude as plaintiff is alleging, has

been needed to be brought in Lackawanna County for a very long time, but as of yet, no

law enforcement agency or prosecuting attorney has had the courage to do so. Plaintiff

has sent both the Pennsylvania Attorney Generals office and the U.S. Justice

Department Notice of Intent to Sue and has asked them to waive Immunity.

## COUNT ONE : VIOLATION OF 18 U.S.C. §§ 1961-68

268.    Plaintiff re-alleges each of the allegations contained in the paragraphs above and

further states as follows:

269.   Defendants Louis and Dominick an association in fact enterprise and/or profit seeking partnership who created several businesses to further their racketeering schemes which include, D&L Reality Co., Keystone Sanitary Landfill, Denaples Auto sales, Lackawanna Recycling Center Inc., and Lackwanna County Solid Waste management Authority., devised another illegal Racketeering scheme/enterprise (organized money making venture) in 1988 in order to control and monopolize the entire recycling and solid waste industry in North eastern Pennsylvania in violation of 18 U.S.C. §§ 1962 (a)(b)(c) and (d). It is so massive plaintiff cannot keep track of all the predicate acts and conspiracies but will start with those alleged herein and let the discovery process reveal the rest.

270.   The first predicate act of of Defendants Louis and Dominick Denaples racketeering enterprise was 1). To conspire with Lackawanna County Commissioners Joseph J. Corcoran and Ray A. Alberigi to fraudulently create a Municipal Government subdivision called the Lackawanna County Solid Waste Authority (LCSWMA) that the Denaples brothers could have control over at all times.

271.   In Order to create the fraudulent LCSWMA, The first predicate act of of Defendants Louis and Dominick Denaples racketeering enterprise that injured laintiff, Defendants Louis and Dominick Denaples conspired with County Commissioners Joseph J. Corcoran and Ray A. Alberigi and On December 23, 1988 the first reading of ordinance 60 called **Authorizing and Directing the Incurring of Non-Electoral Debt** was read and on January 14, 1989 it was passed by commissioners

Joseph A Corcoran and Ray A. Alberigi and it authorized the incurring of non-electoral

debt Of Lackawanna County Pennsylvania in the amount of $8,175,000.00 for inter alia

renovation of the County prison facility and the construction of a county solid waste

management plant. Commissioner John Senio <u>WISELY</u> abstained from the vote.


272.   The second predicate act of of Defendants Louis and Dominick Denaples

racketeering enterprise was to, **2)**. Simultaneously secure land/property and laundering

said property/money to/through the authority via a fraudulent deed that transferred the

property over to the county (LSWMA) for the sum of $1, provided the county would

complete the building of a recycling center on the property **by January of 1991**, with

certain express provisions allowing the Denaples brothers to be able to buy the property

back (even after the authority has spent tax payer money to build the recycling center

on the property)


273.   The third predicate act of of Defendants Louis and Dominick Denaples

racketeering enterprise was to **3)**, convince what appears to be a family owned

company called  OSC Co who owned property next to the Denaples brothers, to lease

their property and/or laundering said property to the authority via a fraudulent deed that

transferred the property over to the county (LSWMA) for the sum of $1, provided the

county would complete the building of a recycling center on the property **by January of

1991**, with certain express provisions allowing the Denaples brothers to be able to buy

the property back (even after the authority has spent tax payer money to build the

recycling center on the property)

274.  The fourth predicate act of Defendants Louis and Dominick Denaples racketeering enterprise was to **4)**. Incorporate Keystone Landfill **by February of 1991** to capitalize on their fraudulently created county subdivision, LCSWMA and the Recycling Center, <u>indirectly,</u> without raising red flags by profiting directly from the recycling center so soon after they created it.

275.  The fifth predicate act of Defendants Louis and Dominick Denaples racketeering enterprise was to **5)** Convincing the county commissioners to use prison labor to run recycling center so it would be in place when he took over.

276.  The sixth predicate act of Defendants Louis and Dominick Denaples racketeering enterprise was to **6)**. Donate millions of dollars to bribe and control religious, law enforcement, government, and community establishments,

277.  The seventh predicate act of Defendants Louis and Dominick Denaples racketeering enterprise was to **7)**. Wag the dog in 2004 by directing county officials during Cordaro and Munchak's administration to purposely mismanage the Recycling center/property the LCSWMA  acquired and or controlling the profitability of the recycling center making it look un-profitable to the public, which the paper reported faithfully

278.   The eighth predicate act of Defendants Louis and Dominick Denaples racketeering enterprise was to **8)**.Conspiring with county commissioners Cordaro and others to sell the idea to the public that the recycling center was costing the county money and Denaples could better manage it, which newspaper articles confirm they did

279.   The ninth predicate act of Defendants Louis and Dominick Denaples racketeering enterprise was to **9)**. Conspire with Thomas Cummings to create a fraudulent  illegal operating/lease agreement between Defendant LCSWMA and LRCI, in 2005, violating the bidding laws to fair competition and positioning Defendant Louis and Dominick Denaples to fraudulently capitalize on the use of prison labor, paid government advertising via grants, tax payer paid equipment , and government grants only municipalities can get, making them millions of dollars a year, essentially stealing those millions from the citizens of Lackawanna County.

280.   The tenth predicate act of Defendants Louis and Dominick Denaples racketeering enterprise was to **10)** actually obtain and profit from the force and <u>extorted</u> <u>labor</u> of civil child support detainees from 2005 on, in violation of the TVPRA civil remedy encoded at 18 U.S.C. §1595: (1) Forced Labor, defined at 18 U.S.C. §1589, and (2) Involuntary Servitude, Peonage, & Slavery, described at 18 U.S.C. §1590, and the 13th amendment. This act has many more co-conspirators that discovery will reveal but it was primarily carried out, managed and operated by Tom Staff, John Craig, and Todd Frick and defendants **extorted** 63 days of forced labor from Plaintiff  between May

28, 2014 and August 26, 2014 at which time Brian Jeffers began extorting an unlawful debt of money from plaintiff for weekly rent until September 29, 2014.

281.   The eleventh  predicate act of Defendants Louis and Dominick Denaples racketeering enterprise was to **11)** fraudulently <u>receive</u> tax payer bought equipment and government paid advertising via grants only municipalities could get from Governor Ed Rendell's administration, from 2005 on. There were **tv ads** and flyers sent out **via the mail** to thousands who in turn brought their recycling material to the said recycling center where it was processed by plaintiff and others and then shipped across state lines to the highest paying buyer making the Denaples Brothers millions of dollars a year that rightfully belonged to the tax payers and the county<u>, thus plaintiff has been injured by the illegal use of said funds.</u>


282.   The above 11 predicate acts are all acts of intentional fraud with intent to deceive and or defraud the government and the taxpayers, conspiracy, and criminal enslavement in order to extort wage labor from civil detainees such as plaintiff. Said acts clearly describe a scheme/enterprise (organized money making venture) that clearly <u>poses a threat of continuity</u> to defraud the taxpayers of Lackawanna County of money rightfully belonging to them and extorting and enslaving innocent civil child support detainees unable to purge out from under unlawful slavery, peonage, and involuntary servitude under the TVPRA and the 13th amendment. Acts 9, 10, and 11 are still ongoing today.

283.   In violation of 18 U.S.C. §§ 1962 (d), by their intentional acts and omissions

Defendants Patrick Loungo, Ed Adams, Richard Gladys, Richard Saxton, trish Corbett,

Robert McMillan, Tom Staff, Todd frick, John Craig, Brian Jeffers, Thomas Cummings,

Corey O'Brien, Patrick O'Malley, Gary Dibileo, Jim Wansacz, Sheriff Mark

McAndrew, Andrew Jarbola, Vito P. Geroulo, (LCPB), intentionally conspired to

overlook and ignore plaintiff's complaints and instead, supported Louis and Dominick

Denaples who they knew were in violation of 18 U.S.C. §§ 1962 (b) and (c), and 18

U.S.C. §1595: (1) Forced Labor, defined at 18 U.S.C. §1589, and (2) Involuntary

Servitude, Peonage, & Slavery, described at 18 U.S.C. §1590, and the 13th amendment.

284.   In violation of 18 U.S.C. §§ 1962 (d) Thomas Cummings stepped in as the

temporary fraudulent chairman of the LCSWMA in order to sign the fraudulent operating

agreement between LCSWMA and Louis and Dominic Denaples DBA LRCI. The

position of chairman of the LCSWMA is so fraudulent that Louis Denaples has simply

had certain people elected as temporary chairman just to carry out certain specific acts

of racketeering and then they resign as chair immediately after and discovery will

expound on this.

285.   Upon information and belief, Defendant April Phillips, and other unknown agents,

In violation of 18 U.S.C. §§ 1962 (d) conspired to support Louis and Dominic Denaples,

an association in fact enterprise and/or profit seeking partnership who created several

businesses to further their racketeering schemes which include, D&L Reality Co.,

Keystone Sanitary Landfill, Denaples Auto sales, Lackawanna Recycling Center Inc., and Lackwanna County Solid Waste management Authority.

285(a). Said FBI agents clearly knew The brothers were guilty of 30 counts of attempted racketeering and successful with 2 counts, 1. the fraudulent sale of one flood truck and 2. the washing of it's title in the Katrina Truck fraud case, but instead conspired to facilitate the Denaples brothers scheme by refusing to prosecuting the brothers, and instead let the Denaples brothers get away with fraud and passed the case over to Marut who they clearly knew was corrupt, seen on surveillance video visiting Denaples, and would bury the case.

286.   Special Agent Phillips and other unknown agents failure to prosecute the Denaples brothers, an association in fact enterprise, who have other businesses they operate apart from their illegal racketeering enterprises, led to the injuries plaintiff complains about in this case. Had said agents  not conspired with The Denaples brothers, said brothers, having been prosecuted for fraud, would not have been able to enslave plaintiff under the fraudulent operating agreement between LCSWMA and LRCI as The Denaples brothers would have been ineligible for such a contract )Which they should have been any way).

287.   Defendant Joseph Marut, who had a jury verdict against him for conspiracy to retaliate against one of his own fellow state troopers, In violation of 18 U.S.C. §§ 1962 (d) also conspired to support Louis and Dominic Denaples, an association in fact

enterprise he clearly knew were guilty of fraud in the Katrina Truck fraud case, but instead refused to uphold the oath he swore of protecting and serving the public, not only letting the Denaples brothers get away with fraud but later going to work for Denaples as head of security at his casino.

288.   Like Marut, Defendant Andrew Jarbola, In violation of 18 U.S.C. §§ 1962 (d) conspired to support Louis and Dominic Denaples, an association in fact enterprise he clearly knew were guilty of fraud in the Katrina Truck fraud case, but instead refused to uphold the oath he swore of protecting and serving the public, Jarbola let the Denaples brothers get away with fraud.

289.   Like Marut, Thomas Marino betrayed the public, In violation of 18 U.S.C. §§ 1962 (d) by conspiring to support Louis and Dominic Denaples, an association in fact enterprise with a recommendation for his gaming license and later lying and saying he had approval to do so. Marino clearly knew The brothers were guilty of fraud in the Katrina Truck fraud case, but instead refused to uphold the oath he swore of protecting and serving the public, not only letting the Denaples brothers get away with fraud but later going to work for Denaples.  Marino's reprehensible actions caused a massive delay in the investigation, causing the Justice department to **recuse the entire office from the Middle District of Pennsylvania**, sending the case to New York where it grew cold, was stalled and came to nothing but handed back to Defendant Joseph Marut who killed it.

290.    Jarbola's, Marino's and Marut's failure to prosecute the Denaples brothers, an association in fact enterprise, who have other businesses they operate apart from their illegal racketeering enterprises, led to the injuries plaintiff complains about in this case. Had Jarbola, Marino, and Marut not conspired with The Denaples brothers, said brothers, having been prosecuted for fraud, would not have been able to enslave plaintiff under the fraudulent operating agreement of May 2006 between LCSWMA and LRCI as The Denaples brothers would have been ineligible for such a contract )Which they should have been any way).

291.    Again, Special Agent Phillips and other unknown FBI agents of the Scranton PA Office, In violation of 18 U.S.C. §§ 1962 (d) conspired to again support Louis and Dominic Denaples, an association in fact enterprise, after being presented with evidence in early 2014 by former Special FBI agent James Seidel of the Fraudulent and racketeering activity by the Denaples brothers concerning the operating agreement between LCSWMA and LRCI regarding the recycling center, said agents clearly knew the Denaples brothers were guilty of fraud and racketeering but again, instead refused to uphold the oath they swore of protecting and serving the public, and let the Denaples brothers get away with fraud, racketeering and criminal enslavement of plaintiff and others.

292.    Again, the failure of Special Agent Phillips and other unknown FBI  agents of the Scranton Pa office, to prosecute the Denaples brothers, an association in fact enterprise, who have other businesses they operate apart from their illegal racketeering

enterprises, led to the injuries plaintiff complains about in this case. Had said agents not conspired with The Denaples brothers, said brothers, having been prosecuted for fraud, racketeering, and illegal slave labor, would not have been able to enslave plaintiff under the fraudulent operating agreement of May, 2006 between LCSWMA and LRCI as The Denaples brothers would have been ineligible for such a contract )Which they should have been any way).

293.   Plaintiff asks the court to confiscate <u>all property</u> used to carry out or in conjunction with said racketeering and slave labor venture, including the <u>Lackawanna County Recycling Center</u> , <u>Keystone Sanitary Land Fill Inc.</u>, Denaples Auto Sales, and all profits from which plaintiff also believes were used to purchase <u>Mount Airy Casino Resort which should be confiscated as well</u>, along with <u>all profits earned</u> as a result of said racketeering activity.

294.   Plaintiff seeks compensatory damages in an amount to be determined at trial with treble damages, and any other such relief the court deems appropriate.

## <u>COUNT ONE: FORCED LABOR 18 U.S.C. § 1589 AND INVOLUNTARY SERVITUDE, PEONAGE, AND SLAVERY 18 U.S.C. §1590</u>

295.   Plaintiff re-alleges each of the allegations contained in the paragraphs above and further states as follows:

296.   23 Pa. C.S. § 4345 allows for courts to hold a child support obligor who has the money to pay child support ("ability to pay") but simply refuses to do so in contempt and DETAIN that defendant until he agrees to pay the amount he has the ability to pay. When this occurs the child support obligor has not been given a sentence convicting him of a crime, he is simply being **DETAINED** until he complies with a court order to pay child support.

297.   Plaintiff was a **CIVIL DETAINEE** in the Lackawanna County Jail between 5/14/2014 to 9/29/2014, being held illegally under the falsely asserted pretenses that he had the ability to pay over $7033 in back child support owed but was simply refusing to do so.

298.   Defendants, knowing plaintiff was indigent with no assets or ability to come up with over $7033,  severely abused and intentionally abused 23 Pa. C.S. § 4345 and the process of law with intent to enslave plaintiff to work in the Lackawanna County Recycling Center to fulfill their obligation under a May, 3, 2006 operating agreement between LCSWMA and LRCI.

299.   Plaintiff has suffered an experience that falls into at least two of the three categories of human trafficking delineated in the TVPRA civil remedy encoded at 18 U.S.C. §1595:

> (1) Forced Labor, defined at 18 U.S.C. §1589.

> (2) Involuntary Servitude, Peonage, & Slavery, described at 18 U.S.C. §1590.

300.   Defendants coerced this labor at the Lackawanna County Recycling Center, which is outside the prison away from any inmate living quarters, through threats of physical restraint against plaintiff and others and threats of use of legal process, stating that those who refuse to perform such meagerly compensated work at $5 per day would be subjected to a longer prison term and subjected to felony escape charges by the Lackawanna County District Attorneys office, run by Defendant Jarbola, if plaintiff or others tried to flee from the forced labor.

301.   Defendants Louis and Dominick Denaples, DBA Lackawanna Recycling Inc and LCSWMI profited and saved costs associated with paying for labor at the recycling center by using the coerced and meagerly compensated labor of plaintiff and other civil inmates, at $5 per day, forcing plaintiff to perform work at the center not related to the normal housekeeping duties of duly convicted criminal inmates, in order to generate millions of dollars a year in profits for the Denaples brothers and $60,000 a year for LCSWMA.

302.   Defendants Ed Adams, Richard Gladys, Richard Saxton, Trish Corbett, Robert McMillan, Tom Staff, Todd Frick, and John Craig, all worked to provide illegal forced labor or services of Plaintiff and others to Louis and Dominick Denables DBA Lackawanna Recycling Center Inc who obtained and received said labor and services in violation of 18U.S.C. § 1589(a)(1).

303.   Defendants Ed Adams, Richard Gladys, Richard Saxton, trish Corbett, Robert

McMillan, Tom Staff, Todd frick, John Craig, Thomas Cummings, Corey O'Brien,

Patrick O'Malley, Gary Dibileo, Jim Wansacz, Sheriff Mark McAndrew, Andrew

Jarbola, Vito P. Geroulo, (LCPB), and Louis and Dominick Denaples all obtained and

maintained said illegal forced labor or services of plaintiff and others  via the threat of

use of legal process and the use of legal process and by means of a scheme, plan, or

pattern, intended to cause the plaintiff and others to believe that if he did not perform

such services he would suffer serious harm or physical restraint in violation of

18 U.S.C. § 1589 (a)(4).


304.   Plaintiffs and others similarly situated were victims of forced labor as defined by

18 U.S.C. § 1589.


305.   Defendants Ed Adams, Richard Gladys, Richard Saxton, trish Corbett, Robert

McMillan, Tom Staff, Todd frick, John Craig, Thomas Cummings, Corey O'Brien,

Patrick O'Malley, Gary Dibileo, Jim Wansacz, Sheriff Mark McAndrew, Andrew

Jarbola, Vito P. Geroulo, (LCPB), and Louis and Dominick Denaples perpetrated the

offense of forced labor against Plaintiff and others in violation of 18 U.S.C. § 1595(a).


306.   Defendants Ed Adams, Richard Gladys, Richard Saxton, trish Corbett, Robert

McMillan, Tom Staff, Todd frick, John Craig, Thomas Cummings, Corey O'Brien,

Patrick O'Malley, Gary Dibileo, Jim Wansacz, Sheriff Mark McAndrew, Andrew

Jarbola, Vito P. Geroulo, (LCPB), and Louis and Dominick Denaples,  participated in a

venture defendants knew or should have known engaged in unlawful coercion of labor in violation of 18 U.S.C. § 1589. And Lackawanna Recycling Center Inc  knowingly benefited financially from said forced labor and upon information and belief others benefitted financially as well from said forced labor.

307.    Defendants Ed Adams, Richard Gladys, Richard Saxton, trish Corbett, Robert McMillan, Tom Staff, Todd frick, John Craig, Thomas Cummings, Corey O'Brien, Patrick O'Malley, Gary Dibileo, Jim Wansacz, Sheriff Mark McAndrew, Andrew Jarbola, Vito P. Geroulo, (LCPB), and Louis and Dominick Denaples are all required to forfeit any  property, profits and earnings, including the recycling center and Keystone Sanitary Landfill acquired from their participation in said scheme  defrauding the government and public, illegally obtaining forced labor for the entire time they have participated in said forced labor in violation of  18 U.S.C. § 1589.

308.    Plaintiff is entitled to recover any reasonable attorneys fees he should incur if he secures counsel during the course of this litigation.  18 U.S.C. § 1595(a) and Plaintiff asks for compensatory and punitive damages in an amount to be determined at trial as well as treble damages, and any other such relief the court deems appropriate.

## COUNT THREE: VIOLATION OF 42 U.S.C § 1983

## COUNT ONE; DUE PROCESS UNDER THE 14TH AMENDMENT

309.    Plaintiff re-alleges each of the allegations contained in the paragraphs above and further states as follows:

310.    Upon information and belief, defendant Adams or Gladys, acting under color of state law, with malice toward plaintiff with a reckless disregard for plaintiff's rights falsified a warrant request form, falsely swearing plaintiff regularly received mail at a Dunmore PA address in violation of plaintiff's substantive and procedural due process rights under the 14th amendment.

311.    Plaintiff asks for compensatory and punitive damages in the maximum amount and treble damages if also permitted and any other such relief the court deems appropriate.

<u>COUNT TWO; DUE PROCESS UNDER THE 14TH AMENDMENT</u>

312.    Plaintiff re-alleges each of the allegations contained in the paragraphs above and further states as follows:

313.    Defendant Jeffers and McPhillips violated plaintiff's <u>procedural</u> due process rights when they failed to provide plaintiff with a hearing and an opportunity to be heard before depriving him of his religious rights under the 1st amendment  to attend church. Said defendants acted with malice under color of state law with a reckless disregard for plaintiff's rights under the 1st and 8th amendment by refusing to allow plaintiff to exercise his right to attend church.

314.    Defendant Jeffers and McPhillips violated plaintiff's <u>substantive</u> due process rights to a fair decision maker as defendants decision to deny plaintiff the right to

attend church was biased on a "Pay to Pray" money making scheme that was part of a larger racketeering and slave labor scheme that both defendants knew or should have known they were a part of as plaintiff could not go to church until he paid them money violating plaintiff's 1st and 8th amendment rights. Said defendants acted with malice under color of state law with a reckless disregard for plaintiff's rights under the 1st and 8th amendment

315.   Plaintiff asks for compensatory and punitive damages in the maximum amount and treble damages if also permitted and any other such relief the court deems appropriate.

<u>COUNT THREE: DUE PROCESS UNDER THE 14TH AMENDMENT</u>

316.   Plaintiff re-alleges each of the allegations contained in the paragraphs above and further states as follows:

317.   Defendant Jeffers and McPhillips violated plaintiff's Substantive and procedural due process rights by denying plaintiff furlough visits with his beloved 8 year old son without a hearing and opportunity to be heard based in violation of plaintiff's property interests under the 14th amendment to the care and enjoyment of familial relationship with his son. Said defendants acted with malice under color of state law with a reckless disregard for plaintiff's rights under the 14th and 8th amendments and plaintiff has suffered damages.

318.   Plaintiff asks for compensatory and punitive damages in the maximum amount and treble damages if also permitted and any other such relief the court deems appropriate.

## COUNT FOUR: DUE PROCESS UNDER THE 14TH AMENDMENT

319.   Plaintiff re-alleges each of the allegations contained in the paragraphs above and further states as follows:

320.   Defendant Gladys compelled defendant Saxton to ignore exculpatory evidence of plaintiff's doctors orders ordering him off work and into physical therapy, proving plaintiff was unable to comply with the court order.

321.   Gladys and Saxton, acting under color of state law found plaintiff in civil contempt without affording him any procedural due process whatsoever such as the right to counsel, witnesses, examining evidence,. Saxton and Gladys were biased violating plaintiffs substantive due process rights as their intent was to enslave plaintiff in the recycling center for Denaples based on hearsay in violation of 23 Pa. C.S. § 4345, using the 3 code words for their illegal recycling program stating, "If he qualifies".

322.   Plaintiff asks for compensatory and punitive damages in the maximum amount and treble damages if also permitted and any other such relief the court deems appropriate.

## COUNT FIVE: DUE PROCESS UNDER THE 14TH AMENDMENT

323.   Plaintiff re-alleges each of the allegations contained in the paragraphs above and further states as follows:

324.   Defendants Staff and McMillan, under color of State law, pursuant to custom, practice, and policy, refused to provide plaintiff with copies of his court orders in a timely enough manner so plaintiff could file timely post judgment motions.

325.   5.(A) Defendant Adams, simply flat out refused to process plaintiff's Notice of appeal and his IFP affidavit to proceed without fees to the Superior Court Of Pennsylvania.

326.   Defendant Staff told plaintiff that he speaks with defendant Adams on a regular basis regarding inmates and had spoken to him about plaintiff more than once and would continue to try to reach Mr. Adams and discuss the status of plaintiff's case.

327.   Defendants Staff, Mcmillan who ignored plaintiff's grievances, and Adams worked in concert together with malice under color of state law with intent to enslave plaintiff violating both his substantive and procedural due process rights.

328.   Plaintiff asks for compensatory and punitive damages in the maximum amount and treble damages if also permitted and any other such relief the court deems appropriate.

## COUNT SIX: VIOLATION OF 13TH AMENDMENT

329.   Plaintiff re-alleges each of the allegations contained in the paragraphs above and further states as follows:

330.   23 Pa. C.S. § 4345 allows for courts to hold a child support obligor who has the money to pay child support ("ability to pay") but simply refuses to do so in contempt and DETAIN that defendant until he agrees to pay the amount he has the ability to pay. When this occurs the child support obligor has not been given a sentence convicting him of a crime, he is simply being **DETAINED**  until he complies with a court order to pay child support.

331.   Plaintiff was a **CIVIL DETAINEE** in the Lackawanna County Jail between 5/14/2014 to 9/29/2014, being held illegally under the falsely asserted pretenses that he had the ability to pay over $7033 in back child support owed but was simply refusing to do so.

332.   Defendants, knowing plaintiff was indigent with no assets or ability to come up with over $7033,  severely abused and intentionally abused 23 Pa. C.S. § 4345 and the process of law with intent to enslave plaintiff to work in the Lackawanna County Recycling Center to fulfill their obligation under the May 3, 2006 operating agreement between LCSWMA and LRCI.

333.   Defendants coerced this labor at the Lackawanna County Recycling Center, which is outside the prison away from any inmate living quarters, through threats of physical restraint against plaintiff and others and threats of use of legal process, stating that those who refuse to perform such meagerly compensated work at $5 per day would be subjected to a longer prison term and subjected to felony escape charges by the Lackawanna County District Attorneys office, run by Defendant Jarbola, if plaintiff or others tried to flee from the forced labor.

334.   Defendants Louis and Dominick Denaples, DBA Lackawanna Recycling Inc and LCSWMI profited and saved costs associated with paying for labor at the recycling center by using the coerced and meagerly compensated labor of plaintiff and other civil inmates, at $5 per day, forcing plaintiff to perform work at the center not related to the normal housekeeping duties of duly convicted criminal inmates, in order to generate

millions of dollars a year in profits for the Denaples brothers and $60,000 a year for LCSWMA.

335.   Defendants Ed Adams, Richard Gladys, Richard Saxton, Trish Corbett, Robert McMillan, Tom Staff, Todd Frick, and John Craig, all worked to provide illegal forced labor or services of Plaintiff and others to Louis and Dominick Denables DBA Lackawanna Recycling Center Inc who obtained and received said labor and services in violation of the 13th amendment to the United States Constitution.

336.   Defendants Ed Adams, Richard Gladys, Richard Saxton, trish Corbett, Robert McMillan, Tom Staff, Todd frick, John Craig, Thomas Cummings, Corey O'Brien, Patrick O'Malley, Gary Dibileo, Jim Wansacz, Sheriff Mark McAndrew, Andrew Jarbola, Vito P. Geroulo, (LCPB), and Louis and Dominick Denaples all obtained and maintained said illegal forced labor or services of plaintiff and others  via the threat of use of legal process and the use of legal process and by means of a scheme, plan, or pattern, intended to cause the plaintiff and others to believe that if he did not perform such services he would suffer serious harm or physical restraint in violation of the 13th amendment to the United States Constitution.

337.   Plaintiffs was a victim of forced labor as defined by the 13th amendment to the United States Constitution.

338.   Defendants Ed Adams, Richard Gladys, Richard Saxton, trish Corbett, Robert

McMillan, Tom Staff, Todd frick, John Craig, Thomas Cummings, Corey O'Brien,

Patrick O'Malley, Gary Dibileo, Jim Wansacz, Sheriff Mark McAndrew, Andrew

Jarbola, Vito P. Geroulo, (LCPB), and Louis and Dominick Denaples perpetrated the

offense of forced labor against Plaintiff and others in violation of the 13th amendment to

the United States Constitution.

339.   Defendants Ed Adams, Richard Gladys, Richard Saxton, trish Corbett, Robert

McMillan, Tom Staff, Todd frick, John Craig, Thomas Cummings, Corey O'Brien,

Patrick O'Malley, Gary Dibileo, Jim Wansacz, Sheriff Mark McAndrew, Andrew

Jarbola, Vito P. Geroulo, (LCPB), and Louis and Dominick Denaples,  participated in a

venture defendants knew or should have known engaged in unlawful coercion of labor

in violation of the 13th amendment to the United States Constitution.. And Lackawanna

Recycling Center Inc  knowingly benefited financially from said forced labor and upon

information and belief others benefitted financially as well from said forced labor.

340.   Defendants Ed Adams, Richard Gladys, Richard Saxton, trish Corbett, Robert

McMillan, Tom Staff, Todd frick, John Craig, Thomas Cummings, Corey O'Brien,

Patrick O'Malley, Gary Dibileo, Jim Wansacz, Sheriff Mark McAndrew, Andrew

Jarbola, Vito P. Geroulo, (LCPB), and Louis and Dominick Denaples are all required to

forfeit any  profits and earnings from their participation in said scheme illegally obtaining

forced labor for the entire time they have participated in said forced labor in violation of

the 13th amendment to the United States Constitution.

341.   Plaintiff is entitled to recover any reasonable attorneys fees he should incur if he secures counsel during the course of this litigation and Plaintiff asks for compensatory and punitive damages in the maximum amount and treble damages if also permitted and any other such relief the court deems appropriate.

## COUNT SEVEN: VIOLATION OF 1ST AMENDMENT

342.   Plaintiff re-alleges each of the allegations contained in the paragraphs above and further states as follows:

343.   Defendant Staff chilled and violated Plaintiff's 1st amendment rights on 3 different occasions by scolding him for complaining about matters of great public concern. 1. When plaintiff complained to CO Craig that the recycling program violated his 13th amendment and equal protection rights which caused plaintiff intimidation and making him afraid to complain about the pornographic pictures and hostile labor environment at the recycling center.

344.   Plaintiff was thus forced to endure said hostile work environment for weeks because Staff intentionally discriminated against plaintiff with malice under color of state law with a reckless disregard to plaintiff's rights under the 1st amendment.

345.   2. When plaintiff was trying to politely say it wasn't right to be denied access to the law library (not to mention they left the copying and printer machine broken for over a month) and Staff scolded him saying ""You like to talk a lot about people on the outside while your on the inside well I don't like you talking like that".

346.    3. When Plaintiff tried to politely speak to Staff about his concerns Staff was

chilling his 1st amendment rights Staff scolded Plaintiff again humiliating plaintiff in front

of the entire recycling and work release prison block stating "Fuck you and your

constitutional rights! Get out of here with your constitutional rights" and escorted plaintiff

out of his office.

347.    Not only did other inmates hear Staff say "Fuck you and your constitutional

rights! Get out of here with your constitutional rights" but recyclers and work release

inmates repeated staff's words to plaintiff and each other for <u>days</u> afterwards. Plaintiff

heard one inmate joke using a popular commercial phrase he turned around saying,

"Hey, I don't always violate constitutional rights, but when I do, I say "Fuck you and your

constitutional rights!".

348.    Plaintiff asks for compensatory and punitive damages in the maximum amount

and treble damages if also permitted and any other such relief the court deems

appropriate.

## COUNT EIGHT: VIOLATION OF 1ST AMENDMENT

349.    Plaintiff re-alleges each of the allegations contained in the paragraphs above and

further states as follows:

350.    1. Defendant Jeffers and Mcphillips violated plaintiff's 1st amendment right to

attend church based on a "Pay to Pray" money making scheme that was part of a

larger racketeering and slave labor scheme that both defendants knew or should have

known they were a part of as plaintiff could not go to church until he paid them money

violating plaintiff's 1st amendment right. Said defendants acted with malice under color of state law with a reckless disregard for plaintiff's rights under the 1st amendment.

351.   2. Defendant Jeffers and Mcphillips violated plaintiff's 1st amendment right to attend church by not even giving defendant enough time to attend a full service. violating plaintiff's 1st amendment right. Said defendants acted with malice under color of state law with a reckless disregard for plaintiff's rights under the 1st amendment.

352.   Plaintiff asks for compensatory and punitive damages in the maximum amount and treble damages if also permitted and any other such relief the court deems appropriate

## COUNT NINE: VIOLATION OF 4TH AMENDMENT

353.   Plaintiff re-alleges each of the allegations contained in the paragraphs above and further states as follows:

354.   Defendant Gladys or Adams falsely filled out a warrant request form falsely swearing that plaintiff had been given proper notice of a contempt hearing at a Dunmore  address plaintiff regularly gets mail at. Thus Gladys or Adams caused an invalid warrant to issue which caused the unlawful seizure and arrest of plaintiff  and said seizure and arrest was carried out by officers John Doe 1 and officer John Doe 2 in violation of plaintiff's  4th amendment rights.

355.   Plaintiff tried to explain to the arresting officers that they were making a mistake, asking who issued the warrant, telling them he had never lived in Dunmore or ever

received mail in Dunmore and that they were making a mistake, but said officers would not listen to plaintiff only saying it was judge Corbett who issued the warrant.

356.   Said defendants acted with malice under color of state law with a reckless disregard for plaintiff's rights under the 4th amendment and they worked in concert together with intent to enslave plaintiff to work in the Lackawanna Recycling Center.

357.   Plaintiff asks for compensatory and punitive damages in the maximum amount and treble damages if also permitted and any other such relief the court deems appropriate.

<u>COUNT TEN: VIOLATION OF 8TH AMENDMENT</u>

358.   Plaintiff re-alleges each of the allegations contained in the paragraphs above and further states as follows:

359.   1. With criminal intent to enslave plaintiff in the Lackawanna Recycling Center, with malice under color of state law, Defendant Gladys and Saxton conspired to violate plaintiff's 8th amendment rights to be free from cruel and unusual punishment by acting in concert to put plaintiff through a kangaroo style hearing with absolutely no criminal safeguards which was their custom policy and practice.

360.   Saxton illegally sentenced plaintiff to 2 six month consecutive sentences with purge conditions he knew plaintiff couldn't meet, using code words "If he qualifies", that Staff, Jeffers, Corbett, and McMillan all knew meant plaintiff must do 6 months hard labor at the recycling center making money for Denaples.