## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM BURRELL JR., | |
| Plaintiff, | CIVIL ACTION NO. 3:14-cv-01891 |
| v. | (MARIANI, J.) |
| | (SAPORITO, M.J.) |
| PATRICK LOUNGO, et al., | |
| Defendants. | |

## <u>REPORT AND RECOMMENDATION</u>

This is an *in forma pauperis* civil action, brought by the *pro se* plaintiff, William Burrell Jr., against an assortment of twenty-four named defendants—most of them government officials of one sort or another—seeking damages and disgorgement or forfeiture of certain property and profits derived from or used in furtherance of an allegedly illegal racketeering enterprise. The amended complaint is before us for screening pursuant to 28 U.S.C. § 1915(e)(2), and for the reasons set forth below, we recommend that it be dismissed for lack of subject matter jurisdiction, as frivolous, for failure to state a claim upon which relief can be granted, and for seeking monetary relief against defendants who are immune from such relief.

## I. STATEMENT OF THE CASE

Burrell filed his handwritten 63-page original complaint in this matter on September 29, 2014. (Doc. 1). He filed his typed 115-page amended complaint as a matter of course on December 19, 2014. (Doc. 11). *See generally* Fed. R. Civ. P. 15(a)(1). In the amended complaint, Burrell has asserted several federal civil rights claims under 42 U.S.C. § 1983 and 42 U.S.C. § 1985, federal statutory tort claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. §§ 1589, 1590, 1595, and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, and state-law claims for negligent and intentional infliction of emotional distress, negligence, false arrest, false imprisonment, abuse of process. The amended complaint names twenty-four defendants, and the caption references additional unknown or "John Doe" defendants. Two federal officials are sued in both their individual and official capacities; all other defendants are sued in their individual capacities only.

A full roster of the twenty-four named defendants follows:

(1) Patrick Loungo, Richard Gladys, and Ed Adams—officials with the Lackawanna County Domestic Relations Office;

(2) Hon. Richard Saxton and Hon. Trish Corbett—judges on the Lackawanna County Court of Common Pleas;

(3) Joseph Marut—a major with the Pennsylvania State Police;

(4) Andrew Jarbola—District Attorney for Lackawanna County and a member of the Lackawanna County Prison Board;

(5) Corey O'Brien, Patrick O'Malley, Gary Dibileo, Jim Wansacz, Sheriff Mark McAndrew, and Hon. Vito P. Gerulo—members of the Lackawanna County Prison Board;

(6) Robert McMillan—Warden of the Lackawanna County Prison;

(7) Tom Staff—the director of the Lackawanna County Prison Recycling Center;

(8) Brian Jeffers, Jack McPhillips, Todd Frick, and John Craig— officials with the Lackawanna County Prison Work Release Program;

(9) Louis and Dominick Denaples—co-owners of Lackawanna Recycling Center Inc., Keystone Sanitary Landfill, and D&L Realty Inc.;

(10) Lackawanna Recycling Center Inc.—a Pennsylvania corporation allegedly owned by Louis and Dominick Denaples;

(11) April Phillips—a special agent with the Federal Bureau of Investigation, sued in both her individual and official capacities; and

(12) Thomas Marino—United States Attorney for the Middle District of Pennsylvania, sued in both his individual and official capacities.

In the amended complaint, Burrell alleges the existence of a broad conspiracy involving the Lackawanna County Domestic Relations

Office, the Lackawanna County Court of Common Pleas, Lackawanna County Prison, and the Lackawanna Recycling Center. He claims that the defendants are all part of an extensive conspiracy or racketeering enterprise designed to furnish cheap labor to the privately owned recycling center. He claims that the state court and its domestic relations office routinely manipulate child support enforcement proceedings to obtain civil contempt findings against men who are financially unable to meet their child support obligations without providing adequate notice of contempt charges or an adequate opportunity to respond, and then to sentence them to be incarcerated as civil contemnors at Lackawanna County Prison, where they are assigned to work at the recycling center in substandard conditions and for meager pay.

Burrell claims that this prison work assignment amounts to forced labor or involuntary servitude in violation of the TVPA and the Thirteenth Amendment to the United States Constitution, and that it also constituted cruel and unusual punishment in violation of the Eighth Amendment. He claims that the child support enforcement proceedings leading up to the civil contempt finding and sentence

violated his substantive and procedural due process rights under the Fourteenth Amendment. He claims that, when he objected to the work assignment, he was "scolded" in retaliation for the exercise of his First Amendment rights. He claims that the fact that only men were assigned to work at the recycling center violated his equal protection rights under the Fourteenth Amendment. He claims that his constitutional rights were violated by prison officials who failed to provide him with copies of court orders in his child support enforcement proceedings quickly enough for him to file unspecified post-judgment motions. He claims that the various actors involved in his child support enforcement proceedings and his prison work assignment were involved in a conspiracy to violate his civil rights and an illegal racketeering enterprise. He further claims that the failure of federal law enforcement agents and federal prosecutors to criminally investigate and prosecute these individuals was negligent and implicated them as participants in the conspiracy and the racketeering enterprise.

Burrell worked for 63 days over a three-month period at the recycling center before he was reassigned to the prison's work-release program. Burrell claims that work-release officials violated his

constitutional rights when they refused to grant him a 1-1/2 hour furlough to attend church on his first Sunday in the work-release program, and when they subsequently denied his request for a furlough to visit with his eight-year old son.

## II.  LEGAL STANDARDS

### A. Rule 12(b)(1) of the Federal Rules of Civil Procedure

Although the federal officer defendants have not yet been served with the complaint in this action, the Court is permitted to raise the issue of subject matter jurisdiction *sua sponte*. *See Liberty Mut. Ins. Co. v. Ward Trucking Corp.*, 48 F.3d 742, 750 (3d Cir. 1995) ("Federal courts have an ever-present obligation to satisfy themselves of their subject matter jurisdiction and to decide the issue *sua sponte* . . . ."); *Johnson v. United States*, Civil No. 1:CV-08-0816, 2009 WL 2762729, at *2 (M.D. Pa. Aug. 27, 2009). Here it is clear from the amended complaint that Burrell has failed to exhaust administrative remedies with respect to his FTCA claims, and thus we find it appropriate to recommend *sua sponte* dismissal for lack of jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

The plaintiff bears the burden of establishing the existence of

subject matter jurisdiction under Rule 12(b)(1). *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). A defendant may challenge the existence of subject matter jurisdiction in one of two fashions: it may attack the complaint on its face or it may attack the existence of subject matter jurisdiction in fact, relying on evidence beyond the pleadings. *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Where a defendant attacks a complaint as deficient on its face, "the court must consider the allegations of the complaint as true." *Mortensen*, 549 F.2d at 891. "In deciding a Rule 12(b)(1) facial attack, the court may only consider the allegations contained in the complaint and the exhibits attached to the complaint; matters of public record such as court records, letter decisions of government agencies and published reports of administrative bodies; and 'undisputably authentic' documents which the plaintiff has identified as a basis of his claims and which the defendant has attached as exhibits to his motion to dismiss." *Medici v. Pocono Mountain Sch. Dist.*, No. 09-CV-2344, 2010 WL 1006917, at *2 (M.D. Pa. Mar. 16, 2010). However, when a motion to dismiss attacks the existence of

subject matter jurisdiction in fact, "no presumptive truthfulness attaches to plaintiff's allegations," and "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen*, 549 F.2d at 891. This case falls into the former category.

### B. The *In Forma Pauperis* Statute

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss an action brought *in forma pauperis* if it is "frivolous." See 28 U.S.C. § 1915(e)(2)(B)(i). Under this statute, an *in forma pauperis* action may be dismissed *sua sponte* for frivolousness "at any time," before or after service of process. *See* 28 U.S.C. § 1915(e)(2); *Walker v. Sec. Office of SCI Coal Twp.*, Civil No. 3:CV-08-1573, 2010 WL 1177338, at *4 (M.D. Pa. Mar. 25, 2010). An action is "frivolous where it lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see also Thomas v. Barker*, 371 F. Supp. 2d 636, 639 (M.D. Pa. 2005). To determine whether it is frivolous, a court must assess a complaint "from an objective standpoint in order to determine whether the claim is based on an indisputably meritless legal theory or clearly baseless factual contention." *Deutsch v. United States*, 67 F.3d 1080,

1086 (3d Cir. 1995) (citing *Denton v. Hernandez*, 504 U.S. 25, 34 (1992));

*Thomas*, 371 F. Supp. 2d at 639. Factual allegations are "clearly

baseless" if they are "fanciful," "fantastic," or "delusional." *See Denton*,

504 U.S. at 32–33. "[A] finding of factual frivolousness is appropriate

when the facts alleged rise to the level of the irrational or the wholly

incredible, whether or not there are judicially noticeable facts available

to contradict them." *Id.* at 33. A district court is further permitted, in its

sound discretion, to dismiss a claim "if it determines that the claim is of

little or no weight, value, or importance, not worthy of serious

consideration, or trivial." *Deutsch*, 67 F.3d at 1089.

The *in forma pauperis* statute further mandates that a court

"shall dismiss the case at any time if the court determines that . . . the

action . . . fails to state a claim on which relief may be granted." 28

U.S.C. § 1915(e)(2)(B)(ii). "The legal standard for dismissing a

complaint for failure to state a claim under § 1915(e)(2) is the same as

that for dismissing a complaint pursuant to Fed. R. Civ. P. 12(b)(6)."

*Brodzki v. Tribune Co.*, 481 Fed. App'x 705, 706 (3d Cir. 2012) (per

curiam). Rule 12(b)(6), in turn, authorizes a defendant to move to

dismiss for "failure to state a claim upon which relief can be granted."

Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). Although the Court must accept the allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). In deciding a Rule 12(b)(6) motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

Finally, the *in forma pauperis* statute mandates that a court "shall dismiss the case at any time if the court determines that . . . the action . . . seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(iii).

III.   **DISCUSSION**

Burrell has asserted twenty separate causes of action:

1.   A RICO claim for damages and equitable relief against all defendants, alleging the existence of a corrupt organization designed to channel domestic relations defendants into forced labor;[1]

2.   A TVPA claim for damages against all defendants except Marut, Phillips, and Marino, alleging the illegal use of incarcerated civil contemnors as forced labor at the recycling center;[2]

3.   A § 1983 claim for damages against Adams and Gladys, alleging the use of a false probable cause statement to obtain a civil contempt arrest warrant against Burrell, in violation of his due process rights;[3]

4.   A § 1983 claim for damages against Jeffers and McPhillips, alleging that they denied Burrell's request for a furlough from work-release to attend church, in violation of his due process rights;[4]

5.   A § 1983 claim for damages against Jeffers and McPhillips, alleging that they denied Burrell's request for a furlough from

---

[1] Labeled "COUNT ONE: VIOLATION OF 18 U.S.C. §§ 1961-68."

[2] Labeled "COUNT ONE: FORCED LABOR 18 U.S.C. § 1589 AND INVOLUNTARY SERVITUDE, PEONAGE, AND SLAVERY 18 U.S.C. § 1590."

[3] Burrell has grouped all of his federal civil rights claims under the label "COUNT THREE: VIOLATION OF 42 U.S.C. § 1983" with each claim set forth under a separate sub-label. This particular civil rights claim is labeled "COUNT ONE: DUE PROCESS UNDER THE 14TH AMENDMENT."

[4] Labeled "COUNT TWO: DUE PROCESS UNDER THE 14TH AMENDMENT."

work-release to visit with his eight-year-old son, in violation of his due process rights;[5]

6. A § 1983 claim for damages against Gladys and Judge Saxton, alleging that they ignored exculpatory evidence in charging and finding Burrell in civil contempt, in violation of his due process rights;[6]

7. A § 1983 claim for damages against Staff and McMillan, alleging that they failed to provide Burrell with copies of his court orders in a timely fashion, in violation of his constitutional right of access to courts;[7]

8. A § 1983 claim for damages against all defendants except Marut, Phillips, and Marino, alleging the use of incarcerated civil contemnors as forced labor at the recycling center, in violation of his Thirteenth Amendment right to be free from involuntary servitude;[8]

9. A § 1983 claim for damages against Staff, alleging that Staff scolded Burrell when he complained about his assignment to the recycling center work detail, in retaliation for the exercise

---

[5] Labeled "COUNT THREE: DUE PROCESS UNDER THE 14TH AMENDMENT."

[6] Labeled "COUNT FOUR: DUE PROCESS UNDER THE 14TH AMENDMENT."

[7] Labeled "COUNT FIVE: DUE PROCESS UNDER THE 14TH AMENDMENT." Although the basis of the right of access to the courts has been described as "unsettled," with different court decisions grounding it in different constitutional provisions, *see Christopher v. Harbury*, 536 U.S. 403, 415 & n.12 (2002), in the Third Circuit, courts have considered these claims under the Substantive Due Process Clause of the Fourteenth Amendment. *See Estate of Smith v. Marasco*, 318 F.3d 497, 511 (3d Cir. 2003); *Kuniskas v. Walsh*, Civil Action No. 3:09-CV-120, 2010 WL 1390870, at *4 n.1 (M.D. Pa. Apr. 1, 2010).

[8] Labeled "COUNT SIX: VIOLATION OF THE 13TH AMENDMENT."

of his First Amendment rights;[9]

10. A § 1983 claim for damages against Jeffers and McPhillips, alleging that they denied Burrell's request for a furlough from work-release to attend church, in violation of his First Amendment free exercise rights;[10]

11. A § 1983 claim for damages against Gladys and Adams, alleging the use of a false probable cause statement to obtain a civil contempt arrest warrant against Burrell, in violation of his Fourth Amendment right to be free from unreasonable seizures;[11]

12. A § 1983 claim for damages against all defendants except Marut, Phillips, and Marino, alleging that the civil contempt proceedings that resulted in Burrell's incarceration, the work conditions at the recycling center while he was incarcerated, and a scheme to channel domestic relations defendants into forced labor at the recycling center, constituted cruel and unusual punishment, in violation of his Eighth Amendment rights;[12]

13. A § 1983 claim for damages against all defendants except Marut, Phillips, and Marino, alleging that a scheme to channel domestic relations defendants into forced labor at the recycling center was applied to male defendants only, in violation of Burrell's Fourteenth Amendment equal protection rights;[13]

---

[9]     Labeled   "COUNT   SEVEN:   VIOLATION   OF   1ST AMENDMENT."

[10]    Labeled   "COUNT   EIGHT:   VIOLATION   OF   1ST AMENDMENT."

[11] Labeled "COUNT NINE: VIOLATION OF 4TH AMENDMENT."

[12] Labeled "COUNT TEN: VIOLATION OF 8TH AMENDMENT."

[13]    Labeled   "COUNT   ELEVEN:   VIOLATION   OF   EQUAL PROTECTION."

14. A § 1985(3) claim for damages against all defendants except Marut, Phillips, and Marino, alleging a conspiracy to violate Burrell's civil rights;[14]

15. A state-law claim for damages against Louis Denaples, Dominick Denaples, and Lackawanna Recycling Center alleging common-law negligent and intentional infliction of emotional distress;[15]

16. A state-law claim for damages against all of the state- and local-government defendants except Marut, alleging common-law negligence, made actionable under the Pennsylvania Sovereign Immunity Act, 42 Pa. Cons. Stat. § 8522(b), and the Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat. § 8542(b);[16]

17. A state-law claim for damages against Adams and Gladys alleging common-law false arrest;[17]

18. A state-law claim for damages against all of the state- and local-government defendants except Marut, alleging common-law false imprisonment;[18] and

19. A state-law claim for damages against all defendants except Marut, alleging common-law abuse of process;[19] and

20. An FTCA claim for damages against Phillips and Marino in their official capacities, alleging negligent failure to

---

[14] Labeled "COUNT FOUR: VIOLATION OF 42 U.S.C. § 1985(3)."

[15] Labeled "COUNT FIVE: NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS."

[16] Labeled "COUNT SIX: PENNSYLVANIA TORT CLAIMS ACT 42 P.S. § 8522(b) and 42 Pa. C.S. § 8542(b)."

[17] Labeled "COUNT SIX: FALSE ARREST."

[18] Labeled "COUNT SEVEN: FALSE IMPRISONMENT."

[19] Labeled "COUNT EIGHT: ABUSE OF PROCESS (Not a Dragonetti Act Claim)."

investigate and prosecute the alleged RICO enterprise.[20]

Because Burrell's numbering is duplicative and prone to confusion, we will refer to these claims by the numbers listed above.

## A. Federal Tort Claims Against Federal Employees

The FTCA provides a remedy in damages for the tortious conduct of employees of the United States. *See United States v. Muniz*, 374 U.S. 150, 150 (1963). Under the FTCA, sovereign immunity is waived against persons suing the federal government for the commission of various torts. *See Simon v. United States*, 341 F.3d 193, 199 (3d Cir. 2003). "[T]he extent of the United States' liability under the FTCA is generally determined by reference to state law." *Molzof v. United States*, 502 U.S. 301, 305 (1992); *see also* 28 U.S.C. § 2674.

In claim 20, Burrell asserts an FTCA claim for damages against April Phillips, a special agent with the FBI, and Thomas Marino, the United States Attorney for the Middle District of Pennsylvania at the time, both of whom he has sued in their official capacities. He seeks to

---

[20] Labeled "COUNT NINE: FEDERAL TORT CLAIMS ACT, 28 U.S.C. § 2680(h)." Under this count, Burrell has set forth three separate incidents upon which he bases this claim, labeling them "COUNT ONE," "COUNT TWO," and "COUNT THREE."

hold Phillips and Marino liable for their negligent or intentional failure to investigate and prosecute an alleged association-in-fact enterprise for racketeering, fraud, forced labor, and other crimes.[21]

But a court may not entertain an FTCA claim against "any employee of the Government while acting within the scope of his office or employment." *see also F.D.I.C. v. Meyer*, 510 U.S. 471, 476 (1994). The United States is the only proper defendant to an FTCA claim. *CNA v. United States*, 535 F.3d 132, 138 n.2 (3d Cir. 2008) ("The Government is the only proper defendant in a case brought under the FTCA."); *see also Thomas v. United States*, 558 F. Supp. 2d 553, 557 (M.D. Pa. 2008) ("[T]he only proper party Defendant is the United States, and not

---

[21] Cognizant of the Court's obligation to liberally construe *pro se* pleadings and other submissions, *see generally Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–46 (3d Cir. 2013), we have considered whether Burrell's *pro se* FTCA claims should also be construed as constitutional tort claims against these federal employees in their individual capacities pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). But we decline to do so because "there is no constitutional right to the investigation or prosecution of another." *Sanders v. Downs*, 420 Fed. App'x 175, 180 (3d Cir. 2011) (per curiam). Moreover, with respect to Marino, such a claim must "necessarily fail because prosecutors enjoy absolute immunity for the failure to adequately investigate a case and for the decision to initiate, or decline to initiate, a prosecution." *Id.* (citing *Kulwicki v. Dawson*, 969 F.2d 1454, 1463–64 (3d Cir. 1992)).

individual employees of the BOP."); *Boyd v. United States*, 482 F. Supp. 1126, 1128 (W.D. Pa. 1980) ("Only the United States Government itself is amenable to suit under [the FTCA]. Employees and specific government agencies are not proper defendants."). Indeed, the FTCA explicitly precludes suits against federal employees for common-law torts committed during the course and within the scope of their employment. *See* 28 U.S.C. § 2679(b)(1); *Int'l Islamic Community of Masjid Baytulkhaliq, Inc. v. United States*, 981 F. Supp. 352, 364 (D.V.I. 1997).

Generally, in a case such as this, where the plaintiff has asserted an FTCA claim against a federal employee, the statute provides for dismissal of the federal employee and substitution of the United States as defendant in his or her place. *See* 28 U.S.C. § 2679(d)(1); *Thomas*, 558 F. Supp. 2d at 557 n.9. But even if the United States is substituted in place of Phillips and Marino as a proper defendant to Burrell's FTCA claims, this Court nevertheless lacks subject matter jurisdiction over the FTCA claims asserted in the amended complaint because Burrell has failed to allege that he has exhausted his administrative remedies. As the FTCA provides:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a).

"Fulfillment of the administrative exhaustion requirement is essential to a court's subject matter jurisdiction over a claim under the FTCA. A complaint's failure to allege exhaustion of administrative remedies, therefore, requires dismissal of the complaint for lack of subject matter jurisdiction." *Biase v. Kaplan*, 852 F. Supp. 268, 283 (D.N.J. 1994) (citations omitted); *see also Gomez v. United States*, No. 1:14-CV-01176, 2016 WL 826899, at *3 (M.D. Pa. Mar. 3, 2016) ("Although the exhaustion requirement under the Prison Litigation Reform Act of 1995 is an affirmative defense and can be waived, the exhaustion of administrative remedies under the FTCA is jurisdictional and cannot be waived."). Burrell has failed to allege in his amended complaint that he has exhausted his administrative remedies by filing an administrative claim with the United States Department of Justice

or the Federal Bureau of Investigation.

Accordingly, it is recommended that the FTCA claims against Phillips and Marino be dismissed for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

### B. Absolute Judicial Immunity for Common Pleas Judges

In claims 1, 2, 6, 8, 12, 13, and 14, Burrell seeks an award of damages against Hon. Richard Saxton, presiding judge in the child support enforcement proceedings that resulted in the plaintiff's incarceration for civil contempt, and Hon. Trish Corbett, another state court judge who signed an order when Judge Saxton was apparently unavailable to do so.

But "[a] judicial officer in the performance of his duties has absolute immunity from suit and will not be liable for his judicial acts." *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006) (per curiam). "Like other forms of official immunity, judicial immunity is immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (per curiam). "[S]o long as (1) the judge's actions are taken in his judicial capacity (determined by the nature of the acts themselves) and (2) the judge has some semblance of jurisdiction over

the acts, he will have immunity for them." *Mikhail v. Kahn*, 991 F. Supp. 2d 596, 660 (E.D. Pa. 2014) (citing *Gallas v. Supreme Court of Pa.*, 211 F.3d 760, 768–69 (3d Cir. 2000); *see also Mireles*, 502 U.S. at 11–12. Indeed, "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351 (1871)). "This immunity applies even when the judge is accused of acting maliciously and corruptly . . . ." *Pierson v. Ray*, 386 U.S. 547, 554 (1967). "Although unfairness and injustice to a litigant may result on occasion, 'it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'" *Mireles*, 502 U.S. at 12 (quoting *Bradley*, 80 U.S. (13 Wall.) at 347).

Based on the allegations of the complaint, viewed in the light most favorable to the plaintiff, Burrell's claims *exclusively* concern judicial

acts taken by Judge Saxton in his role as the presiding state court judge in Burrell's child support proceedings, and none of the alleged acts were taken in the complete absence of all jurisdiction. *See Mireles*, 502 U.S. at 12–13; *Gallas*, 211 F.3d at 768–69; *Mikhail*, 991 F. Supp. 2d at 660. Likewise, Burrell's claims exclusively concern a single judicial act taken by Judge Corbett—the signing of an order on behalf of Judge Saxton when he was apparently unavailable—in connection with Burrell's child support proceeding, an act not taken in the complete absence of all jurisdiction. *See Mireles*, 502 U.S. at 12–13; *Gallas*, 211 F.3d at 768–69; *Mikhail*, 991 F. Supp. 2d at 660.

Under these circumstances, Burrell's claim for damages against these two state court judges must be dismissed on immunity grounds, pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii). His claim for equitable relief against these two judges similarly must be dismissed for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). *See* 42 U.S.C. § 1983 (generally prohibiting injunctive relief against judicial officers); *Ball v. Butts*, 445 Fed. App'x 457, 458 (3d Cir. 2011) (per curiam) (holding that a request for injunctive relief "was subject to dismissal under § 1915(e)(2)(B)(ii) because such relief is not available against 'a judicial

officer for an act . . . taken in such officer's judicial capacity'"); *Azubuko*, 443 F.3d at 303–04 ("In 1996, Congress amended 42 U.S.C. § 1983 to provide that 'injunctive relief shall not be granted' in an action brought against 'a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable.'").

Moreover, all of Burrell's claims against Judge Saxton and Judge Corbett, which concern judicial acts taken by these state court judges in the course of child support enforcement proceedings over which they presided, are clearly based on an indisputably meritless legal theory and thus should be dismissed as legally frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i). *See Neitzke*, 490 U.S. at 327 (noting that claims against defendants who were clearly immune from suit are "based on an indisputably meritless legal theory"); *Ball*, 445 Fed. App'x at 458 (dismissing appeal as frivolous based on judicial immunity).

Accordingly, it is recommended that all claims against Judge Saxton and Judge Corbett be dismissed as frivolous, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and for seeking monetary relief against a

defendant who is immune from such relief, pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii).

### C. Quasi-Judicial Immunity for Domestic Relations Staff

In claims 1, 2, 3, 6, 8, 11, 12, 13, and 14, Burrell seeks an award of damages against Patrick Loungo, Richard Gladys, and Ed Adams of the Lackawanna County Domestic Relations Office for their conduct in connection with child support enforcement proceedings that led to Burrell's incarceration and prison work assignment at the recycling center.

Burrell's claims against these three Domestic Relations staffers must be dismissed on the basis of immunity. "Absolute immunity attaches to those who perform functions integral to the judicial process." *Williams v. Consovoy*, 453 F.3d 173, 178 (3d Cir. 2006) (citing *Burns v. Reed*, 500 U.S. 478, 484 (1991). "[I]ndividuals who perform investigative or evaluative functions at a governmental adjudicative entity's request to assist that entity in its decisionmaking process are entitled to absolute immunity." *Id.* "[T]his immunity expressly embraces court personnel like Domestic Relations staff, who perform discretionary functions under the guidance and direction of the courts." *Herman v.*

*Lackawanna County*, Civil Action No. 3:CV-13-1697, 2015 WL 3741133, at *10 (M.D. Pa. June 15, 2015); *see also Phillips v. Miller*, Civil No. 3:09-CV-0555, 2010 WL 771793, at *5 (M.D. Pa. Feb. 26, 2010) (noting that courts have held that the director of a domestic relations office is "entitled to full prosecutorial immunity from damages because his decision to bring contempt proceedings and his participation in those proceedings was pursuant to his quasi-judicial duties."). This quasi-judicial immunity for court personnel extends to requests for injunctive relief as well. *See Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 185 (3d Cir. 2009).

Accordingly, it is recommended that all claims against Domestic Relations staffers Loungo, Gladys, and Adams be dismissed for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and for seeking monetary relief against a defendant who is immune from such relief, pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii)

### D. Section 1985(3) Conspiracy to Interfere with Civil Rights

In claim 14, Burrell contends that all of the defendants—except Marut, Phillips, and Marino—conspired against him in violation of 42 U.S.C. § 1985(3).

Section 1985(3) prohibits conspiracies to violate constitutional rights. The elements of a § 1985(3) claim are:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*United Bhd. of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825, 828–29 (1983). The failure to prove any one element under Section 1985(3) is dispositive. *Id.* at 834.

The second element requires that the alleged actions were motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Id.* at 835. Burrell does not allege that the defendants acted with race-based discriminatory animus. He alleges that the civil contemnors assigned to work at the recycling center were all males, which constitutes a protected class for § 1985(3) purposes. *See Hartshorn v. Throop Borough*, Civil Action No. 3:07-cv-01333, 2009 WL 961434, at *10 (M.D. Pa. Apr. 2, 2009) ("[A] class is cognizable for purposes of § 1985(3)'s class-based animus requirement only when it is comprised of a distinctive and identifiable group. For this purpose,

distinctiveness connotes that a reasonable person can readily determine by means of an objective criterion or set of criteria who is a member of the group and who is not."). But discriminatory animus "implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 272 (1993) (ellipsis omitted). There is nothing in the amended complaint to suggest that the alleged actions were taken because of the civil contemnors' gender; an incidentally disparate impact on male defendants is insufficient to satisfy § 1985(3)'s discriminatory animus requirement. *See id.*

Based on the allegations of the amended complaint, Burrell clearly contends that the defendants conspired to violate the constitutional rights of civil contemnors such as himself not for discriminatory purposes, but rather because conscription of cheap prison labor enabled the Denaples brothers and Lackawanna Recycling Center to maximize their profits by minimizing their labor expenses. The Supreme Court has ruled that Section 1985(3) does not reach conspiracies motivated by

economic or commercial animus. *See Scott*, 463 U.S. at 839 ("[G]roup actions generally resting on economic motivations should be deemed beyond the reach of § 1985(3).").

Accordingly, it is recommended that Burrell's § 1985(3) claim that the defendants conspired to interfere with his civil rights be dismissed for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### E. Fourteenth Amendment Equal Protection Claim

In claim 13, Burrell contends that all of the defendants—except Marut, Phillips, and Marino—conspired to violate his Fourteenth Amendment equal protection rights. He alleges that these defendants engaged in a scheme to channel domestic relations defendants into civil contempt proceedings, find them in contempt and sentence them to incarceration at Lackawanna County Prison, where they would be assigned to a prison work detail at the Lackawanna Recycling Center at a pay rate of $5 per day. He alleges that all of the inmates subjected to this "forced labor" scheme were male. Based on this, he claims that the scheme violated his equal protection rights.

To prevail on an equal protection claim, a plaintiff must demonstrate that he was treated differently from persons who are

similarly situated, and that this discrimination was purposeful or intentional rather than incidental. *See City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985); *Tillman v. Lebanon County Corr. Facility*, 221 F.3d 410, 423–24 (3d Cir. 2000). Mere conclusory allegations will not suffice. *See Blanchard v. Gallick*, 448 Fed. App'x 173, 176 (3d Cir. 2011).

Here, as noted in the previous section, Burrell has alleged no facts specific to his own case that would support an inference that his gender was a motivating factor in his civil contempt proceedings or his selection for a prison work detail at the recycling center; there is nothing to suggest that the gender disparity in the recycling center workforce is anything more than incidental. Moreover, he has failed to allege any specific facts regarding the existence of similarly situated female civil contemnors or similarly situated female child support enforcement defendants who were treated differently.

Accordingly, it is recommended that Burrell's § 1983 claim that the defendants violated his equal protection rights be dismissed for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## F. Eighth Amendment Cruel & Unusual Punishment Claim

In claim 12, Burrell contends that all of the defendants—except Marut, Phillips, and Marino—conspired to violate his Eighth Amendment right to be free from cruel and unusual punishment. He alleges that he was forced to work in a "harsh[,] nasty[,] unsafe environment" at the Lackawanna Recycling Center over the course of three months, where he was exposed to more than eighty strip searches when coming to or going from the prison, and he was exposed to "disgusting pornographic pictures" as well as "vomit, chemicals, glass cuts, filthy unsanitary toilets . . . , toxic fumes with no mask, persistent itchy and burning trash rash, holes in cages, improper boots, gloves and protective gear," and the withholding of food as a punishment. (Doc. 11-1, at 1).

As a civil contemnor, the Eighth Amendment does not apply to the conditions of Burrell's incarceration. *See Ingraham v. Wright*, 430 U.S. 651, 668 (1977). Even if it did, "the Eighth Amendment does not apply to inmates in a work environment unless they are required to perform physical labor which is beyond their strength, endangers their lives or health, or causes undue pain." *Johnson v. Townsend*, No. Civ. A. 3:03-

CV-2277, 2005 WL 2990695, at *3 (M.D. Pa. Nov. 8, 2005); *see also Thomas v. Shutika*, Civil No. 4:12-CV-692, 2014 WL 2514817, at *6 (M.D. Pa. June 4, 2014). Burrell has failed to plausibly allege that he was required to perform physical labor beyond his strength, that his life or health was actually endangered, or that he suffered undue pain.

Accordingly, it is recommended that Burrell's § 1983 claim that the defendants violated his Eighth Amendment right to be free from cruel and unusual punishment be dismissed for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## G. Thirteenth Amendment and TVPA Claims

In claims 2 and 8, Burrell contends that all of the defendants— except Marut, Phillips, and Marino—participated in a scheme to use incarcerated civil contemnors as forced labor at the recycling center, in violation of his Thirteenth Amendment right to be free from involuntary servitude, and in violation of the TVPA, 18 U.S.C. §§ 1589, 1590, 1595, which imposes civil liability for the use of forced labor and for trafficking persons for the purpose of compelling forced labor.

### 1. Thirteenth Amendment Claim

The Thirteenth Amendment provides that "[n]either slavery nor

involuntary servitude, except as punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. amend. XIII, § 1.[22] In *United States v. Kozminski*, 487 U.S. 931 (1988), the Supreme Court of the United States held that:

> The primary purpose of the Amendment was to abolish the institution of African slavery as it had existed in the United States at the time of the Civil War, but the Amendment was not limited to that purpose; the phrase "involuntary servitude" was intended to extend "to cover those forms of compulsory labor akin to African slavery which in practical operation would tend to produce undesirable results."

*Id.* at 942 (quoting *Butler v. Perry*, 240 U.S. 328, 332 (1916)). "Th[is] prohibition against involuntary servitude has always barred forced labor through physical coercion. In addition, it may bar forced labor through legal coercion." *Steirer ex rel. Steirer v. Bethlehem Area Sch. Dist.*, 987 F.2d 989, 998 (3d Cir. 1993). "As the Supreme Court has

---

[22] It should be noted that Burrell alleges that he was incarcerated for *civil*—not criminal—contempt. This is an important distinction as the Thirteenth Amendment, by its terms, does not apply to prisoners incarcerated pursuant to a criminal judgment of conviction. *See id.*; *see also Claypool v. Boyd*, 914 F.2d 1490, 1990 WL 136622, at *1 n.* (4th Cir. 1990) (per curiam table decision); *Omasta v. Wainwright*, 696 F.2d 1304, 1305 (11th Cir. 1983) (per curiam).

pointed out, the critical factor in every case finding involuntary servitude is that the victim's only choice is between performing the labor on the one hand and physical and/or legal sanctions on the other." *Id.* at 999 (citing *Kozminski*, 487 U.S. at 943).

Significantly, "not all situations in which labor is compelled by physical coercion or force of law violate the Thirteenth Amendment. By its terms the Amendment excludes involuntary servitude imposed as legal punishment for a crime." *Kozminski*, 487 U.S. at 943. Moreover, "[w]here the obligation is one that has traditionally been enforced by means of imprisonment, the constitutional prohibition does not apply." *United States v. Ballek*, 170 F.3d 871, 874 (9th Cir. 1999). For example, "[g]overnments may require individuals to perform certain well-established 'civic duties', such as military service and jury duty, and impose legal sanctions for the failure to perform." *Steirer*, 987 F.2d at 999; *see also Kozminski*, 487 U.S. at 944. Incarceration for failure to pay child-support awards "fall[s] within that narrow class of obligations that may be enforced by means of imprisonment without violating the constitutional prohibition against slavery." *Ballek*, 170 F.3d at 874. Further, "[c]omplying with court orders and judgments is a civic duty.

Thus, forced labor or incarceration to compel compliance with these orders when one has not demonstrated that he or she is unable to comply is not prohibited by the Thirteenth Amendment." *Haas v. Wisconsin*, 241 F. Supp. 2d 922, 935 (E.D. Wis. 2003); *see also Ballek*, 170 F.3d at 875 ("The supervision—and coercive power—of the court is often invoked to prompt the non-custodial parent to continue providing support. The non-custodial parent's obligation to pay child support is thus derivative of the obligation to provide support in a custodial setting, and such awards are routinely enforced by imprisonment.").

In addition, "[w]here a plaintiff has a choice, . . . there can be no involuntary servitude, even if that choice is a painful one." *Dolla v. Unicast Co.*, 930 F. Supp. 202, 206 (E.D. Pa. 1996); *see also Watson v. Graves*, 909 F.2d 1549, 1552 (5th Cir. 1990) ("When the employee has a choice, even though it is a painful one, there is no involuntary servitude. A showing of compulsion is thus a prerequisite to proof of involuntary servitude.") (citation and internal quotation marks omitted). For example, "it is not involuntary servitude to offer prisoners an option of participating in a work-release program, even though the consequence of not working and remaining in jail may be 'painful.'"

*Steirer*, 987 F.2d at 1000. "[A] prisoner can choose to stay in jail rather than enter the work-release program. The fact that these choices may not be appealing does not make the required labor involuntary servitude." *Id.*; *see also Brooks v. George County, Miss.*, 84 F.3d 157, 162–63 (5th Cir. 1996) (pretrial detainee given choice between confinement in his cell and work as a trusty, which permitted him some freedom of movement within the jail, was not coercive and thus not involuntary servitude).

In this case, Burrell was held in civil contempt for his failure to pay court-ordered child support. He does not dispute that he was significantly in arrears on his child support obligation. He does not dispute that he was provided with a hearing—albeit a brief one—and that the state court found him financially able to pay his support obligation before holding him in contempt.[23] He does not dispute that,

---

[23] Burrell does dispute his ability to pay, but we lack jurisdiction to review the state court's factual finding on that point. *See E.B. v. Verniero*, 119 F.3d 1077, 1091–92 (3d Cir. 1997) ("If a litigant resorts to a state court and suffers an adverse judgment, a lower federal court must respect that judgment unless and until it is overturned. The litigant's only remedy is by way of appeal through the state court system and by way of petition to the Supreme Court of the United States thereafter."); *see also Ibn Tajshan Butts v. Superior Ct. Family (continued on next page)*

on May 16, 2014, he was sentenced by the state court to be incarcerated at Lackawanna County Prison for up to twelve months, subject to a purge provision that permitted his release upon payment of his child support arrearage. The civil contempt orders also authorized Burrell's participation in work-release, once eligible.

Accordingly to the amended complaint, shortly after his arrival at Lackawanna County Prison, Burrell was approached by Tom Staff, who informed him that he would need to work at the recycling center for a period to become eligible for work-release. Staff petitioned the court, which entered an order on May 22, 2014, approving Burrell's transfer to the community services program (i.e., the recycling center).[24] The order

---

*Div.*, Civil Case No. 09-5304(RBK), 2010 WL 1491200, at *3 (D.N.J. Apr. 13, 2010) (federal district court lacked jurisdiction to review state court's finding that plaintiff was able to pay child support).

[24] Incidentally, Burrell makes much of the fact that the caption of the court order approving his transfer to the community services program indicated that it was issued by the Criminal Division of the Lackawanna County Court of Common Pleas, rather than the Domestic Relations Section of that same court. Generally, it is the substance of an order that controls, not its title or form. Mitchell J. Waldman, 56 Am. Jur. 2d *Motions, Rules, and Orders* § 48 n.9 (2016). The caption of the order in question clearly indicated on its face that it was entered by a judge of the Court of Common Pleas of Lackawanna County, which had jurisdiction over Burrell and his civil contempt proceedings. (*See* Doc. 1-1, at 3). The particular division mentioned in the caption of the order is

*(continued on next page)*

explicitly warned that violation of program rules would result in his return to the general prison population, and provided that Burrell would be granted work-release status upon successful completion of the community services program. On May 28, 2014, Burrell began working at the recycling center. Three months later, on or about August 26, 2014, Burrell was transferred to the work-release program. Approximately one month later, on September 29, 2014, Burrell's civil contempt sentence terminated when he "purged out" by paying the remainder of his child support arrearage.

Under these circumstances, Burrell faced an unpleasant choice— twelve months in prison or work at the recycling center in unpleasant conditions for meager pay—but it was clearly a *choice*. Although neither option was appealing, and the alternative of twelve months of incarceration might have been "painful," offering Burrell the option to work at the recycling center to obtain an earlier release does not

---

immaterial, as such divisions are merely administrative units of the court, each division being vested with the full jurisdiction of the whole court. *See* 42 Pa. Cons. Stat. Ann. § 952; *see also Estate of Hahn*, 369 A.2d 1290, 1293 (Pa. 1977) (Manderino, J., dissenting) ("Divisions of the court of common pleas may be convenient for administrative purposes. These divisions, however, are irrelevant to the question of subject matter jurisdiction.").

constitute involuntary servitude in violation of the Thirteenth Amendment.

Accordingly, it is recommended that Burrell's § 1983 claim that the defendants violated his Thirteenth Amendment right to be free from involuntary servitude be dismissed for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### 2. TVPA "Forced Labor" Claims

The TVPA was originally enacted in 2000, and the amendment creating a civil cause of action against private parties, codified at 18 U.S.C. § 1595, was enacted in December 2003. *Guobadia v. Irowa*, 103 F. Supp. 3d 325, 333 (E.D.N.Y. 2015). Under § 1589—the "forced labor" statute—the TVPA imposes liability for "knowingly provid[ing] or obtain[ing] the labor or services of a person . . . by means of the abuse or threatened abuse of law or legal process." 18 U.S.C. § 1589(a)(3).[25] "'Abuse of the law or legal process' is the use of threats of legal action,

---

[25] The terms "involuntary servitude" and "forced labor" "are frequently used interchangeably, and the concepts overlap." *Velez v. Sanchez*, 693 F.3d 308, 319 n.8 (2d Cir. 2012). But "[t]he language at issue [in § 1589] is . . . broader than the language at issue in *Kozminski* . . . , and intentionally so." *Menocal v. GEO Grp., Inc.*, 113 F. Supp. 3d 1125, 1132 (D. Colo. 2015).

whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed in order to coerce someone into working against that person's will." *Guobadia*, 103 F. Supp. 3d at 334 (internal quotation marks omitted); *see also* 18 U.S.C. § 1589(c)(1). Moreover, under § 1590, the TVPA imposes liability on any person who "knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of [§ 1589]." 18 U.S.C. § 1590(a).

To adequately allege a violation of § 1589(a)(3), the plaintiff must allege that the defendant misused the legal process, or threatened to do so, to coerce another into providing labor against his will. *See United States v. Peterson*, 627 F. Supp. 2d 1359, 1370–73 (M.D. Ga. 2008) (finding defendant did not violate § 1589 by giving inmate "choice" to work at a privately-owned business not authorized under a lawful work-release program). "[T]he issue is whether the victim was coerced by physical force or legal coercion into providing labor *involuntarily*." *David v. Signal Int'l, LLC*, Civil Action No. 08-1220, 2012 WL 10759668, at *19 (E.D. La. Jan. 4, 2012) (emphasis in original).

The legal process at issue here is a child support enforcement

proceeding before the Court of Common Pleas of Lackawanna County pursuant to Pa. R. Civ. P. 1910.1 *et seq*. The purpose of these rules is to provide a fair and effective program of child support. *See* Pa. R. Civ. P. 1910.1 *et seq*. explanatory comment (1981); *see also* Pa. R. Civ. P. 1910.25-7 explanatory comment (2007) ("Parental support of children is a fundamental requirement of law and public policy."). The allegations of the amended complaint concede that Burrell was previously ordered by a state court to pay child support, and that he was significantly in arrears on this child support obligation. The amended complaint further concedes that, as a result, civil contempt proceedings were initiated against him pursuant to Pa. R. Civ. P. 1910.25 *et seq*., the purpose of which is to "compel compliance and provide an incentive to obey the law." Pa. R. Civ. P. 1910.25-7 explanatory comment (2007). Following a brief hearing, the state court found him to be financially able to pay his support obligation before it held him in contempt. Having found him to be in contempt of court, the state court sentenced him to serve an aggregate term of up to twelve months in prison, subject to a purge provision that permitted him to be released at an earlier date if he paid his outstanding and overdue child support obligation.

The legal process at issue in the underlying state court proceedings was designed to compel compliance with the state court's previous orders that Burrell pay child support, which he had not done. The threat or imposition of a period of incarceration was clearly in service of that lawful purpose.

The alleged "forced labor" was an opportunity presented to Burrell by prison officials only *after* he had been lawfully sentenced to serve up to twelve months in prison for contempt, subject to a purge provision. Moreover, as noted in the preceding section, based on the allegations of his amended complaint, Burrell was neither compelled nor coerced to work at the recycling center by any threat or misuse of legal process, but rather he was presented with the option to work there, under harsh conditions and for a pittance, in exchange for an opportunity to qualify for work-release, which not only itself involved greater freedom than that enjoyed by those incarcerated in the general prison population, but also offered the opportunity for Burrell to earn sufficient wages to pay his child support arrears and discharge his prison sentence altogether before reaching its twelve-month maximum duration.

In the absence of any abuse or misuse of the legal process, Burrell

has failed to state a claim under § 1589(a)(3), the "forced labor" statute, and as a consequence he has also failed to state a claim under § 1590(a), which prohibits the trafficking of persons for the purpose of compelling forced labor.

Accordingly, it is recommended that Burrell's TVPA claims under 18 U.S.C. §§ 1589, 1590, 1595, alleging the use of forced labor and the trafficking of persons for the purpose of compelling forced labor, be dismissed for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## H. Racketeering and Corrupt Organizations Act Claim

In claim 1, Burrell contends that all of the defendants participated together in a vast and long-standing illegal racketeering enterprise designed to channel domestic relations defendants into civil contempt proceedings, find them in contempt and sentence them to incarceration at Lackawanna County Prison, where they would be forced to work at the Lackawanna Recycling Center under harsh conditions for little pay. The amended complaint alleges that county court personnel—both domestic relations staff and common pleas judges—deliberately set Burrell and other similarly situated male domestic relations defendants

up for procedurally defective civil contempt proceedings where they would be held in contempt and sentenced to incarceration at the Lackawanna County Prison. Once there, prison staff would allegedly coerce the civil contemnors to work under harsh conditions at a privately owned recycling center for meager pay, to the pecuniary benefit of the corporation that owned the recycling center and its shareholders, Louis and Dominick Denaples. Various state and federal officials were allegedly complicit in this enterprise, based on their failure to investigate and prosecute the court personnel, prison staff, and private business owners involved in this allegedly corrupt enterprise.

To state a civil RICO claim, a plaintiff must plausibly allege the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). The statute defines "racketeering activity" by enumerating a list of predicate acts. *See* 18 U.S.C. § 1961(1). A "pattern" of racketeering activity, in turn, requires at least two predicate acts of racketeering activity. *See id.* § 1961(5). The law is well-settled that, without at least two predicate acts, a plaintiff cannot

possibly succeed on his federal RICO claims. *See Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 747 (3d Cir. 1996).

In his amended complaint, Burrell has articulated eleven separate "predicate acts" in support of his RICO claim, all of which he characterizes together as "intentional fraud with intent to deceive and or defraud the government and the taxpayers":

(1)    The 1989 creation of the Lackawanna County Solid Waste Authority (the "Authority"), allegedly conceived by means of a conspiracy between the Denaples brothers and two non-party county commissioners.  In conclusory fashion, Burrell alleges that this Authority was "fraudulently" created.

(2)    A 1989 conveyance of land from the Denaples brothers to the Authority for the purpose of building a recycling plant, which reserved to the Denaples brothers an option to repurchase the property and any plant equipment thereon at cost. In conclusory fashion, Burrell alleges that this transaction was accomplished by a "fraudulent" deed.

(3)    A 1989 conveyance of an adjoining parcel of land from the non-party principals of family-owned business to the Authority for the purpose of building a recycling plant, which reserved to the grantors an

option to repurchase the property and any plant equipment thereon at cost. In conclusory fashion, Burrell alleges that this transaction was accomplished by a "fraudulent" deed.

(4)   The 1991 incorporation by the Denaples brothers of Keystone Landfill, Inc., "to capitalize on [the Denaples brothers'] fraudulently created . . . [Authority] and the Recycling Center . . . without raising red flags by profiting directly from the recycling center so soon after they created it."

(5)   Persuading county commissioners in the early 1990s to use prison labor to run the recycling center, which was publicly owned and operated at the time.

(6)   Donating millions of dollars to the Catholic Church, various charities, and state and local government agencies, including a $35 million donation to the University of Scranton and the alleged funding the construction of a new police barracks for the Borough of Dunmore, Pennsylvania. In conclusory fashion, Burrell alleges that these donations were "bribe[s]."

(7)   Directing unnamed county officials to mismanage the Authority and its recycling center to make a publicly owned recycling

center look unprofitable.

(8)   A conspiracy between the Denaples brothers and one or more county commissioners to persuade the public that the publicly owned recycling center was too costly to the taxpayers, and that the Denaples could manage it better.

(9)   A conspiracy between the Denaples brothers and non-party Thomas Cummings to create an operating agreement or lease between the Authority and Lackawanna Recycling Center, Inc., in 2005, without competitive bidding. In conclusory fashion, Burrell alleges that the operating agreement or lease was "fraudulent" and "illegal," and that it permitted the Denaples brothers to "fraudulently capitalize" on prison labor, government-paid advertising, government grants, and taxpayer-funded equipment.

(10)  The use of civil contemnors as forced labor and the trafficking of persons for the purpose of compelling forced labor in violation of the TVPA, in conspiracy with the other named defendants.

(11)  The use of taxpayer-funded equipment and government-paid advertising to promote recycling for the benefit of privately owned Lackawanna Recycling Center, Inc. In conclusory fashion, Burrell

alleges that the Denaples brothers "fraudulently receive[d]" the benefit of this taxpayer-funded equipment and government-paid advertising.

But none of the "predicate acts" outlined by Burrell in his amended complaint are among the enumerated list of predicate acts set forth in § 1961(a) that "racketeering activity" for RICO purposes

First, Burrell has generally alleged that all eleven "acts" are fraudulent, and several are specifically labeled as involving fraud. But when fraud is the predicate act, a plaintiff must satisfy the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure. *See Warden v. McLelland*, 288 F.3d 105, 114 (3d Cir. 2002). Specifically, Rule 9(b) states that "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). Notwithstanding this pleading defect, Burrell's general allegations of "fraud" do not satisfy RICO's predicate act requirement, as garden-variety fraud is "not included as [a specifically listed] racketeering activity pursuant to 18 U.S.C.

§ 1961(1)." *See Zellner v. Monroe County Mun. Waste Mgmt. Auth.*, No. 3:07-CV-1976, 2008 WL 2962595, at *9 (M.D. Pa. July 28, 2008). There is nothing in the complaint to suggest that any of these allegedly fraudulent acts constituted mail fraud, wire fraud, bankruptcy fraud, or any other species of fraud specifically enumerated in § 1961(1).

Second, Burrell alleges bribery as a predicate act, which is included among those offenses that may constitute "racketeering activity" under RICO. *See* 18 U.S.C. § 1961(1)(A) (providing that "any act or threat involving . . . bribery . . . which is chargeable under State law and punishable by imprisonment for more than one year" constitutes a predicate act). In sum, however, Burrell merely alleges that the Denaples brothers donated millions of dollars to various, largely unspecified charities and local organizations, including a local university and a municipality, which standing alone establishes nothing more than an attempt to build goodwill. *See generally United States v. Kemp*, 500 F.3d 257, 281 (3d Cir. 2007). Moreover, while bribery does not invoke the heightened pleading requirements of Rule 9(b), a plaintiff nevertheless must satisfy the more liberal pleading requirements of Rule 8(a) to adequately plead bribery as a predicate

act. Burrell makes no effort to delineate the elements of bribery nor does he cite to any statute that does so, and thus the amended complaint fails to put the defendants on notice as to what laws they are alleged to have violated. *See Lockheed Martin Corp. v. Boeing Co.*, 357 F. Supp. 2d 1350, 1374–75 (M.D. Fla. 2005); *see also Rose v. Bartle*, 871 F.2d 331, 363 (3d Cir. 1989) ("[A RICO plaintiff must] specify the nature of the predicate acts to a degree that will allow the defendants to comprehend the specific acts to which they are required to answer.").

Third, Burrell alleges the violation of the TVPA as predicate act, which is included among those offenses that may constitute "racketeering activity" under RICO. *See* 18 U.S.C. § 1961(1)(B) (providing that "any act which is indictable under . . . title 18, United States Code . . . sections 1581–1592 (relating to peonage, slavery, and trafficking in persons)" constitutes a predicate act). But, as addressed in the preceding section, the amended complaint fails to allege facts sufficient to state a claim that the employment of Burrell or other civil contemnors to work at the recycling center as a means to gain eligibility for work-release constitutes forced labor or trafficking in persons for the purpose of compelling forced labor under the TVPA.

Burrell's RICO claim suffers from other pleading defects as well. A RICO complaint must adequately allege facts regarding the structure of the purported enterprise. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 366 (3d Cir. 2010) ("Specifically, it 'must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.'") (quoting *Boyle v. United States*, 556 U.S. 938, 946 (2009)); *see also Nasik Breeding & Research Farm Ltd. v. Merck & Co., Inc.*, 165 F. Supp. 2d 514, 539 (S.D.N.Y. 2001) (dismissing conclusory RICO claim that "simply strung together all of the defendants . . . and labeled the resulting group an association-in-fact enterprise"). A RICO complaint must also adequately allege that any particular defendant participated in the operation or management of the purported enterprise itself, as opposed to simply providing run-of-the-mill commercial, professional, or governmental services in the conduct of their own respective businesses that just happen to benefit the purported enterprise. *See Reves v. Ernst & Young*, 507 U.S. 170, 178–79 (1993); *Univ. of Md. v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539–40 (3d Cir. 1993); *Clark v. Conahan*, 737 F. Supp. 2d 239,

269–70 (M.D. Pa. 2010); *see also Handeen v. Lemaire*, 112 F.3d 1339, 1348–49 (8th Cir. 1997).

Accordingly, it is recommended that Burrell's RICO claim under 18 U.S.C. § 1964(c) be dismissed for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## I. First Amendment Retaliation Claim

In claim 9, Burrell contends that Staff "scolded" him three times when he complained about his assignment to the recycling center work detail.[26] Burrell argues that this was unconstitutional retaliation for the exercise of his First Amendment free speech rights.

To prevail on a retaliation claim, a prisoner-plaintiff must establish the following elements: (1) constitutionally protected conduct; (2) an adverse action by prison officials that is sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him. *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (internal quotation marks and brackets

---

[26] In addition to generally (and accurately) describing Staff's statements as "scolding," Burrell has specifically alleged the content of each statement. (Doc. 11, at 54–55 ¶ 195; *id.* at 66–67 ¶¶ 235–36).

omitted).

Here, Burrell has clearly failed to allege an adverse action sufficient to deter an ordinary prisoner from exercising his constitutional rights. To adequately plead the second element of a First Amendment retaliation claim, a plaintiff must plead more than mere "verbal reprimands." *Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003); *see also Nunez v. City of Los Angeles*, 147 F.3d 867, 875 (9th Cir. 1998) ("Mere threats and harsh words are insufficient."); *Finney v. Marshall*, Civil Action No. 9:12cv4, 2012 WL 5931744, at *5 (E.D. Tex. Nov. 27, 2012) ("mere words do not set out a Section 1983 [retaliation] claim"); *Royal v. Knight*, No. 1:09-cv-01407-SKO PC, 2010 WL 2851282, at *5 (E.D. Cal. July 20, 2010) ("Something more than mere threats and harsh words is required . . . ."); *Burgos v. Canino*, 641 F. Supp. 2d 443, 454 (E.D. Pa. 2009) ("[A]ny use of words, including threatening or offensive language, does not constitute retaliatory action."); *Root v. Towers*, No. 99-CV-70867-DT, 2000 WL 424193, at *2 (E.D. Mich. Mar. 31, 2000) ("Rough words are common in prisons . . . . Such language does not deter 'ordinary prisoners' from filing actions . . . ."). Burrell's allegation that he was "scolded" by a prison official is plainly

insufficient to state a First Amendment retaliation claim.

Accordingly, it is recommended that Burrell's § 1983 claim that Staff "scolded" him in retaliation for exercising his First Amendment right to free speech be dismissed for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## J. Access-to-Courts Claim

In claim 7, Burrell contends that Staff and McMillan "refused to provide [him] with copies of his court orders in a timely enough manner so [he] could file timely post[-]judgment motions."[27] (Doc. 11, at 92).

---

[27] Burrell also alleges that Adams refused to "process" a notice of appeal and *in forma pauperis* affidavit to the Superior Court. Adams is alleged to have been employed as an enforcement officer in the Lackawanna County Domestic Relations Office. He is not alleged to have been employed as a prothonotary or clerk in the Court of Common Pleas for Lackawanna County. *See* Pa. R. App. P. 902 (providing that a notice of appeal must be filed with the clerk of the lower court in which the order being appealed was filed); Pa. R. App. P. 905(a) (same); *In re Ebo*, 366 A.2d 1243, 1246 (Pa. Super. Ct. 1976) (Superior Court has jurisdiction over appeals from civil contempt orders). The amended complaint alleges no basis for imposing on Adams a duty or obligation to assist Burrell in "processing" his notice of appeal for filing in the Court of Common Pleas, but even if one did exist, as a quasi-judicial officer, Adams is immune from suit. *See Williams*, 453 F.3d at 178; *Capogrosso*, 588 F.3d at 185; *Herman*, 2015 WL 3741133, at *10; *Phillips*, 2010 WL 771793, at *5. Moreover, Burrell has failed to plausibly allege actual injury—loss of a "nonfrivolous" and "arguable" claim—particularly in light of the highly deferential standard of review

*(continued on next page)*

It well established that prisoners have a fundamental right to access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996). But a prisoner making an access-to-courts claim is required to show that the alleged denial of access caused actual injury. *Id.* at 352–54. Actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the alleged denial of access to the courts. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

Here, Burrell alleges that prison officials failed to deliver copies of unspecified court orders to him until after an unspecified delay, and as a result he was unable to timely file unspecified post-judgment motions. But, except for paternity determinations, motions for post-trial relief have been abolished in Pennsylvania domestic relations cases, including civil contempt orders entered in child support enforcement proceedings. *See* Pa. R. Civ. P. 1910.25-6 ("No motions for post trial relief shall be filed to any orders entered pursuant to [the rules governing civil contempt proceedings in support cases]."); *see also Mensch v. Mensch*, 713 A.2d 690, 691 (Pa. Super. Ct. 1998) (per curiam) ("[P]ost-trial

---

on appeal. *See generally Godfrey v. Godfrey*, 894 A.2d 776, 783 (Pa. Super. Ct. 2006) (applying abuse-of-discretion standard on appeal from civil contempt order imposed in child support enforcement proceedings).

motions are precluded in cases governing domestic relations matters, other than those following a paternity trial . . . .”). Consequently, it is clear that Burrell has failed to allege any actual injury as a result of the alleged delay by these defendants in delivering court orders to him.

Accordingly, it is recommended that Burrell's § 1983 claims that Staff and McMillian violated his constitutional right of access to courts by delaying the delivery of state court orders to him be dismissed for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## K. First and Fourteenth Amendment Furlough Claims

In claims 4, 5, and 10, Burrell contends that Jeffers and McPhillips, his work-release supervisors, violated his Fourteenth Amendment due process rights and his First Amendment free exercise rights when they denied his requests for a furlough to attend an outside church service and a furlough to visit his eight-year-old son.

But the denial of Burrell's furlough requests did not implicate any constitutional right. “[T]he First Amendment does not require prison officials to grant furloughs to attend religious events . . . .” *Butler v. Snyder*, 106 F. Supp. 2d 589, 594 (D. Del. 2000). Nor does an inmate

possess any cognizable liberty or property interest in furloughs that might be protected by Fourteenth Amendment due process. *See Becker v. Smith*, 554 F. Supp. 767, 770 (M.D. Pa. 1982) ("[W]hile prisoner classification and eligibility for rehabilitative programs [such as furloughs and work-release] in the [prison] system may cause a 'grievous loss' upon an inmate, no due process protections are created."); *see also Hluchan v. Fauver*, 480 F. Supp. 103, 107–08 (M.D. Pa. 1979) ("[I]t is clear that prison inmates have no constitutional right to rehabilitation programs [including work release and furloughs].");
*Durkin v. Taylor*, 444 F. Supp. 879, 887 (E.D. Va. 1977) ("[A prison official] did not deprive plaintiff of any liberty or property interest under the Fourteenth Amendment when he summarily revoked his furlough and suspended him from participation in work-release.").

Accordingly, it is recommended that Burrell's § 1983 claims that Jeffers and McPhillips violated his First Amendment right to free exercise of religion and his Fourteenth Amendment due process rights by denying his furlough requests be dismissed for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### L. State Law Claims

In claims 15, 16, 17, 18, and 19, Burrell has asserted several state-law claims for damages. But where a district court has dismissed all claims over which it had original jurisdiction, the Court may decline to exercise supplemental jurisdiction over state law claims. 28 U.S.C. § 1367(c)(3). Whether the Court will exercise supplemental jurisdiction is within its discretion. *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009). That decision should be based on "the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Ordinarily, when all federal law claims have been dismissed and only state-law claims remain, the balance of these factors indicates that these remaining claims properly belong in state court. *Cohill*, 484 U.S. at 350. Finding nothing in the record to distinguish this case from the ordinary one, the balance of factors in this case "point[s] toward declining to exercise jurisdiction over the remaining state law claims." *See Cohill*, 484 U.S. at 350 n.7. Therefore, it is recommended that Burrell's state-law claims be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

## M. Leave to Amend

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). It is not clear that amendment would be futile, nor is there any basis to believe it would be inequitable. It is therefore recommended that Burrell be granted leave to file a second amended complaint within a specified time period following partial dismissal of the amended complaint.

## IV. RECOMMENDATION

For the foregoing reasons, it is recommended that:

1.     The plaintiff's FTCA claims (Claim 20) be **DISMISSED** for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1);

2.     All of the plaintiff's federal claims against Judge Saxton and Judge Corbett (Claims 1, 2, 6, 8, 12, 13, and 14) be **DISMISSED** as frivolous, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and for seeking monetary relief against a defendant who is immune from such relief,

pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii);

3.      All of the plaintiff's federal claims against Patrick Loungo, Richard Gladys, and Ed Adams (Claims 1, 2, 3, 6, 8, 11, 12, 13, and 14) be **DISMISSED** for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and for seeking monetary relief against a defendant who is immune from such relief, pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii);

4.      The remainder of the plaintiff's federal claims against all other defendants (Claims 1, 2, 4, 5, 7, 8, 9, 10, 12, 13, and 14) be **DISMISSED** for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii);

5.      The plaintiff's state-law claims (Claims 15, 16, 17, 18, and 19) be **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1367(c)(3);

6.      The plaintiff be granted leave to file a second amended complaint within a specified period of time following dismissal of the amended complaint;

7.      The Clerk be directed to **CLOSE** this case if a second amended complaint is not timely filed; and

8.    This matter be remanded to the undersigned for further proceedings, if any.


Dated: July 18, 2016                    *s/ Joseph F. Saporito, Jr.*
                                        JOSEPH F. SAPORITO, JR.
                                        United States Magistrate Judge

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM BURRELL JR.,

      Plaintiff,

      v.

PATRICK LOUNGO, et al.,

      Defendants.

CIVIL ACTION NO. 3:14-cv-01891

(MARIANI, J.)
(SAPORITO, M.J.)

## NOTICE

NOTICE IS HEREBY GIVEN that the undersigned has entered the foregoing Report and Recommendation dated July 18, 2016. Any party may obtain a review of the Report and Recommendation pursuant to Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to

which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


Dated: July 18, 2016                    *s/ Joseph F. Saporito, Jr.*
                                        JOSEPH F. SAPORITO, JR.
                                        United States Magistrate Judge