**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| WILLIAM L. BURRELL, JR., et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | No. 3:14-cv-1891-RDM |
| | : | |
| LACKAWANNA RECYCLING CENTER, INC., et al., | : | Honorable Robert D. Mariani |
| | : | |
| Defendants, | : | (Electronically Filed) |

**BRIEF IN SUPPORT OF MOTION TO DISMISS
BY LOUIS DENAPLES AND DOMINICK DENAPLES**

Defendants, Louis DeNaples and Dominick DeNaples (collectively, "DeNaples"), pursuant to Local Rule 7.8, submit this brief in support of their motion to dismiss Plaintiffs' second amended complaint in its entirety, as it pertains to DeNaples.

**I.   PROCEDURAL HISTORY**

Pertinent here, this case was initially filed as a *pro se* individual matter by Plaintiff Burrell in 2014. Doc. 1. On December 19, 2014 Plaintiff filed an amended *pro se* complaint. Doc. 11. On February 23, 2017, the Court dismissed Plaintiff's amended complaint, prior to service, for failure to state a claim upon which relief can be granted. Doc. 44. Plaintiff appealed this dismissal to the Third Circuit and, on September 12, 2018, the Third Circuit vacated, in part, this Court's judgment and remanded the case to this Court for further proceedings, finding, in an unpublished

1

opinion, that Plaintiff should be permitted to amend his complaint and pursue certain claims. Doc. 57.

On December 4, 2019, the Court granted Plaintiff Burrell conditional leave to file a second amended complaint, which added proposed Plaintiffs Huzzard and Stuckey. Doc. 76. On December 16, 2019, the operative second amended complaint was filed by Plaintiffs as a class and collective action. Doc. 77. DeNaples, on March 17, 2020, filed their motion to dismiss, Doc. 102, in accordance with the deadline to respond established by the Court's February 7, 2020 order. Doc. 93.

## II.    STATEMENT OF FACTS

With respect to DeNaples, the well-pleaded factual allegations in the second amended complaint are limited to: (a) Louis and Dominick DeNaples are the owners of a corporation, specifically, Lackawanna Recycling Center, Inc. ("LRCI"); (b) Louis DeNaples is the President, and Dominick DeNaples is the Vice President, of LRCI;  (c) LRCI operates the Lackawanna Recycling Center ("Center") and, as it owner, DeNaples benefits indirectly if LRCI incurs lower labor costs at the Center; and (d) the Plaintiffs worked at the Center under an arrangement between the Plaintiffs and the staff of the prison where Plaintiffs were serving lawful sentences. *See* Doc. 77 at ¶¶ 2, 11, 12, 183, 186, and 191.

### III. STATEMENT OF QUESTIONS INVOLVED

Plaintiffs, on behalf of themselves and a purported class as described in their second amended complaint, assert federal claims against DeNaples under the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. § 1589 (Count I), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.* (Count VI), and a state-law claim for unjust enrichment (Count VII). *See* Doc. 77.

The question presented by DeNaples' Fed. R. Civ. P. 12(b)(6) motion is whether the Court should dismiss Plaintiffs' second amended complaint in its entirety, as it pertains to DeNaples, for failure state claims against DeNaples upon which relief can be granted.

### IV. ARGUMENT

#### A. Legal Standard for Dismissal.

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion under Rule 12(b)(6) tests the sufficiency of the complaint in light facts properly alleged in accordance with the pleading requirements of Rule 8(a). *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). To survive a motion to dismiss, a complaint must allege facts sufficient to state a plausible, not merely possible, claim. *Id.* A claim is plausible only where the

complaint contains factual allegations that permit the court to draw the reasonable inference that the moving defendant is liable for the misconduct alleged. *Id*.

When considering a Rule 12(b)(6) motion, a court takes three steps. First, it identifies the elements necessary to state each claim asserted against the moving defendant. *See Connelly,* 809 F.3d at 787. Second, it identifies the factual allegations pertinent to the moving defendant, but in doing so, it disregards conclusory and other improperly pled allegations, such as legal conclusions, boiler plate recitations of the elements of a claim and other vague allegations, that are not entitled to the presumption of truth. *Id*. In this regard, "group pleading" *i.e.*, allegations lumping unspecified defendants together without setting forth what the moving defendant is alleged to have done, are insufficient under Rule 8(a) and should be disregarded. *See Dolan v. PHL Variable Ins. Co.*, 2016 U.S. Dist. LEXIS 161414, at *21-*22 (M.D. Pa. Nov. 22, 2016); *see also Mills v. Ethicon, Inc.*, 406 F.Supp.3d 363, 386-87 (D.N.J. 2019). Third, with respect to the remaining well-pleaded factual allegations, the court accepts those allegations as true and "determine whether they plausibly give rise to an entitlement to relief." *See Connelly*, 809 F.3d at 787.

    **B.**    **Count I Against DeNaples Should Be Dismissed.**

Count I of Plaintiffs' second amended complaint asserts a TVPA claim for damages against all Defendants, alleging the illegal use of incarcerated civil

contemnors as forced labor at the Center. *See* Doc. 77 at ¶¶ 202-207. The gist of Plaintiffs' TVPA claim is that in order to "qualify" for the work-release program, Plaintiffs were required by prison "staff," or by the "court," to first work at the Center. Doc. 77 at ¶¶ 30, 66, 87.

### 1. The TVPA does not confer on prisoners a right to participate in work-release programs.

The TVPA claims must be dismissed, as to DeNaples and all Defendants, because allegedly requiring otherwise lawfully incarcerated prisoners to "qualify" for work-release programs by first working at the Center as a precondition to accessing such programs is not violation of the TVPA, which is a criminal statute prohibiting the procurement of forced labor.

Congress enacted the TVPA as part of the Victims of Trafficking and Violence Protection Act of 2000 "to combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims." Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-386, § 102(a), 114 Stat. 1464, 1466 (codified at 22 U.S.C. § 7101). Congress supported that purpose with 24 legislative findings, all of which focus on human trafficking and involuntary servitude. *Id.* § 102(b), 114 Stat. at 1466-69. And the legislative history indicates that Section 1589 in particular was "intended to address the

5

increasingly subtle methods of traffickers who place their victims in modern-day slavery." H.R. Rep. No. 106-939, at 101 (2000) (Conf. Rep.).

The TVPA does not, and never was intended to, guarantee prisoners unconditional access to prison work-release programs. That is, the TVPA does not confer on prisoners a right to shorten an *otherwise lawful prison sentence* by participating in a work-release program. Stated even more generally, requiring a prisoner to serve out his full, lawfully-imposed sentence if he chooses not to meet the work requirements upon which access to a work-release program is conditioned does amount to creating slave labor for which prison officials themselves can be sent to prison for up to 20 years. *See Martinez v. Fed. Corr. Inst.*, 2019 U.S. Dist. LEXIS 193325, at *13-*14 (C.D. Cal. Sept. 25, 2019), *adopted by*, *Martinez v. Fed. Corr. Inst.*, 2019 U.S. Dist. LEXIS 193345 (C.D. Cal. Nov. 4, 2019) (rejecting prisoner's claim that being forced into a prison work assignment violates federal criminal laws prohibiting peonage, slavery, and trafficking in persons, particularly 18 U.S.C. § 1589).

Through this statute, moreover, Congress intended to reach cases in which persons are held in a condition of servitude through nonviolent *coercion*, as well as through physical or legal coercion. *See Burrell v. Loungo*, 750 Fed. Appx. 149, 160 (3d Cir. 2018). Here, as alleged by their second amended complaint, Plaintiffs had a sufficient "choice" so that any alleged coercion to work in the Center did not

convert that work into involuntary servitude. Doc. 77 at ¶¶ 29, 36, 64, 67, 86, 88, 151, 177. Victims of "forced labor" are coerced to work against their will because of serious harm or threat of serious harm. *See* 18 U.S.C. § 1589(a). Plaintiffs have not been coerced to provide labor or services at the Center. On the contrary, even if Plaintiffs wanted to "qualify" for work release or otherwise access the work-release program as alleged, Plaintiffs could have voluntarily chosen *not* to do so, because of Defendants' alleged scheme or otherwise. Doc. 77 at ¶¶ 29, 36, 64, 67, 86, 88, 151, 177. By definition of "forced labor," Plaintiffs have not been coerced into working against their will and have, therefore, failed to state a claim under the TVPA.

For these threshold reasons, Count I should be dismissed as to DeNaples.

### 2. DeNaples Is Not A Proper Defendant Under the TVPA.

Independent of the foregoing, the TVPA claims against DeNaples must be dismissed because Plaintiffs have not properly alleged that DeNaples was either a "perpetrator," or knowing beneficiary of, the alleged violations of the TVPA. 18 U.S.C. § 1595(a).

Pertinent here, the TVPA prohibits knowingly "obtain[ing] the labor or services of a person" by any one of, or combination of, the following means:

> (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
>
> (2) by means of serious harm or threats of serious harm to that person or another person;

>(3) by means of the abuse or threatened abuse of law or legal process; or
>
>(4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.

18 U.S.C. § 1589(a). The TVPA further prohibits knowingly benefiting "financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means . . . ." 18 U.S.C. § 1589(b).

Section 1595(a), in turn, provides that civil actions under the TVPA may be brought against "perpetrators" and against those that benefit from a "venture" that the defendant "knew or should have known has engaged in violation of this chapter." 18 U.S.C. § 1595. Plaintiffs, by their second amended complaint, when read in light of the applicable pleading requirements, have not properly alleged that DeNaples falls into either of these categories.

### a. DeNaples is not a "perpetrator."

Plaintiffs' alleged violations of Section 1589 are pleaded against the "Defendants" collectively, without any attempt to set forth what each particular Defendant is alleged to have done to violate its provisions. *See* Doc. 77 at ¶¶ 202-

8

207. This lumping together of Defendants by Plaintiffs fails to satisfy notice pleading rules because it does not place Defendants on notice of the claims against each of them. *See* Fed. R. Civ. P. (8)(a); *Mills* and *Dolan*, *supra*.

Regardless, as to DeNaples, Plaintiffs allege only that DeNaples own, and are officers of, Defendant LRCI, a corporate entity with separate corporate existence. *See* Section II., Statement of Facts, *supra*. Plaintiffs do not allege, and do not allege any facts that would support an allegation or inference, that DeNaples, *as individuals*, knowingly obtained the labor of Plaintiffs (irrespective of the prohibited means set forth in Section 1589). *Id*. For this reason, Count I should be dismissed as to DeNaples.

Additionally, even if Plaintiffs had pleaded that DeNaples knowingly obtained Plaintiffs' labor, they fail to state a claim pursuant to 18 U.S.C. § 1589(1) because Plaintiffs fail to alleged that DeNaples obtained such labor through "threats of continued physical restraint" (Doc. 77 at ¶ 204). The alleged forced labor was an opportunity presented to Plaintiffs by prison officials, not by DeNaples, and only *after* Plaintiffs had already been lawfully sentenced to such "physical restraint" – *i.e.*, Plaintiffs were physically restrained in prison because they were sentenced by lawful state court process to serve time in prison for contempt, and not because of any threat of continued physical restraint by DeNaples. Any "physical restraint" suffered by Plaintiffs was not caused by DeNaples. As civil contemnors, Plaintiffs

were physically restrained by *lawful state court process*, not by any acts of DeNaples, and could release themselves from such restraint compliance with some condition. Plaintiffs, as civil contemnors, "carr[ied] the keys of [their] prison in [their] own pockets." *Burrell*, 750 F. App'x at 159 (citing *Turner v. Rogers*, 564 U.S. 431, 441-42 (2011)).

Plaintiffs, likewise, fail to state a claim pursuant to 18 U.S.C. § 1589(3) because Plaintiffs were neither compelled nor coerced to work at the Center by any "abuse of law and/or legal process" (Doc. 77 at ¶ 205) by DeNaples. Instead, Plaintiffs were presented with the option to work there by prison officials, not by DeNaples, and only *after* they had already been sentenced by lawful state court process to serve time in prison for contempt.

Similarly, Plaintiffs fail to state a claim pursuant to 18 U.S.C. § 1589(4) because DeNaples could not have obtained the labor or services of Plaintiffs by causing Plaintiffs to believe that if they did not provide the labor or services that they would suffer continued physical restraint (Doc. 77 at ¶ 206). Again, because the alleged forced labor was an opportunity presented to Plaintiffs by prison officials, not by DeNaples, and only *after* Plaintiffs had already been lawfully sentenced to such "physical restraint" – *i.e.*, Plaintiffs were physically restrained in prison because they were sentenced by lawful state court process to serve time in

10

prison for contempt, and not because of any threat of continued physical restraint by DeNaples.

### b. DeNaples did not knowingly benefit from a "venture" that they knew or should have known has engaged in violation of the TVPA.

The requirements for liability under § 1595(a) on a "beneficiary" theory can be stated as follows: (1) the person or entity must "knowingly benefit[], financially or by receiving anything of value," (2) from participating in a venture, (3) that the "person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a). *See also M.A. v. Wyndham Hotels & Resorts, Inc.*, 2019 U.S. Dist. LEXIS 173675 (S.D. Ohio. Oct. 7, 2019).

Here, and again, the gist of Plaintiffs' TVPA claim is that in order to "qualify" for the work-release program, Plaintiffs were required by prison "staff," or by the "court," to first work at the Center, a recycling center owned and operated by the Authority. Doc. 77 at ¶¶ 30, 66, 87. There is no allegation by Plaintiffs that the foregoing constitutes a "venture" for purposes of the TVPA. But even if considered a "venture" under the TVPA, there are no facts alleged that would support an allegation or inference by Plaintiffs that DeNaples, as individuals, participated in the alleged venture, knowingly benefited, financially or by receiving anything of value, from participating in the alleged venture, or knew or should have known that the

alleged venture has engaged in an act in violation of the TVPA.  *See* Section II, *supra*.

Count I, for all of the foregoing reasons, fails to state a claim for which relief can be granted as to DeNaples and should be dismissed as to DeNaples.

### C. Count VI Against DeNaples Should Be Dismissed.

Plaintiffs' RICO claim against DeNaples must be dismissed for failure to properly allege essential elements of their claim against DeNaples.  To state a RICO claim under 18 U.S.C. § 1962(c), with respect to each defendant, a plaintiff must allege: 1) conduct; 2) of an enterprise; 3) through a pattern; 4) of racketeering activity.  *See Camiolo v. State Farm Fire & Cas. Co.*, 334 F.3d 345, 364 (3d Cir. 2003).  Plaintiffs have failed to properly allege both "conduct" and "racketeering activity" by DeNaples.  That is, Plaintiffs have failed to properly allege that DeNaples "participated in the 'operation or management' of an enterprise's affairs . . . 'through a pattern of racketeering activity.'"  *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 372 (3d Cir. 2010).

#### 1. Plaintiffs have not alleged racketeering activity.

Plaintiffs allege a pattern of racketeering activity through forced labor in violation of the TVPA.  Doc. 77 at ¶ 240.  For the reasons above, Plaintiffs cannot assert a viable forced labor claim under 18 U.S.C. § 1589 (Count I) against

DeNaples. For that reason, Plaintiffs' racketeering claim, which is predicated on alleged forced labor, should be dismissed as to DeNaples.

### 2. Plaintiffs have not alleged that DeNaples engaged in racketeering activity.

In order to properly allege that a particular defendant "conducted" the affairs of an enterprise in violation of RICO, a plaintiff must allege that the particular defendant engaged in the predicate acts of racketeering activity. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 372 & n.69. Plaintiffs' complaint, with respect to DeNaples, does not satisfy this requirement, even if Plaintiffs have properly alleged a TVPA claim against others (they have not for the reasons above). This is because Plaintiffs have not alleged that DeNaples violated the TVPA. Rather, attempting to allege the requisite "conduct," Plaintiffs have alleged: "LRCI [and DeNaples] . . . participate in the conduct of the Enterprise's affairs by operating the Center through the use of labor performed by prisoners, including Debtors." Doc. 77 at ¶ 191. This allegation, taken as true, is insufficient to even suggest an inference that DeNaples engaged in the predicate acts of racketeering activity. Fatal to the claim, there is no suggestion, much less a basis for properly inferring, that DeNaples participated in, or even knew of, the alleged actions and decisions by others, such as prison staff, to condition participation in work release programs on working at the Center.

Count VI, for these reasons, should be dismissed as to DeNaples.

### D. Count VII Against DeNaples Should Be Dismissed.

The remaining count brought by Plaintiffs against DeNaples is a state law claim for alleged unjust enrichment (Count VII). *See* Doc. 77 at ¶¶ 244-246.

"Unjust enrichment is the retention of a benefit conferred by another, without offering compensation, in circumstances where compensation is reasonably expected, and for which the beneficiary must make restitution." *Roethlein v. Portnoff Law Assocs., Ltd.*, 81 A.3d 816, 825 n.8 (Pa. 2013) (citing *American & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 532 n.7 (Pa. 2010)). "An action based on unjust enrichment is an action which sounds in quasi-contract or contract implied in law." *Id.* (citing *Schott v. Westinghouse Elec. Corp.*, 259 A.2d 443, 448 (Pa. 1969)). Moreover, "[w]hen benefits are improperly conferred upon a corporate entity, its officers are typically liable only if it can be shown that the officer in question actually participated in the misconduct." *USTAAD Systems, Inc. v. iCAP International Corp.*, 2010 U.S. Dist. LEXIS 71607, at *15 (M.D. Pa. July 6, 2010).

Here, Plaintiffs have failed to allege any facts sufficient to support a claim of unjust enrichment against DeNaples as individuals. Plaintiffs do not allege any facts that would support an allegation or inference that DeNaples participated in the alleged misconduct – or any conduct – that resulted in the purported "unjust" enrichment. Moreover, Plaintiffs have not properly alleged they conferred a benefit on DeNaples (as opposed to others), that DeNaples appreciated such benefit, or that

DeNaples accepted or retained such benefit (under such circumstances that it would be inequitable for DeNaples to retain such benefit without payment of value, or otherwise). Doc. 77 at ¶¶ 18-201.

## VI. CONCLUSION

For these reasons, Plaintiffs' second amended complaint be dismissed as to DeNaples.

Respectfully submitted,

March 31, 2020

s/Christopher R. Nestor
David R. Overstreet
PA 68950
OVERSTREET & NESTOR, LLC
461 Cochran Road, Box 237
Pittsburgh, PA 15228
(717) 645-1861
david.overstreet@palawgroup.com

Jeffrey Belardi
PA 71826
BELARDI LAW OFFICES
The TekRidge Center
50 Alberigi Drive, Suite 114
Jessup, PA 18434
(570) 342-4555
jeff@belardilaw.com

Christopher R. Nestor
PA 82400
OVERSTREET & NESTOR, LLC
1425 Crooked Hill Road #62066
Harrisburg, PA 17106-2066
(717) 350-5939
christopher.nestor@palawgroup.com

*Attorneys for Defendants Lackawanna Recycling Center, Inc., Louis DeNaples and Dominick DeNaples*

## **CERTIFICATE OF SERVICE**

I certify that, on March 31, 2020, I filed the foregoing BRIEF IN SUPPORT OF MOTION TO DISMISS with the Court's ECF system such that counsel of record for all parties should receive service automatically.

s/Christopher R. Nestor<br>
Christopher R. Nestor