# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM L. BURRELL, JR., et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | No. 3:14-cv-1891-RDM |
| | : | |
| LACKAWANNA RECYCLING | : | Honorable Robert D. Mariani |
| CENTER, INC., et al., | : | |
| | : | |
| Defendants, | : | (Electronically Filed) |

## <u>BRIEF IN SUPPORT OF MOTION TO DISMISS</u>
## <u>BY LACKAWANNA RECYCLING CENTER, INC.</u>

David R. Overstreet
Pa. Id. No. 68950
Christopher R. Nestor
Pa. Id. No. 82400
Overstreet & Nestor, LLC
461 Cochran Road, Box 237
Pittsburgh, PA 15228
(717) 645-1861
david.overstreet@palawgroup.com
christopher.nestor@palawgroup.com

Jeffrey Belardi
Pa. Id. No. 71826
Belardi Law Offices
TekRidge Center
50 Alberigi Drive, Suite 114
Jessup, PA 18434
(570) 342-4555
jeff@belardilegal.com

March 31, 2020

## <u>TABLE OF CONTENTS</u>

I.     PROCEDURAL HISTORY ................................................................. 1

II.    STATEMENT OF FACTS ................................................................. 2

III.   STATEMENT OF QUESTIONS INVOLVED ................................. 2

IV.    ARGUMENT ..................................................................................... 3

      A.     Legal Standard for Dismissal ............................................. 3

      B.     Count I Against LRCI Should Be Dismissed ..................... 4

            1.   The TVPA does not confer on prisoners a right to
               Participate in work-release programs ..................... 5

            2.   LRCI Is Not A Proper Defendant Under the TVPA ..... 7

                a.   LRCI is not a "perpetrator" ......................... 8

                b.   LRCI did not knowingly benefit from a "venture"
                    that LRCI knew or should have known has
                    engaged in violation of the TVPA ............. 10

      C.     Count III Against LRCI Should Be Dismissed .............. 11

            1.   Plaintiffs are not "employees" ............................ 12

            2.   LRCI was not Plaintiffs' employer and Plaintiffs' were
               not its employees ................................................ 15

            3.   The FLSA claim is time-barred as to Plaintiffs Burrell
               and Huzzard ........................................................ 16

      D.     Count VI Against LRCI Should Be Dismissed .............. 17

            1.   Plaintiffs have not alleged racketeering activity .... 18

2.      Plaintiffs have not alleged that LRCI engaged in
         racketeering activity ................................................................ 18

E.      Count IV Against LRCI Should Be Dismissed ............................. 19

F.      Count V Against LRCI Should Be Dismissed .............................. 20

G.      Count VII Against LRCI Should Be Dismissed ........................... 21

V.   CONCLUSION ....................................................................................... 22

# TABLE OF AUTHORITIES

## Federal Cases

*Burrell v. Loungo*, 750 Fed. Appx. 149 (3d Cir. 2018) .................... 6, 9

*Camiolo v. State Farm Fire & Cas. Co.*, 334 F.3d 345 (3d Cir. 2003) .......... 18

*Connelly v. Lane Constr. Corp.*, 809 F.3d 780 (3d Cir. 2016) ............... 3

*Dolan v. PHL Variable Ins. Co.*, 2016 U.S. Dist. LEXIS 161414
(M.D. Pa. Nov. 22, 2016) .................... 4, 8

*Hale v. State of Ariz.*, 993 F.2d 1387 (9th Cir. 1993) .................... 13

*In re Enterprise Rent-A-Car*, 683 F.3d 462 (3d Cir. 2012) .................... 15

*In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300 (3d Cir. 2010) .......... 18

*M.A. v. Wyndham Hotels & Resorts, Inc.*, 2019 U.S. Dist. LEXIS 173675
(S.D. Ohio. Oct. 7, 2019) .................... 11

*Martinez v. Fed. Corr. Inst.*, 2019 U.S. Dist. LEXIS 193325
(C.D. Cal. Sept. 25, 2019) .................... 6

*McMaster v. Minnesota*, 30 F.3d 976 (8th Cir. 1994) .................... 13, 14

*Mills v. Ethicon, Inc.*, 406 F.Supp.3d 363 (D.N.J. 2019) .................... 4, 8

*Razak v. Uber Techs., Inc.*, 2016 U.S. Dist. LEXIS 139668
(E.D. Pa. Oct. 7, 2016) .................... 20

*Robinson v. Johnson*, 313 F.3d 128 (3d Cir. 2002) .................... 16

*Sicklesmith v. Hershey Entm't & Resorts Co.,* 2020 U.S. Dist. LEXIS 32042
(M.D. Pa. Feb. 25, 2020) .................... 20

*Stone v. Troy Constr., LLC*, 935 F.3d 141 (3d Cir. 2019) .................... 16, 17

*Thompson v. Real Estate Mortg. Network*, 748 F.3d 142 (3d Cir. 2014) .......... 12

*Tourscher v. McCullough*, 184 F.3d 236 (3d Cir. 1999) .................... 13

*USTAAD Systems, Inc. v. iCAP International Corp.*,
2010 U.S. Dist. LEXIS 71607 (M.D. Pa. July 6, 2010) .................... 21

*Vanskike v. Peters*, 974 F.2d 806 (7th Cir. 1992) .................... 13

*Walden v. Nevada*, 945 F.3d 1088 (9th Cir. 2019) .................... 13

*Wilkerson v. Samuels*, 524 F. App'x 776 (3d Cir. 2013) .................... 13

## State Cases

*Oberneder v. Link Computer Corp.*, 696 A.2d 148 (Pa. 1997) ..................... 21

*Rhoads v. Lancaster Parking Auth.*, 520 A.2d 122 (Pa. 1987) ..................... 14

*Roethlein v. Portnoff Law Assocs., Ltd.*, 81 A.3d 816 (Pa. 2013) ............... 21

## Federal Statutes & Rules

18 U.S.C. § 1589 ............................................................................ *passim*

18 U.S.C. § 1595 ............................................................... 7, 8, 10, 11

18 U.S.C. §§ 1961 *et seq* ........................................................... 2

18 U.S.C. § 1962 ............................................................................. 17

29 U.S.C. §§ 201 *et seq* .............................................................. 2

29 U.S.C. § 203 ............................................................................... 12

29 U.S.C. § 206 ............................................................................... 12

29 U.S.C. § 255 ............................................................................... 16

29 U.S.C. § 256 ............................................................................... 17

Fed. R. Civ. P. 12(b)(6) ............................................................. 3, 16

Fed. R. Civ. P. 8(a) ........................................................................ 4, 8

## State Statutes

43 P.S. §§ 260.1 *et seq* ............................................................... 20

43 P.S. § 260.9a ............................................................................. 20

43 P.S. § 333.103 .................................................................... 19, 20

43 P.S. § 333.104 ........................................................................... 19

## Other Authorities

Victims of Trafficking and Violence Protection Act of 2000,
Pub. L. No. 106-386, § 102(a), 114 Stat. 1464, 1466 ..................... 5

H.R. Rep. No. 106-939, at 101 (2000) (Conf. Rep.) ........................ 5

Defendant, Lackawanna Recycling Center, Inc. ("LRCI"), pursuant to Local Rule 7.8, submits this brief in support of its motion to dismiss Plaintiffs' second amended complaint in its entirety, as it pertains to LRCI.

## I.   PROCEDURAL HISTORY

Pertinent here, this case was initially filed as a *pro se* individual matter by Plaintiff Burrell in 2014.  Doc. 1.  On December 19, 2014 Plaintiff filed an amended *pro se* complaint.  Doc. 11.  On February 23, 2017, the Court dismissed Plaintiff's amended complaint, prior to service, for failure to state a claim upon which relief can be granted.  Doc. 44.  Plaintiff appealed this dismissal to the Third Circuit and, on September 12, 2018, the Third Circuit vacated, in part, this Court's judgment and remanded the case to this Court for further proceedings, finding, in an unpublished opinion, that Plaintiff should be permitted to amend his complaint and pursue certain claims.  Doc. 57.

On December 4, 2019, the Court granted Plaintiff Burrell conditional leave to file a second amended complaint, which added proposed Plaintiffs Huzzard and Stuckey.  Doc. 76.  On December 16, 2019, the operative second amended complaint was filed by Plaintiffs as a class and collective action.  Doc. 77.  LRCI, on March 17, 2020, filed its motion to dismiss, Doc. 101, in accordance with the deadline to respond established by the Court's February 7, 2020 order.  Doc. 93.

## II.    STATEMENT OF FACTS

With respect to LRCI, the well-pleaded factual allegations in the second amended complaint are limited to: (a) LRCI is a corporation; (b) since at least 2005, and continuing to present, LRCI operates the Lackawanna Recycling Center ("Center") pursuant to an Operating Agreement with the Lackawanna County Solid Waste Management Authority ("Authority"); (c) the Operating Agreement, which Plaintiffs selectively quote from, but neglect to attach to their complaint, contains the terms of the relationship between LRCI and the Authority; (d) LRCI, as the operator of the Center, exercises control over the day-to-day "conditions" of Plaintiffs' work; (e) Plaintiffs' work at the Center reduced the Center's operating costs, benefiting LRCI; and (f) the Plaintiffs worked at the Center under an arrangement between the Plaintiffs and the staff of the prison where Plaintiffs were serving lawful sentences.  Doc. 77 at ¶¶ 10, 121-144, 183, 191.

## III.    STATEMENT OF QUESTIONS INVOLVED

Plaintiffs, on behalf of themselves and a purported class and collective as described in their second amended complaint, assert federal claims against LRCI under the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. § 1589 (Count I), the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. (Count III), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq*. (Count VI), and state-law claims for alleged violations of the Pennsylvania

Minimum Wage Act (Count IV), the Pennsylvania Wage Payment and Collection Act (Count V), and for unjust enrichment (Count VII).  Doc. 77.

The question presented by LRCI's motion to dismiss is whether the Court should dismiss Plaintiffs' second amended complaint in its entirety, as it pertains to LRCI, for failure state claims against LRCI upon which relief can be granted.

## IV.   ARGUMENT

### A.   Legal Standard for Dismissal.

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  A Rule 12(b)(6) motion tests the sufficiency of the complaint in light facts properly alleged in accordance with the pleading requirements of Rule 8(a).  *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016).  To survive such a motion, a complaint must allege facts sufficient to state a plausible, not merely possible, claim. *Id.*  A claim is plausible only where the complaint contains factual allegations that permit the court to draw the reasonable inference that the moving defendant is liable for the misconduct alleged.  *Id*.

When considering a Rule 12(b)(6) motion, a court takes three steps.  First, it identifies the elements necessary to state each claim asserted against the moving defendant.  *See Connelly,* 809 F.3d at 787.  Second, it identifies the factual allegations pertinent to the moving defendant, but in doing so, it disregards

conclusory and other improperly pled allegations, such as legal conclusions, boiler plate recitations of the elements of a claim and other vague allegations, that are not entitled to the presumption of truth.  *Id*.  In this regard, "group pleading" *i.e.*, allegations lumping unspecified defendants together without setting forth what the moving defendant is alleged to have done, are insufficient under Rule 8(a) and should be disregarded.  *Dolan v. PHL Variable Ins. Co.*, 2016 U.S. Dist. LEXIS 161414, at *21-*22 (M.D. Pa. Nov. 22, 2016); *see also Mills v. Ethicon, Inc.*, 406 F.Supp.3d 363, 386-87 (D.N.J. 2019).  Third, with respect to the remaining well-pleaded factual allegations, the court accepts those allegations as true and "determine whether they plausibly give rise to an entitlement to relief."  *Connelly*, 809 F.3d at 787.

**B.    Count I Against LRCI Should Be Dismissed.**

Count I of Plaintiffs' second amended complaint asserts a TVPA claim for damages against all Defendants, alleging the illegal use of incarcerated civil contemnors as forced labor at the Center.  Doc. 77 at ¶¶ 202-207.  The gist of Plaintiffs' TVPA claim is that in order to "qualify" for the work-release program, Plaintiffs were required by prison "staff," or by the "court," to first work at the Center.  Doc. 77 at ¶¶ 30, 66, 87.

### 1.    The TVPA does not confer on prisoners a right to participate in work-release programs.

The TVPA claims must be dismissed, as to LRCI and all Defendants, because allegedly requiring otherwise lawfully incarcerated prisoners to "qualify" for work-release programs by first working at the Center as a precondition to accessing such programs is not violation of the TVPA, which is a criminal statute prohibiting the procurement of forced labor.

Congress enacted the TVPA as part of the Victims of Trafficking and Violence Protection Act of 2000 "to combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims." Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-386, § 102(a), 114 Stat. 1464, 1466 (codified at 22 U.S.C. § 7101). Congress supported that purpose with 24 legislative findings, all of which focus on human trafficking and involuntary servitude. *Id*. § 102(b), 114 Stat. at 1466-69. And the legislative history indicates that Section 1589 in particular was "intended to address the increasingly subtle methods of traffickers who place their victims in modern-day slavery." H.R. Rep. No. 106-939, at 101 (2000) (Conf. Rep.).

The TVPA does not, and never was intended to, guarantee prisoners unconditional access to prison work-release programs. That is, the TVPA does not confer on prisoners a right to shorten an *otherwise lawful prison sentence* by

5

participating in a work-release program. Stated even more generally, requiring a prisoner to serve out his full, lawfully-imposed sentence if he chooses not to meet the work requirements upon which access to a work-release program is conditioned does amount to creating slave labor for which prison officials themselves can be sent to prison for up to 20 years. *See Martinez v. Fed. Corr. Inst.*, 2019 U.S. Dist. LEXIS 193325, at *13-*14 (C.D. Cal. Sept. 25, 2019), *adopted by*, *Martinez v. Fed. Corr. Inst.*, 2019 U.S. Dist. LEXIS 193345 (C.D. Cal. Nov. 4, 2019) (rejecting prisoner's claim that being forced into prison work assignment violates federal criminal laws prohibiting peonage, slavery, and trafficking in persons, particularly 18 U.S.C. § 1589).

Through this statute, moreover, Congress intended to reach cases in which persons are held in a condition of servitude through nonviolent *coercion*, as well as through physical or legal coercion. *See Burrell v. Loungo*, 750 Fed. Appx. 149, 160 (3d Cir. 2018). Here, as alleged by their second amended complaint, Plaintiffs had a sufficient "choice" so that any alleged coercion to work in the Center did not convert that work into involuntary servitude. Doc. 77 at ¶¶ 29, 36, 64, 67, 86, 88, 151, 177. Victims of "forced labor" are coerced to work against their will because of serious harm or threat of serious harm. *See* 18 U.S.C. § 1589(a). Plaintiffs have not been coerced to provide labor or services at the Center. On the contrary, even if Plaintiffs wanted to "qualify" for work release or otherwise access the work-release

6

program as alleged, Plaintiffs could have voluntarily chosen *not* to do so, because of Defendants' alleged scheme or otherwise.  Doc. 77 at ¶¶ 29, 36, 64, 67, 86, 88, 151, 177.  By definition of "forced labor," Plaintiffs have not been coerced into working against their will and have, therefore, failed to state a claim under the TVPA.

For these threshold reasons, Count I should be dismissed as to LRCI.

### 2.    LRCI Is Not A Proper Defendant Under the TVPA.

Independent of the foregoing, the TVPA claims against LRCI must be dismissed because Plaintiffs have not properly alleged that LRCI was either a "perpetrator," or knowing beneficiary of, the alleged violations of the TVPA.   18 U.S.C. § 1595(a).

Pertinent here, the TVPA prohibits knowingly "obtain[ing] the labor or services of a person" by any one of, or combination of, the following means:

(1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;

(2) by means of serious harm or threats of serious harm to that person or another person;

(3) by means of the abuse or threatened abuse of law or legal process; or

(4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.

18 U.S.C. § 1589(a).  The TVPA further prohibits knowingly benefiting "financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means . . . ."  18 U.S.C. § 1589(b).

Section 1595(a), in turn, provides that civil actions under the TVPA may be brought against "perpetrators" and against those that benefit from a "venture" that the defendant "knew or should have known has engaged in violation of this chapter." 18 U.S.C. § 1595.  Plaintiffs, by their second amended complaint, when read in light of the applicable pleading requirements, have not properly alleged that LRCI falls into either of these categories.

### a.      LRCI is not a "perpetrator."

Plaintiffs' alleged violations of Section 1589 are pleaded against the "Defendants" collectively, without any attempt to set forth what each particular Defendant is alleged to have done to violate its provisions.  Doc. 77 at ¶¶ 202-207. This lumping together of Defendants by Plaintiffs fails to satisfy notice pleading rules because it does not place Defendants on notice of the claims against each of them.  *See* Fed. R. Civ. P. (8)(a); *Mills* and *Dolan*, *supra*.

8

Regardless, as to LRCI, Plaintiffs do not allege, and do not allege any facts that would support an allegation or inference, that LRCI knowingly obtained the labor of Plaintiffs (irrespective of Section 1589's prohibited means). *See* Section II., *supra*. For this reason, Count I should be dismissed as to LRCI.

Additionally, even if Plaintiffs had pleaded that LRCI knowingly obtained Plaintiffs' labor, they fail to state a claim pursuant to 18 U.S.C. § 1589(1) because Plaintiffs fail to alleged that LRCI obtained such labor through "threats of continued physical restraint" (Doc. 77 at ¶ 204). The alleged forced labor was an opportunity presented to Plaintiffs by prison officials, not by LRCI, and only *after* Plaintiffs had already been lawfully sentenced to such "physical restraint" – *i.e.*, Plaintiffs were physically restrained in prison because they were sentenced by lawful state court process to serve time in prison for contempt, and not because of any threat of continued physical restraint by LRCI. Any "physical restraint" suffered by Plaintiffs was not caused by LRCI. As civil contemnors, Plaintiffs were physically restrained by *lawful state court process*, not by any acts of LRCI, and could release themselves from such restraint compliance with some condition. Plaintiffs, as civil contemnors, "carr[ied] the keys of [their] prison in [their] own pockets." *Burrell*, 750 F. App'x at 159 (citing *Turner v. Rogers*, 564 U.S. 431, 441-42 (2011)).

Plaintiffs, likewise, fail to state a claim pursuant to 18 U.S.C. § 1589(3) because Plaintiffs were neither compelled nor coerced to work at the Center by any

"abuse of law and/or legal process" (Doc. 77 at ¶ 205) by LRCI.  Instead, Plaintiffs were presented with the option to work there by prison officials, not by LRCI, and only *after* they had already been sentenced by lawful state court process to serve time in prison for contempt.

Similarly, Plaintiffs fail to state a claim pursuant to 18 U.S.C. § 1589(4) because LRCI could not have obtained the labor or services of Plaintiffs by causing Plaintiffs to believe that if they did not provide the labor or services that they would suffer continued physical restraint (Doc. 77 at ¶ 206).  Again, because the alleged forced labor was an opportunity presented to Plaintiffs by prison officials, not by LRCI, and only *after* Plaintiffs had already been lawfully sentenced to such "physical restraint" – *i.e.*, Plaintiffs were physically restrained in prison because they were sentenced by lawful state court process to serve time in prison for contempt, and not because of any threat of continued physical restraint by LRCI.

**b. LRCI did not knowingly benefit from a "venture" that LRCI knew or should have known has engaged in violation of the TVPA.**

The requirements for liability under § 1595(a) on a "beneficiary" theory can be stated as follows: (1) the person or entity must "knowingly benefit[], financially or by receiving anything of value," (2) from participating in a venture, (3) that the "person knew or should have known has engaged in an act in violation of this

chapter." 18 U.S.C. § 1595(a).  *See also M.A. v. Wyndham Hotels & Resorts, Inc.*, 2019 U.S. Dist. LEXIS 173675 (S.D. Ohio. Oct. 7, 2019).

Here, and again, the gist of Plaintiffs' TVPA claim is that in order to "qualify" for the work-release program, Plaintiffs were required by prison "staff," or by the "court," to first work at the Center, a recycling center owned and operated by the Authority.  Doc. 77 at ¶¶ 30, 66, 87.  There is no allegation by Plaintiffs that the foregoing constitutes a "venture" for purposes of the TVPA.  But even if considered a "venture" under the TVPA, there are no facts alleged that would support an allegation or inference by Plaintiffs that LRCI participated in the alleged venture, knowingly benefited, financially or by receiving anything of value, from participating in the alleged venture, or knew or should have known that the alleged venture has engaged in an act in violation of the TVPA.  *See* Section II, *supra*.

Count I, for all of the foregoing reasons, fails to state a claim for which relief can be granted as to LRCI and should be dismissed as to LRCI.

**C.    Count III Against LRCI Should Be Dismissed.**

Count III of Plaintiffs' second amended complaint asserts a FLSA claim alleging that LRCI (and certain other Defendants) failed to pay Plaintiffs required minimum wages under the FLSA.  Doc. 77 at ¶¶ 213-227.

To survive a motion to dismiss their FLSA claim, Plaintiffs' must plausibly plead a *prima facie* case, alleging: (1) an actionable employer-employee

relationship; (2) engagement in commerce or in the production of goods for commerce by either the employee or the employer; and (3) the employer's failure to pay the employee, as alleged here, the federal minimum wage.  *See Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147-148 (3d Cir. 2014).

Plaintiffs allege that Defendant LRCI, and certain other named Defendants, "jointly 'employed'" Plaintiffs as "employees".  Doc. 77 at ¶ 215.

### 1.    Plaintiffs are not "employees".

As a threshold matter, Plaintiffs, who were lawfully incarcerated at the time of the alleged FLSA violations, were not "employees" covered by the minimum wage provision of the FLSA and their FLSA minimum wage claim fails as a matter of law.

The FLSA provides that "[e]very employer shall pay to each of his employees" not less than the minimum wage.  29 U.S.C. § 206(a). An "employee" is defined as "any individual employed by an employer," 29 U.S.C. § 203(e)(1); and "employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee" 29 U.S.C. § 203(d).  "When determining whether someone is an employee under the FLSA, the economic reality rather than the technical concepts is to be the test of employment."  *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 148 (3d Cir. 2014).

Based on the plain language of the FLSA, prisoners are not employees. Regardless, in applying the economic-reality test to work done by prisoners during their incarceration courts have found that, in most situations, prisoners are not protected by the provisions of the FLSA. *See*, *e.g.*, *Wilkerson v. Samuels*, 524 F. App'x 776, 779 (3d Cir. 2013) (prisoner is not employee under the FLSA because relationship is not one of employment but arises out of prisoner's status as inmate); *Tourscher v. McCullough*, 184 F.3d 236, 243 (3d Cir. 1999); *McMaster v. Minnesota*, 30 F.3d 976, 978 (8th Cir. 1994); *Vanskike v. Peters*, 974 F.2d 806, 809 (7th Cir. 1992). That is because, in sum, the economic reality of the relationship between "a prison and a prisoner" is "penological, not pecuniary." *Hale v. State of Ariz.*, 993 F.2d 1387, 1395 (9th Cir. 1993), *overruled in part on other grounds*, *Walden v. Nevada*, 945 F.3d 1088 (9th Cir. 2019).

In *McMaster*, the Eighth Circuit Court of Appeals held that the prisoner plaintiffs were not "employees" within the meaning of the FLSA where they were assigned to work as part of their sentences and where their work was "for the primary purposes of training, rehabilitation and reduction of idleness." *McMaster*, 30 F.3d at 980. The court stated "the relationship between the plaintiffs and the state [was] not an employment relationship, but a custodial [one] in which the FLSA does not apply." *Id*.

Plaintiffs allege that in order to "qualify" for work release, they were required by prison "staff," or by the "court," to first work at the Center, a recycling center owned and operated by the Authority.  Doc. 77 at ¶¶ 30, 66, 87; Exhibit A (Operating Agreement) at 1, 2 (the "Authority owns and operates [the Center]" and "retain[s]s all financial and operational control of [the Center).[1]  Plaintiffs have not alleged any facts suggesting that their relationship with prison "staff" or the "court" was anything but custodial – *i.e.*, penological, not pecuniary.  Accordingly, Plaintiffs' case falls within those cases holding that prisoner plaintiffs are not "employees" within the meaning of the FLSA where they are assigned to work as part of their sentences and where their work is "for the primary purposes of training, rehabilitation and reduction of idleness." *McMaster*, 30 F.3d at 980.  Thus, as pleaded, Plaintiffs' second amended complaint fails to state a claim upon which relief may be granted.

---

[1]  A true and correct copy of the Operating Agreement, identified and pleaded by Plaintiffs, *see* Doc. 77 at ¶¶ 121-129, is included with LRCI's motion as Exhibit A.

The Authority is an independent agency of the Commonwealth, and, like Lackawanna County, which owns and operates the prison, part of its sovereignty. *See Rhoads v. Lancaster Parking Auth.*, 520 A.2d 122, 126 (Pa. 1987).

### 2.   LRCI was not Plaintiffs' employer and Plaintiffs' were not its employees.

Under the "*Enterprise* test" employed in the Third Circuit, *In re Enterprise Rent-A-Car*, 683 F.3d 462, 468 (3d Cir. 2012), courts consider a non-exhaustive list of factors when determining whether "two or more employers exert significant control over the same employees" such that it can be said "they share or codetermine those matters governing essential terms and conditions of employment." *Id*. These factors include the alleged joint employer's: (1) authority to hire and fire employees; (2) authority to promulgate work rules and assignments and set conditions of employment; (3) involvement in the day-to-day supervision of employees, including employee discipline; and (4) control over employee records. *Id*.

Under the Operating Agreement, upon which Plaintiffs' FLSA claim expressly relies, the Authority (not LRCI) was obligated to "use its best efforts to . . . (3) provide [LRCI] with the same number of Prisoners from the Lackawanna County Prison that have historically worked at the Center …." Exhibit A at 4, ¶ 3.b. Prisoners provided by the Authority to LRCI were not employed by LRCI and were not "employees" of LRCI. *Id*. at 6, ¶ 4.a. The Operating Agreement expressly distinguished between "prisoners" or "inmates" and "employees" of either the Authority or LRCI. *Id*. at 5 ¶ 3.b. & c., 6 ¶ 4.a., 10-11 ¶ 8. The Authority and the County set Plaintiffs' pay, not LRCI, as Plaintiffs were not LRCI's employees. Doc.

77 at ¶¶ 142-143. LRCI was not Plaintiffs employer and did not jointly employee Plaintiffs with other co-Defendants.

Thus, based on the Operating Agreement upon which Plaintiffs rely, and applying the *Enterprise* test:

- LRCI had no authority to hire and fire prisoners supplied by the Authority.

- LRCI had no authority to promulgate work rules and assignments and set conditions of prisoners' alleged employment.

- LRCI had no involvement in the day-to-day supervision of prisoners, including prisoner discipline.

- LRCI had no control over prisoners' records.

LRCI was not, for these reasons, Plaintiffs' employer and did not jointly employee Plaintiffs with other co-Defendants.

### 3. The FLSA claim is time-barred as to Plaintiffs Burrell and Huzzard.

A statute of limitations defense may be raised in a Rule 12(b)(6) motion when the time bar is apparent on the face of the complaint. *See Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002).

The FLSA provides that actions must be commenced within two years except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued. 29 U.S.C. § 255; *Stone v. Troy Constr., LLC*, 935 F.3d 141, 148 (3d Cir. 2019). The determination of when an action

16

"commenced" for the purposes of the FLSA is determined by Section 7 of the Act, 29 U.S.C. § 256. Pertinent here, the Third Circuit has explained that an FLSA collective action is not "commenced" for an individual claimant until he files both this complaint and a separate written consent. *Stone*, 935 F.3d at 152.

Here, the alleged FLSA violations occurred with respect to Plaintiffs' Burrell and Huzzard in 2014 and 2013, respectively. Doc. 77 at ¶¶ 33-36, 62. Plaintiffs' FLSA collective action was not commenced, however, until December 6, 2019, when Plaintiffs' filed their second amended complaint containing the FLSA collective action and their respective written consents. Doc. 77 at ¶¶ 53, 79, 96, 107-120, 213-227.[2] Consequently, the FLSA collective action was, regardless of whether the two- or three-year limitations period applies, not timely commenced as to Plaintiffs Burrell and Huzzard. *See* 29 U.S.C. § 256.

Count III, for these reasons, fails to state a claim for which relief can be granted as to LRCI and should be dismissed.

### D.  Count VI Against LRCI Should Be Dismissed.

Plaintiffs' RICO claim against LRCI must be dismissed for failure to properly allege essential elements of their claim against LRCI. To state a RICO claim under 18 U.S.C. § 1962(c), with respect to each defendant, a plaintiff must allege: 1)

---

[2]  Plaintiffs' written consents, while referenced in the second amended complaint, were not attached to it. Doc. 77. The written consents are, however, of record. Doc 75-1.

conduct; 2) of an enterprise; 3) through a pattern; 4) of racketeering activity.  *See Camiolo v. State Farm Fire & Cas. Co.*, 334 F.3d 345, 364 (3d Cir. 2003).   Plaintiffs have failed to properly allege both "conduct" and "racketeering activity" by LRCI. That is, Plaintiffs have failed to properly allege that LRCI "participated in the 'operation or management' of an enterprise's affairs . . . 'through a pattern of racketeering activity.'"  *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 372 (3d Cir. 2010).

### 1.    Plaintiffs have not alleged racketeering activity.

Plaintiffs allege a pattern of racketeering activity through forced labor in violation of the TVPA.  Doc. 77 at ¶ 240.  For the reasons above, Plaintiffs cannot assert a viable forced labor claim under 18 U.S.C. § 1589 (Count I) against LRCI. For that reason, Plaintiffs' racketeering claim, which is predicated on alleged forced labor, should be dismissed as to LRCI.

### 2.    Plaintiffs have not alleged that LRCI engaged in racketeering activity.

In order to properly allege that a particular defendant "conducted" the affairs of an enterprise in violation of RICO, a plaintiff must allege that the particular defendant engaged in the predicate acts of racketeering activity.  *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 372 & n.69.  Plaintiffs' complaint, with respect to LRCI, does not satisfy this requirement, even if Plaintiffs have properly alleged a TVPA claim against others (they have not for the reasons above).  This is

18

because Plaintiffs have not alleged that LRCI violated the TVPA.  Rather, attempting to allege the requisite "conduct," Plaintiffs have alleged: "LRCI [and DeNaples] . . . participate in the conduct of the Enterprise's affairs by operating the Center through the use of labor performed by prisoners, including Debtors."  Doc. 77 at ¶ 191.  This allegation, taken as true, is insufficient to even suggest an inference that LRCI engaged in the predicate acts of racketeering activity.  Fatal to the claim, there is no suggestion, much less a basis for properly inferring, that LRCI participated in, or even knew of, the alleged actions and decisions by others, such as prison staff, to condition participation in work release programs on working at the Center.

Count VI, for these reasons, should be dismissed as to LRCI.

### E.      Count IV Against LRCI Should Be Dismissed.

Count IV of Plaintiffs' second amended complaint asserts a claim under the Pennsylvania Minimum Wage Act ("PMWA"), alleging that LRCI (and other Defendants) failed to pay Plaintiffs the minimum wages required under the PMWA.  Doc. 77 at ¶¶ 228-232.

Similar to the FLSA guidelines, the PMWA states that "[e]very employer shall pay to each of his or her employes" not less than the minimum wage established by the PMWA.  43 P.S. § 333.104(a)(8).  An "employe" is defined as "any individual employed by an employer," 43 P.S. § 333.103(h); and "employer" is defined as "any individual, partnership, association, corporation, business trust, or any person or

19

group of persons acting, directly or indirectly, in the interest of an employer in relation to any employe."  43 P.S. § 333.103(g).

"Because the PMWA substantially parallels the FLSA, federal courts are directed to interpretation of the FLSA when analyzing claims under the PMWA." *Sicklesmith v. Hershey Entm't & Resorts Co.,* 2020 U.S. Dist. LEXIS 32042, at *3 (M.D. Pa. Feb. 25, 2020).

Therefore, consistent with LRCI's analysis of the FLSA claim, Plaintiffs have not sufficiently alleged that LRCI failed to pay them minimum wage under the PMWA.

Count IV, accordingly, fails to state a claim for which relief can be granted as to LRCI and should be dismissed.

### F.    Count V Against LRCI Should Be Dismissed.

Plaintiffs allege in Count V that LRCI violated the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. §§ 260.1 *et seq.  See* Doc. 77 at ¶¶ 233-237.

Under the WPCL, employees may sue to recover "unpaid wages and liquidated damages" from employers.  43 P.S. § 260.9a(b).  However, "a prerequisite for relief under the WPCL is a contract between employee and employer that sets forth their agreement on wages to be paid. . . . Relief under the WPCL is implausible without the existence of a contract."  *Razak v. Uber Techs., Inc.*, 2016 U.S. Dist.

LEXIS 139668, at *27 (E.D. Pa. Oct. 7, 2016).  In other words, the WPCL "provides employees with a statutory remedy to recover wages and other benefits that are contractually due to them." *Oberneder v. Link Computer Corp.*, 696 A.2d 148 (Pa. 1997).

Here, there is no allegation of a contractual right for Plaintiffs to receive wages and, accordingly, their WPCL claim against LRCI must fail.

### G.   Count VII Against LRCI Should Be Dismissed.

The remaining count brought by Plaintiffs against LRCI is a state law claim for alleged unjust enrichment (Count VII).  *See* Doc. 77 at ¶¶ 244-246.

"Unjust enrichment is the retention of a benefit conferred by another, without offering compensation, in circumstances where compensation is reasonably expected, and for which the beneficiary must make restitution."  *Roethlein v. Portnoff Law Assocs., Ltd.*, 81 A.3d 816, 825 n.8 (Pa. 2013).  "An action based on unjust enrichment is an action which sounds in quasi-contract or contract implied in law."  *Id*.  Moreover, "[w]hen benefits are improperly conferred upon a corporate entity, its officers are typically liable only if it can be shown that the officer in question actually participated in the misconduct."  *USTAAD Systems, Inc. v. iCAP International Corp.*, 2010 U.S. Dist. LEXIS 71607, at *15 (M.D. Pa. July 6, 2010).

Here, Plaintiffs have failed to allege any facts sufficient to support a claim of unjust enrichment against LRCI.  Plaintiffs do not allege any facts that would support

21

an allegation or inference that LRCI participated in the alleged misconduct – or any conduct – that resulted in the purported "unjust" enrichment.  Moreover, Plaintiffs have not properly alleged they conferred a benefit on LRCI (as opposed to others), that LRCI appreciated such benefit, or that LRCI accepted or retained such benefit (under such circumstances that it would be inequitable for LRCI to retain such benefit without payment of value, or otherwise).  Doc. 77 at ¶¶ 18-201.

## V.    CONCLUSION

For these reasons, Plaintiffs' second amended complaint be dismissed as to LRCI.

Respectfully submitted,

March 31, 2020                         s/Christopher R. Nestor_____
                                       David R. Overstreet
                                       PA 68950
                                       OVERSTREET & NESTOR, LLC
                                       461 Cochran Road, Box 237
                                       Pittsburgh, PA 15228
                                       (717) 645-1861
                                       david.overstreet@palawgroup.com

Jeffrey Belardi                        Christopher R. Nestor
PA 71826                               PA 82400
BELARDI LAW OFFICES                    OVERSTREET & NESTOR, LLC
The TekRidge Center                    1425 Crooked Hill Road #62066
50 Alberigi Drive, Suite 114           Harrisburg, PA 17106-2066
Jessup, PA 18434                       (717) 350-5939
(570) 342-4555                         christopher.nestor@palawgroup.com
jeff@belardilaw.com

*Attorneys for Defendants Lackawanna Recycling Center, Inc., Louis DeNaples and Dominick DeNaples*

22

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this Brief contains less than 5,000 words as calculated by the word count feature on the word processing program used to prepare this Brief and, therefore, complies with M.D. Local Rule 7.8.

s/Christopher R. Nestor
Christopher R. Nestor

## **CERTIFICATE OF SERVICE**

I certify that, on March 31, 2020, I filed the foregoing BRIEF IN SUPPORT OF MOTION TO DISMISS with the Court's ECF system such that counsel of record for all parties should receive service automatically.

s/Christopher R. Nestor
Christopher R. Nestor
