IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM L. BURRELL, JR., JOSHUA HUZZARD, and DAMPSEY STUCKEY, | Hon. Robert D. Mariani |
| Plaintiffs, | CIVIL ACTION – LAW |
| v. | JURY TRIAL DEMANDED |
| | VIA ECF |
| TOM STAFF, LOUIS DENAPLES, DOMINICK DENAPLES, LACKAWANNA RECYCLING CENTER, INC., and LACKAWANNA COUNTY SOLID WASTE MANAGEMENT AUTHORITY, | NO. 3:14-CV-01891-RDM-JFS |
| Defendants. | |

## BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT PURSUANT TO F.R.C.P 12(b)(6) BY DEFENDANT, LACKAWANNA COUNTY SOLID WASTE MANAGEMENT AUTHORITY

AND NOW comes the Defendant, LACKAWANNA COUNTY SOLID

WASTE MANAGEMENT AUTHORITY, by and through its attorneys,

COGNETTI & CIMINI, and hereby submits the within Brief in support of

Movant's Motion to Dismiss Plaintiffs' Second Amended Complaint pursuant to

Federal Rule of Civil Procedure 12(b)(6) as follows:

## TABLE OF CONTENTS

TABLE OF CITATIONS………………………………………………...ii

I.   PROCEDURAL HISTORY……………………………………………1

II.  STATEMENT OF FACTS…………………………………………...4

III. STATEMENT OF QUESTIONS INVOLVED …………………………9

IV.  ARGUMENT …………………………………………………………..10

A.  Plaintiffs have failed to state a claim for violation of the
Trafficking Victims Protection Act (Count I) and the 13th
Amendment pursuant to 42 U.S.C. §1983 (Count II) because
LCSWMA has no authority to implement inmate work under the
voluntary Prison Services Program. ……………………………..11

B.  Plaintiffs have failed to state a claim for violation of the Fair
Labor Standards Act (Count III), the Pennsylvania Minimum
Wage Act (Count IV), or the Pennsylvania Wage Payment and
Collections Law (Count V) because Acts are not applicable and
LCSWMA did not employ Plaintiffs or set their rate of
compensation. …………………………………………….....…15

C.  Plaintiffs have failed to state a claim for violation of RICO, 18
U.S.C. §§1961, et seq. (Count VI) because Plaintiffs have failed to
plead facts supporting the requisite elements of a RICO violation.
……………………………………………………………………17

D.  Plaintiffs have failed to state claim for unjust enrichment (Count
VII) because LCSWMA did not employ inmate Plaintiffs and had
no control over the rate of compensation inmate Plaintiffs'
received for work at the Recycling Center. ………………………19

V.   CONCLUSION ………………………………………………………21

# TABLE OF CITATIONS

**Statutes**

18 U.S.C. § 1589(a)(3) ……………………………………………………11

37 Pa.Code §95.235 ……………………………………………………..9, 13, 16

53 Pa. Cons. St. §§ 5601-5622 …………………………………………12

**Cases**

Brooks v. George County, Miss., 84 F.3d 157, 163 (5th Cir. 1996). ……………11

Burrell v. Loungo, 750 Fed. Appx. 149, 160 (3rd Cir. 2018).  ………………...3, 4

City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 263 (3d Cir.1998)….10

De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 309 (3d Cir. 2003), as amended (Nov. 14, 2003). ……………………………………………………………15

Figueroa v. Algeria, 896 F.2d 645, 650 (1st Cir. 1990).  ………………………..17

Fleetwood Servs., LLC v. Complete Bus. Sols. Grp., Inc., 374 F. Supp. 3d 361, 373 (E.D. Pa. 2019)……………………………………………………………..17

Glenn v. First Nat'l Bank in Grand Junction, 868 F.2d 368, 371-372 (10th Cir. 1989)……………………………………………………………………10

Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984)…………………………10

Manesco, Inc. v. Wasserman, 886 F.2d 681, 683 (4th Cir. 1989)………………17

Mays v. Fulcomer, 552 A.2d 750, 753 (Pa. Cmwlth. 1989) ……………………15

Miranda v. Ponce Fed. Bank, 948 F.2d 41, 44 (1st Cir. 1991) …………………10

Miree v. DeKalb County, Ga., 433 U.S. 25, 27 (1977) …………………………10

Neitzke v. Williams, 490 U.S. 319 (1989) ………………………………………....10

Northeast Fence & Iron Works, Inc. v. Murphy Quigley Co., 933 A.2d 664 (Pa.

Super. 2007) …………………………………………………………………………..17

Tourscher v. McCullough, 184 F.3d 236, 243 (3d Cir. 1999) …………………..15

United States v. Console, 13 F.3d 641, 650 (3rd Cir. 1993).  ……………………17

United States v. Peterson, 627 F. Supp. 2d 1359, 1370-73 ……………………...11

United States v. Shackney, 333 F.2d 475, 486 (2d Cir. 1964) …………………..11

University of Maryland at Baltimore v. Peat, Marwick, Main & Co., 996 F.2d

1534, 1540 (3d Cir. 1993) …………………………………………………………16, 20

Vanskike v. Peters, 974 F.2d 806, 809 (7th Cir. 1992) …………………………..15

Walter v. Magee-Womens Hospital of UPMC Health System, 876 A.2d 400, 407

(Pa. Super. 2005) …………………………………………………………………………19

Watson v. Graves, 909 F.2d 1549 (5th Cir. 1990). ………………………………11

Wilkerson v. Samuels, 524 Fed. Appx. 776, 779; 2013 U.S. App. LEXIS 9060 (3d

Cir. 2013) …………………………………………………………………………..15

**Other**

Department of Corrections Inmate Compensation Manual, DC-ADM 816……….9

## VI.   PROCEDURAL HISTORY

The present action was commenced by a sixty-three (63) page handwritten Complaint filed by Plaintiff William L. Burrell, Jr. (hereinafter "Burrell") then *pro se*, on September 29, 2014 containing twenty-three (23) Counts alleging multiple constitutional rights violations, negligent and intentional infliction of emotional distress, negligence, and false imprisonment against the Lackawanna County Prison Board, representatives of the Lackawanna County Domestic Relations Agency, representatives of the Lackawanna County Prison, various Lackawanna County Judges, and the Pennsylvania Attorney General.  (Doc. 1).  Burrell filed an Amended Complaint on December 18, 2014, joining agents of the Federal Burau of Investigation, a U.S. Attorney, unnamed law enforcement officers, the Lackawanna County Sheriff, individual Lackawanna County Prison Board members, Louis DeNaples and Dominick DeNaples as owners of Lackawanna County Recycling Center, Inc., and Lackawanna County Recycling Center, Inc. (hereinafter "LRC") as defendants. (Doc. 11).

Burrell thereafter filed an *ex parte* Motion for Emergency Restraining Order pursuant to F.R.C.P. 65(b) on December 23, 2014, seeking to enjoin Defendants from enforcing a child support order entered in the State of Maine by incarcerating Burrell for non-payment.  (Doc. 12).  Burrell's motion was referred to U.S. Magistrate Judge Susan E. Schwab for disposition.  On December 30, 2014, Judge

Schwab entered a Report and Recommendation that Burrell's Motion for

Emergency Restraining Order be denied because Burrell:

> . . . has not presented evidence to show a reasonable
> probability of success on the merits of his claims.
> Further, he has not shown that he will not receive a
> hearing in state court before he is incarcerated for failing
> to pay.  Although he alleges that the Court in
> Lackawanna County sends individuals to prison for
> contempt for failure to pay child support without fairly
> considering their assertions of an inability to pay, he has
> not shown that to be the case.

(Doc. 14).  On December 30, 2014, Burrell filed objections to Judge Schwab's

Report and Recommendation arguing, *inter alia*, that the Court had incorrectly

required Burrell to produce evidence in advance of discovery/hearing and that

there was "no pressing issue" requiring enforcement of Maine's Child Support

Order because the existing arrears under that Order related to a past rather than

ongoing child support obligation. (Doc. 15).

On December 31, 2014, this Honorable Court entered an Order overruling

Burrell's objections, adopting the Report and Recommendation of Judge Schwab,

and remanding the case for further proceedings by Judge Schwab.  (Doc. 16).  On

the same date, Burrell objected to the Court's assignment to a U.S. Magistrate

Judge, moved for the recusal of Judge Schwab due to her "clear capricious

disposition of plaintiff's case," moved for immediate repair of the Court's "public

computers," and filed an *ex parte* Notice of Emergency Interlocutory Appeal.

(Doc. 17 & Doc. 18). Judge Schwabb denied Burrell's motions for recusal and repair of "public computers" on January 9, 2015. (Doc. 20).[1] On appeal from Judge Schwab's January 9, 2015 Order, this Honorable Court maintained the denial of Burrell's motions as *moot*, given interim reassignment to U.S. Magistrate Judge Joseph F. Saporito, Jr. for screening of Burrell's Amended Complaint pursuant to 28 U.S.C. §1915(e)(2).

On July 18, 2020, Judge Saporito entered a Report and Recommendation pursuant 28 U.S.C. §1915(e)(2) recommending the dismissal of Burrell's Amended complaint for "lack of subject matter jurisdiction, as frivolous, for failure to state a claim upon which relief can be granted, and for seeking monetary relief against defendants who are immune from such relief." (Doc. 34). Judge Saporito's Report and Recommendations were adopted by this Honorable Court on December 8, 2016, and Burrell's Amended Complaint was dismissed without prejudice. (Doc. 44)

Burrell appealed the dismissal of his Amended Complaint to the Third Circuit Court of Appeals. See Burrell v. Loungo, 750 Fed. Appx. 149, 160 (3rd Cir. 2018). On September 12, 2018, the Third Circuit Court of Appeals held that:

1. The District Court had authority to dismiss Burrell's Amended Complaint prior to service of the same on named Defendants;

---

[1] Judge Schwab found that (1) "a reasonable person knowing all of the facts would not conclude that my impartiality might reasonably be questioned;" and (2) "we have been informed that the public computers are now working."

2.  Burrell failed to allege that he exhausted administrative remedies prior to filing his Amended Complaint, a necessary prerequisite to bringing a claim under the Federal Tort Claims Act;

3.  State Court judges who entered orders in Burrell's underlying child support enforcement proceeding had absolute immunity from suit by Burrell;

4.  Representatives of the Lackawanna County Domestic Relations Office had quasi-judicial immunity from suit by Burrell;

5.  Burrell failed to allege state law claims for conspiracy to interfere with civil rights;

6.  Burrell stated a claim under the Due Process Clause for unlawful conditions of confinement; and

7.  Dismissal of Burrell's claims of involuntary servitude during the screening stage and prior to service upon Defendants, was premature.

See Burrell, 750 Fed. Appx. at 157-160.

On December 6, 2019, Burrell filed a Second Amended Complaint with leave of Court (Doc. 77), joining moving Defendant, Lackawanna County Solid Waste Management Authority (hereinafter "LCSWMA") as a defendant. Presently before the Court is Defendant LCSWMA's Motion to Dismiss Burrell's Second Amended Complaint.

## VII.  STATEMENT OF FACTS

In his Second Amended Complaint, Burrell alleges that on May 16, 2014 he was sentenced by the Lackawanna County Court to two consecutive six-month terms of imprisonment (12-month aggregate term) for failure to pay child support.

4

(Doc. 77, ¶24-25).  On May 22, 2014, the Lackawanna County Court ordered Burrell to participate in the Lackawanna County Prison Community Services Program (hereinafter "Prison Services Program"), and further ordered that Burrell would be "granted work release/house arrest on November 11, 2014" contingent upon exhibiting "positive work ethics" through "successful completion of the community services program."  (Doc. 77, ¶33-34).  Accordingly, Burrell acknowledges and admits that the Court deemed him to be *not eligible* for "work release/house arrest" until after he served at least one full six-month term of imprisonment and successfully completed the Prison Services Program.[2]  (Doc. 77, ¶33-35).

Under those circumstances, consistent with the Court's May 22, 2014 Order requiring Burrell to serve at least one full six-month sentence prior to becoming eligible for "work release/house arrest," Prison staff allegedly "told [Burrell] that it was the Prison's Policy that child support prisoners worked half of their sentence in the [Recycling Center] and the other half in work release, unless they 'purge out' [pay their respective delinquent child support balance]."  (Doc. 77, ¶32).  Not

---

[2] It is apparent that Burrell disagrees with the Court's May 22, 2014 Order and believes he should have been eligible for immediate "work release/house arrest" upon imprisonment, rather than being required to display "positive work ethics" through successful participation in the Prison Services Program.  Importantly, LCSWMA had no control or influence over the Court's May 22, 2014 Order or the circumstances giving rise to the same.

being eligible for work release until November 11, 2014 pursuant to the Court's

May 22, 2014 Order, Burrell understandably endeavored to avail himself of any

opportunity which would "allow him to spend some time outside of the prison" and

"earn money for himself and his children."  (Doc. 77, ¶29).  Burrell therefore

began voluntary work at the Recycling Center through the Prison Services Program

on May 28, 2014, pending his eligibility for work release/house arrest on

November 11, 2014.  (Doc. 77, ¶36).

Based upon those factual allegations, Burrell goes on to allege that "pursuant

to an agreement between [LRC] and [LCSWMA], Defendants have operated a

scheme to compel the work of civilly detained child support debtors for the benefit

of [Lackawanna County], [LCSWMA], and [LRC] and its owners, Louis and

Dominick DeNaples." (Doc. 77, ¶2).  In support of that claim, Burrell alleges that

"although debtors are civil detainees *who would otherwise be eligible for work*

*release*, Defendants force Debtors to work at the Center before they can 'qualify'

for work release."  (Doc. 77, ¶3).  On that basis, Burrell alleges that "Defendants

prevent Debtors from earning wages through work release that would benefit

Debtors and their children." (Doc. 77, ¶4).  This is true notwithstanding Burrell's

clear admission and acknowledgement that, pursuant to the Court's May 22, 2014

Order, Burrell himself was *not otherwise eligible* for "work release/house arrest"

during the period in which he voluntarily worked at the Recycling Center through the Prison Services Program.  (Doc. 77, ¶33-36).

To effectuate the claimed "scheme," Burrell alleges that Prison staff tell prisoners "in order to qualify for work release, [prisoners] would have to work at the Lackawanna County Recycling Center."  (Doc. 77, ¶30).  This is true notwithstanding the fact that, in Burrell's case, such an alleged representation by Prison staff would be consistent with, and in furtherance of, the Court's May 22, 2014 Order granting Burrell eligibility for "work release/house arrest" on November 11, 2014 contingent upon successful completion of work through the Prison Services Program.

## A.    Operation of the Recycling Center

Burrell correctly alleges that moving Defendant LCSWMA is "a political body organized under the Municipal Authorities Act of 1945" which owns the facility where the Recycling Center is operated.  (Doc. 77, ¶13, 128).  Burrell also correctly alleges that the relationship between moving Defendant LCSWMA and LRC is governed by an Operating Agreement dated May 3, 2006.  (Doc. 77, ¶13). In that regard, Burrell acknowledges and correctly alleges that under the terms of the Operating Agreement:

1. LRC "has the overall responsibility for the management and operation services related to vehicles, equipment, and plan improvements" (Doc. 77, ¶125);

2. LRC "agrees to supervise, direct, and control the management and operation of the Center" (Doc. 77, ¶126);

3. LRC "is responsible for the selection, employment, termination of employment, supervision, direction, training and assigning of the duties of all employees at the Center. . . including rates of compensation and benefits, if any, and the supervision, direction, training and assignment of duties of all such employees . . . All salaries, wages and benefits, if any of such employees shall be paid by [LRC] and such employees shall be the employees and agents of [LRC] and not [LCSWMA]" (Doc. 77, ¶127).

4. LCSWMA agrees to "*use its best efforts to* . . . (3) provide [LRC] with the same number of Prisoners from the Lackawanna County Prison that have historically worked at the Center . . ." (Doc. 77, ¶129).

Accordingly, Burrell acknowledges the Operating Agreement whereby LRC assumes responsibility for operation of, and employment at, the Recycling Center. (Doc. 77, ¶125-127).  Burrell further acknowledges LCSWMA's limited faciliatory role in "using its best efforts to . . . *provide LRC*" with a historically consistent number of Prisoners for work at the Recycling Center. (Doc. 77, ¶129).  Burrell even acknowledges that, pursuant to the Operating Agreement, LRC *and not LCSWMA* is the designated "employer" of workers at the Recycling Center and is responsible for the payment of all wages.  (Doc. 77, ¶127).

Yet, Burrell contradictorily alleges that Lackawanna County, LRC, and LCSWMA "jointly operated the [Recycling Center] and jointly employed Debtors. . . jointly controlled employment and operations decisions at the [Recycling Center]. . . together exercise significant control over the day-day conditions of

debtor's work." (Doc. 77, ¶130-136, 143). Burrell further alleges that LCSWMA and Lackawanna County "set" the prisoners' pay at $5.00 per day (Doc. 77, 142) when inmate compensation is established by Department of Corrections Policy.[3]

## VIII.  STATEMENT OF QUESTIONS INVOLVED

**A.** **Whether Plaintiffs have failed to state a claim against LCSWMA for violation of the Trafficking Victims Protection Act (Count I) and the 13th Amendment pursuant to 42 U.S.C. §1983 (Count II) when work at the Recycling Center through the Prison Services Program was voluntary and LCSWMA has no authority or power to engage in the conduct alleged by Plaintiffs.**
**SUGGESTED RESPONSE:   AFFIRMATIVE.**

**B.** **Whether Plaintiffs have failed to state a claim against LCSWMA for violation of the Fair Labor Standards Act (Count III), the Pennsylvania Minimum Wage Act (Count IV), and the Pennsylvania Wage Payment and Collections Law (Count V) when inmate Plaintiffs are not "employees" and do not receive "wages" covered by the Acts.**
**SUGGESTED RESPONSE:   AFFIRMATIVE.**

**C.** **Whether Plaintiffs have failed to state a claim against LCSWMA for violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§1961, *et seq*. (Count VI) when Plaintiffs have failed to plead facts supporting requisite elements of "separateness" and "illegal activity."**
**SUGGESTED RESPONSE:   AFFIRMATIVE.**

**D.** **Whether Plaintiffs have failed to state claim against LCSWMA for unjust enrichment (Count VII) when LCSWMA did not employ the inmate Plaintiffs and the inmate Plaintiffs' compensation for work at the Recycling Center was set by Pennsylvania law.**
**SUGGESTED RESPONSE:   AFFIRMATIVE.**

---

[3] See Work Programs, 37 Pa.Code §95.235, and Department of Corrections Inmate Compensation Manual, DC-ADM 816.

## IX.   ARGUMENT

A motion to dismiss tests the legal sufficiency of the complaint.  A complaint may be dismissed only where no relief could be granted under any set of *facts* that could be proved consistent with the allegations.  Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984) (emphasis added).  To that end, the averments must be viewed in the light most favorable to the plaintiff, and all well-pleaded allegations of the complaint must be accepted as true.  Neitzke v. Williams, 490 U.S. 319 (1989).

The Court need not, however, accept as true unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegation.  Miree v. DeKalb County, Ga., 433 U.S. 25, 27 n. 2 (1977); City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 263 n. 13 (3d Cir.1998).  The claims must be anchored in a bed of facts and the pleading party must allege more than bald assertions and unsubstantiated conclusions.  Miranda v. Ponce Fed. Bank, 948 F.2d 41, 44 (1st Cir. 1991).  A trial judge is not obligated to construct a cause of action from allegations in a complaint filed by a party who was unwilling or unable to plead a cause of action himself.  Glenn v. First Nat'l Bank in Grand Junction, 868 F.2d 368, 371-372 (10th Cir. 1989).

10

**E.    Plaintiffs have failed to state a claim for violation of the Trafficking Victims Protection Act (Count I) and the 13th Amendment pursuant to 42 U.S.C. §1983 (Count II) because LCSWMA has no authority to implement inmate work under the voluntary Prison Services Program.**

To prove a violation under the 13th Amendment, one must show that the Plaintiffs were subjected to involuntary servitude or slavery.  Watson v. Graves, 909 F.2d 1549 (5th Cir. 1990).   "Involuntary servitude is defined as an action by the master causing the servant to have, or to believe he has, *no way to avoid* continued service or confinement."  Id. at 1552 (quoting United States v. Shackney, 333 F.2d 475, 486 (2d Cir. 1964) (internal quotations omitted)) (emphasis added).  However, when a person has a choice, no matter how painful that choice may be, there is no constitutional violation for involuntary servitude.  See Brooks v. George County, Miss., 84 F.3d 157, 163 (5th Cir. 1996).  Similarly, the TVPA imposes liability for "knowingly provid[ing] or obtain[ing] the labor or services of a person . . . by means of the *abuse or threatened abuse of law or legal process*."  18 U.S.C. § 1589(a)(3) (emphasis added); see also Watson v. Graves, 909 F.2d 1549, 1552 (5th Cir. 1990) and United States v. Peterson, 627 F. Supp. 2d 1359, 1370-73 (finding that an inmate given the choice to work at a private business, other than through work-release, did not violate the TVPA).

In the present case, Plaintiffs' claims of involuntary servitude and forced labor are based upon Plaintiffs' conclusory allegations that LCSWMA operated the

11

Recycling Center, set the rate pay inmates would receive, and "threatened" that inmates would "remain ineligible for work release" if they did not work at the Recycling Center.  (Doc. 77, ¶130-136, 142-143, 204, 211).  However, LCSWMA was statutorily and contractually precluded from acting, and in fact did not act, as Plaintiffs allege.

More specifically, LCSWMA is a municipal authority enabled pursuant to the Municipal Authorities Act, 53 Pa. Cons. St. §§ 5601-5622 (hereinafter "MAA").  The MAA provides LCSWMA with certain powers to, *inter alia*, own, finance, contract, and operate facilities to carry out its particular purpose.  53 Pa. Cons. Stat. § 5607(d).  The MAA does not provide LCSWMA with any additional power or the broader authority of government that would give it the ability to detain prisoners, set work-release eligibility conditions, set inmate compensation, or assign a prisoner for work through the Prison Services Program.  See, 53 Pa. Cons. St. §§ 5601-5622.

Plaintiffs acknowledge this reality by appropriately alleging that the Lackawanna County Court, *and not LCSWMA*, sentenced Plaintiffs to a term of imprisonment (Doc. 77, ¶¶25, 60, 85) and set Plaintiffs' eligibility for work release (Doc. 77 ¶¶34-35, 66).  Plaintiffs further acknowledge that they were assigned to work at the Recycling Center by the Prison through the Prison Services Program and Prison policy, *rather than by LCSWMA*. (Doc. 77 ¶¶30, 32, 62-63, 86, 87).

12

Plaintiffs further allege that Prison staff, *and not LCSWMA*, transported inmate Plaintiffs to the Recycling Center (Doc. 77 ¶38-39), "remain[ed] on site at the Center to supervise" (Doc. 77 ¶138), and "punished" prisoners by "omitting portions of their prison-provided lunch" if prisoners did not fulfill work expectations. (Doc. 77 ¶140).

Additionally, pursuant to the MAA, LCSWMA exercised its authorized power to "contract" by entering into an Operating Agreement with LRC whereby LCSWMA retained ownership of the Recycling Center's physical facilities but LRC assumed responsibility for the Recycling Center's operations.  Plaintiffs admit the existence and terms of the Operating Agreement between LCSWMA and LRC (Doc. 77, ¶125-127), and therefore must acknowledge that if Plaintiffs' work at the Recycling Center even hypothetically amounted to "involuntary servitude" or "forced labor," the only possible master(s) or employer(s) would be the Department of Corrections or LRC, *and not LCSWMA.* In any event, neither LRC nor LCSWMA set the inmates "rate of pay."  37 Pa.Code §95.235.

Further, Plaintiffs have failed to plead facts which would support their claim that work performed at the Recycling Center was not voluntary.  Each of the Plaintiffs were sentenced to a term of imprisonment without eligibility for immediate "work-release/house arrest" until after serving at least a portion of their sentence. (Doc. 77, ¶34, 36).  Under those circumstances, pending eligibility for

13

"work release/house arrest," Plaintiffs were interested in opportunities to earn money and spend time outside of the prison. (Doc. 77, ¶29).  Plaintiffs, seeking to expedite their eligibility for "work-release/house arrest" prior to expiration of their full term of imprisonment, were given the option to participate in the Prison Services Program.  (Doc. 77, ¶29, 30, 32).  By Prison policy, such inmates were assigned to work at the Recycling Center.  (Doc. 77, ¶30, 32).

Inherent in Plaintiffs allegations is the reality that if the Plaintiffs did *not* want to work at the Recycling Center through the Prison Services Program, they could have simply served the full term of their sentences or petitioned for "work-release/house arrest" on appropriate grounds.[4]  The choice to participate in the Prison Services Program may not have been as appealing or lucrative as inmate Plaintiffs would have liked, but it was a choice nonetheless.

---

[4] Plaintiff Huzzard alleges that the Lackawanna County Court denied his petition "to allow him out of prison on work release in order to be present at the birth of his son." (Doc. 77, ¶¶64-66).  However, the purpose of "work release" is not to allow attendance at family events.  In spite of Plaintiff Huzzard's allegations, each Plaintiff had the option to petition for "work-release/house arrest" on appropriate grounds under Pennsylvania Law.

**F.    Plaintiffs have failed to state a claim for violation of the Fair Labor Standards Act (Count III), the Pennsylvania Minimum Wage Act (Count IV), or the Pennsylvania Wage Payment and Collections Law (Count V) because Acts are not applicable and LCSWMA did not employ Plaintiffs or set their rate of compensation.**

"It is well established that a prisoner is not an employee under the Fair Labor Standards Act ("FLSA"), because the relationship is not one of employment, but arises out of the prisoner's status as an inmate.  Wilkerson v. Samuels, 524 Fed. Appx. 776, 779; 2013 U.S. App. LEXIS 9060 (3d Cir. 2013); See also Tourscher v. McCullough, 184 F.3d 236, 243 (3d Cir. 1999); Vanskike v. Peters, 974 F.2d 806, 809 (7th Cir. 1992).

Similarly, an inmate does not receive "wages" as defined by the Pennsylvania Minimum Wage Act for performing work through a Prison Services Program. See, i.e., Mays v. Fulcomer, 552 A.2d 750, 753 (Pa. Cmwlth. 1989) ("the remuneration which [inmate] receives would not constitute wages as defined by other statutes such as The Minimum Wage Act of 1968").  Additionally, the Pennsylvania Wage Payment and Collections Law "does not provide a right to compensation . . . rather, it provides a statutory remedy when the employer breaches a *contractual obligation* to pay earned *wages*. The *contract* between the parties governs in determining whether specific wages are earned."  See De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 309 (3d Cir. 2003), as amended (Nov. 14, 2003).

In the present case, Plaintiffs' work at the Recycling Center arose by their status as prisoners participating in the Prison Services Program.  (Doc. 77, ¶25, 30, 62-63, 85-86).  Plaintffs received remuneration for work performed at the Recycling Center through the Prison Services Program in accordance with Pennsylvania Law and Department of Corrections Policy.  See, 37 Pa.Code §95.235 and (Doc. 77, ¶31, 70, 91).  Plaintiffs do not allege that they entered into individual contracts for employment with LCSWMA.

Accordingly, Plaintiffs are not "employees" covered by the FLSA, they did not receive "wages" covered by the Pennsylvania Minimum Wage Act, and they have no right to pursue recovery of "wages" under the Pennsylvania Wage Payment and Collections Law.  Alternatively, as previously outlined herein, if inmate Plaintiffs' work at the Recycling Center even hypothetically amounted to "employment" compensated by "wages," the only possible master(s) or employer(s) would be the Department of Corrections or LRC, *and not LCSWMA.*

Furthermore, if there is no Federal Question Jurisdiction pursuant to Counts I (TVPA), II (13th Amendment), III (FLSA) and VI (RICO) of the Plaintiffs' Second Amended Complaint, Counts IV and V for wages under Pennsylvania law should be dismissed as they are pending before the Court solely on the basis of pendant or supplemental jurisdiction.  See  University of Maryland at Baltimore v. Peat, Marwick, Main & Co., 996 F.2d 1534, 1540 (3d Cir. 1993) (quoting Tully v.

Mott Supermarkets, Inc., 540 F.2d 187, 196 (3d Cir. 1976) (where there is no "substantial federal claim to which the state claims could be appended, the primary justification for the exercise of pendent jurisdiction [is] absent.").

> **G.  Plaintiffs have failed to state a claim for violation of RICO, 18 U.S.C. §§1961, *et seq*. (Count VI) because Plaintiffs have failed to plead facts supporting the requisite elements of a RICO violation.**

"In fairness to innocent parties, courts should strive to flush out frivolous R.I.C.O. allegations at an early stage in the litigation." Figueroa v. Algeria, 896 F.2d 645, 650 (1st Cir. 1990).  Courts must be diligent to ensure that the extraordinary remedy of a civil RICO claim does not undermine ordinary commercial transactions and that treble damage suits are not brought for their harassment or settlement value.  *See* Manesco, Inc. v. Wasserman, 886 F.2d 681, 683 (4th Cir. 1989).

To state a claim under the RICO, a party must allege that defendants participated in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  Fleetwood Servs., LLC v. Complete Bus. Sols. Grp., Inc., 374 F. Supp. 3d 361, 373 (E.D. Pa. 2019).  The Third Circuit has further identified three specific characteristics: (1) That there is an ongoing organization; (2) that the associates function as a continuing unit; and (3) that the enterprise is an entity separate and apart from the pattern of activity in which it engages.  *See* United States v. Console, 13 F.3d 641, 650 (3rd Cir. 1993).  This is known as the RICO

17

"separateness" requirement defined by the Supreme Court in the case of <u>United States v. Turkette</u>, 452 U.S. 576, 583 (1981).   See also, <u>Seville Indus. Mach. Corp.</u>, 742 F.2d at 790 (holding "It is an essential element of the RICO cause of action that the enterprise be apart from the underlying pattern of racketeering activity.").

In the present case, Plaintiffs' allege a "pattern of racketeering" predicated upon violation of the TVPA as a result of "forced labor" in the form of an opportunity to participate in the Prison Services Program.  (Doc. 77,  ¶240). Plaintiffs' further allege an association-in-fact by and between LRC, LCSWMA, Louis DeNaples, Dominick DeNaples, and Thomas Staff.  (Doc. 77, ¶185-192). However, Plaintiff's allegations fail to separate the alleged RICO "enterprise" from the underlying pattern of allegedly unlawful activity, in violation of the "separateness" requirement defined by the U.S. Supreme Court.  By Plaintiffs' allegations, the "enterprise" and the "pattern of racketeering activity" are one in the same.  Moreover, to the extent Plaintiffs' claims under the TVPA fail, Plaintiffs RICO claims also fail.

**H.     Plaintiffs have failed to state claim for unjust enrichment (Count VII) because LCSWMA did not employ inmate Plaintiffs and had no control over the rate of compensation inmate Plaintiffs' received for work at the Recycling Center.**

It is well-settled that the doctrine of unjust enrichment does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff. See, e.g., Walter v. Magee-Womens Hospital of UPMC Health System, 876 A.2d 400, 407 (Pa. Super. 2005) and Northeast Fence & Iron Works, Inc. v. Murphy Quigley Co., 933 A.2d 664 (Pa. Super. 2007) ("[T]he most significant element of the doctrine is whether the enrichment of the defendant is *unjust*; the doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff.")

Plaintiffs allege that Defendants were unjustly enriched by the "value" of work performed by incarcerated Plaintiffs, and that it would be "unjust" for Defendants to "retain this benefit without payment to Plaintiffs." (Doc. 77, ¶244-246). However, even assuming, *in arguendo*, that LCSWMA "benefitted" from the value of inmate Plaintiff's work, any such benefit was not "unjustly received." Importantly, Plaintiffs' work at the Recycling Center through the Prison Services Program was the direct result of Plaintiffs' being sentenced to terms of imprisonment for failure to comply with orders entered for the support and maintenance of inmate Plaintiffs' own children. (Doc. 77, 24-25, 59-60, 83-85).

Further, LCSWMA had no authority or ability to set the amount of
compensation inmate Plaintiffs would receive for work at the Recycling Center.
See 37 Pa.Code §95.235.  In fact, pursuant to the Operating Agreement between
LCSWMA and LRC, LRC was solely responsible for setting the rate of
compensation for work at the Recycling Center and issuing payment of
compensation to employees.  (Doc. 77, ¶127).  In any event, regardless of any
amount of compensation LRC might have set for work at the Recycling Center,
Department of Corrections policy limited the amount of compensation inmates
could receive.  While Plaintiffs take issue with Pennsylvania Law and Department
of Corrections Policy regarding inmate compensation, such a disagreement does
not form the basis of a claim for "unjust enrichment."  Rather, such a claim by
Plaintiffs indicates a refusal to accept responsibility for the circumstances giving
rise to their imprisonment and subsequent participation in the Prison Services
Program.

Furthermore, if there is no Federal Question Jurisdiction pursuant to Counts
I (TVPA), II (13th Amendment), III (FLSA) and VI (RICO) of the Plaintiffs'
Second Amended Complaint, Count VII for unjust enrichment should be dismissed
as it is pending before the Court solely on the basis of pendant or supplemental
jurisdiction.  See  University of Maryland at Baltimore v. Peat, Marwick, Main &
Co., 996 F.2d 1534, 1540 (3d Cir. 1993) (quoting Tully v. Mott Supermarkets,

<u>Inc.</u>, 540 F.2d 187, 196 (3d Cir. 1976) (where there is no "substantial federal claim to which the state claims could be appended, the primary justification for the exercise of pendent jurisdiction [is] absent.").

## X.   CONCLUSION

WHEREFORE, moving Defendant Lackawanna County Solid Waste Management Authority respectfully requests that this Honorable Court enter an Order dismissing all claims against it, and granting such other relief as the Court deems just and proper under the circumstances.

Respectfully submitted,
COGNETTI & CIMINI

SARAH R. LLOYD, ESQUIRE
PA Atty. ID No. 311214
srl.cognetticimini@gmail.com


SAL COGNETTI, JR., ESQUIRE
PA Atty. ID No. 17269
salcognettijr@comcast.net

Scranton Electric Bldg., 7th Floor
507 Linden Street
Scranton, PA 18503
(570) 346-0745

*Counsel for Defendant, Lackawanna County Solid Waste Management Authority*

## <u>CERTIFICATE OF COMPLIANCE</u>

Subject to Federal Rule of Civil Procedure 11, undersigned counsel hereby certifies that the foregoing Brief in Support of Motion to Dismiss Plaintiffs' Second Amended Complaint Pursuant to F.R.C.P. 12(b)(6) by Defendant, Lackawanna County Solid Waste Management Authority contains 4,756 words calculated by the word count feature of Microsoft Word and therefore complies with Middle District Local Rule 7.8(b)(2).

Respectfully submitted,
COGNETTI & CIMINI

SARAH R. LLOYD, ESQUIRE
PA Atty. ID No. 311214
srl.cognetticimini@gmail.com

## CERTIFICATE OF SERVICE

Undersigned counsel hereby certifies that on this 31st day of March, 2020, a true and correct copy of the foregoing Brief in Support of Motion to Dismiss Plaintiffs' Second Amended Complaint Pursuant to F.R.C.P. 12(b)(6) by Defendant, Lackawanna County Solid Waste Management Authority was filed and served via the Court's ECF system and electronically delivered to:

William H. Anderson, Esquire
HANDLEY FARAH & ANDERSON, PLLC
4730 Table Mesa Drive Suite G-200
Boulder, CO 80305
wanderson@hfajustice.com
*Counsel for Plaintiff,*
*William L. Burrell, Jr.*

Marielle R. Macher, Esquire
Peter Zurflieh, Esquire
COMMUNITY JUSTICE PROJECT
118 Locust Street
Harrisburg, PA 17101
mmacher@cjplaw.org
pzurflieh@palegalaid.net
*Counsel for Plaintiff,*
*William L. Burrell, Jr.*

Brianne M. Power, Esquire
David H. Seligman, Esquire
Juno E. Turner, Esquire
TOWARDS JUSTICE
1410 High Street, Suite 300
Denver, CO 80218
brianne@towardsjustice.org
david@towardsjustice.org
juno@towardsjustice.org
*Counsel for Plaintiff, William L. Burrell, Jr.*

Matthew K. Handley, Esquire
Rachel E. Nadas, Esquire
HANDLEY FARAH & ANDERSON, PLLC
777 6th Street, NW 11th Floor
Washington, DC 20001
mhandley@hfajustice.com
rnadas@hfajustice.com
*Counsel for Plaintiffs, William L. Burrell, Jr., Joshua Huzzard, and Dampsey Stuckey*

David E. Heisler, Esquire
Philip A. Davolos, III, Esquire
CIPRIANI & WERNER, P.C.
415 Wyoming Avenue

Jeffrey Belardi, Esquire
BELARDI LAW OFFICES
50 Alberigi Drive, Suite 114

23

Scranton, PA 18503
dheisler@c-wlaw.com
pdavolos@c-wlaw.com
*Counsel for Defendants, Tom Staff and*
*Lackawanna County*

Jessup, PA 18434
jeff@belardilegal.com
*Counsel for Defendants, Louis*
*DeNaples, Dominick DeNaples, and*
*Lackawanna Recycling Center, Inc.*

Respectfully submitted,
COGNETTI & CIMINI

SARAH R. LLOYD, ESQUIRE
PA Atty. ID No. 311214
srl.cognetticimini@gmail.com