# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM BURRELL JR.,

      Plaintiff,

      v.

PATRICK LOUNGO, et al.,

      Defendants.

CIVIL ACTION NO. 3:14-cv-01891

(MARIANI, J.)
(SAPORITO, M.J.)

## **REPORT AND RECOMMENDATION**

This action originally commenced upon filing of a *pro se* complaint by the lead plaintiff, William Burrell Jr., on September 29, 2014. (Doc. 1.) Burrell subsequently filed a *pro se* amended complaint. (Doc. 11.) That amended complaint was dismissed, and Burrell appealed, *pro se*. (Doc. 34; Doc. 44; Doc. 45; Doc. 50; Doc. 51; Doc. 52.) On appeal, the Third Circuit affirmed this court's decision in part and vacated it in part, remanding the case for further proceedings. (Doc. 57.)[1]

---

[1] *See generally Burrell v. Loungo*, Civil Action No. 3:14-cv-01891, 2016 WL 7177549 (M.D. Pa. July 18, 2016), *report & recommendation adopted by* 2016 WL 7175615 (M.D. Pa. Dec. 8, 2016) (dismissing with leave to amend), *aff'd in part and vacated in part per curiam*, 750 Fed. App'x 149 (3d Cir. 2018), *cert. denied*, 139 S. Ct. 2640 (2019); *Burrell v. Loungo*, Civil Action No. 3:14-cv-01891, 2017 WL 727266 (M.D. Pa. Jan. 19, 2017), *report and recommendation adopted by* 2017 WL 722596 (M.D. *(continued on next page)*

On remand, newly represented by counsel, Burrell filed his second amended complaint on December 6, 2019. (Doc. 77.) This counseled pleading narrowed the field of named defendants to six: (1) the Lackawanna County Solid Waste Management Authority (the "Authority"), a Pennsylvania municipal authority; (2) Lackawanna County, a political subdivision of the Commonwealth of Pennsylvania; (3) Thomas Staff, an administrator employed by Lackawanna County; (4) Lackawanna Recycling Center, Inc. ("LRCI"), a Pennsylvania business corporation; (5) Louis DeNaples, president and co-owner of LRCI; and (6) Dominick DeNaples, vice president and co-owner of LRCI. The counseled second amended complaint also joined two newly added plaintiffs— Joshua Huzzard and Dampsey Stuckey—and sought certification of a class action under Rule 23 of the Federal Rules of Civil Procedure.

The six defendants have filed four separate motions to dismiss. (Doc. 99 (Lackawanna County & Staff); Doc. 101 (LRCI); Doc. 102 (Louis & Dominick DeNaples); Doc. 103 (Authority).) These motions are fully briefed and ripe for decision. (*See* Doc. 104; Doc. 105; Doc. 107; Doc. 109;

---

Pa. Feb. 23, 2017) (dismissing with prejudice), *aff'd in part and vacated in part per curiam*, 750 Fed. App'x 149 (3d Cir. 2018), *cert. denied*, 139 S. Ct. 2640 (2019).

Doc. 115; Doc. 116; Doc. 117; Doc. 118.)

I. FACTUAL BACKGROUND

A. Lackawanna County Recycling Center

Since at least March 31, 2005, the Authority and LRCI have been parties to a contract (the "Operating Agreement") regarding the operations of the Lackawanna County Recycling Center (the "Center"), a recycling center owned by the Authority.[2] Under the terms of the Operating Agreement, LRCI assumed responsibility for operation and management of the Center, including the hiring, supervision, training, and payment of personnel to staff the Center. Besides these employees of LRCI, however, the Operation Agreement also provided that the Authority would continue to "provide the same number of Prisoners from the Lackawanna County Prison that have historically worked at the Center as part of their work release program as security requirements dictate."

In accordance with this last provision, county personnel—specifically, prison guards—transport prisoners to the Center to work there. Prison guards remain on site at the Center to supervise the

---

[2] (*See* Doc. 11-6; *see also* Doc. 107-3.) *See generally infra* note 6.

prisoners, maintain security, and discipline prisoners. Some number of the prisoners supplied by the Authority to work at the Center are child support debtors sentenced to terms of incarceration following civil contempt proceedings for failure to pay child support.

### B. William Burrell

William Burrell is the father of three children. Burrell had been paying child support for his two younger children until he sustained an injury in early 2014 and missed three weeks of work. As a result of his injury and inability to work, Burrell fell behind on his child support payments. On May 14, 2014, Burrell was arrested for failure to pay child support.

On May 16, 2014, following a contempt hearing, a state family court judge, Judge Richard Saxton, found that Burrell had the ability to pay and sentenced him to serve two consecutive six-month terms at the Lackawanna County Prison, with each sentence subject to a purge provision: Burrell could be released earlier upon payment of his total arrearage of $7,033 in overdue child support.[3] The two family court

---

[3] The second amended complaint references a balance of arrears of $2,129.43, but this amount reflects only one of Burrell's two child support

*(continued on next page)*

orders also directed that Burrell be placed on work release immediately, if he qualified.

Shortly after his arrival at Lackawanna County Prison, Burrell was told by unidentified prison staff that to qualify for work release, he would first need to work at the Center for six months, during which time he would be paid $5 per day for his work there. Burrell was told that it was the prison's policy that child support prisoners work for half of their sentence at the Center and the other half on work release, unless they "purged out" earlier by paying the remainder of their child support arrears.

On May 22, 2014, Judge Saxton entered an order in Burrell's child support cases transferring him to the Lackawanna County Prison Community Service Program.[4] The order directed that Burrell be granted work release status on November 11, 2014, "contingent upon positive work ethics and successful completion of the Community Service Program."

Under the auspices of the community service program, Burrell

_____

obligations. He owed an outstanding balance of $4,904.79 on the other obligation. (*See* Doc. 1-1, at 1, 2.) *See generally infra* note 6.

[4] (*See* Doc. 1-1, at 3.) *See generally infra* note 6.

began working at the Center on May 28, 2014, while continuing to reside at the county prison. Each workday morning, prison staff drove Burrell to the Center in a van, along with other prisoners working there. Burrell typically worked at the Center from 7 a.m. to 3 p.m., five days per week. During the workday, he typically received one 15-minute break and one 30-minute break. At the end of each workday, prison staff drove Burrell and the others back to the prison. Burrell was paid $5 for each day he worked at the Center, which was deposited into his prison commissary account.

For some of his time working at the Center, Burrell worked on the "soda line," along with other prisoners. In that role, he was required to remove recyclable glass from a line of fast-moving garbage moving on a conveyer belt. The rest of his time at the Center, Burrell worked in an "upper magnet" job, where he was responsible for removing metal from a stream of garbage that included glass, plastic, and other refuse.

### C. Joshua Huzzard

Joshua Huzzard is the father of five children. On several occasions, Huzzard had fallen behind on his child support payments. On several occasions, Huzzard had received summonses for family court hearings.

On several occasions, Huzzard had been held in contempt for failure to make child support payments and sent to prison, with each sentence subject to a purge provision.

During one of Huzzard's stints at the prison, in mid-2013, defendant Staff approached Huzzard and told him he was eligible to work at the Center. Staff told Huzzard that, in order to be eligible for work release, he would need to work half of his sentence at the Center. At around this same time, Huzzard petitioned the family court to be placed on work release.[5] The court denied his petition and told him that, to qualify for work release, he first needed to work at the Center.

Huzzard went to work at the Center. He worked there five days per week, from approximately 7 a.m. to 3:30 p.m. During the workday, he typically received one 10- to 15-minute break and one 30-minute break. Sometimes he received an additional 10- minute break in the afternoon. Huzzard was paid $5 for each day he worked at the Center, which was deposited into his prison commissary account.

At the Center, Huzzard stood with other prisoners at a conveyor

---

[5] Huzzard alleges that he sought work release so he could be present at the birth of one of his children.

belt, separating recyclable items from garbage. He sometimes worked on another conveyor belt, separating different types of glass. He also worked on the "upper magnet," tearing open bags of garbage and emptying their contents onto the conveyor belt.

### D. Dampsey Stuckey

Dampsey Stuckey is the father of four children. In 2017, Stuckey fell behind on his child support payments due to unspecified health issues. In March 2018, Stuckey was arrested. During his arrest, the arresting officer issued him a warrant for failure to pay child support. At a contempt hearing shortly after his arrest, Stuckey was sentenced to serve a term of six months at the prison, presumably subject to a purge provision.

Shortly after his arrival at Lackawanna County Prison, Stuckey spoke with Staff about the work release program. It was Stuckey's understanding that, in order to qualify for work release, he was required to first work at the Center.

Stuckey worked at the Center beginning in May or June 2018 and continuing until August 2018. He worked there five days per week, from approximately 7:30 a.m. to 3:30 p.m. During the workday, he typically

received one 15-minute break and one 30-minute break. Stuckey was paid $5 for each day he worked at the Center, which was deposited into his prison commissary account.

At the Center, Stuckey stood with other prisoners at a conveyor belt, separating recyclable items from garbage. He sometimes worked on the "upper magnet," tearing open bags of garbage and emptying their contents onto the conveyor belt. He also worked on the "glass chute," separating clear, green, and brown glass.

## II. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiffs' claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the

complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Nor is it required to credit factual allegations contradicted by indisputably authentic documents on which the complaint relies or matters of public record of which we may take judicial notice. *In re Washington Mut. Inc.*, 741 Fed. App'x 88, 91 n.3 (3d Cir. 2018); *Sourovelis v. City of Philadelphia*, 246 F. Supp. 3d 1058, 1075 (E.D. Pa. 2017); *Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 588–89 (W.D. Pa. 2008).[6]

---

[6] In addition to the second amended complaint itself we have considered the Operating Agreement (Doc. 11-6) and the three court orders entered in Burrell's child support cases (Doc. 1-1). All of these are documents incorporated into the second amended complaint by reference. Moreover, a district court may properly take judicial notice of state court records, as well as its own. *See* Fed. R. Evid. 201; *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007); *Ernst v. Child & Youth Servs. of Chester Cty.*, 108 F.3d 486, 498–99 (3d Cir. 1997); *Pennsylvania v. Brown*, 373 F.2d 771, 778 (3d Cir. 1967); *Barrett v. Matters*, No. 1:14-cv-1250, 2015 WL 5881602, at *9 & n.8 (M.D. Pa. Sept. 30, 2015) (considering exhibits *(continued on next page)*

## III. DISCUSSION

The plaintiffs have asserted an array of federal and state claims against these defendants in their seven-count second amended complaint. In Count I, the plaintiffs seek to hold all six defendants liable for unlawfully obtaining their labor in violation of the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. § 1589, made actionable by 18 U.S.C. § 1595. In Count II, the plaintiffs seek to hold Lackawanna County, the Authority, and Thomas Staff liable for subjecting them to involuntary servitude, in violation of the Thirteenth Amendment to the United States Constitution, made actionable by 42 U.S.C. § 1983. In Count III, the plaintiffs seek to hold LRCI, Lackawanna County, and the Authority

---

attached to original, superseded complaint).
    We note that the County Defendants have also submitted papers reflecting the incarceration of plaintiff Stuckey pursuant to a criminal conviction that that overlaps some of the time period when he claims to have been forced to work at the Center as a child support debtor. (Doc. 107-4; Doc. 107-5; Doc. 107-6; Doc. 107-7.) These papers indicate that he was incarcerated for a criminal conviction from November 22, 2017, through February 22, 2018, and again from June 6, 2018, through an unspecified release date. They also indicate that his criminal sentence included 100 hours of community service. While we might properly take judicial notice of these court records, and while this information might impact the scope of Stuckey's claims or potential recovery, we decline to further consider these papers here because they do not appear to be fully dispositive of his claims as alleged in the second amended complaint.

liable for failure to pay the plaintiffs the federal minimum wage, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206(a), made actionable by 29 U.S.C. § 216(b). In Count IV, the plaintiffs seek to hold LRCI, Lackawanna County, and the Authority liable for failure to pay the plaintiffs the state minimum wage, in violation of the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.104(a), made actionable by 43 P.S. § 333.113. In Count V, the plaintiffs seek to hold LRCI, Lackawanna County, and the Authority liable for failure to pay the plaintiffs in "lawful money of the United States or check," in violation of the Pennsylvania Wage Payment and Collection Law ("PWPCL"), 43 P.S. § 260.3(a), made actionable by 43 P.S. § 260.9a. In Count VI, the plaintiffs seek to hold all six defendants liable for conducting or participating in an enterprise through a pattern of racketeering activity, in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), made actionable by 18 U.S.C. § 1964(c). In Count VII, the plaintiffs seek to hold all six defendants liable for common-law unjust enrichment.

### A. Official Capacity Defendant

In Counts I, II, VI, and VII, the second amended complaint names

Thomas Staff as a defendant in his official capacity *only*. It names his employer, Lackawanna County, as a defendant to these same counts as well. But "[o]fficial capacity actions are redundant where the entity for which the individual[] worked is named." *Highhouse v. Wayne Highlands Sch. Dist.*, 205 F. Supp. 3d 639, 646 (M.D. Pa. 2016) (dismissing official capacity claims against municipal officials as redundant when municipality was also named as a defendant). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985).

Accordingly, it is recommended that the plaintiffs' claims against Thomas Staff in his official capacity be dismissed as redundant because his employer—Lackawanna County—is also named in the complaint, pursuant to the Court's inherent authority to control its docket and avoid duplicative claims. *See Dewees v. Haste*, 620 F. Supp. 2d 625, 630 (M.D. Pa. 2009) (dismissing official-capacity claims against county prison officials where county was also named as defendant); *see also Janowski v. City of N. Wildwood*, 259 F. Supp. 3d 113, 131–32 (D.N.J. 2017); *Korth v. Hoover*, 190 F. Supp. 3d 394, 402–03 (M.D. Pa. 2016); *Satterfield v.*

*Borough of Schuylkill Haven*, 12 F. Supp. 2d 423, 431–32 (E.D. Pa. 1998).

## B. Thirteenth Amendment and TVPA Claims

In Count I, the second amended complaint asserts TVPA forced labor claims against Lackawanna County, the Authority, LRCI, Louis DeNaples, Dominick DeNaples, and Thomas Staff in his official capacity only. In Count II, the second amended complaint asserts Thirteenth Amendment indentured servitude claims against Lackawanna County, the Authority, and Thomas Staff in his official capacity only.

With respect to Burrell, the original plaintiff in this case, the facts alleged in the counseled second amended complaint are substantially the same as those alleged in Burrell's *pro se* first amended complaint. In screening Burrell's *pro se* first amended complaint, this court found that he had failed to state a claim upon which relief could be granted with respect to both his Thirteenth Amendment indentured servitude and TVPA forced labor claims because Burrell had a *choice* between a full twelve months of imprisonment or work at the Center in unpleasant conditions for meager pay. *Burrell*, 2016 WL 7177549, at *11–*14, *adopted by* 2016 WL 7175615. (Doc. 34; Doc. 44.) On appeal, the Third Circuit noted that, "given the dearth of case law in this area, . . . it is not

clear, especially at the screening stage, whether this 'choice' was sufficient to bring the alleged practice of coercing civil contemnors to work in the [Center] out of the range of involuntary servitude" or forced labor. *Burrell*, 750 Fed. App'x at 159–60. (Doc. 57.) On remand, faced with substantively the same factual allegations concerning Burrell, we are, of course, compelled to agree. *See Paul v. Hearst Corp.*, 261 F. Supp. 2d 303, 305 n.4 (M.D. Pa. 2002) ("The law of the case rules require that, on remand, 'the trial court must proceed in accordance with the mandate and the law of the case as established on appeal.' 'A trial court must implement both the letter and spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces.'" (quoting *Bankers Tr. Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 949 (3d Cir. 1985) (citations and alterations omitted))).[7]

_____

[7] We note that LRCI and the DeNaples brothers present additional arguments in favor of dismissal of the TVPA claims against them, one of which bears comment. These defendants acknowledge that the TVPA prohibits knowingly benefiting financially from participation in a venture which has engaged in the providing or obtaining of forced labor, but they argue that the second amended complaint fails to allege facts to support an inference that LRCI and the DeNaples brothers knowingly benefited from such a venture. However, based on the facts alleged in the second amended complaint and on the Operating Agreement itself, we find it reasonable to infer that the corporate defendant, LRCI, and its primary

*(continued on next page)*

We further find that the facts alleged with respect to the newly added co-plaintiffs, Huzzard and Stuckey, are substantially similar to those alleged regarding Burrell.[8] Under these circumstances, we find that Huzzard and Stuckey have plausibly pleaded their Thirteenth Amendment involuntary servitude and TVPA forced labor claims as well.

Accordingly, we recommend that the defendants' motions to dismiss be denied with respect to the plaintiffs' Thirteenth Amendment involuntary servitude claims against Lackawanna County and the Authority and their TVPA forced labor claims against Lackawanna County, the Authority, LCRI, Louis DeNaples, and Dominick DeNaples, and that these claims be permitted to proceed to discovery.[9]

─────────────────────

executive officers—one or both of whom appear to have signed that agreement—were necessarily aware of the Center's policy and practice of relying extensively on prisoner labor and the resultant benefit to LRCI of reduced operating costs. Whether that benefit may be further attributed to the DeNaples as owners of LRCI, which has a separate corporate existence, is an open question, not fully explored in the parties' briefs at this, the pleadings stage.

[8] Regarding plaintiff Stuckey, see also *supra* note 6.

[9] If we were presented with a blank slate, evaluating the facts alleged in the second amended complaint for the first time, we would find that the plaintiffs have failed to allege sufficient facts to plausibly state claims under the Thirteenth Amendment, the TVPA, or RICO (the latter claims being predicated on a pattern of TVPA offenses). *See Burrell*, 2016 WL 7177549, at *11–*14, *16, *adopted by* 2016 WL 7175615. But, as we

*(continued on next page)*

## C. FLSA Claims

In Count III, the second amended complaint asserts FLSA claims against LRCI, Lackawanna County, and the Authority for failure to pay the plaintiffs the federal minimum wage.

"It is well established that a prisoner is not an employee under the Fair Labor Standards Act (FLSA), because the relationship is not one of employment, but arises out of the prisoner's status as an inmate." *Wilkerson v. Samuels*, 524 Fed. App'x 776, 779 (3d Cir. 2013) (per curiam). The fact that a plaintiff was incarcerated pursuant to a civil contempt order rather than a criminal judgment of sentence is immaterial, as the relationship nevertheless bears no indicia of traditional free-market employment. *See Tourscher v. McCullough*, 184 F.3d 236, 243–44 (3d Cir. 1999) (holding that pretrial detainees were not "employees" under the FLSA); *see also Matherly v. Andrews*, 859 F.3d 264, 278 (4th Cir. 2017) (holding that civil detainee committed as sexually violent person was not an "employee" under the FLSA); *Smith v. Dart*, 803 F.3d 304, 314 (7th Cir. 2015) ("We cannot see what difference

---

have noted above, in light of the history of this litigation, our recommended disposition is constrained by the law of the case doctrine.

it makes if the incarcerated person is a prisoner, civil detainee, or pretrial detainee."). As with convicted prisoners, pretrial detainees, or other civil detainees, the plaintiffs were in a custodial relationship, they were under the supervision and control of a governmental entity, and they were provided by the prison with all of their basic needs. *See Villarreal v. Woodham*, 113 F.3d 202, 206 (11th Cir. 1997).

Accordingly, it is recommended that the plaintiffs' FLSA minimum wage claims against LRCI, Lackawanna County, and the Authority be dismissed for failure to state a claim upon which relief can be granted.

### D. PMWA Claims

In Count IV, the second amended complaint asserts PMWA claims against LRCI, Lackawanna County, and the Authority for failure to pay the plaintiffs the state minimum wage. Courts have held that the PMWA should be read consistently with the FLSA. *See Ford-Greene v. NHS, Inc.*, 106 F. Supp. 3d 590, 612–13 (E.D. Pa. 2015) (citing 43 P.S. § 333.104). Accordingly, for the same reasons discussed above concerning the plaintiffs' FLSA minimum wage claims, it is recommended that the plaintiffs' PMWA minimum wage claims against LRCI, Lackawanna County, and the Authority be dismissed for failure to state a claim upon

which relief can be granted.

**E. PWPCL Claims**

In Count V, the second amended complaint asserts PWPCL claims against LRCI, Lackawanna County, and the Authority for failure to pay the plaintiffs in "lawful money of the United States or check." Specifically, the second amended complaint alleges that, while participating in the Community Service Program and working at the Center, the plaintiffs were paid $5 for each day they worked at the Center, which was deposited into their prison commissary accounts. The plaintiffs contend that payment into their prison commissary accounts was not equivalent to payment by lawful money of the United States (i.e., cash) or check, due to various restrictions placed on their use of funds in their prison commissary accounts.

"The [PWPCL] statute itself does not create a right to compensation." *Sendi v. NCR Comten, Inc.*, 619 F. Supp. 1577, 1579 (E.D. Pa. 1985). The PWPCL merely "provides employees a statutory remedy to recover wages and other benefits that are *contractually* due to them." *Lehman v. Legg Mason, Inc.*, 532 F. Supp. 2d 726, 733 (M.D. Pa. 2007) (quoting *Oberneder v. Link Computer Corp.*, 696 A.2d 148, 150 (Pa.

1997)); *see also Ford-Greene*, 106 F. Supp. 3d at 613; *Sendi*, 619 F. Supp. at 1579. "Accordingly, a prerequisite for relief under the [P]WPCL is a contract between employee and employer that sets forth their agreement on wages to be paid. Relief under the [P]WPCL is implausible without existence of a contract." *Lehman*, 532 F. Supp. 2d at 733 (citations omitted). In other words, "[f]or the [P]WPCL to apply, an employer-employee relationship is required." *Gladstone Tech. Partners, LLC v. Dahl*, 222 F. Supp. 3d 432, 439 (E.D. Pa. 2016).

For the same reasons stated in the two preceding sections of this report, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiffs, we find that plaintiffs have failed to allege an employer-employee relationship. Accordingly, it is recommended that the plaintiffs' PWPCL claims against LRCI, Lackawanna County, and the Authority be dismissed for failure to state a claim upon which relief can be granted.

### F. RICO Claims

In Count VI, the second amended complaint asserts RICO claims against Lackawanna County, the Authority, LRCI, Louis DeNaples, Dominick DeNaples, and Thomas Staff in his official capacity only.

### 1. RICO Claims Against the County and the Authority

The second amended complaint asserts RICO claims against Lackawanna County and the Authority, both of which are municipal corporations. But it is well established that a civil RICO claim brought under 18 U.S.C. § 1964(c) cannot be maintained against a municipal corporation as a matter of law. *See Gentry v. Resolution Tr. Corp.*, 937 F.2d 899, 914 (3d Cir. 1991). Accordingly, it is recommended that the plaintiffs' RICO claims against Lackawanna County and the Authority be dismissed for failure to state a claim upon which relief can be granted.[10]

### 2. RICO Claims Against the DeNaples Brothers

The remaining three defendants to the plaintiffs' RICO claim are LRCI, a corporation, and Louis and Dominick DeNaples, co-owners of the corporation. Apart from their ownership of the corporation and their respective positions as president and vice president of the corporation, the second amended complaint alleges no affirmative conduct by—or other facts about—the DeNaples brothers.

---

[10] This rationale would apply to an official-capacity RICO claim against Thomas Staff as well.

"To plead a RICO claim under § 1962(c), 'the plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 362 (3d Cir. 2010). Under the statute, an "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). In this case, the plaintiffs have pleaded an association-in-fact enterprise comprised of (1) LRCI, (2) its corporate officers and co-owners, Louis and Dominick DeNaples, (3) Lackawanna County and Thomas Staff, in his official capacity, and (4) the Authority.

"The Supreme Court has recognized that a corporation's owner could be sued as a RICO 'person' acting through the corporation as the 'enterprise.' However, the Court distinguished this scenario from the type of claim where a corporation is alleged to be a RICO person based on an alleged association with its own employees." *Friedland v. Unum Grp.*, 50 F. Supp. 3d 598, 605 (D. Del. 2014) (citations omitted) (citing *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163–64 (2001)). Here, the plaintiffs have asserted the latter type of claim, naming LRCI as a defendant and a RICO "person" that conducted or participated in the

alleged association-in-fact enterprise. The plaintiffs further name LRCI's officers and co-owners, Louis and Dominick DeNaples, as additional participants in the enterprise. But the facts alleged in the second amended complaint are not sufficient to establish that Louis and Dominick DeNaples personally—separate and apart from their roles as corporate officers—"conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs." *Cedric Kushner Promotions*, 533 U.S. at 162; *see also Friedland*, 50 F. Supp. 3d at 605; *Curtin v. Tilley Fire Equip. Co.*, No. Civ.A. 99-2373, 1999 WL 1211502, at *3 (E.D. Pa. Dec. 14, 1999). Thus, the plaintiffs have not plausibly pleaded a § 1962(c) RICO claim against either Louis or Dominick DeNaples, personally. *See Ins. Brokerage Antitrust Litig.*, 618 F.3d at 369–70 (applying *Iqbal* and *Twombly* pleading standards to allegations of an association-in-fact enterprise); *see also Friedlund*, 50 F. Supp. 3d at 605.

Accordingly, it is recommended that the plaintiffs' RICO claims against Louis and Dominick DeNaples be dismissed for failure to state a claim upon which relief can be granted.

### 3. RICO Claims Against LRCI

That leaves the corporate defendant, LRCI, as the last remaining "RICO person," subject to civil RICO liability under § 1964(c). Notwithstanding the plaintiffs' inability to obtain relief against the municipal defendants under RICO, Lackawanna County and the Authority may still serve as additional legal entities for the purpose of establishing an association-in-fact enterprise. "Municipal entities can be part of an unlawful purpose association-in-fact enterprise so long as those who control the entities share the purposes of the enterprise." *United States v. Cianci*, 378 F.3d 71, 83 (1st Cir. 2004). In other words, "[a] RICO enterprise animated by an illicit common purpose can be comprised of an association-in-fact of municipal entities and [other] members when the latter exploits the former to carry out that purpose." *Id.* Here, we find that the second amended complaint has plausibly pleaded an association-in-fact enterprise comprised of LRCI, Lackawanna County, and the Authority.[11]

---

[11] We note that LRCI has argued that the second amended complaint has failed to allege any predicate acts of racketeering by LRCI, relying on its contention that the second amended complaint has failed to state a TVPA claim against LRCI. But because we have found that the
*(continued on next page)*

Accordingly, we recommend that LRCI's motion to dismiss be denied with respect to the plaintiffs' RICO claim against LRCI, and that this claim be permitted to proceed to discovery.

### G. Unjust Enrichment

In Count VII, the second amended complaint asserts unjust enrichment claims against Lackawanna County, the Authority, LRCI, Louis DeNaples, Dominick DeNaples, and Thomas Staff in his official capacity only.

As this court has previously observed:

> Pennsylvania law supports two species of unjust enrichment claims: (1) a quasi-contract theory of liability, in which case the unjust enrichment claim is brought as an alternative to a breach of contract claim; or (2) a theory based on unlawful or improper conduct established by an underlying claim, such as fraud, in which case the unjust enrichment claim is a companion to the underlying claim.

*Mifflinburg Tel., Inc. v. Criswell*, 277 F. Supp. 3d 750, 801 (M.D. Pa. 2017). As in *Mifflinburg Telegraph*, the claim in this case appears to be the latter type, pleaded as a companion to the plaintiffs' forced labor and indentured servitude claims. *See Steamfitters Local Union No. 420*

--------------------------------------------------------

plaintiffs have plausibly pleaded a TVPA claim against LRCI, we necessarily find this particular argument unpersuasive.

*Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 936 (3d Cir. 1999) ("In the tort setting, an unjust enrichment claim is essentially another way of stating a traditional tort claim (i.e., if defendant is permitted to keep the benefit of his tortious conduct, he will be unjustly enriched).").

> To prevail on an unjust enrichment claim in Pennsylvania, a plaintiff must demonstrate the following elements: (1) a benefit conferred on the defendant by the plaintiff; (2) appreciation of such benefit by the defendant; and (3) acceptance and retention of such benefit under circumstances such that it would be inequitable for the defendant to retain the benefit without payment to the plaintiff. The most significant element of the doctrine is whether the enrichment of the defendant is unjust; the doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff. Instead, a claimant must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that would be unconscionable for her to retain.

*EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 273 (3d Cir. 2010) (citations, internal quotation marks, and alterations omitted). Typically, "[w]here the unjust enrichment claim rests on the same improper conduct as the underlying tort claim, the unjust enrichment claim will rise or fall with the underlying claim." *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 493 (E.D. Pa. 2016).

As in the typical case, the unjust enrichment claim here appears to

rise or fall with the underlying forced labor and indentured servitude claims. Accepting all well-pleaded allegations in the second amended complaint as true and viewing them in the light most favorable to the plaintiffs, we find the plaintiffs have plausibly pleaded the elements of unjust enrichment against each of the five remaining defendants.

Accordingly, we recommend that the defendants' motions to dismiss be denied with respect to the plaintiffs' unjust enrichment claims against Lackawanna County, the Authority, LCRI, Louis DeNaples, and Dominick DeNaples, and these claims be permitted to proceed to discovery.

## IV.   RECOMMENDATION

For the foregoing reasons, it is recommended that:

1.    The defendants' several motions to dismiss the second amended complaint (Doc. 99; Doc. 101; Doc. 102; Doc. 103) be **GRANTED in part and DENIED in part**;

2.    The plaintiffs' TVPA claims (Count I), Thirteenth Amendment claims (Count II), RICO claims (Count VI), and unjust enrichment claims (Count VII) be **DISMISSED** as redundant with respect to defendant Thomas Staff, named in his official capacity only;

3. The plaintiffs' FLSA claims (Count III), PMWA claims (Count IV), and PWPCL claims (Count V) be **DISMISSED** in their entirety for failure to state a claim upon which relief can be granted;

4. The plaintiffs' RICO claims (Count VI) be **DISMISSED** with respect to defendants Lackawanna County, the Authority, Louis DeNaples, and Dominick DeNaples for failure to state a claim upon which relief can be granted;

5. The plaintiffs' TVPA claims (Count I) against defendants Lackawanna County, the Authority, LRCI, Louis DeNaples, and Dominick DeNaples, their Thirteenth Amendment claims (Count II) against Lackawanna County and the Authority, their RICO claim (Count VI) against LRCI, and their unjust enrichment claims (Count VII) against Lackawanna County, the Authority, LRCI, Louis DeNaples, and Dominick DeNaples be permitted to proceed to discovery; and

6. This matter be remanded to the undersigned for further proceedings.

Dated: March \_\_\_\_1\_\_\_\_, 2021

JOSEPH F. SAPORITO, JR.
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM BURRELL JR.,

     Plaintiff,

     v.

PATRICK LOUNGO, et al.,

     Defendants.

CIVIL ACTION NO. 3:14-cv-01891

(MARIANI, J.)
(SAPORITO, M.J.)

## <u>NOTICE</u>

NOTICE IS HEREBY GIVEN that the undersigned has entered the

foregoing Report and Recommendation dated March ___/___, 2021. Any

party may obtain a review of the Report and Recommendation pursuant

to Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed
> findings, recommendations or report addressing a
> motion or matter described in 28 U.S.C. § 636(b)(1)(B)
> or making a recommendation for the disposition of a
> prisoner case or a habeas corpus petition within
> fourteen (14) days after being served with a copy thereof.
> Such party shall file with the clerk of court, and serve
> on the magistrate judge and all parties, written
> objections which shall specifically identify the portions
> of the proposed findings, recommendations or report to
> which objection is made and the basis for such
> objections. The briefing requirements set forth in Local
> Rule 72.2 shall apply. A judge shall make a de novo
> determination of those portions of the report or specified
> proposed findings or recommendations to which

objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Dated: March ___/___, 2021

JOSEPH F. SAPORITO, JR.
United States Magistrate Judge