## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM BURRELL, JR., JOSHUA** | : | |
| **HUZZARD, and DAMPSEY STUCKEY,** | : | |
| **individually and as representatives of** | : | **CIVIL ACTION NO. 3:14-CV-1891** |
| **the classes,** | : | **(JUDGE MARIANI)** |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **LACKAWANNA RECYCLING CENTER,** | : | |
| **INC., LACKAWANNA COUNTY,** | : | |
| **LACKAWANNA COUNTY SOLID** | : | |
| **WASTE MANAGEMENT AUTHORITY,** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

### I. Introduction

Plaintiffs' Motion for Conditional Certification of a Collective Action, Identification of

Potential Collective Action Members, and Approval of Notice to Potential Collective Action

Members (Doc. 159) is pending before the Court. Named Plaintiffs William Burrell, Jr.,

Joshua Huzzard, and Dampsey Stuckey are individuals who had been held in civil contempt

for not paying child support. (Second Amended Complaint ("SAC"), Doc. 77 ¶¶ 7-9.18-96.)

They brought the above captioned action against Lackawanna County ("County"), the

County's Solid Waste Management Authority ("Authority"), Lackawanna Recycling Center,

Inc. ("LRCI"), the private corporation to which the Authority outsources the operation of its

Recycling Center, and others, including LRCI's owners, Louis DeNaples and Dominick DeNaples, asserting numerous claims arising out of Plaintiffs' labor at the Recycling Center. (Doc. 77 ¶¶ 107-246.)

Plaintiffs' motion under consideration here relates only to their Fair Labor Standards Act Claim ("FLSA") claim set out in Count III of the Second Amended Complaint (Doc. 77 ¶¶ 213-277) alleging that the County, the Authority, and LRCI violated the FLSA by willfully failing to pay them and the FLSA Collective the minimum wage for all hours worked. (*See, e.g.*, Doc. 159 at 1, Doc. 160 at 5-6.) Identifying the class to be "[a]ll civilly detained child-support debtors who worked at the Center after entry of the May 3, 2006, Operating Agreement between LRCI and the Authority who elect to join this action," Plaintiffs assert that they meet the standard for conditional collective action certification. (Doc. 160 at 5.)

Defendant LRCI responds that conditional certification should be denied on statutory grounds and because of the inconsistency of the FLSA and Trafficking Victim's Protection Act ("TVPA") causes of action. (Doc. 161 at 7-17.) LRCI alternatively contends that, if the Court chooses to grant conditional certification, the proposed collective and related forms should be revised on statute of limitation grounds, and the notification procedure should not include notice via text message. (*Id.* at 15-16.) The County responds that Plaintiffs request for information regarding collective class members should be denied because it is unnecessarily burdensome in scope and proposed duration. (Doc. 162 at 2-3.) The Authority joins in the briefs of LRCI and the County. (Doc. 163 at 1.)

For the reasons that follow, the Court will grant Plaintiffs' motion as modified.

## II. Background

Plaintiffs were child support delinquents who were sentenced to serve a period of incarceration after they failed to pay overdue child support. (Doc. 77 ¶¶ 18-96.) While Plaintiff Stuckey may have had overlapping criminal sentences (*see* Doc. 120 at 10 n.6), Plaintiffs Burrell and Huzzard could be released before the expiration of the imposed sentence upon payment of a monetary sum established by the Lackawanna County Court of Common Pleas Order, a sum known as the "purge" amount. (Doc. 77 ¶¶ 26, 61.) As per Lackawanna County Prison staff directives, Plaintiffs could not participate in the work release program until they successfully completed a period of participation in the Lackawanna County Community Services Program, which in each case here resulted in working at the Lackawanna Recycling Center, Inc. for approximately eight hours a day at a pay rate of $5.00 per day paid into the inmate's prison commissary account. (Doc. 77 ¶¶ 32, 36, 42, 43, 66, 67, 70, 71, 87, 88, 91, 92.) Court orders for Plaintiffs Burrell and Huzzard accommodated and confirmed this arrangement. (Doc. 77 ¶¶ 33-35, 66.)

Since at least May 3, 2006, the Authority and LRCI have been parties to a contract ("Operating Agreement") regarding the operations of the Lackawanna County Recycling Center ("Center" "Recycling Center"), a recycling center owned by the Authority. (Doc. 11-6, Professional Service Operating Agreement.) As explained by Magistrate Judge Joseph Saporito in his March 1, 2021, Report and Recommendation,

[u]nder the terms of the Operating Agreement, LRCI assumed responsibility for operation and management of the Center, including the hiring, supervision, training, and payment of personnel to staff the Center. Besides these employees of LRCI, however, the Operating Agreement also provided that the Authority would continue to "provide the same number of Prisoners from the Lackawanna County Prison that have historically worked at the Center as part of their work release program as security requirements dictate."

In accordance with this last provision, county personnel—specifically prison guards—transport prisoners to the Center to work there. Prison guards remain on site at the Center to supervise prisoners, maintain security, and discipline prisoners. Some number of the prisoners supplied by the Authority to work at the Center are child support debtors sentenced to terms of incarceration following civil contempt proceedings for failure to pay child support.

(Doc. 120 at 3-4.) At all relevant times Louis DeNaples was the president of LRCI and

Dominick DeNaples was the vice president of LRCI. (Doc. 77 ¶¶ 11, 12.)

Plaintiffs' Second Amended Complaint contained seven counts.[1] In Count I,

Plaintiffs sought to hold all Defendants liable for unlawfully obtaining their labor in violation

of the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. § 1589. (Doc. 77 ¶¶ 202-207.)

In Count II, Plaintiffs sought to hold Lackawanna County ("County"), the Lackawanna

County Solid Waste Management Authority ("Authority"), and Thomas Staff liable for

---

[1] The Second Amended Complaint (Doc. 77) was filed after a panel of the Court of Appeals for the Third Circuit considered an appeal of this Court's December 8, 2016, dismissal of Plaintiff Burrell's First Amended Complaint (Docs. 11, 44) and remanded the matter for further proceedings, *Burrell v. Luongo*, 750 F. App'x 149 (3d Cir. 2018) (not precedential). The Circuit panel concluded that this Court had properly dismissed numerous claims contained in the First Amended Complaint, *id.* at 154-57, and identified several claims that could be pursued after remand including Thirteenth Amendment and 18 U.S.C. § 1589, Trafficking Victims Protection Act ("TVPA"), claims, civil RICO claims, and state law claims, *id* at 157-60.

subjecting them to involuntary servitude in violation of the Thirteenth Amendment, made

actionable by  42 U.S.C. § 1983, by requiring them to work at the Lackawanna County

Recycling Center, Inc. ("LRCI") or remain incarcerated and ineligible for work release.  (*Id.*

¶¶ 208-212.)  In Count III, Plaintiffs asserted that the Center, the County, and the Authority

violated the Fair Labor Standards Act ("FLSA") by failing to pay them the federal minimum

wage. (*Id.* ¶¶ 213-227.)  In Count IV, Plaintiffs asserted that the Center, the County, and

the Authority violated the Pennsylvania Minimum Wage Act ("PMWA") by failing to pay them

the state minimum wage.  (*Id.* ¶¶ 228-232.)  In Count V, Plaintiffs asserted that the Center,

the County, and the Authority violated the Pennsylvania Wage Payment and Collection Law

("PWPCL") by failing to pay them their wages "in lawful money of the United States or

check."  (*Id.* ¶¶ 233-237.)  In Count VI, Plaintiffs sought to hold all Defendants liable for

violation of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. §

1962(c) made actionable by 18 U.S.C. § 1964(c).  (*Id.* ¶¶ 228-243.) In Count VII, Plaintiffs

asserted a state law claim for unjust enrichment against all Defendants.  (*Id.* ¶¶ 244-246.)

In response to Defendants' motions to dismiss (Docs. 99, 101, 102, 103), by Order of

August 6, 2021, the Court dismissed the following claims without prejudice: Count I

(Trafficking Victims Protection Act), Count II (42 U.S.C. § 1983 Thirteenth Amendment),

Count III (Fair Labor Standards Act), Count IV (Pennsylvania Minimum Wage Act), Count V

(Pennsylvania Wage Payment and Collection Law), and Count VII (Unjust Enrichment).

(Doc. 144 ¶ 6.) Count VI (Racketeer Influenced and Corrupt Organization Act) of the

Second Amended Complaint (Doc. 77 at 30) was dismissed with prejudice as to Defendants County, Authority, and Thomas staff in his official capacity and dismissed without prejudice as to Defendants Louis DeNaples and Dominick DeNaples, and LRCI. (*Id.* ¶ 7.) Plaintiffs were granted leave to file an amended complaint within twenty-one days of the date of the Order. (*Id.* ¶ 8.)

On August 27, 2021, Plaintiffs filed the Notice of Intention to Stand on Complaint and Unopposed Request for Issuance of Final Judgment (Doc. 145). The Court granted the motion and entered Final Judgment on August 31, 2021. (Doc. 146.) Plaintiffs filed their Notice of Appeal (Doc. 147) on September 30, 2021.

The Court of Appeals for the Third Circuit filed its decision on February 8, 2023, affirming this Court's Memorandum Opinion and Order in part and reversing in part. *Burrell v. Staff*, 60 F.4th 25 (3d Cir.), *cert. denied sub nom. Lackawanna Recycling Ctr., Inc. v. Burrell*, 143 S. Ct. 2662, 216 L. Ed. 2d 1239 (2023). The Circuit Court affirmed dismissal of the Thirteenth Amendment and Pennsylvania Wage Payment and Collection Law in full and affirmed dismissal of the TVPA and RICO claims against Louis DeNaples and Dominic DeNaples. *Id.* at 50. The Circuit Court reversed this Court's dismissal of the remaining claims and remanded them for further proceedings. *Id.* Therefore, the following claims are pending before the Court: 1) the TVPA claim against the County, the Authority, and LRCI; 2) the FLSA claim against the County, the Authority, and LRCI; 3) the Pennsylvania Minimum

Wage Act claim against the County, the Authority, and LRCI; 4) the Unjust Enrichment claims against the County, the Authority, and LRCI; and 5) the RICO claim against LRCI.

As set out above, the pending motion relates only to Plaintiffs' FLSA claim.

### III. LEGAL STANDARD

"Congress enacted the FLSA in 1938 with the goal of 'protect[ing] all covered workers from substandard wages and oppressive working hours.'" *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 147 (2012) (quoting *Barrentine v. Arkansas–Best Freight System, Inc.,* 450 U.S. 728, 739 (1981)) (citing 29 U.S.C. § 202(a)). The FLSA "is part of the large body of humanitarian and remedial legislation enacted during the Great Depression, and has been liberally interpreted." *Brock v. Richardson*, 812 F.2d121, 123 (3d Cir. 1987). The Supreme Court stated in *Tennessee Coal, Iron & Railroad Co. v. Muscoda Local No. 123,* 321 U.S. 590 (1944), that the provisions of the Fair Labor Standards Act

> are remedial and humanitarian in purpose. We are not here dealing with mere chattels or articles of trade but with the rights of those who toil, of those who sacrifice a full measure of their freedom and talents to the use and profit of others. Those are the rights that Congress has specially legislated to protect. Such a statute must not be interpreted or applied in a narrow, grudging manner.

*Id.* at 597.

As to the claimed violation in Count III of the SAC regarding Defendants' failure to pay Plaintiffs and the FLSA Collective the minimum wage (Doc. 77 § 214), the FLSA, 29 U.S.C. § 206(a), provides in pertinent part:

> Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is

employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates:

  **(1)** except as otherwise provided in this section, not less than—

    **(A)** $5.85 an hour, beginning on the 60th day after May 25, 2007;

    **(B)** $6.55 an hour, beginning 12 months after that 60th day; and

    **(C)** $7.25 an hour, beginning 24 months after that 60th day[.]

29 U.S.C. § 206(a).

Regarding a collective action under the FLSA, the Act provides that an action may be brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated" and that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). The collective action "is a form of group litigation in which a named employee plaintiff or plaintiffs file a complaint 'on behalf of' a group of other, initially unnamed employees who purport to be 'similarly situated' to the named plaintiff." *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 223 (3d Cir. 2016). *Halle* further explains that

> [w]hen a named plaintiff files a complaint containing FLSA collective action allegations, the mere presence of the allegations does not automatically give rise to the kind of aggregate litigation provided for in Rule 23. Rather, the existence of a collective action depends upon the affirmative participation of opt-in plaintiffs. *See Smith v. T–Mobile USA, Inc.*, 570 F.3d 1119, 1121 (9th Cir. 2009); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008). Courts are then called upon to decide whether those who purport to join the collective action are "similarly situated" as intended by the statute. Because there are no formal procedural rules that mandate how to accomplish this task,

courts have developed a practical approach to managing FLSA collective actions. This approach, which has been recognized by the Supreme Court and is widely accepted in most jurisdictions, is a two-step certification process. *See Genesis Healthcare [v. Symczyk,* 569 U.S. 66, 75 (2013)]; *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 (3d Cir. 2012).

*Id.* at 224. The Court of Appeals for the Third Circuit has described the two-step process as

follows:

> The first step, so-called conditional certification, requires the named plaintiffs to make a "modest factual showing" to demonstrate "a factual nexus between the manner in which the employer's alleged policy affected him or her and the manner in which it affected the proposed collective action members." [*Halle*, 842 F.3d] at 224.

> The second step, final certification . . . requires that "the named plaintiffs bear the burden of showing that the opt-in plaintiffs are 'similarly situated' to them for FLSA purposes." *Id.* at 226. "Being 'similarly situated' ... means that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA." *Id.* (quoting *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 538 (3d Cir. 2012)).

*Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 85 (3d Cir. 2017).[2] The "opt-in"

requirement mandates that each individual must file an affirmative consent to join

the collective action.  *Id.* at 225.

Considering the first step of the process which is at issue here, *Halle* explained that

"the 'sole consequence' of conditional certification is the dissemination of court-approved

---

[2] *Zavala* noted that the Circuit Court had identified the "modest factual showing" standard in *Symczyk v. Genesis HealthCare Corp.,* 656 F.3d 183, 193 (3d Cir. 2011) (*rev'd on other grounds*, 569 U.S. 66 (2013)), and the standard required a plaintiff to provide some evidence beyond mere speculation of the alleged factual nexus. 691 F.3d at 536 n.4. *Zavala* also noted that the Second Circuit "described this initial step as "determin[ing] *whether* 'similarly situated' plaintiffs do in fact exist," while at the second stage, the District Court determines "whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Id.* (quoting *Myers v. Hertz Corp.,* 624 F.3d 537, 555 n.10 (2d Cir. 2010)).

notice to potential collective action members." 842 F.3d at 224 (quoting *Genesis Healthcare*, 569 U.S. at 75). Thus, "[c]onditional certification . . . is not a true certification, but rather an exercise of a district court's discretionary authority to oversee and facilitate the notice process." *Id.* (citing *Zavala*, 691 F.3d at 536 (citing *Hoffman–La Roche v. Sperling*, 493 U.S. 165 (1989)).

## IV. ANALYSIS

The parties briefing of the pending motion identifies five issues: 1) whether Plaintiffs have provided sufficient evidence to satisfy the requirements for FLSA conditional collective action certification; 2) whether Plaintiffs' FLSA and TVPA claims can both go forward at this stage of the proceedings; 3) whether equitable tolling supports the propriety of the proposed class description beyond the statutory limitations period; 4) whether the proposed notice procedure is appropriate; and 5) whether Plaintiffs' request for production of information regarding identification of potential class members is unnecessarily burdensome. *See supra* pp. 2-3. The Court will address each in turn.

## A. Factual Nexus Between Named Plaintiffs and Proposed Collective Action Members

Plaintiffs identify the class to be "[a]ll civilly detained child-support debtors who worked at the Center after entry of the May 3, 2006, Operating Agreement between LRCI and the Authority who elect to join this action." (Doc. 160 at 5.) Plaintiffs assert that they meet the standard for conditional collective action certification because they are similarly situated to potential collective members in that they allege FLSA violations common to them

and potential collective members. (*Id.* at 9-10.) Plaintiffs specifically point to allegations set out in the SAC, Defendants' admissions, and Plaintiffs' Declarations which show that they and potential collective members "worked at the Center for the County, LRCI, and the Authority's benefit[,] . . . perform[ing] difficult manual labor sorting trash and recyclables for eight hours per day, five days per week . . . [for which] Plaintiffs and potential collective members were paid only $5.00 per day." (*Id.* at 10 (citing (Doc. 77, SAC, ¶¶ 42-44, 45–47, 68–73, 89–94, 157–75; Doc. 154, LRCI Answer, at 3–4; Doc. 154, Authority Answer, at 3–4; Doc. 155, Joint Case Management Plan, at 4; Ex. A, Burrell Decl., ¶¶ 5–7, 9; Ex. B, Huzzard Decl., ¶¶ 5-7, 10; Ex. C, Stuckey Decl., ¶¶ 5–7, 9).)

LRCI does not substantively dispute Plaintiffs' factual allegations but rather, relying on a Fifth Circuit decision, LRCI generally argues that conditional certification itself is without a statutory basis "because the two-step collective designation process has no basis in the FLSA's statutory language." (Doc. 161 at 4 (citing *Swales v. KLLM Transp. Servs., LLC*, 985 F.3d 430 (5th Cir. 2021)).) LRCI also cites *Clark v. A&L Homecare and Training Center, LLC*, Nos. 22-3101/3102, 2023 WL 3559657, at *2-3 (6th Cir. May 19, 2023), in support of an alternative to the Third Circuit's two-step approach. (Doc. 161 at 5.)

The district court cases in the Third Circuit which have considered LRCI's *Swales'* argument have found it to be without merit, in each instance concluding that Third Circuit binding precedent set out in *Halle v. West Penn Allegheny Health System, Inc.*, 842 F.3d at 224, is clear that the Circuit Court has unequivocally endorsed the two-step process and

11

forecloses adopting the *Swales* one-step approach. *Marcy v. Select Medical Corp.*, Civ. A. No. 1:23-CV-469, 2023 WL 9074622, at *1 n.1 (M.D. Pa. Nov. 1, 2023); *Hagans v. National Mentor Healthcare, Inc.*, Civ. A. No. 22-00128-KMW-SAK, 2023 WL 2554159, at *2 n.2 (D.N.J. Mar. 17, 2023); *Fogg v. Clean Harbors Environmental Services, Inc.*, Civ. A. No. 21-7626, 2023 WL 1794836, at 2 * n.2 (D.N.J. Feb. 7, 2023); *Wofford v. Sea Abode, Inc.*, Civ. A. No. 2:20-CV-00084-RJC, 2021 WL 3113215, at *3 n.5 (W.D. Pa. July 22, 2021). *Clark* has also been rejected in the two Third Circuit district court opinions which have considered its heightened standard at the conditional certification stage. *Tidwell v. YWCA*, Civ. A. No. 1:22-CV-908,  2024 WL 1861525, at *3 n.3 (M.D. Pa. Apr. 29, 2024); *Marcy*, 2023 WL 9074622, at *1 n.1.

This Court agrees that *Halle's* two-step approach is the appropriate standard. Aside from urging the Court to adopt a different standard, LRCI presents no basis to undermine Plaintiffs' factual assertions supporting the "factual nexus between the manner in which the employer's alleged policy affected [them] and the manner in which it affected the proposed collection action members," *Halle*, 842 F.3d at 224. Based on the evidence presented by Plaintiffs and the lack of support for Defendant LRCI's position, the Court concludes that Plaintiffs have produced sufficient evidence to show the required factual nexus.

Defendant LRCI's argument that conditional certification should be denied because Plaintiffs and the proposed collective are not employees under the FLSA urges the Court to follow *Burrell's* dissenting opinion rather than the majority opinion. (*See* Doc. 161 at 7-13.) A

district court  must follow the binding precedent set by the court of appeals for that circuit.

*See Valspar Corp. v. E.I. Du Pont De Nemours & Co.*, 873 F.3d 185, 203 (3d Cir. 2017).

The Third Circuit panel's majority opinion in *Burrell* is precedent that binds this Court. The

majority in *Burrell* concluded that Plaintiffs had adequately pled an FLSA claim, 60 F.4th at

48, 49, and this Court is bound to proceed accordingly.

## B. Relationship between FLSA Conditional Certification and TVPA Claim

Defendant LRCI argues that "[c]onditional certification cannot be granted while

Plaintiffs' TVPA and TVPA-dependent claims (RICO and Unjust Enrichment) remain

pending. Plaintiffs must select which of two mutually inconsistent theories they intend to

pursue before seeking conditional certification of a collect[ive] action under the FLSA." (Doc.

161 at 13.)  Plaintiffs respond that the TVPA claims do not prevent conditional certification.

(Doc. 164 at 12.)

In support of this argument, LRCI relies on the Third Circuit's February 8, 2023,

opinion, stating that the Circuit Court recognized the incompatibility of the causes of action

and that both cannot be pursued on the merits. (Doc. 161 at 14 (citing *Burrell*, 60 F.4th at 42

n.10).) LRCI's reliance on the Third Circuit's *Burrell* decision is misplaced in that the

footnote cited actually supports the validity of both FLSA and TVPA claims at this stage of

the proceedings. *Burrell* agreed that the parties can plead facts in the alternative and they

may state separate claims and defenses regardless of consistency pursuant to Rule 8 of the

Federal Rules of Civil Procedure but Plaintiffs "cannot assert contradictory factual

allegations that are not legitimately in doubt." 60 F.4ᵗʰ at 42 n.10. Importantly, *Burrell* explained the situation at issue here as follows:

> [W]hether plaintiffs' work was involuntary is not a fact; it is a mixed question of law and fact . . . . Of course, plaintiffs cannot prevail on the merits on both their TVPA claims, which require some degree of involuntary work, and their FLSA claims, which require that they worked voluntarily. But that does not bar plaintiffs from presenting both theories to a factfinder who can conclude whether the facts prove that plaintiffs' work was voluntary or involuntary.

*Id.*

With this explanation, the Circuit Court did not preclude Plaintiffs from going forward with both FLSA and TVPA claims at this stage of the proceedings. Rather, the Court unequivocally concluded that Plaintiffs cannot prevail on both claims and Plaintiffs can present both to a factfinder at a later stage in the proceedings. Therefore, LRCI's argument is without merit.

## C. Statute of Limitations and Equitable Tolling

Defendant LRCI contends that, if the Court chooses to grant conditional certification, the definition of the proposed collective must be revised to reflect the applicable FLSA three-year statute of limitations rather than the May 3, 2006, date identified by Plaintiffs which is outside that period. (Doc. 161 at 14-15.) LRCI maintains that "any conditionally certified class must be limited to those 'employees' employed on or after the date that is three years prior to the date of the conditional certification." (*Id.* at 15.) Defendant adds that any conditionally certified class must be

14

limited to those "employees" employed on or after the date that is three years prior to the date of conditional certification. And it makes no difference that subsequent opt-ins may seek to toll the statute of limitations with respect to their claims (for reasons yet unknown). Plaintiffs have not formally made a request for equitable tolling to this Court, and their pending motion sets forth no evidentiary basis for such a request.

(Doc. 161 at 15-16.)

Plaintiffs respond that the proposed collective should not be revised and LRCI is wrong that Plaintiffs have not formally requested equitable tolling in that they did so in their opposition to the Defendants' motion to dismiss, the matter was briefed before the Third Circuit, and "the Third Circuit held that the statute of limitations for Plaintiffs' FLSA claims was tolled because they were actively misled about their rights." (Doc. 164 at 14-15 (citing *Burrell*, 60 F.4th at 48).) Plaintiffs further assert that the Circuit placed "no temporal limit on the appropriate limitations period for a collective of debtors who worked at the Recycling Center" and the May 3, 2006, date corresponds with the entry date of the Operating Agreement which is central to Plaintiffs' claims and a key aspect of Defendants' joint employment of Plaintiffs. (*Id.* at 15.)

Based on the Third Circuit's consideration of this issue, the Court agrees with Plaintiffs' assessment. The Third Circuit framed Plaintiffs' argument concerning the statute of limitations as follows:

Plaintiffs contend that the statute of limitations should be equitably tolled because defendants failed to conspicuously post required notices to alert them to their rights as employees and "actively misled Plaintiffs and members of the FLSA Collective regarding the nature of their relationship with Defendants by suggesting to them that they were not employees with rights but rather

15

prisoners whom Defendants could force to perform work as punishment and as a condition of their liberty," and "[t]hese actions prevented Plaintiffs and those similarly situated from understanding that they had a right to federal minimum wage during the time they worked at the Center." App. 127 ¶¶ 118–119.

*Burrell*, 60 F.4th at 48.

Determining that the Court did not need to "categorically conclude that failure to post notices is itself sufficient to equitably toll the limitations period," the Circuit Court concluded that Plaintiffs' allegations were sufficient to do so.

Plaintiffs here allege more: that defendants actively misled them by failing to post notices and telling them that they were not employees with rights but rather prisoners who could be forced to work for below the minimum wage. App. 126–27 ¶¶ 117–118. These allegations amount to "active misleading" such that equitable tolling applies. *See Hedges v. United States*, 404 F.3d 744, 751 (3d Cir. 2005).

60 F.4th at 48.

Because the argument framed by Plaintiffs included "members of the FLSA Collective" and the Circuit Court's rationale applies equally to named Plaintiffs and all potential FLSA collective class members, the Court cannot conclude that revision of the proposed collective is warranted absent evidence that other civil contemnor debtors were treated differently from named Plaintiffs regarding notice of FLSA rights. With no such evidence of record and no suggested inference in Defendants' favor at this stage of the proceedings, the proposed collective shall proceed as defined by Plaintiffs.

## D. Notice Procedure

Plaintiffs state that they intend to distribute the Notice of Collective Action Lawsuit and Consent to Paricipate in Collective Action documents "to potential members of the collective action by U.S. Mail, text message, telephone, and email." (Doc. 160 at 22.) They request "approval of notice by telephone, text message, and email because those methods are likely to be as effective, if not more so, than postal mail." (*Id.*) Plaintiffs also request that the Court allow their counsel to send a follow-up notice "to any potential collective action members who have not responded after the initial notice or to any potential collective action member for whom current contact information is located after sending out the initial notice." (*Id.* at 18.)

Defendant LRCI asserts that the proposed procedural steps related to the opt-in and notice forms should be amended: 1) Plaintiffs' request that the Court allow the notice and opt-in form to be provided via text message should be denied because it is "redundant, burdensome, and prejudicial"; and 2) Plaintiffs' request to send follow-up notices should also be denied because it is duplicative and adds unnecessary expense. (Doc. 161 at 16-17.)

As to the use of text messaging, LRCI and Plaintiffs provide supporting caselaw. LRCI points to *Given v. Love's Travel Stops & Country Stores, Inc.*, Civ. A. No. 1:17-CV-1266, 2018 WL 925996 (M.D. Pa. Feb. 16, 2018) (Conner, J.), in support of its position that mail and email receipt of relevant documents is sufficient. Plaintiffs cite *Harris v. Rebelz*

*Club, LLC*, Civ. A. No. 4:22-CV-00111, 2022 WL 2792200 (M.D. Pa. July 15, 2022) (Brann, C.J.), and *Belt v. P.F. Chang's China Bistro, Inc.*, Civ. A. No. 18-3831, 2020 WL 3829026 (E.D. Pa. July 8, 2018), in support of their position that courts in this district and throughout the Third Circuit routinely allow notice to be sent via text message.  (Doc. 164 at 23.)

Pursuant to the court's "authority to monitor the preparation and distribution of the notice to 'ensure that it is timely, accurate, and informative," *Belt* approved the plaintiff's distribution plan despite the defendant's concerns about redundancy, finding it "appropriate in the modern digital age to distribute notice by mail, email, and text, because although people frequently move and change addresses, they typically retain the same email addresses and phone numbers." *Belt*, 2020 WL 3829026, at *9 (citing *Regan v. City of Hanahan*, No. 2:16-CV-1077-RMG, 2017 WL 1386334, at *3 (D.S.C. Apr. 18, 2017) ("Plaintiffs' request that notice be distributed via direct mail, email and text messaging is reasonable because, in today's mobile society, individuals are likely to retain their mobile numbers and email addresses even when they move."); *Irvine v. Destination Wild Dunes Mgmt.*, Inc., 132 F. Supp. 3d 707, 711 (D.S.C. 2015) ("The request that notice be distributed via direct mail, email and text messaging appears eminently reasonable to the Court. This has become a much more mobile society with one's email address and cell phone number serving as the most consistent and reliable method of communication.")).

For the reasons identified in *Belt* and the cases cited therein, the Court agrees that Plaintiffs' approach to the procedure for sending notice and opt-in forms is reasonable and appropriate in this case.[3]

The Court further finds that Plaintiffs' request to send follow-up notices is reasonable and appropriate. This Court has done so previously, *see Quagliariello v. DiPasquale*, Civ. A. No. 3:20-CV-699, 2022 WL 2292010, at 8 (M.D. Pa. June 24, 2022) (listing cases approving follow-up notice), and finds no reason to deviate from that determination based on Defendant LRCI's concerns with expense and administrative burden (*see* Doc. 161 at 16-17), especially since it is Plaintiffs' counsel who will be responsible for sending any follow-up notice (*see* Doc. 160 at 18).

---

[3] *Belt* added that "[p]roviding servers with electronic notice is especially important given the high turnover rate of employees in the restaurant industry." 2020 WL 3829026, at *9 (citing *Lijun Geng v. Shu Han Ju Rest. II Corp.*, No. 18-CV-12220, 2019 WL 4493429, at *20 (S.D.N.Y. Sept. 9, 2019) (noting that distributing notice via mail, email, and text message is "ordinarily approved," especially in high turnover types of employment); *Bhumithanarn v. 22 Noodle Mkt. Corp.*, No. 14-CV-2625, 2015 WL 4240985, at *5 (S.D.N.Y. July 13, 2015) ("[G]iven the high turnover characteristic of the restaurant industry, the Court finds that notice via text message is likely to be a viable and efficient means of communicating with many prospective members of this collective action."). The "high turnover characteristic" noted to be relevant in the consideration of the procedure for providing notice is a feature of Plaintiffs' employment at the Recycling Center (with the named Plaintiffs each having worked at the Recycling Center for approximately three months (*see* Docs. 160-2 at 2, 160-3 at 2, 160-4 at 2)) and provides another reason to allow for text message of the notice and opt-in forms.

**E. Plaintiff's Request for Production of Contact Information**

Plaintiffs request that "the Court order production of the known identities of all people who are potential members of the collective." (Doc. 160 at 17.) Plaintiffs add that, "[t]o the extent available, this information should include the first, middle (if applicable), and last name of each such person, their last known mailing and residence addresses, cell phone and other telephone numbers, email addresses, and dates of work in the Center." (*Id.*)

Defendant Lackawanna County asserts that Plaintiffs' request for production of this information should be denied because it is unnecessarily burdensome. (Doc. 162 at 2.) The County maintains that the scope of the discovery should be limited to names and addresses and they should not be required to produce identifying information within the twenty days requested by Plaintiffs. (Doc. 162 at 2.)

For reasons discussed in the preceding section of this Memorandum Opinion regarding "Notice Procedure," the Court concludes that the information requested is appropriate and Defendants shall produce that information "to the extent available." (*See* Doc 160 at 17.) The Court further concludes that Defendants shall do so within sixty (60) days of the date of this Order rather than the twenty days requested by Plaintiffs.

## V. Conclusion

For the foregoing reasons, the Court will grant Plaintiffs' motion as modified. The Court will grant Plaintiffs' request to certify a collective action for their FLSA claims, the

Court will require Defendants to produce information identifying potential collective action members within sixty (60) days rather than the twenty (20) days requested by Plaintiffs,[4] and the Court will approve Plaintiffs' Notice to potential collective action members. An appropriate Order will be entered separately.

Robert D. Mariani
United States District Judge

---

[4] This modification is the basis for the Court's granting Plaintiffs' motion "as modified."